**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
**RODKEEDA JORDAN,**                          )
                              **Plaintiff,**  )
                                              )
**v.**                                        )    **Civil Action No. 07-795 (CKK)**
                                              )
**DISTRICT OF COLUMBIA,**                     )
                              **Defendant.**  )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

**BACKGROUND**

The Defendant filed its first Rule 12(b)(1) motion to dismiss on August 6, 2007. In that

motion, the Defendant argued that jurisidiction was lacking because the complaint, according to

the Defendant, contained no allegation that a hearing occurred, that an HOD was issued, or that

the Plaintiff was aggrieved by the HOD.

The Plaintiff contested the Defendant's arguments in her opposition, but to eliminate any

question, the Plaintiff amended her complaint on August 9, 2007. The Plaintiff amended only

one paragraph, in the "Jurisdiction" section. The original paragraph read:

> The Plaintiff has participated in an impartial administrative hearing conducted by the
> District of Columbia Schools State Enforcement and Investigation Division. The Hearing
> Officer dismissed the Petitioner's complaint.

The amended paragraph reads:

> On January 11, 2007, the Plaintiff participated in an administrative hearing of the claims
> made in this Complaint conducted by the District of Columbia Public Schools State
> Enforcement and Investigation Division. In an order issued February 1, 2007, the Hearing
> Officer dismissed the Petitioner's administrative complaint.

Amended Complaint ¶3.

On August 27, 2007, the Defendant filed its current motion to dismiss the Amended

Complaint ("Motion"). The Motion is again presented as a Rule 12(b)(1) motion, alleging that "this Court does not have jurisdiction over Plaintiff's claims." Motion at 1. However, the Defendant argues only that the Amended Complaint fails to state a cause of action, that it fails to comply with Rule 8(a)(2), and that "[t]he face of the amended complaint shows a failure to exhaust adminstrative remedies." Motion at 5-9.

## ARGUMENT

## I. THE DEFENDANT HAS KNOWINGLY MADE FALSE  REPRESENTATIONS IN ITS MOTION

### A. The Defendant Has Knowingly Misrepresented the Contents of the Amended Complaint

The Defendant has made plainly false statements regarding the contents of the Amended Complaint. In the Motion, the Defendant states:

> *Nowhere* does the amended complaint state that the Plaintiff was a party to an identified adminstrative hearing proceeding under the IDEIA conducted by DCPS[.]
> ***
> [T]he amended complaint…nowhere indicates that it is an "appeal" of *any* HOD, much less an identified one.
> ***
> Nowhere in the amended complaint, however, is there any assertion…that the Plaintiff has yet exhausted those required administrative remedies [of a due process complaint followed by a hearing and decision].
> ***
> The sole change to the initial complaint was the addition of the dates "January 11, 2007" and "February 1, 2007" into paragraph 3.

Motion at 3, 5-6, 8 (emphasis in original).

As stated above, and in the Defendant's Motion, the amended paragraph reads as follows:

> On January 11, 2007, the Plaintiff participated in an administrative hearing of the claims made in this Complaint conducted by the District of Columbia Public Schools State Enforcement and Investigation Division. In an order issued February 1, 2007, the Hearing Officer dismissed the Petitioner's administrative complaint.

Amended Complaint ¶3. Contrary to the Defendant's representations, the Amended Complaint

2

plainly states that the Plaintiff participated in a DCPS hearing of her IDEA claims and that she received a decision. It further identifies the hearing and the decision each by date.

Contrary to the Defendant's representation, the Amended Complaint contains a significant change other than the addition of the dates. The Amended Complaint states that the administrative hearing was "of the claims made in this complaint." Though that change may seem minor, it was intended to address one of the Defendant's original criticisms – one that it has inexplicably continued to make – that the complaint did not indicate how the administrative hearing and order "referred to relates to this action." Motion at 7; August 6, 2007 Motion to Dismiss at 6. The Amended Complaint now makes it perfectly clear that the administrative case regarded the same claims as those now before this Court.

### B. The Defendant Has Knowingly Taken a Position it Knows to Be Factually Baseless

The statements regarding the contents of the Amended Complaint aside, the falsehood at the heart of the Defendant's Motion – a plainly baseless statement, which the Defendant knew to be false or about which it deliberately maintained ignorance  – is flatly stated on the first page of the Motion: "this Court does not have jurisdiction over Plaintiff's Claims."

As the attached exhibits show without question, the Plaintiff did participate in an administrative due process hearing, and did receive an adverse decision, exactly as she claimed in the Amended Complaint. See Exhibits 1 and 2.

If the Defendant has not reviewed the Hearing Officer's Determination ("HOD") attached hereto, it should have. The Plaintiff announced its existence, and identified it by date, in the passage of the Amended Complaint quoted above. Either the Defendant found the HOD from that information, or it failed to conduct the most basic investigation, including the very simple

step of requesting a copy of the HOD from Plaintiff's counsel.[1]

## II.    THE DEFENDANT HAS OFFERED NO SUPPORT FOR ITS RULE 12(b)(1) CLAIM OF LACK OF JURISDICTION

The Defendant has requested dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but though it bears the burden of production at a minimum, it has offered absolutely no evidence of the absence of jurisdiction, whether for a failure to exhaust or for any other reason.

"Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it…If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1996)(internal citation omitted). The Defendant has made no effort at all to meet that burden in its Motion. Instead, it simply attacks the Complaint. There is no shred of evidence, or even an indication of an attempt to find evidence, of the failure to exhaust alleged by the Defendant.

Theoretically, the Defendant might have met its burden in a number of ways. It might have presented the relevant due process complaint and HOD, with an argument that the Plaintiff's current claims were not part of the administrative process. It might have presented an affidavit from an appropriate person stating that no administrative decision had ever been issued regarding this child. It might have presented copies of correspondence to the Plaintiff requesting relevant information, to which the Plaintiff had not responded. The Defendant did not present any such thing to support its claim that the Plaintiff did not exhaust her administrative remedies for the very good reason that the Plaintiff did in fact exhaust her administrative remedies.

Because the Defendant has offered no evidence whatsoever in support of its Rule

---

[1] Plaintiff's counsel does not typically attach the underlying HOD to an IDEA complaint, as attachments to complaints are disfavored. See LCvR 5.1(g).

12(b)(1) claim of lack of jurisdiction, the Court should deny the Motion.

## III.    THE PLAINTIFF APPROPRIATELY PLED HER COMPLAINT

While the Defendant has requested dismissal "pursuant to Fed. R. Civ. P. 12(b)(1)," it has made absolutely no showing of jurisdictional inadequacy. Instead, the Defendant requests dismissal on the grounds of perceived inadequacies in the phrasing of the Plaintiff's Complaint, an argument which must fail for at least three reasons. First, the Defendant's allegations regarding the deficiencies of the Amended Complaint are plainly false. Second, failure to exhaust administrative remedies is an affirmative defense, which the Plaintiff need not plead in the complaint. Third, the Plaintiff was not required to plead jurisdiction with specificity.

### A.  The Amended Complaint Contains All of the Information and Allegations That the Defendant Claims are Absent.

The Defendant is less than perfectly clear in itemizing the alleged ommissions in the Amended Complaint. The Defendant states that "the substantive deficiencies in the original complaint identified in Defendant's earlier motion, however, have not been cured by the amendment filed," but it does not identify which alleged "deficiencies...identified" remain.

To the best of the Plaintiff's understanding from the Motion, the following is a comprehensive list of the deficiencies alleged by the Defendant, many of which appear to overlap. The list is numbered for convenience in discussion.

1)   "*Nowhere* does the amended complaint state that the Plaintiff was a party to an identified administrative hearing proceeding under IDEIA conducted by DCPS[.]" Motion at 5-6.

2)   "*Nowhere* does the amended complaint state...that the Plaintiff was a party aggrieved by any such HOD[.]" Motion at 5-6.

3)   "[N]owhere is it even asserted that the Plaintiff is an aggrieved party entitled to court review." Motion at 7.

4)   "Nowhere in the amended complaint, however, is there any assertion – much less a showing – that the Plaintiff has yet exhausted [the] required administrative remedies." Motion at 8.

5)  "*Nowhere* does the amended complaint state…that this action seeks review of any such HOD." Motion at 5-6.

6)  "[T]he amended complaint, even if read most favorably to the Plaintiff, nowhere indicates that it is an "appeal" of *any* HOD, much less an identified one." Motion at 7.

7)  The Amended Complaint does not sufficiently indicate how the identified hearing and HOD "relates to this action." Motion at 6-7.

8)  "If jurisdictional review of some HOD was what the complaint drafter had in mind, it cannot be discerned from the face of the Complaint[.]" Motion at 7.

As addressed above, #1 is plainly false. See Amended Complaint ¶3. Numbers 2 and 3 are also false, in that the Plaintiff's statement that the Hearing Officer dismissed her due process complaint makes it perfectly clear that she was aggrieved. See id. Number 4, which is essentially a combination of #1-3, is false for those same reasons.[2] See id.

Regarding #5 and #6, the Amended Complaint makes clear that the case at bar follows an administrative hearing and decision regarding these same claims. This case is a civil action, to be decided by the preponderance of the evidence, so as a technical matter it is neither any "appeal" or an action seeking "review" of anything. See 20 U.S.C. § 1415(i)(2). Assuming for that reason that the Defendant was using those terms more broadly, the Amended Complaint makes perfectly clear that the February 1, 2007 HOD is that which the Plaintiff seeks "reviewed" on "appeal." See Amended Complaint ¶3.

Regarding #7, the Amended Complaint specifically states that the hearing and decision identified were "of the claims made in this [federal] Complaint," thus leaving no question as to how they "relate[] to this action." Amended Complaint ¶3; Motion at 6-7.

Number 8 is incomprehensible. If the Defendant inadvertently placed the word

---

[2] It is unclear why the Defendant mentions the absence of a "showing" of exhaustion, or what that term means in this context. Arguably, the Amended Complaint contains only allegations, not a "showing," but the Defendant offers no support for the idea that a complaint must contain a "showing" of anything.

6

"jurisdictional" in that sentence, then the discussion of #5 and #6, above, applies.

Because – questions of law aside – none of the Defendant's allegations of insufficiency apply to the Amended Complaint, the Motion is baseless.

### B.  The Failure to Exhaust Administrative Remedies is an Affirmative Defense.

Failure to exhaust administrative remedies is an affirmative defense. See Brown v. Marsh, 777 F.2d 8, 12-13 (D.C. Cir. 1985) ("[T]he district court's discussion appears to place the burden of establishing exhaustion on the plaintiff. This is improper, where, as here, the defendant failed to allege facts reasonably establishing a prima facie showing of nonexhaustion and the relevant records are in the defendant's custody."); see also Jones v. Bock, 127 S. Ct. 910 (2007); Bowden, 106 F.3d 433, 437.

In a closely analogous situation, the Supreme Court has recently stated, unequivocally and unanimously, that "failure to exhaust is an affirmative defense," such that plaintiffs need not "specially plead or demonstrate exhaustion in their complaints." Bock, 127 S. Ct. at 921. In Bock, the Court reviewed a circuit court's judgment interpreting the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997 et seq. ("PLRA"). The circuit court had ruled that the PLRA required prisoners to plead exhaustion of administrative remedies in their federal court complaints.

Lower courts had inferred an exhaustion pleading requirement from language in the PLRA stating that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress had gone further still with regard to prisoner complaints by requiring judicial screening of inmate complaints, which may be dismissed sua sponte absent any responsive pleading. See

28 U.S.C. §§ 1915A(a)-(b).

Within that context, a unanimous Court rejected the circuit's pleading requirement:

We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. *** Given that the PLRA does not itself require plaintiffs to plead exhaustion, such a result must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.

127 S. Ct. at 921-22 (internal quotations and citations omitted).

The Defendant has offered absolutely no support for its contention that the Plaintiff must plead exhaustion, much less any reason to change established law. The Defendant's argument for dismissal on that basis is therefore frivolous, and should be rejected.[3]

**C.  There Is No Heightened Pleading Requirement in IDEA Cases.**

In its phrasing of many of its alleged insufficiencies, the Defendant seems to assume or suggest that, not only must the Plaintiff plead exhaustion, she must do so with great specificity. That suggestion, which the Defendant has not supported with a single statute, rule, or case, is clearly wrong.

The Supreme Court of the United States has stated – unanimously – that Federal Rule of Civil Procedure 8(a) means what it says, and that the specificity requirements of Federal Rule of Civil Procedure 9(b) are not subject to enlargement absent an act of Congress. See, e.g., Hill v. McDonough, 126 S. Ct. 2096, 2103 (2006), ("Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts").

The Defendant offers no support for the suggestion that the Plaintiff must plead exhaustion with specificity in order to meet the Federal Rules' requirement that her Complaint

---

[3] This ommission by the Defendant is particularly striking given that the Plaintiff cited to these same cases in her opposition to the original motion to dismiss.

contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R. Civ. P. 8(a). Instead, the Defendant relies solely on 20 U.S.C. § 1415(i)(2)(A).

Nowhere in that provision or elsewhere in the IDEA does Congress attempt to establish heightened pleading standards for IDEA civil actions cases. Furthermore, it does not appear that courts have endeavored to establish such heightened requirements, particularly as the Defendant has not cited any authority for its proposed reading. Given the Supreme Court's clear statement on the subject, it is hard to imagine that any court would.

## IV.    DISMISSAL IS AN INAPPROPRIATE REMEDY

The Defendant contends that "[i]n the absence of such showings [that the amended complaint is an "appeal" of an HOD], this Court is without jurisdiction[.]" Motion at 7. The Defendant apparently misunderstands the nature of jurisidiction. Jurisdiction exists or it does not; the Court may rely upon the complaint to make a determination of jurisdiction, but a failing in the complaint cannot negate jurisdiction if it exists anymore than a failure to contest jurisdiction can establish it.

Were the Complaint deficient, the Court might dismiss it for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). The Defendant did not make its Motion on those grounds, perhaps because it sought to avoid the more lenient standard by which 12(b)(6) motions are determined.[4] Instead, the Defendant states that "this Court does not have jurisdiction of Plaintiff's claims" because the Plaintiff failed to exhaust adminstrative remedies, a claim the Defendant knew to be false and baseless.

Even were the Motion brought under Rule 12(b)(6), and the Defendant's arguments

---

[4] "In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." Openshaw v. Consol. Eng'g Servs., 2007 U.S. Dist. LEXIS 26280; No. 06-1884 (CKK), Memorandum Opinion at 4 (D.D.C. 2007).

regarding the complaint were meritorious, dismissal would still be an inappropriate remedy for the alleged insufficiencies in the Amended Complaint. <u>See</u> <u>e.g.</u> <u>M.K. v. Tenet</u>, 99 F. Supp. 2d 12, 19 (D.D.C. 2000)("[T]he defendants may move for a more definite statement of the plaintiff's claims under Federal Rule of Civil Procedure 12(e)…Because any indefiniteness can be remedied by this less drastic means, the court declines to dismiss the complaint for indefiniteness at this juncture")(internal citation omitted).

**IV.     THIS COURT HAS JURISDICTION OVER THE PLAINTIFF'S COMPLAINT**

As addressed above, failure to exhaust is an affirmative defense. As addressed above, the Defendant has offered nothing to raise any question regarding exhaustion. Nonetheless, in the interest of efficiency the Plaintiff submits Exhibits 1 and 2, which make clear that the Plaintiff has exhausted her administrative remedies. The Plaintiff brought an administrative complaint regarding the same claims made in Amended Complaint, and she received an adverse decision.

Respectfully submitted,
/s/
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

# DUE PROCESS COMPLAINT NOTICE
## In re Wayne McMillan
## December 14, 2006

**Petitioner:**       Rodkeeda Jordan
**Student:**          W███ M████
**DOB:**              ████93
**Current School**:   Kelly Miller Middle School ("Kelly Miller MS")
**Residence**:        25 46th Strect, N.E.
                      Washington, DC 20019

**Petitioner's Contact Information for Special Education Purposes**:

Tyrka & Associates, LLC
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

## Violations:

1. Failure to timely evaluate a qualified disabled child in all areas of suspected disability since the start of the 2002-2003 SY.
2. Failure to timely determine a qualified disabled child's eligibility for special education and related services since the start of the 2002-2003 SY.
3. Failure to timely develop an appropriate individualized education plan ("IEP") since the start of the 2002-2003 SY.
4. Failure to provide all necessary special education and related services since the start of the 2002-2003 SY.
5. Failure to provide an appropriate placement since the start of the 2002-2003 SY.

## Facts:

### 2002-2003 SY: Kimball Elementary School ("Kimball ES")

1. The Petitioner enrolled W███ in the 4th grade class at Kimball ES at the start of the 2002-2003 SY.
2. Sometime after the start of the 2002-2003 SY, Mrs. Brice, W███'s 4th grade teacher, referred him for special education evaluations due to academic problems in math and reading, behavior problems, and failing to complete assignments.
3. On October 17, 2002, DCPS completed a psychocducational evaluation of W███.
4. DCPS' October 17, 2002 psychoeducational evaluation of W███:
   a) revealed a verbal IQ score of 70 (borderline), a performance IQ score of 62 (deficient), and a full scale IQ score of 63 (deficient);
   b) reported that "W███s [sic] preoccupation with death and violence was concerning to the examiner[;]"
   c) recommended:
      i) completion of a Vineland Adaptive Behavior Scale;

Exhibit 1

      ii) provision of counseling services to address anger management.
5. On January 21, 2003, DCPS completed a Vineland Adaptive Behavior of W█████.
6. On April 8, 2003, DCPS completed a clinical psychological evaluation of W█████.
7. DCPS' April 8, 2003 clinical psychological evaluation of W████:
   a) reported that he had been recently suspended for fighting;
   b) documented teacher reports of his behavioral problems in the classroom, including "disobedien[ce], cheat[ing], on assignments, throw[ing] objects in the classroom, . . . verbal . . . aggress[ion], yell[ing], us[ing] profanity, and . . . not complet[ing] assignments[;]"
   c) diagnosed him with Depressive Disorder, NOS, Disruptive Behavior Disorder, NOS, and Rule-out Attention Deficit Hyperactivity Disorder ("ADHD");
   d) recommended:
      i) counseling two times per week;
      ii) development and implementation of a behavior intervention plan.
8. During the 2002-2003 SY DCPS did not:
   a) review W████'s psychoeducational, Vineland, or clinical psychological evaluations;
   b) determine W████'s eligibility for special education and related services;
   c) develop an appropriate IEP for W████;
   d) provide W████ with any special education and related services, including counseling;
   e) determine an appropriate special education placement for W████;
   f) complete or recommend any additional evaluations of W████, including ADHD, speech and language, social history, and occupational therapy evaluations, as well as a functional behavioral assessment.

**2003-2004 SY: Kimball ES & Smothers Elementary School ("Smothers ES)**
9. The Petitioner enrolled W████ at Kimball ES at the start of the 2003-2004 SY.
10. On September 24, 2003, Kimball ES convened an initial eligibility multidisciplinary team ("MDT") meeting for W████.
11. At the September 24, 2003 meeting, the MDT:
    i) determined that W████ was eligible to receive special education and related services under the disability classification of Emotionally Disturbed ("ED");
    ii) developed an IEP prescribing:
       (1) 20 hours of specialized instruction in reading, math and language arts;
       (2) 1 hour of psychological counseling;
    iii) issued a prior notice placing W████ at Wilkinson Elementary School ("Wilkinson ES");
    iv) did not recommend completion of any additional evaluations, including ADHD, speech and language, social history, and occupational therapy evaluations, or a functional behavioral assessment.
12. W████'s September 24, 2003 IEP:
    a) was not based on current evaluations in all areas of suspected disability;
    b) did not prescribe all necessary special education and related services;
    c) did not authorize an appropriate special education placement;
    d) was not appropriate.
13. In January of 2004, DCPS transferred W████ to Smothers ES.
14. DCPS did not appropriately change W████'s placement from Kimball ES to Smothers ES.

15. On May 19, 2004, Smothers convened an MDT meeting to review W████'s September 24, 2003 IEP.
16. At the May 19, 2004 meeting, the MDT:
    a) did not review W████'s current evaluations;
    b) determined that W████ continued to be eligible for special education and related services under the disability classification of ED;
    c) developed a current IEP prescribing 20 hours of specialized instruction and 1 hour of psychological services;
    d) issued a prior notice placing W████ at Kelly Miller MS;
    e) did not recommend completion of any additional evaluations, including ADHD, speech and language, social history, and occupational therapy evaluations, or a functional behavioral assessment.
17. W████'s May 19, 2004 IEP:
    a) was not based on current evaluations in all areas of suspected disability;
    b) did not prescribe all necessary special education and related services;
    c) did not authorize an appropriate special education placement;
    d) was not appropriate.
18. DCPS' encounter tracking forms verify that W████ only received 16.25 hours of psychological counseling during the 2003-2004 SY.
19. W████ should have received 36 hours of psychological counseling during the 2003-2004 SY.
20. W████ is eligible to receive compensatory education for DCPS' failure to provide him with 19.75 hours of psychological counseling during the 2003-2004 SY.
21. On information and belief, DCPS did not provide W████ with the specialized instruction prescribed in his IEP during the 2003-2004 SY.
22. W████ did not receive educational benefit during the 2003-2004 SY.
23. DCPS did not provide W████ with an appropriate placement during the 2003-2004 SY.

**2004-2005 SY: Kelly Miller MS**
24. DCPS placed W████ at Kelly Miller MS for the 2004-2005 SY.
25. During the 2004-2005 SY, DCPS did not:
    a) convene any MDT meetings;
    b) review W████'s May 19, 2004 IEP;
    c) discuss W████'s current educational placement;
    d) recommend completion of any additional evaluations, including ADHD, speech and language, social history, and occupational therapy evaluations, or a functional behavioral assessment.
26. DCPS' encounter tracking forms verify that W████ only received 17.67 hours of psychological counseling during the 2004-2005 SY.
27. W████ should have received 36 hours of psychological counseling during the 2004-2005 SY.
28. W████ is eligible to receive compensatory education for DCPS' failure to provide him with 18.33 hours of psychological counseling during the 2004-2005 SY.
29. On information and belief, DCPS did not provide W████ with the specialized instruction prescribed in his IEP during the 2004-2005 SY.
30. W████ did not receive educational benefit during the 2004-2004 SY.
31. DCPS did not provide W████ with an appropriate placement during the 2004-2005 SY.

**2005-2006 SY: Kelly Miller MS**

32. DCPS placed W█████ at Kelly Miller MS for the 2005-2006 SY.
33. DCPS did not review or revise W████'s IEP from May 2004 until April 2006.
34. On April 19, 2006, Kelly Miller MS convened an MDT meeting to review W█████'s IEP and evaluations and discuss his placement.
35. At the April 29, 2006 meeting, the MDT:
    a) developed a current IEP:
        i) reducing W█████'s hours of specialized instruction from 20 to 15 per week;
        ii) prescribing 1 hour per week of psychological counseling;
    b) developed a student evaluation plan ("SEP") recommending a current psychoeducational evaluation of W█████ on or before June 18, 2006;
    c) continuing his placement at Kelly Miller MS.
36. W█████'s April 19, 2006 IEP:
    a) was not based on current evaluations in all areas of suspected disability;
    b) did not prescribe all necessary special education and related services;
    c) did not authorize an appropriate special education placement;
    d) was not appropriate.
37. On April 25, 2006, the Superior Court of the District of Columbia placed W█████ on probation for six (6) months for a juvenile robbery conviction.
38. W█████ received final grades of:
    a) failing in geography, physical education, and band for the 2005-2006 SY and
    b) D in all of other subjects for the 2005-2006 SY.
39. DCPS' encounter tracking forms verify that W█████ only received 11.33 hours of psychological counseling during the 2005-2006 SY.
40. W█████ should have received 36 hours of psychological counseling during the 2005-2006 SY.
41. W█████ is eligible to receive compensatory education for DCPS' failure to provide him with 24.67 hours of psychological counseling during the 2005-2006 SY.
42. On information and belief, DCPS did not provide W█████ with the specialized instruction prescribed in his IEP during the 2005-2006 SY.
43. W█████ did not receive educational benefit during the 2005-2006 SY.
44. DCPS did not provide W█████ with an appropriate placement during the 2005-2006 SY.

**2006-2007 SY: Kelly Miller MS**

45. DCPS placed W█████ at Kelly Miller MS for the 2006-2007 SY.
46. On September 18, 2006, Kelly Miller MS suspended W█████ from school for fighting.
47. On October 16, 2006, Kelly Miller MS suspended W█████ from school for destroying school property.
48. On November 7, 2006, Kelly Miller MS convened an MDT meeting.
49. At the November 7, 2006 meeting:
    a) the MDT:
        i) developed an SEP recommending comprehensive psychological, occupational therapy, educational, speech and language, and social history evaluations of W█████, and a functional behavioral assessment, on or before December 22, 2006;
        ii) failed to offer any justification for reducing W█████'s hours per week of specialized instruction from 20 to 15 in his April 19, 2006 IEP;
        iii) did not review W█████'s April 19, 2006 IEP;

       iv) did not discuss W████'s current placement;

       v) did not discuss W████'s eligibility for compensatory education or develop an appropriate compensatory education plan;

  b) the Petitioner and her advocate:

       i) noted that an ADHD evaluation of W████ and a functional behavioral assessment had never been completed;

       ii) questioned the justification for reducing W████'s hours of specialized instruction from 20 to 15 in his April 19, 2006 IEP;

50. Shortly after the November 7, 2006 MDT meeting, W████ was suspended from Kelly Miller MS.

51. W████ returned to school following his suspension on November 30, 2006.

**Proposed resolution:**

1. DCPS to immediately fund and place W████ at an appropriate private special education school of the Petitioner's choosing with transportation.

2. DCPS to immediately fund independent comprehensive psychological, occupational therapy, educational, speech and language, social history, and ADHD evaluations of W████ and a functional behavioral assessment.

3. DCPS to convene an MDT meeting within ten (10) days of receiving the last of these evaluations to:

  a) review the results of these evaluations,

  b) revise W████'s current IEP, and

  c) develop an appropriate compensatory education plan to compensate W████ for DCPS' failure to:

       i) conduct and review comprehensive psychological, occupational therapy, educational, speech and language, social history, and ADHD evaluations of W████ and a functional behavioral assessment, since the start of the 2002-2003 SY;

       ii) timely determine his eligibility for special education and related services since the start of the 2002-2003 SY;

       iii) timely develop an appropriate individualized education plan ("IEP") since the start of the 2002-2003 SY;

       iv) timely develop an appropriate individualized education plan ("IEP") since the start of the 2002-2003 SY;

       v) provide all necessary special education and related services since the start of the 2002-2003 SY, including:

         (1) 19.75 hours of psychological counseling during the 2003-2004 SY,

         (2) 18.33 hours of psychological counseling during the 2004-2005 SY, and

         (3) 24.67 hours of psychological counseling during the 2005-2006 SY;

       vi) provide him with an appropriate placement since the start of the 2002-2003 SY.

4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to:
   a. immediately fund and place W██████ at an appropriate private special education school of the Petitioner's choosing with transportation,
   b. immediately fund independent comprehensive psychological, occupational therapy, educational, speech and language, social history, and ADHD evaluations of W██████, and a functional behavioral assessment,
   c. convene an MDT meeting within ten (10) days of receiving the last of these evaluations

   are necessary attendees at any resolution meeting.

2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.

4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 12/14/2006 15:04
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 12/14  15:02 |
| FAX NO./NAME | SHO |
| DURATION | 00:02:24 |
| PAGE(S) | 07 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      SHO

*Fax Number:*

*From:*           Douglas Tyrka

*Regarding:*      W███ M████

*# of pages:*     7

*Notes:*          Due Process Complaint

We are requesting a
4 hour time slot.

## District of Columbia Public Schools
### *State Enforcement Investigative Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



### *FACSIMILE SHEET*

Date: February 1, 2007

TO: Douglas Tyrka

FROM: STUDENT HEARING OFFICE

RE: M█████, W███

TOTAL NUMBER OF PAGES, INCLUDING COVER: 10

COMMENTS:

*CONFIDENTIALITY NTOICE*: The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

Exhibit 2

# District of Columbia Public Schools

## State Enforcement and Investigation Division
Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

|  |  |  |
|---|---|---|
| W████ M████████, STUDENT | ) | |
| | ) | |
| Date of Birth: ████████, 1993 | ) | Hearing Date: January 11, 2007 |
| | ) | |
| Petitioner, | ) | Complaint Filed: December 14, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Kelly Miller Middle School | ) | |

## HEARING OFFICER'S DECISION

| Parents: | Ms. Rodkeeda Jordan, Mother |
|---|---|
| | 25 – 46th Street, N.E. |
| | Washington, D.C. 20019 |
| | |
| Counsel for Petitioner: | Douglas Tyrka, Esquire |
| | 1726 Connecticut Avenue, N.W.; Suite 400 |
| | Washington, D.C. 20009 |
| | (202) 265-4260; Fax: (202) 265-4264 |
| | |
| Counsel for DCPS: | Daniel McCall, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

# INDEX OF NAMES

| Child | W̶̶̶ M̶̶̶̶̶̶ |
|---|---|
| Child's Parent(s) (specific relationship) | Rodkeeda Jordan, Mother |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Daniel McCall, Esquire |
| Principal or Designee | Keren Plowden, Executive Director of Student Services, RCA |
| Special Education Coordinator, DCPS | Natalie Harris-Wafula, Kelly Miller M.S. |

2

Jurisdiction

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

Introduction

Petitioner is a thirteen year-old student attending Kelly Miller Middle School ("Kelly Miller"). On December 14, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to (1) evaluate Petitioner timely in all areas of suspected disability, (2) identify Petitioner as a child with a disability, (3) develop an appropriate Individualized Education Program ("IEP"), (4) provide appropriate services, and (5) provide an appropriate placement. The due process hearing was convened on January 11, 2007. DCPS objected to Petitioner offering evidence of any alleged violation occurring more than two year prior to the filing of the Complaint, relying on IDEIA's two-year statute of limitations.[1] Petitioner argued that if the alleged violation took place prior to the effective date of IDEIA, the three-year statute of limitations of IDEIA's predecessor should apply.[2] The parties' Five Day Disclosure Notices were admitted into evidence at the hearing.[3] Petitioner's counsel moved for a Default Judgment for DCPS' failure to file a response to the *Complaint*. The hearing officer denied the motion because it was filed two days before the hearing, thereby depriving DCPS of a meaningful opportunity to prepare a response.[4]

In his opening statement, counsel for DCPS indicated his intention of defending against Petitioner's allegations by raising the issue of Petitioner's allegedly persistent truancy. The hearing officer noted that this issue was not raised in DCPS' response to the *Complaint* and that DCPS disclosed no attendance records. IDEIA imposes specific requirements upon education agencies upon receiving notice of a Complaint. First, the agency is compelled to file a response to the Complaint within ten days.[5] Section 1415(c)(2)(B) of the Act imposes specific requirements as to the elements of the response. If the agency has not sent a prior written notice to the parent regarding the subject matter contained in the Complaint, the agency's response must include

---

[1] 20 U.S.C. §1415(f)(3)(C).
[2] *Anthony v. District of Columbia*, Civil Action No. 06-0192 (D.D.C. Nov. 30, 2006).
[3] The hearing officer overruled DCPS' objection to the admission of Petitioner's Exhibit ("P.Exh.") Nos. 7 and 8. The documents were prepared in 2003, a period of time beyond IDEIA's statute of limitations. These documents were not offered to establish a violation of law in 2003, but to provide context for documents prepared in 2004, a period within the statute of limitations.
[4] The DCPS Standard Operating Procedures ("SOP") require pre-hearing motions to be filed no later than five business days before the hearing. SOP, §401(C)(4).
[5] 34 C.F.R. §300.508(e)(1).

- An explanation of why the agency proposed or refused to take the action raised in the complaint;
- A description of other options that the IEP Team considered and the reasons why those options were rejected;
- A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
- A description of the factors that are relevant to the agency's proposal or refusal.[6]

Since DCPS raised Petitioner's absences as an issue for the first time at the hearing, the hearing officer ruled that DCPS would not be allowed to introduce evidence as to Petitioner's absences.

**Witnesses for Petitioner**

> Petitioner's Mother
> Keren Plowden, Executive Director of Student Services, RCA

**Witnesses for DCPS**

> Natalie Harris-Wafula, Special Education Coordinator, Kelly Miller Middle School

**Findings of Fact**

1. Petitioner is a thirteen year-old student attending Kelly Miller.[7]

2. Petitioner was identified by DCPS as a child with emotional disturbance ("ED") at a Multidisciplinary Team ("MDT") meeting on September 24, 2003. Petitioner's mother signed the IEP indicating her agreement with its contents.[8]

3. Petitioner's last psychoeducational evaluation was conducted on October 17, 2002.[9] His last clinical psychological evaluation was conducted on April 8, 2003.[10]

4. On June 23, 2006, Dr. Rama Prayaga conducted a psychiatric evaluation of Petitioner. Dr. Prayaga diagnosed Petitioner with Disruptive Behavior Disorder and

---

[6] *Id.*
[7] *Complaint* at 1.
[8] P.Exh. No. 7 at 1.
[9] P.Exh. No. 18.
[10] P.Exh. No. 20.

Mood Disorder due to Polysubstance Abuse. Dr. Prayaga recommended, *inter alia*, a "Structured school program with smaller classrooms."[11]

5. Petitioner's 2005-2006 Progress Report reveals that he failed Western Hemisphere Geography, Health and Physical Education, and Beginning Band. Petitioner received "D's" in English Resource, Mathematics Resource, Fundamentals of Math 7 & 8, and Reading Resource. He had 46 unexcused absences and was tardy 28 times. Three teachers cited "Excessive Absences" as a cause of Petitioner's poor grades.[12]

6. DCPS convened a Multidisciplinary Team ("MDT") meeting on May 19, 2004. The MDT classified Petitioner as emotionally disturbed ("ED") and prescribed twenty-one hours of specialized instruction per week and one hour per week of psychological services. Petitioner's mother signed the IEP indicating her agreement with its contents.[13]

7. DCPS did not develop an IEP for Petitioner in 2005.

8. DCPS convened an MDT meeting on April 19, 2006. The MDT classified Petitioner as ED and prescribed fifteen hours of specialized instruction per week and one hour per week of psychological services.[14] The MDT recognized the need for updated evaluations and prescribed psychological and educational evaluations.[15] His Language Arts teacher stated that "[Petitioner] does have the ability to do very well when he applies himself." His Social Studies teacher stated that Petitioner's "attendance is also poor, but when he comes to class he almost always will get an A on his assignments. He is very smart and he catches on very quickly to any assignment given."[16] Petitioner's mother also expressed concern "about [Petitioner's] not attending class."[17] The MDT determined that Petitioner's placement would remain at Kelly Miller.[18] Petitioner's mother signed the IEP indicating her agreement with its contents.[19]

9. On September 18, 2006, Petitioner was suspended for three days for fighting in the school hallway.[20] On October 30, 2006, Petitioner was suspended for ten days for "walking in the halls and destroying government property in the girls' bathroom."[21]

10.    DCPS reconvened an MDT meeting on November 7, 2006. The MDT developed a Student Evaluation Plan ("SEP") and again prescribed psychological and

---

[11] P.Exh. No. 21 at 2.
[12] P.Exh. No. 26. While the hearing officer precluded DCPS from introducing evidence of Petitioner's absences, this exhibit was introduced by Petitioner.
[13] P.Exh. No. 10 at 1.
[14] P.Exh. No. 15 at 1. The MDT Meeting Notes indicate that Petitioner would continue to receive 20 hours per week of specialized instruction. P.Exh. No. 13. The discrepancy between the front page of the IEP and the Meeting Notes was not addressed during the hearing.
[15] P.Exh. No. 14.
[16] P.Exh. No. 12 at 1.
[17] *Id.* at 2.
[18] P.Exh. No. 13.
[19] P.Exh. No. 15 at 1.
[20] P.Exh. No. 27.
[21] P.Exh. No. 28.

educational evaluations as well as speech and language ("S/L"), social history ("SH"), and occupational therapy ("OT"). DCPS agreed to complete the evaluations within 45 days, and to update Petitioner's IEP upon the completion of the evaluations. Petitioner was represented at the MDT meeting by an educational advocate, Sharon Millis.[22]

11.    Rock Creek Academy ("RCA") has accepted Petitioner conditioned upon funding arrangements. RCA is a private day school offering full-time special education services. If Petitioner were to attend RCA, he would be the sixth student in the class. The class is taught by a teacher with a Masters degree in special education who is certified by the District or Maryland. RCA employs licensed social workers who would provide the counseling prescribed in Petitioner's IEP. All students participate in a point and level behavior modification plan that rewards students for positive behaviors. Each student's daily progress is shared with his or her parents each day.[23]

## Conclusions of Law

1.    DCPS identified Petitioner as a child with a disability on September 24, 2003. Petitioner offered no evidence that this determination was not timely effectuated. Moreover, the identification was made more than three years before the Complaint was filed. Thus, even under Petitioner's counsel's interpretation of the applicable statute of limitations, this claim is time-barred. Therefore, Petitioner has not met his burden of proving that DCPS failed timely to identify him as a child with a disability.

2.    DCPS denied Petitioner a free appropriate public education by failing to develop an appropriate IEP for the 2005-2006 school year.[24]

3.    The MDT developed Petitioner's 2006-2007 IEP on April 19, 2006. The consistent reports from his teachers were that Petitioner is capable of performing well academically, but he fails to attend class regularly. Petitioner's absences were a significant factor leading to his poor grades. Petitioner's mother also stated her concern about Petitioner's absences at the MDT meeting, and she signed the IEP indicating her agreement with its contents.

Petitioner's counsel argued that the IEP was inappropriate because it reduced the level of Petitioner's services despite his failing grades. This argument fails for three reasons. First, it is not apparent that Petitioner's specialized instruction hours were actually reduced. The Meeting Notes indicate that Petitioner would continue to receive 20 hours of specialized services, rather than the 15 hours prescribed on the front page of the IEP. Second, Petitioner's teachers believe that Petitioner is capable of performing at grade level if he would attend class on a regular basis. This perception would justify a reduction in specialized instruction. Third, Petitioner's mother admitted her awareness of Petitioner's truancy and agreed to the IEP on April 19, 2006. The hearing officer

---

[22] P.Exh. No. 16; testimony of Ms. Harris-Wafula.
[23] Testimony of Ms. Plowden.
[24] 34 C.F.R. §300.324(b)(1)(i).

concludes that Petitioner has failed to meet his burden of proving that DCPS failed to develop an appropriate IEP on April 19, 2006.

4. Petitioner's counsel introduced Encounter Tracking Forms to prove that DCPS failed to provide Petitioner necessary services. However, Petitioner's mother testified that she was not aware of which services Petitioner did not receive. She also testified as to her concern about Petitioner's numerous absences. In light of Petitioner's 46 unexcused absences during the 2005-2006 school year and his additional 28 tardy arrivals, the hearing officer concludes that Petitioner is culpable for a significant proportion of any missed services and has failed to meet his burden of proving that DCPS is responsible for having failed to provide necessary special education services.

4. The parties developed an SEP at an MDT meeting on November 7, 2006. Ms. Harris-Wafula testified that the evaluations prescribed at the April MDT meeting were not conducted due to Petitioner's persistent absence from school. Petitioner was represented at the November MDT meeting by an educational advocate. The advocate made no issue of the previously prescribed evaluations not having been completed, and she agreed to a timetable allowing DCPS 45 days to complete the evaluations. The hearing officer concludes that Petitioner has failed to meet his burden of proving that DCPS failed to evaluate him in all areas of suspected disability.

5. Petitioner offered no evidence that Kelly Miller is an inappropriate placement for Petitioner and, therefore, failed to meet his burden of proof on this issue.

6. DCPS denied Petitioner a free appropriate public education ("FAPE") by failing to provide an appropriate IEP for the 2005-2006 school year. As a result of this violation of IDEA, Petitioner would be entitled to an award of compensatory education services.[25] However, Petitioner's counsel did not offer proof that would satisfy the standard set forth in *Reid v. District of Columbia*.[26] Petitioner had the burden of showing (1) that as a result of DCPS' violation of IDEA, he suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation. Petitioner failed to make this showing.

Hearing officers may not award compensatory education services based solely on the amount of services a local education agency ("LEA") failed to provide.

More specifically, as the Fourth Circuit has explained, "compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student... Overlooking this equitable focus, the Reids' hour-for-hour formula in effect treats compensatory education as a form of damages – a charge on school districts equal

---

[25] *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. 2005).
[26] *Id.*

to expenditures they should have made previously. Yet "the essence of equity jurisdiction" is "to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it..." In keeping with that principle of case-specific flexibility, we agree with the Ninth Circuit that "there is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of IDEA..."[27]

Petitioner has the burden of establishing the type and amount of compensatory services that will compensate the student for the services that were denied. Absent such a showing, any award by the hearing officer would be arbitrary.

In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.[28]

In this case, there was no showing that Petitioner suffered actual educational deficiency by the deprivation of an updated IEP during the 2005-2006 school year. Second, there was no showing that there exists a form and amount of compensatory education services that would compensate Petitioner for the undocumented deficiency. Thus, the hearing officer concludes that Petitioner failed to meet his burden of proving that compensatory education services are warranted.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, the testimony presented during the hearing, and the representations of the parties' counsel at the hearing, this 31st day of January 2007, it is hereby

**ORDERED**, that the *Complaint* is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED**, that this Order is effective immediately.

---

[27] *Id.*, 401 F.3d at 523-24, citations omitted.
[28] *Id.*, 401 F.3d at 524.

8

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

*Terry Banks*

Terry Michael Banks
Hearing Officer

Date: January 31, 2007

Issued: 02/01/07

Copies to:

Douglas Tyrka, Esquire
1726 Connecticut Avenue, N.W.; Suite 400
Washington, D.C. 20009
(202) 265-4260; Fax: (202) 265-4264

Daniel McCall, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002