# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RODKEEDA JORDAN, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 07-0795 (CKK) |
| DISTRICT OF COLUMBIA, | : | |
| Defendant. | : | |

## FILING OF ADMINISTRATIVE RECORD

Attached is an index of the administrative record, and the record documents themselves in this proceeding.  Consistent with LCvR 5.4(f), Defendant has redacted personal information about the minor W.M.[1]

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

---

[1] Defendant has redacted the minor's name, date of birth, and social security number.

*/s/ Amy Caspari*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794
amy.caspari@dc.gov

December 7, 2007

RODKEEDA JORDAN
v. District of Columbia
Civil Action No. 07-0795(CKK)

### INDEX OF RECORD

| Description | | Page |
|---|---|---|
| Certification of Record | - | 1 |
| Hearing Officer's Determination (HOD) dated 1/31/7 | - | 2 |
| Attendance Sheet, 1/11/07 | - | 11 |
| Petitioner's Supp. Memo regarding S.O.L., w/att. 1/18/07 | - | 12 |
| Order in C. Anthony vs. DC et al., CA 06-0192 | - | 17 |
| Petitioner's Disclosure Letter, WM1, dated 1/8/07 w/att. | - | 25 |
| WM2- Letter compelling DCPS witnesses dated 1/8/06 | - | 30 |
| WM3- Due Process Complaint Notice, 12/14/06 | - | 31 |
| WM4- Motion for Expedited Hearing, 12/18/06 | - | 38 |
| WM5- Hearing Officer's Order dated 12/18/06 | - | 45 |
| WM6- Expedited Hearing Notice | - | 46 |
| WM7- IEP dated 9/24/03 | - | 47 |
| WM8- Initial Placement dated 9/24/03 | - | 54 |
| WM9- IEP Meeting Notes, 5/19/04 | - | 55 |
| WM10- IEP, 5/19/04 | - | 56 |
| WM11- Prior to Action Notice, 5/19/04 | - | 63 |
| WM12- MDT Meeting Notes, 4/19/06 | - | 64 |
| WM13- IEP Meeting Notes, 4/19/06 | - | 66 |
| WM14- MDT Student Evaluation Plan, 4/19/06 | - | 68 |

WM15- IEP, 4/19/06                                              -    69

WM16- MDT Student Evaluation Plan, 11/7/06                      -    77

WM17- MDT Meeting Notes, 11/7/06                                -    78

WM18- Psycho-educational evaluation, 10/17/02                   -    79

WM19- Vineland Adaptive Behavior Evaluation, 1/29/03            -    87

WM20- Clinical Psychological Evaluation, 4/8/03                 -    93

WM21- Comprehensive Psychiatric Evaluation, 6/23/06            -    97

WM22- Encounter Tracking Forms, SY 03-04                        -    99

WM23- Encounter Tracking Forms, SY 04-05                        -    114

WM24- Encounter Tracking Forms, SY 05-06                        -    124

WM25- IEP Report Card, SY 04-05                                 -    130

WM26- Report to Parents, 6/15/06                                -    131

WM27- Suspension Notice, 9/18/06                                -    132

WM28- Suspension Notice, 10/16/06                               -    136

WM29- Request for Official Student's Records, 10/24/06 -         139

WM30- Letter from Tyrka to Kelly M.S. dated 12/18/06           -    142

WM31- Letter from Tyrka to Kelly M.S. dated 12/20/06           -    144

WM32- Letter from Tyrka to Kelly M.S. dated 12/22/06           -    146

DCPS Disclosure Statement dated 1/4/07                          -    149

Hearing Notice dated 12/22/06                                   -    154

Hearing Officer's Order dated 12/21/06                          -    155

Hearing Officer's Order dated 12/18/06                          -    156

Transcript of Hearing dated 1/11/07                             -    158

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RODKEEDA JORDAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Civil Action No. 07-0795 (CKK)** |
| | : | |
| **DISTRICT OF COLUMBIA,** | : | |
| | : | |
| **Defendant.** | : | |

### FILING OF ADMINISTRATIVE RECORD

Attached is an index of the administrative record, and the record documents themselves in this proceeding.  Consistent with LCvR 5.4(f), Defendant has redacted personal information about the minor W.M.[1]

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

---

[1] Defendant has redacted the minor's name, date of birth, and social security number.

**/s/ Amy Caspari**
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794
amy.caspari@dc.gov

December 7, 2007

RODKEEDA JORDAN
v. District of Columbia
Civil Action No. 07-0795 (CKK)

## INDEX OF RECORD

| Description | | Page |
|---|---|---|
| Certification of Record | - | 1 |
| Hearing Officer's Determination (HOD) dated 1/31/7 | - | 2 |
| Attendance Sheet, 1/11/07 | - | 11 |
| Petitioner's Supp. Memo regarding S.O.L., w/att. 1/18/07 | - | 12 |
| Order in C. Anthony vs. DC et al., CA 06-0192 | - | 17 |
| Petitioner's Disclosure Letter, WM1, dated 1/8/07 w/att. | - | 25 |
| WM2- Letter compelling DCPS witnesses dated 1/8/06 | - | 30 |
| WM3- Due Process Complaint Notice, 12/14/06 | - | 31 |
| WM4- Motion for Expedited Hearing, 12/18/06 | - | 38 |
| WM5- Hearing Officer's Order dated 12/18/06 | - | 45 |
| WM6- Expedited Hearing Notice | - | 46 |
| WM7- IEP dated 9/24/03 | - | 47 |
| WM8- Initial Placement dated 9/24/03 | - | 54 |
| WM9- IEP Meeting Notes, 5/19/04 | - | 55 |
| WM10- IEP, 5/19/04 | - | 56 |
| WM11- Prior to Action Notice, 5/19/04 | - | 63 |
| WM12- MDT Meeting Notes, 4/19/06 | - | 64 |
| WM13- IEP Meeting Notes, 4/19/06 | - | 66 |
| WM14- MDT Student Evaluation Plan, 4/19/06 | - | 68 |

WM15- IEP, 4/19/06                                              -    69

WM16- MDT Student Evaluation Plan, 11/7/06                      -    77

WM17- MDT Meeting Notes, 11/7/06                                -    78

WM18- Psycho-educational evaluation, 10/17/02                   -    79

WM19- Vineland Adaptive Behavior Evaluation, 1/29/03            -    87

WM20- Clinical Psychological Evaluation, 4/8/03                 -    93

WM21- Comprehensive Psychiatric Evaluation, 6/23/06            -    97

WM22- Encounter Tracking Forms, SY 03-04                        -    99

WM23- Encounter Tracking Forms, SY 04-05                        -   114

WM24- Encounter Tracking Forms, SY 05-06                        -   124

WM25- IEP Report Card, SY 04-05                                 -   130

WM26- Report to Parents, 6/15/06                                -   131

WM27- Suspension Notice, 9/18/06                                -   132

WM28- Suspension Notice, 10/16/06                               -   136

WM29- Request for Official Student's Records, 10/24/06 -         139

WM30- Letter from Tyrka to Kelly M.S. dated 12/18/06            -   142

WM31- Letter from Tyrka to Kelly M.S. dated 12/20/06            -   144

WM32- Letter from Tyrka to Kelly M.S. dated 12/22/06            -   146

DCPS Disclosure Statement dated 1/4/07                          -   149

Hearing Notice dated 12/22/06                                   -   154

Hearing Officer's Order dated 12/21/06                          -   155

Hearing Officer's Order dated 12/18/06                          -   156

Transcript of Hearing dated 1/11/07                             -   158

# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## Office of Compliance & Review
### *STUDENT HEARING OFFICE*
### SPECIAL EDUCATION

In the Matter RE:     M█████, W█████ vs. Kelly Miller Middle School

Case Information:    Hearing Dates: 01/11/2007
                    Held at: **District of Columbia Public Schools Headquarters**
                          **825 N. Capitol Street, N.E.**
                            **Washington, D.C. 20002**
                    Student Identification Number: **9054440**
                    Student's Date of Birth: ████/1993
                    Attending School: **Kelly Miller Middle School**
                    Managing School: **Kelly Miller Middle School**
                    Hearing Request Date(s): **12/14/2006**

## <u>CERTIFICATION OF RECORD</u>

      I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting of all letters, pleadings, orders,

exhibits and depositions.

      I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Tuesday, October 30, 2007.

                                  **LEGAL ASSISTANT**
                           **STUDENT HEARING OFFICE**

1

# District of Columbia Public Schools

## State Enforcement and Investigation Division

**Terry Michael Banks, Due Process Hearing Officer**
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

## Confidential

| | | |
|---|---|---|
| W████ M████████, STUDENT | ) | |
| | ) | |
| Date of Birth: ████████, 1993 | ) | Hearing Date: January 11, 2007 |
| | ) | |
| Petitioner, | ) | Complaint Filed: December 14, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | Held at: 825 North Capitol Street, N.E. |
| PUBLIC SCHOOLS | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Kelly Miller Middle School | ) | |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Rodkeeda Jordan, Mother |
| | 25 – 46th Street, N.E. |
| | Washington, D.C. 20019 |
| | |
| **Counsel for Petitioner:** | Douglas Tyrka, Esquire |
| | 1726 Connecticut Avenue, N.W.; Suite 400 |
| | Washington, D.C. 20009 |
| | (202) 265-4260; Fax: (202) 265-4264 |
| | |
| **Counsel for DCPS:** | Daniel McCall, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E.; 9th Floor |
| | Washington, D.C. 20002 |

2

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | W████ M████ |
| Child's Parent(s) (specific relationship) | Rodkeeda Jordan, Mother |
| Child/Parent's Representative | Douglas Tyrka, Esquire |
| School System's Representative | Daniel McCall, Esquire |
| Principal or Designee | Keren Plowden, Executive Director of Student Services, RCA |
| Special Education Coordinator, DCPS | Natalie Harris-Wafula, Kelly Miller M.S. |

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is a thirteen year-old student attending Kelly Miller Middle School ("Kelly Miller"). On December 14, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to (1) evaluate Petitioner timely in all areas of suspected disability, (2) identify Petitioner as a child with a disability, (3) develop an appropriate Individualized Education Program ("IEP"), (4) provide appropriate services, and (5) provide an appropriate placement. The due process hearing was convened on January 11, 2007. DCPS objected to Petitioner offering evidence of any alleged violation occurring more than two year prior to the filing of the Complaint, relying on IDEIA's two-year statute of limitations.[1] Petitioner argued that if the alleged violation took place prior to the effective date of IDEIA, the three-year statute of limitations of IDEIA's predecessor should apply.[2] The parties' Five Day Disclosure Notices were admitted into evidence at the hearing.[3] Petitioner's counsel moved for a Default Judgment for DCPS' failure to file a response to the *Complaint*. The hearing officer denied the motion because it was filed two days before the hearing, thereby depriving DCPS of a meaningful opportunity to prepare a response.[4]

In his opening statement, counsel for DCPS indicated his intention of defending against Petitioner's allegations by raising the issue of Petitioner's allegedly persistent truancy. The hearing officer noted that this issue was not raised in DCPS' response to the *Complaint* and that DCPS disclosed no attendance records. IDEIA imposes specific requirements upon education agencies upon receiving notice of a Complaint. First, the agency is compelled to file a response to the Complaint within ten days.[5] Section 1415(c)(2)(B) of the Act imposes specific requirements as to the elements of the response. If the agency has not sent a prior written notice to the parent regarding the subject matter contained in the Complaint, the agency's response must include

---

[1] 20 U.S.C. §1415(f)(3)(C).
[2] *Anthony v. District of Columbia*, Civil Action No. 06-0192 (D.D.C. Nov. 30, 2006).
[3] The hearing officer overruled DCPS' objection to the admission of Petitioner's Exhibit ("P.Exh.") Nos. 7 and 8. The documents were prepared in 2003, a period of time beyond IDEIA's statute of limitations. These documents were not offered to establish a violation of law in 2003, but to provide context for documents prepared in 2004, a period within the statute of limitations.
[4] The DCPS Standard Operating Procedures ("SOP") require pre-hearing motions to be filed no later than five business days before the hearing. SOP, §401(C)(4).
[5] 34 C.F.R. §300.508(e)(1).

- An explanation of why the agency proposed or refused to take the action raised in the complaint;
- A description of other options that the IEP Team considered and the reasons why those options were rejected;
- A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
- A description of the factors that are relevant to the agency's proposal or refusal.[6]

Since DCPS raised Petitioner's absences as an issue for the first time at the hearing, the hearing officer ruled that DCPS would not be allowed to introduce evidence as to Petitioner's absences.

**Witnesses for Petitioner**

 Petitioner's Mother
 Keren Plowden, Executive Director of Student Services, RCA

**Witnesses for DCPS**

 Natalie Harris-Wafula, Special Education Coordinator, Kelly Miller Middle School

**Findings of Fact**

 1. Petitioner is a thirteen year-old student attending Kelly Miller.[7]

 2. Petitioner was identified by DCPS as a child with emotional disturbance ("ED") at a Multidisciplinary Team ("MDT") meeting on September 24, 2003. Petitioner's mother signed the IEP indicating her agreement with its contents.[8]

 3. Petitioner's last psychoeducational evaluation was conducted on October 17, 2002.[9] His last clinical psychological evaluation was conducted on April 8, 2003.[10]

 4. On June 23, 2006, Dr. Rama Prayaga conducted a psychiatric evaluation of Petitioner. Dr. Prayaga diagnosed Petitioner with Disruptive Behavior Disorder and

---

[6] *Id.*
[7] *Complaint* at 1.
[8] P.Exh. No. 7 at 1.
[9] P.Exh. No. 18.
[10] P.Exh. No. 20.

Mood Disorder due to Polysubstance Abuse. Dr. Prayaga recommended, *inter alia*, a "Structured school program with smaller classrooms."[11]

5. Petitioner's 2005-2006 Progress Report reveals that he failed Western Hemisphere Geography, Health and Physical Education, and Beginning Band. Petitioner received "D's" in English Resource, Mathematics Resource, Fundamentals of Math 7 & 8, and Reading Resource. He had 46 unexcused absences and was tardy 28 times. Three teachers cited "Excessive Absences" as a cause of Petitioner's poor grades.[12]

6. DCPS convened a Multidisciplinary Team ("MDT") meeting on May 19, 2004. The MDT classified Petitioner as emotionally disturbed ("ED") and prescribed twenty-one hours of specialized instruction per week and one hour per week of psychological services. Petitioner's mother signed the IEP indicating her agreement with its contents.[13]

7. DCPS did not develop an IEP for Petitioner in 2005.

8. DCPS convened an MDT meeting on April 19, 2006. The MDT classified Petitioner as ED and prescribed fifteen hours of specialized instruction per week and one hour per week of psychological services.[14] The MDT recognized the need for updated evaluations and prescribed psychological and educational evaluations.[15] His Language Arts teacher stated that "[Petitioner] does have the ability to do very well when he applies himself." His Social Studies teacher stated that Petitioner's "attendance is also poor, but when he comes to class he almost always will get an A on his assignments. He is very smart and he catches on very quickly to any assignment given."[16] Petitioner's mother also expressed concern "about [Petitioner's] not attending class."[17] The MDT determined that Petitioner's placement would remain at Kelly Miller.[18] Petitioner's mother signed the IEP indicating her agreement with its contents.[19]

9. On September 18, 2006, Petitioner was suspended for three days for fighting in the school hallway.[20] On October 30, 2006, Petitioner was suspended for ten days for "walking in the halls and destroying government property in the girls' bathroom."[21]

10.    DCPS reconvened an MDT meeting on November 7, 2006. The MDT developed a Student Evaluation Plan ("SEP") and again prescribed psychological and

---

[11] P.Exh. No. 21 at 2.
[12] P.Exh. No. 26. While the hearing officer precluded DCPS from introducing evidence of Petitioner's absences, this exhibit was introduced by Petitioner.
[13] P.Exh. No. 10 at 1.
[14] P.Exh. No. 15 at 1. The MDT Meeting Notes indicate that Petitioner would continue to receive 20 hours per week of specialized instruction. P.Exh. No. 13. The discrepancy between the front page of the IEP and the Meeting Notes was not addressed during the hearing.
[15] P.Exh. No. 14.
[16] P.Exh. No. 12 at 1.
[17] *Id.* at 2.
[18] P.Exh. No. 13.
[19] P.Exh. No. 15 at 1.
[20] P.Exh. No. 27.
[21] P.Exh. No. 28.

educational evaluations as well as speech and language ("S/L"), social history ("SH"), and occupational therapy ("OT"). DCPS agreed to complete the evaluations within 45 days, and to update Petitioner's IEP upon the completion of the evaluations. Petitioner was represented at the MDT meeting by an educational advocate, Sharon Millis.[22]

11.    Rock Creek Academy ("RCA") has accepted Petitioner conditioned upon funding arrangements. RCA is a private day school offering full-time special education services. If Petitioner were to attend RCA, he would be the sixth student in the class. The class is taught by a teacher with a Masters degree in special education who is certified by the District or Maryland. RCA employs licensed social workers who would provide the counseling prescribed in Petitioner's IEP. All students participate in a point and level behavior modification plan that rewards students for positive behaviors. Each student's daily progress is shared with his or her parents each day.[23]

**Conclusions of Law**

1. DCPS identified Petitioner as a child with a disability on September 24, 2003. Petitioner offered no evidence that this determination was not timely effectuated. Moreover, the identification was made more than three years before the Complaint was filed. Thus, even under Petitioner's counsel's interpretation of the applicable statute of limitations, this claim is time-barred. Therefore, Petitioner has not met his burden of proving that DCPS failed timely to identify him as a child with a disability.

2. DCPS denied Petitioner a free appropriate public education by failing to develop an appropriate IEP for the 2005-2006 school year.[24]

3. The MDT developed Petitioner's 2006-2007 IEP on April 19, 2006. The consistent reports from his teachers were that Petitioner is capable of performing well academically, but he fails to attend class regularly. Petitioner's absences were a significant factor leading to his poor grades. Petitioner's mother also stated her concern about Petitioner's absences at the MDT meeting, and she signed the IEP indicating her agreement with its contents.

Petitioner's counsel argued that the IEP was inappropriate because it reduced the level of Petitioner's services despite his failing grades. This argument fails for three reasons. First, it is not apparent that Petitioner's specialized instruction hours were actually reduced. The Meeting Notes indicate that Petitioner would continue to receive 20 hours of specialized services, rather than the 15 hours prescribed on the front page of the IEP. Second, Petitioner's teachers believe that Petitioner is capable of performing at grade level if he would attend class on a regular basis. This perception would justify a reduction in specialized instruction. Third, Petitioner's mother admitted her awareness of Petitioner's truancy and agreed to the IEP on April 19, 2006. The hearing officer

---

[22] P.Exh. No. 16; testimony of Ms. Harris-Wafula.
[23] Testimony of Ms. Plowden.
[24] 34 C.F.R. §300.324(b)(1)(i).

7

concludes that Petitioner has failed to meet his burden of proving that DCPS failed to develop an appropriate IEP on April 19, 2006.

4. Petitioner's counsel introduced Encounter Tracking Forms to prove that DCPS failed to provide Petitioner necessary services. However, Petitioner's mother testified that she was not aware of which services Petitioner did not receive. She also testified as to her concern about Petitioner's numerous absences. In light of Petitioner's 46 unexcused absences during the 2005-2006 school year and his additional 28 tardy arrivals, the hearing officer concludes that Petitioner is culpable for a significant proportion of any missed services and has failed to meet his burden of proving that DCPS is responsible for having failed to provide necessary special education services.

4. The parties developed an SEP at an MDT meeting on November 7, 2006. Ms. Harris-Wafula testified that the evaluations prescribed at the April MDT meeting were not conducted due to Petitioner's persistent absence from school. Petitioner was represented at the November MDT meeting by an educational advocate. The advocate made no issue of the previously prescribed evaluations not having been completed, and she agreed to a timetable allowing DCPS 45 days to complete the evaluations. The hearing officer concludes that Petitioner has failed to meet his burden of proving that DCPS failed to evaluate him in all areas of suspected disability.

5. Petitioner offered no evidence that Kelly Miller is an inappropriate placement for Petitioner and, therefore, failed to meet his burden of proof on this issue.

6. DCPS denied Petitioner a free appropriate public education ("FAPE") by failing to provide an appropriate IEP for the 2005-2006 school year. As a result of this violation of IDEA, Petitioner would be entitled to an award of compensatory education services.[25] However, Petitioner's counsel did not offer proof that would satisfy the standard set forth in *Reid v. District of Columbia*.[26] Petitioner had the burden of showing (1) that as a result of DCPS' violation of IDEA, he suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation. Petitioner failed to make this showing.

Hearing officers may not award compensatory education services based solely on the amount of services a local education agency ("LEA") failed to provide.

More specifically, as the Fourth Circuit has explained, "compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student... Overlooking this equitable focus, the Reids' hour-for-hour formula in effect treats compensatory education as a form of damages – a charge on school districts equal

---

[25] *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. 2005).
[26] *Id.*

to expenditures they should have made previously. Yet "the essence of equity jurisdiction" is "to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it..." In keeping with that principle of case-specific flexibility, we agree with the Ninth Circuit that "there is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of IDEA..."[27]

Petitioner has the burden of establishing the type and amount of compensatory services that will compensate the student for the services that were denied. Absent such a showing, any award by the hearing officer would be arbitrary.

In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.[28]

In this case, there was no showing that Petitioner suffered actual educational deficiency by the deprivation of an updated IEP during the 2005-2006 school year. Second, there was no showing that there exists a form and amount of compensatory education services that would compensate Petitioner for the undocumented deficiency. Thus, the hearing officer concludes that Petitioner failed to meet his burden of proving that compensatory education services are warranted.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, the testimony presented during the hearing, and the representations of the parties' counsel at the hearing, this 31st day of January 2007, it is hereby

**ORDERED**, that the *Complaint* is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

---

[27] *Id.*, 401 F.3d at 523-24, citations omitted.
[28] *Id.*, 401 F.3d at 524.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

      This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

_____
Terry Michael Banks
Hearing Officer


Date:  January 31, 2007


Issued:  _____


Copies to:

Douglas Tyrka, Esquire
1726 Connecticut Avenue, N.W.; Suite 400
Washington, D.C. 20009
(202) 265-4260; Fax: (202) 265-4264

Daniel McCall, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.; 9th Floor
Washington, D.C. 20002

**ATTENDANCE SHEET**

STUDENT'S NAME: W_____ M_____

SCHOOL OF ATTENDANCE: _Kelly Miller MS_

D.O.B: ____/93

HEARING DATE: _1/11/07_    ROOM: _8151_    TIME: _11:38_ (A.M.)/P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Douglas Tyrka | student | Counsel for Parent |
| RodKeecla Jordan | student | mother |
| Daniel McCall | DCPS | Attorney |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

_____
Impartial Hearing Officer

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Officer Banks ~ SHO |
| | David McCall ~ OGC |
| *Fax Number:* | |
| *From:* | Douglas Tyrka |
| *Regarding:* | W▓▓▓ M▓▓▓▓▓ |
| *# of pages:* | 13 |
| *Notes:* | Supplementary Memorandum Regarding Statue of Limitations |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended
solely for the recipient named above. If you are not the intended recipient named above or the agent or employee
thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of
this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all
privileges applicable to this transmission. If you have received this transmission in error, please read no further than
this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the
cost of Tyrka & Associates. Thank you.

Before the
### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### OFFICE OF MANAGEMENT SERVICES

| | | |
|---|---|---|
| In re W████ Mc██████, | ) | Terry Banks, Esq. |
| Special Education Student, | ) | Impartial Hearing Officer |
| | ) | |

### PETITIONER'S SUPPLEMENTARY MEMORANDUM REGARDING
### STATUTE OF LIMITATIONS

The Petitioner respectfully submits this Memorandum regarding the statute of limitations applicable to this case, as ordered at the hearing of January 11, 2007.

As the Hearing Officer is of course aware, the IDEA, amended by the IDEIA effective July 1, 2005, contains a two-year statute of limitations for claims made in due process complaints.[1] That legislated change modified the existing limitations period of three years, which had been adopted through the application of the holding of <u>Spiegler v. Dist. of Columbia</u>, 866 F.2d 461 (D.C. Cir. 1989), which established the limitations period for civil actions challenging HODs, and the District of Columbia's default limitations period of three years.

However, as the Petitioner argued at the hearing, caselaw in IDEA cases and generally has established that changes to a statute of limitations are not retroactive unless the enacting statute explicitly states so. Therefore, the three-year limitations period applies to this case.

Cases holding that statute of limitations changes are generally not retroactive include: <u>Hartford Casualty Ins. Co. v. FDIC</u>, 21 F.3d 696, 701-704 (5th Cir. 1994) (rejecting argument that new 60-day limitations period in effect at time of filing would

---

[1] As the Hearing Officer is aware, this is something of an oversimplification of the IDEA terms in question, but the specifics are not relevant to the issues addressed in this Memorandum.

01/18/2007  12:59    2022654264    TYRKA & ASSOCIATES    PAGE  03/13

bar any old claim not filed within 60 days of effective date of limitations change);

Chenault v. United States Postal Serv., 37 F.3d 535, 539 (9th Cir. 1994) ("A newly

enacted statute that shortens the applicable statute of limitations may not be applied

retroactively to bar a plaintiff's claim that might otherwise be brought under the old

statutory scheme because to do so would be manifestly unjust."); Wachovia Bank &

Trust Co., N.A. v. Nat'l Student Marketing Corp., 650 F.2d 342, 346-348 (D.C. Cir.

1980) (holding that three-year limitations period, rather than new two-year limitations

period, applied even though shorter limitations period was in effect at time of filing).

Cases rejecting retroactive application of IDEA limitations periods include:

Anthony v. District of Columbia, Civil Action No. 06-0192 (holding that hearing officer

erred in applying two-year limitations period retroactively) (order attached hereto);

Pettigrew v. Middletown Area Sch. Dist., 2006 U.S. Dist. LEXIS 69041 at 18-21 (M.D.

Pa. 2006) (rejecting argument that new 90-day period for civil action challenging HOD

bar civil action not filed within 90 days of July 1, 2005 where HOD was issued before

July 1, 2005); P.S. v. Princeton Regional Schools Bd. of Ed., 2006 U.S. Dist. LEXIS 252

(D. N.J. 2006) (same holding); Farzana K. V. Indiana Dep't of Ed., 2005 U.S. Dist.

LEXIS 38561 at 18-20 (N.D. Ind. 2005) (reversed on other grounds) (rejecting plaintiff's

reliance on new 90-day limitation for civil action challenging HOD where HOD was

issued before July 1, 2005).

By the holdings and reasoning of all of these cases, claims in a due process

complaint are limited by the limitations period in effect at the time of the alleged

violation, not the one in effect at the time of the filing of the complaint. In this

jurisdiction, the Petitioner's claims regarding violations prior to July 1, 2005 are subject

to a three-year limitations period, and those after June 30, 2005 are subject to the IDEA's two-year limitation. Accordingly, the Petitioner's claims regarding violations occurring up to three years prior to the filing of her complaint remain valid.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

3

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2006 I sent a copy of the foregoing by facsimile to Daniel McCall, Attorney-Advisor, at (202) 442-5098.

Sincerely,

Douglas Tyrka

Westlaw.

2006 WL 3440026                    FOR EDUCATIONAL USE ONLY                              Page 1
--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.
Corine ANTHONY, et al., Plaintiffs,
v.
DISTRICT OF COLUMBIA, et al., Defendants.
**Civil Action No. 06-0192 (ESH).**

Nov. 30, 2006.

Ankur Jayant Goel, McDermott, Will & Emery, Washington, DC, for Plaintiffs.

Veronica A. Porter, Office of Attorney General for the District Of Columbia, Washington, DC, for Defendants.

### *ORDER*

ELLEN SEGAL HUVELLE, District Judge.

*1 Upon consideration of the pleadings and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that defendants' motion for summary judgment [Dkt. # 16] is **DENIED**; and it is

**FURTHER ORDERED** that plaintiffs' motion for summary judgment [Dkt. # 17] is **GRANTED IN PART** to the extent that the Hearing Officer Determinations of November 4, 2005 and March 22, 2006 are overturned based on the hearing officer's erroneous application of a two-year statute of limitations; and it is

**FURTHER ORDERED** that plaintiffs' motion for summary judgment [Dkt. # 17] is **DENIED IN PART** to the extent that plaintiffs request the Court to award 7200 hours of compensatory education; and it is

**FURTHER ORDERED** that the matter is remanded to the hearing officer to redetermine the award of compensatory education in a manner consistent with the accompanying Memorandum Opinion.

**SO ORDERED.**

### *MEMORANDUM OPINION*

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, which requires state education agencies to identify, locate, and evaluate children

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

17

01/18/2007  12:59    2022654264                TYRKA & ASSOCIATES                          PAGE  07/13

2006 WL 3440026                 FOR EDUCATIONAL USE ONLY                                Page 2
--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

with disabilities and to provide them with a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1), (3). Plaintiffs Corine Anthony and her minor son, D.A., have sued the District of Columbia and the Superintendent of the District of Columbia Public Schools ("DCPS"), seeking review of two hearing officer determinations ("HODs") which awarded D.A. eighteen months of compensatory education as a remedy for defendants' IDEA violations. Plaintiffs argue that the hearing officer improperly limited D.A.'s compensatory education award by imposing *sua sponte* a two-year statute of limitations, by applying an incorrect statute of limitations, and by failing to address plaintiffs' arguments regarding the application of the continuing violation and equitable tolling doctrines. Defendants contend that the award was appropriate and should be upheld. Both parties have moved for summary judgment. Upon considering the pleadings and the entire record herein, the Court concludes that the hearing officer incorrectly limited the scope of relief and remands the matter to the hearing officer for a redetermination of his award of compensatory education consistent with this Memorandum Opinion.

## BACKGROUND

Plaintiff D.A. is a seventeen-year-old boy with chronic paranoid schizophrenia and significant speech, language, emotional, and psychological deficiencies. (Pls.' Statement of Material Facts Not in Dispute ("Pls.' Statement") ¶¶ 1-3, 6.) D.A. performed poorly in school as early as the second grade, when his student report for school year ("SY") 1996-1997 showed that he had "little or no mastery of fundamental knowledge and skills" for his grade level. (*Id.* ¶ 10.) In third grade (SY 1997-1998), D.A. continued to perform poorly in all areas of his standardized tests, and he displayed disruptive social behavior and lack of focus. (*Id.* ¶ 11.) D.A. repeated third grade, but he showed no improvement in SY 1998-1999. (*Id.* ¶ 12.) D.A. nevertheless proceeded to fourth grade in SY 1999-2000, where D.A.'s teacher expressed concern about his behavior and where he continued to flounder academically. (*Id.* ¶¶ 12-13.) D.A. repeated fourth grade in SY 2000-2001. (*Id.* ¶¶ 13- 14.)

*2 Despite these clear warning signs, DCPS did not initiate the process of evaluating D.A. for a disability until January 2001, when D.A. was repeating the fourth grade. (*Id.* ¶¶ 7, 14.) Evaluations performed during 2001 revealed that D.A. was functioning at a borderline intellectual level, was suffering psycho-social and emotional difficulties, and had below age- and grade-level language and reading skills. (*Id.* ¶ 15; A.R. at 82.) In September 2001, DCPS prepared the first in a series of Individualized Education Plans ("IEPs") for D.A. (*See* Pls.' Statement ¶ 15.) That IEP included only five hours per week of special education in speech and language, with no special education services for other academic areas, no acknowledgment of the significant social and emotional difficulties detected in DCPS's evaluations, and no provision for a Behavioral Intervention Plan ("BIP") or Extended School Year ("ESY") services. (*Id.* ¶ 17.) The second IEP, dated May 15, 2002, was similarly limited, although it expanded D.A.'s specialized instruction to ten hours per week. (*Id.* ¶ 18.) The third IEP, dated October 2, 2002, increased D.A.'s specialized instruction and at last addressed his emotional problems by providing for some psychological counseling. (*Id.* ¶ 19; A.R. at 127.) The third IEP again failed to include a BIP or ESY, and DCPS dropped D.A.'s speech/language impairment classification without explanation. (Pls.' Statement ¶ 19.)

The fourth IEP, dated October 3, 2003, reduced D.A.'s specialized instruction from 16.5 hours to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 3440026                    FOR EDUCATIONAL USE ONLY                    Page 3
--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

8.35 hours, cut a half-hour from D.A.'s weekly counseling without explanation, and set no speech/language or social/emotional goals. (*Id.* ¶ 20.) Moreover, D.A. did not receive the speech/language therapy and psychological counseling services required under the IEP. (*Id.* ¶ 21.) For example, a leg injury prevented D.A. from attending school from September 2003 to January 2004, yet DCPS did not provide D.A. with any required services during that period. (*Id.* ¶¶ 21-22.) D.A.'s SY 2003-2004 report card showed that he made no academic progress that school year. (*Id.* ¶ 21.) The fifth IEP, dated November 18, 2004, did not contain social/emotional goals appropriate for a student classified with an emotional disorder. (*Id.* ¶ 23; A.R. at 46.) Although the IEP required fifteen hours per week of specialized instruction, D.A.'s report card attested to only ten hours per week. (Pls.' Statement ¶ 24.) During SY 2004-2005, D.A.'s school performance again failed to improve. (*Id.* ¶ 25.)

On March 25, 2005, D.A.'s mother filed a request for a due process hearing under 20 U.S.C. § 1415(b)(6), challenging DCPS's past and continuing failure to provide FAPE and seeking an appropriate non-public special educational placement for D.A., as well as an award of compensatory education. (Pls.' Statement ¶ 26; A.R. at 5-7.) The hearing request alleged that each of the IEPs developed for D.A. was inappropriate and/or had not been implemented as written and also challenged DCPS's failure to identify and evaluate D.A. in a timely manner. (A.R. at 5-7, 9.) At the May 2, 2005 hearing, DCPS presented no evidence but instead relied solely on the documents that plaintiffs' counsel submitted. (Pls.' Statement ¶ 27.) After hearing testimony from plaintiffs' witnesses, the hearing officer granted plaintiffs' request that D.A. be placed at the High Road Upper School. (A.R. at 368-70; *see also id.* at 37.) The hearing officer reserved judgment on the issue of compensatory education and asked the parties to submit memoranda about the effect of the Court of Appeals' decision in *Reid v. District of Columbia,* 401 F.3d 516 (D.C.Cir.2005), and the District of Columbia's "catch-all" three-year statute of limitations, D.C.Code § 12-301(8), on the 7200-hour compensatory education award that plaintiffs had requested. (A.R. at 369-70; *see also id.* at 37.) Although both parties submitted supplemental memoranda, only plaintiffs addressed the statute of limitations issue. Plaintiffs agreed that a three-year statute of limitations applied to due process hearing requests in IDEA cases but argued that the claim for eight years of compensatory education was timely under the continuing violation and equitable tolling doctrines. (A.R. at 24-26.) A hearing regarding compensatory education was held on October 26, 2006, but DCPS did not attend. (Pls.' Statement ¶ 30; A.R. at 44.)

*3 On November 7, 2006, the hearing officer issued a second HOD. Although DCPS had failed to address the issue and plaintiffs had apparently agreed with the hearing officer's suggestion that a three-year statute of limitations was appropriate, the hearing officer applied the two-year statute of limitations in the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), which had become effective after the initial hearing, to bar any claim for compensatory education before March 25, 2005, two years before plaintiffs filed their due process complaint. (A.R. at 47-48.) The hearing officer awarded D.A. two school years of compensatory education in the form of after-school tutoring and counseling but reserved the right to modify the award upon his review of D.A.'s school attendance records. (A.R. at 50.) Plaintiffs appealed this HOD by filing a complaint with this Court on February 3, 2006, pursuant to 20 U.S.C. § 1415(i)(2)-(3). On March 22, 2006, the hearing officer issued an order reducing the award from two years to eighteen months in light of D.A.'s record of absences at his new

2006 WL 3440026                FOR EDUCATIONAL USE ONLY                          Page 4
--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

placement. (A.R. at 53-54.) Plaintiffs amended their complaint on May 18, 2006, and defendants filed their answer on June 22, 2006. Both parties have now moved summary judgment.

## STANDARD OF REVIEW

In reviewing an administrative determination under the IDEA, the district court "(i) shall review the records of the administrative proceedings, (ii) shall hear additional evidence at the request of a party, and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c). The reviewing court must give "due weight" to the hearing officer's determinations, *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982), but less deference is appropriate than is conventional in administrative proceedings, *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988). Where, as here, neither party seeks to present additional evidence, a motion for summary judgment "operates as a motion for judgment based on the evidence comprising the record." *Jenkins v. District of Columbia,* No. 02-1055, 2005 U.S. Dist. LEXIS 34002, at *4 (D.D.C. Dec. 16, 2005). The party challenging the administrative decision bears the burden of persuading the court to set aside the decision. *Kerkam,* 862 F.2d at 887.

## ANALYSIS

### I. Hearing Officer's Consideration of Statute of Limitations Issue

Plaintiffs argue that the hearing officer erred by imposing *any* statute of limitations because defendants waived the statute of limitations defense by failing to raise it in the administrative proceedings. (Pls.' Mem. of P. & A. in Support of Pls.' Mot. for Summ. J. ("Pls.' Mem") at 12-13.) Defendants argue that plaintiffs' waiver argument is inapposite because Federal Rule of Civil Procedure 8(c) does not apply to administrative proceedings. (Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J. ("Defs.' Opp'n") at 3-4.)

*4 As initial matter, the Court agrees with defendants that Rule 8(c) does not apply in these circumstances. Rule 8(c) requires certain affirmative defenses to be raised in a responsive pleading; however there was no requirement under either the IDEA or the federal or District of Columbia implementing regulations in effect at the time of the hearing that defendants file any responsive pleading. Indeed, the only affirmative disclosure obligation on defendants under those regulations was the duty to disclose, within five business days prior to the hearing, "all evaluations completed by that date and recommendations based on the offering party's evaluations that the party intends to use at the hearing." 34 C.F.R. § 300.509(b)(1) (2004); D.C. Mun. Regs. tit. 5, § 3031.2 (2003). [FN1]

> FN1. The IDEA and federal implementing regulations have since been amended to include certain other disclosure obligations. 20 U.S.C. § 1415(c)(2)(B); 71 Fed.Reg. 46,793 (Aug. 14, 2006) (to be codified at 34 C.F.R. § 300.508).

The Court also notes that plaintiffs did not make any waiver argument or otherwise object to the hearing officer's consideration of the effect of the statute of limitations on the compensatory education award when the hearing officer raised the issue at the May 2, 2005 hearing or in response to his request for further briefing on the subject. At the hearing, plaintiffs agreed that there is a three-year statute of limitations in IDEA cases, but they argued that their claims were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 3440026              FOR EDUCATIONAL USE ONLY                         Page 5
--- F.Supp.2d ---, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

nevertheless timely under the continuing violation doctrine. (A.R. at 364-65.) Plaintiffs also
addressed the statute of limitations in their post-hearing memorandum on compensatory
education, again agreeing that a three-year statute of limitations applied and arguing for
application of the continuing violation and equitable tolling doctrines. (A.R. at 24-26.) Because
plaintiffs did not present their waiver argument to the hearing officer, despite having submitted a
supplemental memorandum addressing the issue, the Court declines to consider the argument
now. *See, e.g., Lozowski v. Mineta,* 292 F.3d 840, 847-48 (D.C.Cir.2002) (on review of decision
of Department of Transportation Board for Correction of Military Records, plaintiff could not
rely in court upon an argument not made to the Board, absent "exceptional circumstances");
*Leonard v. McKenzie,* 869 F.2d 1558, 1563 (D.C.Cir.1989) (declining to consider issue not
raised before the IDEA hearing examiner in the first instance and noting that "it would be both
unfair and unwieldy to overturn the hearing officer's decision on grounds that she had no
opportunity to consider or evaluate").

## II. Non-Retroactivity of IDEIA's Two-Year Statute of Limitations

Plaintiffs contend that the hearing officer incorrectly applied the IDEIA's two-year statute of
limitations, 20 U.S.C. § 1415(f)(3)(C) & (f)(3)(C), to events and proceedings that occurred before
the statute's July 1, 2005, effective date. (Pls.' Mem. at 13-14; Pls.' Mem. of P. & A. in Opp'n to
[Defs.'] Mot. for Summ. J. ("Pls.' Opp'n") at 3-4.) Defendants maintain that the IDEIA's statute
of limitations governed the compensatory education award because the supplemental hearing on
compensatory education was not held, and the award was not issued, until after July 1, 2005.
(Defs.' Opp'n at 4-6.)

 *5 The governing presumption is that legislation does not have retroactive effect absent
Congress's express stipulation. *See generally INS v. St. Cyr,* 533 U.S. 289 (2001); *Landgraf v.
USI Film Prods.,* 511 U.S. 244 (1994). When a statute contains no express command regarding
retroactivity, a court "must determine whether the new statute would have retroactive effect, *i.e.,*
whether it would impair rights a party possessed when he acted...." *Id.* at 280. If the statute
would operate retroactively, the "traditional presumption teaches that it does not govern absent
clear congressional intent favoring such a result." *Id.*

The IDEIA itself does not address retroactivity. [FN2] Before the IDEIA, the IDEA contained
no statute of limitations, and courts in this district borrowed the District of Columbia's three-year
"catch-all" limitations period, D.C.Code § 12-301(8), for due process hearing requests.
*Wingfield v. District of Columbia,* No. 00-121, slip op. at 3-4 (D.D.C. June 21, 2000); *Hammond
v. District of Columbia,* No. 99-1723, 2001 U.S. Dist. LEXIS 25846, at *13-14 (D.D.C. Mar. 1,
2001). Plaintiffs filed their request for a due process hearing when this three-year statute of
limitations was in effect, and at the end of the initial hearing on May 2, 2005, the hearing officer
requested briefing on the applicability of the three-year statute of limitations to plaintiffs'
compensatory education claim. Application of the IDEIA's more restrictive two-year statute of
limitations to eliminate plaintiffs' pending claims for compensatory education prior to March 25,
2003 would undoubtedly impair rights possessed by plaintiffs at the time they filed. *See
Chenault v. U.S. Postal Serv.,* 37 F.3d 535, 539 (9th Cir.1994) ("A newly enacted statute that
shortens the applicable statute of limitations may not be applied retroactively to bar a plaintiff's
claim that might otherwise be brought under the old statutory scheme because to do so would be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

21

2006 WL 3440026              FOR EDUCATIONAL USE ONLY                        Page 6
--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

manifestly unjust."); *Pettigrew v. Middletown Area Sch. Dist.*, No. 05-468, 2006 U.S. Dist. LEXIS 69041, at *20-21 (M.D.Pa. Sep. 26, 2006) (retroactive application of IDEIA's limitations period for judicial review would " 'significantly impair existing rights and thereby disappoint legitimate expectations' " where "two-year limitations period . . . would be cut short and the plaintiffs' expected time in which to bring their claim unfairly curtailed" (quoting *P.S. v. Princeton Reg'l Schs. Bd. of Educ.*, No. 05-4769, 2006 U.S. Dist. LEXIS 252, at *6-7 (D.N.J. Jan. 5, 2006)).

> FN2. Although the IDEIA included a July 1, 2005 effective date, Pub.L. No. 108-446, § 302(a)(1), 118 Stat. 2647, 2803 (2004), that alone "does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf*, 511 U.S. at 257.

Other courts have similarly concluded that the amendments set forth in the IDEIA, including the adoption of statutes of limitation for the filing of due process complaints and federal court actions, do not apply retroactively. *Barr-Rhoderick v. Bd. of Educ.*, No. 04-0327, 2006 U.S. Dist. LEXIS 72526, at *51- 52 (D.N.M. Apr. 3, 2006) (applying pre-IDEIA statute of limitations for judicial review); *Farzana K. v. Ind. Dep't of Educ.*, No. 05-266, 2005 U.S. Dist. LEXIS 38561, at *19 (N.D.Ind. Dec. 20, 2005) (same); *R.G. v. Glen Ridge Bd. of Educ.*, No. 05-3017, 2005 U.S. Dist. LEXIS 30606, at *12 (D.N.J. Dec. 2, 2005) (applying pre-IDEIA statute of limitations for judicial review to civil action filed on June 13, 2005, two days before the IDEIA's effective date); *see also, e.g., Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 370 (3d Cir.2005); *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 297 n. 1 (4th Cir.2005); *Dep't of Educ. v. D.K.*, No. 05-560, 2006 U.S. Dist. LEXIS 37438, at *1 n. 1 (D. Haw. June 6, 2006) (applying pre-IDEIA version of the IDEA where due process hearing request was made prior to IDEIA's effective date, even though hearing officer's decision was not issued until after the effective date); *Kruvant v. District of Columbia*, No. 03-1402, 2005 U.S. Dist. LEXIS 34045, at *4 n. 2 (D.D.C. Aug. 10, 2005). This Court agrees and therefore holds that the hearing officer erred in applying the IDEIA's two-year limitations period.

## III. Scope of Compensatory Education Award

*6 An award of compensatory education must be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C.Cir.2005); *see id.* at 525 (compensatory education award must compensate prior FAPE denials). Although D.A. alleged that he was denied FAPE beginning in SY 1996- 1997, the hearing officer erroneously applied the IDEIA's two-year statute of limitations to bar plaintiffs' claims before March 25, 2003, and thus considered only the denial of FAPE after that date in formulating the compensatory education award. Because the Court holds that the three-year statute of limitations of D.C.Code § 12-301(8) applies, the Court will remand the case so that the hearing officer can formulate an appropriate compensatory education award in light of any additional FAPE denials within the limitations period. *See Thomas v. District of Columbia*, 407 F.Supp.2d 102, 115-16 (D.D.C.2005) (remanding for redetermination of compensatory education award where hearing officer improperly limited the time period for which compensatory education was available).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

22

2006 WL 3440026                        FOR EDUCATIONAL USE ONLY                           Page 7
--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

In applying the three-year statute of limitations, the hearing officer should determine in the first instance when plaintiffs' claims accrued, taking evidence, if necessary, as to when D.A.'s mother knew or had reason to know of the injuries that are the basis for plaintiffs' claims. *See R.R. v. Fairfax County Sch. Bd.,* 338 F.3d 325, 332 (4th Cir.2003); *Hammond,* 2001 U.S. Dist. LEXIS 25846, at * 15-16. If the claims (or some portion of them) accrued before March 25, 2002, the hearing officer should also consider whether the claims are nevertheless timely under the continuing violation or equitable tolling doctrines. *See Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir.2001) (once defendants show that the statute of limitations has run, plaintiffs have the burden to show that an exception to the statute of limitations applies).

Since at least some portion of plaintiffs' claim for compensatory education prior to March 25, 2003 is timely, [FN3], the hearing officer must formulate an award designed to remedy the denial of FAPE not just from March 25, 2003 to May 10, 2005, but in earlier years as well. In this regard, the Court notes that at the May 2, 2005 hearing, the hearing officer granted plaintiffs' motion for a directed verdict, finding that DCPS had presented no evidence that FAPE had been provided. (A.R. at 272.) It should therefore be possible for the hearing officer to determine, based on the existing record, whether DCPS satisfied its burden, with respect to the years prior to March 25, 2003, to show "based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student." D.C. Mun. Regs. tit. 5, § 3030.3 (2003). [FN4] In formulating a new compensatory education award, the hearing officer must determine "what services [D.A.] needs to elevate him to the position he would have occupied absent the school district's failures." *Reid,* 401 F.3d at 527. Although more services may well be necessary to compensate a longer FAPE denial, this is not necessarily true in all cases, as the focus under *Reid* is on restoring educational benefits lost as a result of FAPE denials rather than on replacement of lost hours. *See Thomas,* 407 F.Supp.2d at 115 (D.D.C.2005) (noting that "[i]t may be conceivable that no compensatory education is required for the denial of FAPE from before November 2001, either because it would not help or because A.T. has flourished in his current placement, or, to the contrary, it may be that A.T. could ... benefit from additional services"). [FN5]

FN3. Plaintiffs' claim for compensatory education for the period from March 25, 2002 to March 25, 2003 is clearly timely under the three-year statute of limitations. Whether plaintiffs' earlier claims are timely will depend on the hearing officer's resolution of the accrual, continuing violation, and equitable tolling issues.

FN4. This regulation was amended in 2006 to allocate the burden to the party seeking relief, in accordance with the Supreme Court's holding in *Schaffer v. Weast,* 546 U.S. 49 (2005), 53 D.C.Reg. 5249 (June 30, 2006). At the time of the due process hearing, however, DCPS had the burden of proof.

FN5. Because on remand the hearing officer will have to formulate a new compensatory education award, the Court need not decide whether the hearing officer's March 22, 2006, modification of his original compensatory education award was proper.

*7 The Court urges the hearing officer and the parties to reach a speedy resolution of the matter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

01/18/2007  12:59    2022654264                    TYRKA & ASSOCIATES                    PAGE  13/13

2006 WL 3440026                    FOR EDUCATIONAL USE ONLY                    Page 8
— F.Supp.2d —, 2006 WL 3440026 (D.D.C.)
(Cite as: 2006 WL 3440026 (D.D.C.))

in light of the IDEA's "inten[t] to ensure prompt resolution of disputes regarding appropriate education for handicapped children." *Spiegler v. District of Columbia*, 866 F.2d 461, 467 (D.C.Cir.1989); *see also Hammond*, 2001 U.S. Dist. LEXIS 25846, at *26 n. 10 ("The remand must not serve as a justification for further delay in addressing [the student's] needs. The case has already had a lengthy and tortured history, during which [the student] has lost year after year of educational benefit."). Nor should this exercise be unduly burdensome, since much of the relevant evidence has already been developed in the hearings below. [FN6]

> FN6. The Court notes that D.A. is now at least seventeen years old and that twenty-one is the age limit on the public schools' duty to provide FAPE. *See* 20 U.S.C. § 1412(a)(1)(A). Federal courts have consistently held, however, that compensatory education may continue beyond that age to make up for the denial of FAPE during the statutory period. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 249 (3d Cir.1999); *Bd. of Educ. v. Illinois State Bd. of Educ.*, 79 F.3d 654, 656 (7th Cir.1996); *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 189-190 (1st Cir.1993); *Burr v. Ambach*, 863 F.2d 1071, 1076 (2d Cir.1988), *vacated sub nom. Sobol v. Burr*, 492 U.S. 902 (1989), *reaff'd*, 888 F.2d 258 (2d Cir.1989); *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 857-858 (11th Cir.1988); *see also Reid*, 401 F.3d at 522 (acknowledging other circuits' awards of compensatory education beyond age twenty-one).

## CONCLUSION

For the reasons stated above, the Court will deny defendants' motion for summary judgment and grant plaintiffs' motion for summary judgment in part to the extent that the hearing officer's award is overturned for his erroneous application of a two-year statute of limitations. The Court remands the case to the hearing officer to reassess the compensatory education award consistent with this Memorandum Opinion.

--- F.Supp.2d ----, 2006 WL 3440026 (D.D.C.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**January 8, 2006**

Daniel McCall
Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232
By Fax: 202-442-5097/5098

RE:    W███ M█████ (D.O.B. ███/93)

Mr. McCall:

An expedited hearing has been scheduled for **January 11, 2007 at 11:00 a.m.**, to adjudicate a due process complaint filed on behalf of the above-captioned student, W███ M█████. In addition to any documents and witnesses disclosed by DCPS, the parent reserves the right to rely on the following witnesses and documents, as well as any other documents previously disclosed or offered into evidence in any other matter concerning this student.

**Documents:**

1. 01/08/06   Disclosure Letter
2. 01/08/06   Notice Compelling DCPS Witness(es)

**Administrative Record**

3. 12/14/06   Due Process Complaint Notice
4. 12/18/06   Petitioner's Motion for Expedited Hearing (w/ Superior Court Order attached)
5. 12/19/06   HOD on Petitioner's Motion for Expedited Hearing
6. 12/22/06   Expedited Hearing Notice

**IEPs, Meeting Notes, etc.**

7. 09/24/03   IEP
8. 09/24/03   Prior Notice of Placement
9. 05/19/04   IEP Meeting Notes
10. 05/19/04   IEP
11. 05/19/04   Prior Notice of Placement
12. 04/19/06   MDT Meeting Notes
13. 04/19/06   IEP Meeting Notes
14. 04/19/06   Student Evaluation Plan
15. 04/19/06   IEP

16. 11/07/06   Student Evaluation Plan
17. 11/07/06   MDT Meeting Notes

**Evaluations**

18. 10/17/02   Psycho-educational Evaluation
19. 01/29/03   Vineland Adaptive Behavior Evaluation
20. 04/08/03   Clinical Psychological Evaluation
21. 06/23/06   Psychiatric Evaluation

**Encounter Tracking Forms**

22. 03-04 SY
23. 04-05 SY
24. 05-06 SY

**Report Cards**

25. 04-05 SY   IEP Report Card
26. 06/15/06   Report Card

**Disciplinary Reports**

27. 09/18/06   Suspension Notice
28. 10/16/06   Suspension Notice

**Other Documents**

29. 10/24/06   Official Student Records Request
30. 12/18/06   Letter, Tyrka & Associates, LLC to Kelly Miller MS
31. 12/20/06   Letter, Tyrka & Associates, LLC to Kelly Miller MS
32. 12/22/06   Letter, Tyrka & Associates, LLC to Kelly Miller MS

**Witnesses:[1]**

1. Ms. Keren Plowden, Director of Student Services, Rock Creek Academy, 4401 Connecticut Avenue, N.W. Washington, DC 20008, 202-378-1392
2. Ms. Rodkeeda Jordan, Parent, 25 46th Street, N.E. Washington, DC 20019, 202-397-1065
3. Ms. Sharon Millis, Special Education Advocate & Expert; Tyrka & Associates, LLC
4. Mr. Keith Coyle, Associate; Tyrka & Associates, LLC
5. Ms. Camille McKenzie, Office Assistant; Tyrka & Associates, LLC
6. Mr. Michael Tchorni, Law Clerk; Tyrka & Associates, LLC

---

[1] Some witnesses may be testifying by telephone and/or use a designee. The address and phone numbers for all employees or agents of Tyrka & Associates can be found in the letterhead for this correspondence.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                          TIME  : 01/08/2007 15:05
                          NAME  : TYRKA & ASSOCIATES
                          FAX   : 2022654264
                          TEL   : 2022654260
                          SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────────┐
│   DATE,TIME              01/08  14:49                          │
│   FAX NO./NAME           OGC2                                  │
│   DURATION               00:16:22                              │
│   PAGE(S)                53                                    │
│   RESULT                 OK                                    │
│   MODE                   STANDARD                              │
│                          ECM                                   │
└──────────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*      OGC

*Fax Number:*

*From:*           Camille McKenzie

*Regarding:*      W█████ M████████

*# of pages:*     53 incl. cover

*Notes:*          DISCLOSURES PT. 1

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME : 01/08/2007 16:59
                                    NAME : TYRKA & ASSOCIATES
                                    FAX  : 2022654264
                                    TEL  : 2022654260
                                    SER.# : 000A6J693992
```

```
DATE,TIME                 01/08  16:37
FAX NO./NAME              OGC2
DURATION                  00:20:59
PAGE(S)                   71
RESULT                    OK
MODE                      STANDARD
                          ECM
```

# TYRKA & ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

**Recipient:**     OGC

**Fax Number:**

**From:**          Camille McKenzie

**Regarding:**     W███ M████████

**# of pages:**    71 incl. cover

**Notes:**         DISCLOSURES PT. 2



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**January 8, 2006**

Daniel McCall
Attorney-Advisor
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

      <u>RE:</u>   W████ M██████ (D.O.B. ████/93)

Mr. McCall:

      Pursuant to 34 C.F.R. § 300.509(a)(2) and D.C. Mun. Regs. tit. 5 § 3031.1(b), Petitioner hereby compels the following necessary and material witnesses:

1.  Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing.

                                          Respectfully submitted,

                                          Douglas Tyrka, #467500
                                          Tyrka & Associates, LLC
                                          1726 Connecticut Ave NW, Suite 400
                                          Washington, DC  20009
                                          (ph) (202) 265-4260
                                          (f) (202) 265-4264

## DUE PROCESS COMPLAINT NOTICE
### In re W█████ M█████████
### December 14, 2006

| | |
|---|---|
| **Petitioner:** | Rodkeeda Jordan |
| **Student:** | W█████ M█████████ |
| **DOB:** | ████/93 |
| **Current School:** | Kelly Miller Middle School ("Kelly Miller MS") |
| **Residence:** | 25 46th Street, N.E. |
| | Washington, DC 20019 |

**Petitioner's Contact Information for Special Education Purposes:**

Tyrka & Associates, LLC
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C. 20009
Tel: 202-265-4260
Fax: 202-265-4264

**Violations:**

1. Failure to timely evaluate a qualified disabled child in all areas of suspected disability since the start of the 2002-2003 SY.
2. Failure to timely determine a qualified disabled child's eligibility for special education and related services since the start of the 2002-2003 SY.
3. Failure to timely develop an appropriate individualized education plan ("IEP") since the start of the 2002-2003 SY.
4. Failure to provide all necessary special education and related services since the start of the 2002-2003 SY.
5. Failure to provide an appropriate placement since the start of the 2002-2003 SY.

**Facts:**

**2002-2003 SY: Kimball Elementary School ("Kimball ES")**

1. The Petitioner enrolled W████ in the 4th grade class at Kimball ES at the start of the 2002-2003 SY.
2. Sometime after the start of the 2002-2003 SY, Mrs. Brice, W██████ 4th grade teacher, referred him for special education evaluations due to academic problems in math and reading, behavior problems, and failing to complete assignments.
3. On October 17, 2002, DCPS completed a psychoeducational evaluation of W██████.
4. DCPS' October 17, 2002 psychoeducational evaluation of W█████
   a) revealed a verbal IQ score of 70 (borderline), a performance IQ score of 62 (deficient), and a full scale IQ score of 63 (deficient);
   b) reported that "W█████ [sic] preoccupation with death and violence was concerning to the examiner[;]"
   c) recommended:
      i) completion of a Vineland Adaptive Behavior Scale;

        ii)  provision of counseling services to address anger management.

5.  On January 21, 2003, DCPS completed a Vineland Adaptive Behavior of W████.
6.  On April 8, 2003, DCPS completed a clinical psychological evaluation of W████.
7.  DCPS' April 8, 2003 clinical psychological evaluation of W████
   a)  reported that he had been recently suspended for fighting;
   b)  documented teacher reports of his behavioral problems in the classroom, including
      "disobedien[ce], cheat[ing], on assignments, throw[ing] objects in the classroom, . . .
      verbal . . . aggress[ion], yell[ing], us[ing] profanity, and . . . not complet[ing]
      assignments[;]"
   c)  diagnosed him with Depressive Disorder, NOS, Disruptive Behavior Disorder, NOS, and
      Rule-out Attention Deficit Hyperactivity Disorder ("ADHD");
   d)  recommended:
      i)  counseling two times per week;
      ii)  development and implementation of a behavior intervention plan.
8.  During the 2002-2003 SY DCPS did not:
   a)  review W████ psychoeducational, Vineland, or clinical psychological evaluations;
   b)  determine W████s eligibility for special education and related services;
   c)  develop an appropriate IEP for Wayne;
   d)  provide W████with any special education and related services, including counseling;
   e)  determine an appropriate special education placement for W████;
   f)  complete or recommend any additional evaluations of W████, including ADHD, speech
      and language, social history, and occupational therapy evaluations, as well as a functional
      behavioral assessment.

**2003-2004 SY: Kimball ES & Smothers Elementary School ("Smothers ES)**
9.  The Petitioner enrolled W████ at Kimball ES at the start of the 2003-2004 SY.
10. On September 24, 2003, Kimball ES convened an initial eligibility multidisciplinary team
    ("MDT") meeting for W████.
11. At the September 24, 2003 meeting, the MDT:
    i)  determined that W████was eligible to receive special education and related services
       under the disability classification of Emotionally Disturbed ("ED");
    ii)  developed an IEP prescribing:
       (1) 20 hours of specialized instruction in reading, math and language arts;
       (2) 1 hour of psychological counseling;
    iii)  issued a prior notice placing W████ at Wilkinson Elementary School ("Wilkinson
       ES");
    iv)  did not recommend completion of any additional evaluations, including ADHD,
       speech and language, social history, and occupational therapy evaluations, or a
       functional behavioral assessment.
12. W████ September 24, 2003 IEP:
   a)  was not based on current evaluations in all areas of suspected disability;
   b)  did not prescribe all necessary special education and related services;
   c)  did not authorize an appropriate special education placement;
   d)  was not appropriate.
13. In January of 2004, DCPS transferred W████ to Smothers ES.
14. DCPS did not appropriately change W████ placement from Kimball ES to Smothers ES.

15. On May 19, 2004, Smothers convened an MDT meeting to review W████ September 24, 2003 IEP.

16. At the May 19, 2004 meeting, the MDT:
   a) did not review W████ current evaluations;
   b) determined that W████ continued to be eligible for special education and related services under the disability classification of ED;
   c) developed a current IEP prescribing 20 hours of specialized instruction and 1 hour of psychological services;
   d) issued a prior notice placing W████ at Kelly Miller MS;
   e) did not recommend completion of any additional evaluations, including ADHD, speech and language, social history, and occupational therapy evaluations, or a functional behavioral assessment.

17. W████ May 19, 2004 IEP:
   a) was not based on current evaluations in all areas of suspected disability;
   b) did not prescribe all necessary special education and related services;
   c) did not authorize an appropriate special education placement;
   d) was not appropriate.

18. DCPS' encounter tracking forms verify that W████ only received 16.25 hours of psychological counseling during the 2003-2004 SY.

19. W████ should have received 36 hours of psychological counseling during the 2003-2004 SY.

20. W████ is eligible to receive compensatory education for DCPS' failure to provide him with 19.75 hours of psychological counseling during the 2003-2004 SY.

21. On information and belief, DCPS did not provide W████ with the specialized instruction prescribed in his IEP during the 2003-2004 SY.

22. W████ did not receive educational benefit during the 2003-2004 SY.

23. DCPS did not provide W████ with an appropriate placement during the 2003-2004 SY.

**2004-2005 SY: Kelly Miller MS**

24. DCPS placed W████ at Kelly Miller MS for the 2004-2005 SY.

25. During the 2004-2005 SY, DCPS did not:
   a) convene any MDT meetings;
   b) review W████ May 19, 2004 IEP;
   c) discuss W████ current educational placement;
   d) recommend completion of any additional evaluations, including ADHD, speech and language, social history, and occupational therapy evaluations, or a functional behavioral assessment.

26. DCPS' encounter tracking forms verify that W████ only received 17.67 hours of psychological counseling during the 2004-2005 SY.

27. W████ should have received 36 hours of psychological counseling during the 2004-2005 SY.

28. W████ is eligible to receive compensatory education for DCPS' failure to provide him with 18.33 hours of psychological counseling during the 2004-2005 SY.

29. On information and belief, DCPS did not provide W████ with the specialized instruction prescribed in his IEP during the 2004-2005 SY.

30. W████ did not receive educational benefit during the 2004-2004 SY.

31. DCPS did not provide W████ with an appropriate placement during the 2004-2005 SY.

33

**2005-2006 SY: Kelly Miller MS**

32. DCPS placed W████at Kelly Miller MS for the 2005-2006 SY.

33. DCPS did not review or revise W█████ IEP from May 2004 until April 2006.

34. On April 19, 2006, Kelly Miller MS convened an MDT meeting to review W██████ IEP and evaluations and discuss his placement.

35. At the April 29, 2006 meeting, the MDT:

    a) developed a current IEP:

        i) reducing W██████ hours of specialized instruction from 20 to 15 per week;

        ii) prescribing 1 hour per week of psychological counseling;

    b) developed a student evaluation plan ("SEP") recommending a current psychoeducational evaluation of W████ on or before June 18, 2006;

    c) continuing his placement at Kelly Miller MS.

36. W██████ April 19, 2006 IEP:

    a) was not based on current evaluations in all areas of suspected disability;

    b) did not prescribe all necessary special education and related services;

    c) did not authorize an appropriate special education placement;

    d) was not appropriate.

37. On April 25, 2006, the Superior Court of the District of Columbia placed W████ on probation for six (6) months for a juvenile robbery conviction.

38. W█████ received final grades of:

    a) failing in geography, physical education, and band for the 2005-2006 SY and

    b) D in all of other subjects for the 2005-2006 SY.

39. DCPS' encounter tracking forms verify that W████only received 11.33 hours of psychological counseling during the 2005-2006 SY.

40. W██████ should have received 36 hours of psychological counseling during the 2005-2006 SY.

41. W████is eligible to receive compensatory education for DCPS' failure to provide him with 24.67 hours of psychological counseling during the 2005-2006 SY.

42. On information and belief, DCPS did not provide W█████ with the specialized instruction prescribed in his IEP during the 2005-2006 SY.

43. W██████ did not receive educational benefit during the 2005-2006 SY.

44. DCPS did not provide W█████ with an appropriate placement during the 2005-2006 SY.

**2006-2007 SY: Kelly Miller MS**

45. DCPS placed W██████at Kelly Miller MS for the 2006-2007 SY.

46. On September 18, 2006, Kelly Miller MS suspended W█████from school for fighting.

47. On October 16, 2006, Kelly Miller MS suspended W████ from school for destroying school property.

48. On November 7, 2006, Kelly Miller MS convened an MDT meeting.

49. At the November 7, 2006 meeting:

    a) the MDT:

        i) developed an SEP recommending comprehensive psychological, occupational therapy, educational, speech and language, and social history evaluations of W██████ and a functional behavioral assessment, on or before December 22, 2006;

        ii) failed to offer any justification for reducing W██████hours per week of specialized instruction from 20 to 15 in his April 19, 2006 IEP;

        iii) did not review W██████ April 19, 2006 IEP;

      iv) did not discuss W███████ current placement;

      v) did not discuss W██████ eligibility for compensatory education or develop an appropriate compensatory education plan;

   b) the Petitioner and her advocate:

      i) noted that an ADHD evaluation of W█████ and a functional behavioral assessment had never been completed;

      ii) questioned the justification for reducing W██████ hours of specialized instruction from 20 to 15 in his April 19, 2006 IEP;

50. Shortly after the November 7, 2006 MDT meeting, W██████ was suspended from Kelly Miller MS.

51. W████ returned to school following his suspension on November 30, 2006.


**Proposed resolution:**

1. DCPS to immediately fund and place W█████ at an appropriate private special education school of the Petitioner's choosing with transportation.

2. DCPS to immediately fund independent comprehensive psychological, occupational therapy, educational, speech and language, social history, and ADHD evaluations of W██████, and a functional behavioral assessment.

3. DCPS to convene an MDT meeting within ten (10) days of receiving the last of these evaluations to:

   a) review the results of these evaluations,

   b) revise W████████ current IEP, and

   c) develop an appropriate compensatory education plan to compensate W██████ for DCPS' failure to:

      i) conduct and review comprehensive psychological, occupational therapy, educational, speech and language, social history, and ADHD evaluations of W██████ and a functional behavioral assessment, since the start of the 2002-2003 SY;

      ii) timely determine his eligibility for special education and related services since the start of the 2002-2003 SY;

      iii) timely develop an appropriate individualized education plan ("IEP") since the start of the 2002-2003 SY;

      iv) timely develop an appropriate individualized education plan ("IEP") since the start of the 2002-2003 SY;

      v) provide all necessary special education and related services since the start of the 2002-2003 SY, including:

        (1) 19.75 hours of psychological counseling during the 2003-2004 SY,

        (2) 18.33 hours of psychological counseling during the 2004-2005 SY, and

        (3) 24.67 hours of psychological counseling during the 2005-2006 SY;

      vi) provide him with an appropriate placement since the start of the 2002-2003 SY.

4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to:
   a. immediately fund and place W████ at an appropriate private special education school of the Petitioner's choosing with transportation,
   b. immediately fund independent comprehensive psychological, occupational therapy, educational, speech and language, social history, and ADHD evaluations of W████, and a functional behavioral assessment,
   c. convene an MDT meeting within ten (10) days of receiving the last of these evaluations

   are necessary attendees at any resolution meeting.
2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.
3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.
4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.
5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

```
            ┌─────────────────────────────────────┐
            │  TRANSMISSION VERIFICATION REPORT     │
            └─────────────────────────────────────┘
                                    TIME  : 12/14/2006 15:04
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 12/14  15:02 |
| FAX NO./NAME | SHO |
| DURATION | 00:02:24 |
| PAGE(S) | 07 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

**Recipient:**     SHO

**Fax Number:**

**From:**     Douglas Tyrka

**Regarding:**     W███ M█████

**# of pages:**     7

**Notes:**     Due Process Complaint

We are requesting a
4 hour time slot.

37

Before the
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**OFFICE OF MANAGEMENT SERVICES**

|  |  |
|---|---|
| In re W███ M████████ | ) |
|        Special Education Student, | ) |
|  | ) |

## PETITIONER'S MOTION FOR AN EXPEDITED HEARING

For the reasons stated herein, the Petitioner respectfully requests that her pending due process complaint ("Complaint") be immediately scheduled for an expedited hearing pursuant to Section 1007 of the Student Hearing Office Standard Operating Procedures ("SOPs").

The Petitioner's son, W███ M███████, is a thirteen-year-old special education student. He has been classified by the Respondent as emotionally disturbed and was receiving special education services at Kelly Miller Middle School ("Kelly Miller MS") until his suspension last week for a violation of the student code of conduct.

On December 14, 2006, the Petitioner filed her current Complaint against the Respondent for violations of W████ right to receive a free appropriate public education under the Individuals with Disabilities Education Act. 20 U.S.C. §§ 1400 et seq.

On the next day, December 15, 2006, the Petitioner, W████, and counsel appeared before the Honorable Juliet McKenna, associate judge for the Superior Court of the District of Columbia. The purpose of this hearing was to discuss W██████ probationary status pending the disposition of an outstanding juvenile offense.

During the hearing counsel informed Judge McKenna of the Petitioner's current Complaint against the Respondent and of W██████ recent suspension from Kelly Miller MS. On the basis of this information, Judge McKenna ordered that W██████

WM14

probationary status be continued.  However, the Court expressed its strong desire that the

Petitioner obtain an expedited hearing on her pending Complaint, so that all issues

concerning W███████ special education needs could be resolved prior to the next hearing

in his juvenile case.

In light of the foregoing, the Petitioner respectfully requests that this Hearing

Officer grant Judge McKenna's request and schedule an expedited hearing on her

pending due process complaint.


Respectfully submitted,


Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

2    39

**<u>Certificate of Service</u>**

I hereby certify that on December 18, 2006, I sent a copy of the foregoing to

Counsel for the Respondent via facsimile to (202) 442-5098.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

3        40

Page 1 of 2



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**FAMILY COURT – JUVENILE BRANCH**

Family Court
~~ENTERED ON DOCKET~~

DEC 1 5 2006

Superior Court
District of Columbia
Washington, D.C.

**ORDER FOR RELEASE UPON CONDITIONS PENDING FURTHER DIVISION ACTION**

| | |
|---|---|
| In the Matter of: | |
| Respondent's Name: W█████ M█████████ Jr | Xref#: 4197344 |
| Case Number: 2006 DEL 002155 | JSF#: |
| Respondent's Address: 25 46TH Street N.E.   WASHINGTON DC 20019 | |

Parent/Guardian/Caretaker/Custodian Address:

After a hearing on the issue of whether the Respondent should be released or detained pending further Division action, the Division finds that Respondent should be **RELEASED ON THE FOLLOWING CONDITIONS:**

### (1) PERSONAL PROMISE

☑ You promise to obey all laws, ordinance and regulations of the District of Columbia and to appear at all scheduled hearings, trials or otherwise as required by the Division.

### (2) CUSTODY OR SUPERVISION

☑ Reside with and remain in the custody and under Supervision of: X *Rodkeeda Jordan*

| | |
|---|---|
| Name: X *Rodkeeda Jordan* | |
| Address: X *25 46th St North East* | |
| Phone: X *202- 397-1065* | |

☑ Custodian or supervisor agrees (a) to supervise you in accordance with the conditions indicated, (b) to use every effort to assure your appearance at all scheduled hearings, trials, or otherwise and (c) to notify the Court of any change of address by the Respondent.

Signature of Custodian or Supervisor: X *Rodkeeda Jordan*

### (3) CURFEW

☑ Observe the following curfew by being in at:

| (S. M. T. W. Th.) |
|---|
| (Fri. and Sat.) |

### (4a) WORK

☐ Obtain a job as soon as possible or continue employment with the following employer:

### (4b) SCHOOL

☑ Attend school regularly and obey all lawful rules and regulations of the school.

### (5) DRUGS

☐ Report to the Pretrial Services Agency, Room C-210, for placement in the drug detection and monitoring program.

☐ Refrain from illegal drug use and comply with the requirements of the program.

☑ Other (specify): **NO REARREST.  FOLLOW ALL RULES, REGULATION, AND CONDITIONS SET FOR IN PRIOR COURT ORDER.** ~~DCPS SHALL EXPEDITED THE RESPONDENT'S DUE PROCESSING HEARING.~~ *Educational advocate shall request expedited hearing from DCPS*

### (6) MEDICAL

Report to the following facility for physical or mental examination or diagnosis  as indicated in the accompanying order.

### (7) OTHER CONDITION(S)

☐ Stay away from the complaining witness and or location:

| |
|---|
| |
| |

☐ Remain within the District of Columbia area.

☐ Other:

41

Page 2 of 2



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## FAMILY COURT – JUVENILE BRANCH

### ORDER FOR RELEASE UPON CONDITIONS PENDING FURTHER DIVISION ACTION

**In the Matter of:**

Respondent's Name:     W███████M████████ Jr                    Xref#:  4197344

Case Number:          2006 DEL 002155                           JSF#:

**Respondent's Address:**   25 46TH Street N.E.   WASHINGTON DC 20019

**Parent/Guardian/Caretaker/Custodian Address:**

**NEXT DUE BACK**

The Respondent's next hearing will be a     Type of Hearing:     Disposition Hearing

Date and Time:     2/9/2007, 11:00 am

Location:          Courtroom JM-5

500 Indiana Avenue N.W.

WASHINGTON, DC, 20001

**BRING THIS FORM TO THE NEXT HEARING-**

The above checked conditions of release have been explained to me and I agree to comply with them to the best of my ability.  I understand that failure to comply with any of the conditions noted may result in my placement in a secured or unsecured facility until final disposition of my case.

Signature of Parent/Guardian: ✗ *Rodкееda Jordan*

Signature of Respondent: ✗ W███ M█████

Date: December 15, 2006                              Signature of Judge:

```
            TRANSMISSION VERIFICATION REPORT

                                   TIME  : 12/18/2006 09:52
                                   NAME  : TYRKA & ASSOCIATES
                                   FAX   : 2022654264
                                   TEL   : 2022654260
                                   SER.# : 000A6J693992
```

```
DATE,TIME                  12/18  09:51
FAX NO./NAME               SHO
DURATION                   00:01:26
PAGE(S)                    06
RESULT                     OK
MODE                       STANDARD
                           ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**       SHO & OGC

**Fax Number:**

**From:**            Douglas Tyrka

**Regarding:**       W█████ M█████████

**# of pages:**      6

**Notes:**           Motion for an expedited hearing

43

```
            ┌────────────────────────────────────────┐
            │   TRANSMISSION VERIFICATION REPORT      │
            └────────────────────────────────────────┘

                                    TIME  : 12/18/2006 09:54
                                    NAME  : TYRKA & ASSOCIATES
                                    FAX   : 2022654264
                                    TEL   : 2022654260
                                    SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────────────────┐
│  DATE,TIME                      12/18  09:53                           │
│  FAX NO./NAME                   OGC2                                   │
│  DURATION                       00:01:25                              │
│  PAGE(S)                        06                                    │
│  RESULT                         OK                                    │
│  MODE                           STANDARD                              │
│                                 ECM                                   │
└──────────────────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*       SHO & OGC

*Fax Number:*

*From:*            Douglas Tyrka

*Regarding:*       W██████ M████████

*# of pages:*      6

*Notes:*           Motion for an expedited hearing

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:                              )         BEFORE A SPECIAL EDUCATION
                                               )
W___ M_____                             )         INDEPENDENT HEARING OFFICER
                    *Petitioner*               )
              Vs.                              )
DCPS_____                  )         STATE EDUCATION AGENCY
                    *Respondent*               )

ON THIS DAY came on to be heard Petitioner's Motion for an Expedited Hearing filed December 18, 2006
in the above styled cause.

### ORDER

Petitioner's is scheduled to appear in Superior Court on February 9, 2006 at which time his
probationary status will be determined. The student has been determined as eligible for special
education as ED and was recently suspended from the Kelly Miller MS. A hearing date and time will
be provided by the Student Hearing Office.


SIGNED: this date  12-18-06 .


Issue Date: 12/19/2006
                                        _____
                                        Impartial Special Education Hearing Officer

Original to SHO – Student's File
Copy To:       Parent' - C/O:          Douglas Tyrka
               DCPS - C/O:             OGC
               Charter School - C/O:

DC PUBLIC
SCHOOL SYSTEM
2006 DEC 18 PM 5:06

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



*✗ EXPEDITED HEARING*

### HEARING NOTICE

MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): D. TYRKA    Fax No.: 265-4264

LEA Legal Counsel: OGC

RE:    M_____, W_____ and (LEA) DOB: _____
              Student's Name

FROM:    SHARON NEWSOME
              Special Education Student Hearing Office Coordinator

DATE SENT:    12/20/06

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
12/18/06 . Please be advised that the hearing has been scheduled for:

*✗ EXPEDITED HEARING*

DATE:    1/11/07

TIME:    11:00 AM

AT:    825 North Capitol Street, NE, Washington, DC
          8th Floor

ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[✓] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last M_____    First W_____    MI

Student ID 9054440    Soc. Sec. No. _____    Age: 9    Grade 03

Gender ☒ M ☐ F    Date of Birth _____/1993    Ethnic Group B

Address 34    A STREET    SE
House No.    Street Name    Quadrant    Apartment #

Washington    DC    20019
City    State    Zip Code

☐ Non-attending    *Kimball*

Attending School ~~Wilkins~~ Elementary    Home School *Kimball ES*

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent    Rodkeeda Jordan

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad.    Apt. No.    City    State    Zip Code

Telephone: Home    Work

## II. CURRENT INFORMATION

Date of IEP Meeting: _____ 9/24/03

Date of Last IEP Meeting:

Date of Most Recent Eligibility Decision: 9/24/03

Purpose of IEP Conference:
☒ Initial IEP    ☐ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level II

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| X | BEHAVIOR | | TRANSPORTATION |
|---|---|---|---|
| | ESY | ☒ | TRANSITION |

*RR*

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | | Rdg./ Written |
| Home | English | English | English | | Instrument:  Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos | |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0.00 | 20.00 | 20.00 | Hrs | Week | Special Education Teacher | 09/25/2003 | 10 | Months |
| Psychological Services | 0.00 | 1.00 | 1.00 | Hrs | Week | Psychologist | 09/25/2003 | 10 | Months |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| TOTAL | 0.00 | 21.00 | 21.00 | Hours Per Week | | | | | |

## V. Disability(ies) Emotionally Disturbed

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☐ 21-60%    ☒ 61-100%

Percent of time NOT in a General Education Setting    77%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Rodkeeda Jordan
Parent    *Rodkeeda Jordan*

Mary Anne G. Adelanwa
Special Ed Teacher    *[signature]*

Martha Brice
General Ed Teacher    *Martha Brice*

Robin Rabb
LEA Representative    *Robin Rabb*

Sheila Miller
Principal or Designee    *LW Thomas*

Student

Deidra Alexander
Psychologist    *Deidra Alexander*

Dr. Ada Vincent
Clinical Psychologist    *Ada E Vincent*

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    *Rodkeeda Jordan*    Date 9/24/03

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

*Rodkeeda Jordan*

47
WM7

| Student Name | WAYNE | MCMILLAN | Managing School | Kimball Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number 9054440 | | DOB 10/17/1993 | Attending School | ~~Kimball~~ Elementary Kimball | Page 2 of 4 |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**   Additional Comments: ☐

**Academic Areas: (Evaluator)** _School Psychologist_

Math Strengths:
W___ is able to add and subtract numbers

Impact of disability on educational performance in general education curriculum:
W___ mathematics achievement is below grade level.

Reading Strengths:
W___ is able to read some sight words

Impact of disability on educational performance in general education curriculum:
W___ reading achievement is below grade level.

**Score(s) When Available**
Math Cal. SS = 91
Math Rea. SS = 88
See goal page:
Date: 10/17/02
Rdg. Com SS = 89
Rdg. Basic SS = 88
Written Ex. SS = 75
See goal page:
Date: 10/17/02

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp.Lang.
Rec- Lang.
Artic
Voice
Fluency
Exp. Voc.
Rec. Voc.
See goal page:
Date:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**

See goal page:
Date:

**Social Emotional Behavioral Areas: (Evaluator)** _School Psychologist_
Strengths:
W___ works well on a one to one basis.

Impact of disability on educational performance in general education curriculum:
W___ has trouble controlling his anger and coping with feelings of frustration.

**Score(s) When Available**
VIQ 70
PIQ 62
FSIQ 63
See goal page:
Date: 10/17/02

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

| Student Name | W▓▓▓▓ M▓▓▓▓ | Managing School | Kimball Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9054440 | DOB ▓▓/1993 | Attending School ▓▓▓▓ Elementary | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: ☐ | | Goal Number: 2 |
|---|---|---|---|

Area addressed by goal: Academic Areas: Math

**ANNUAL GOAL:** (including mastery criteria.)

W▓▓▓ will demonstrate growth in his mathematics skills over the next ten months by meeting the following short-term objectives:

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| W▓▓▓ will add and subtract whole numbers with regrouping with 80% accuracy. | | Monthly |
| W▓▓▓ will demonstrate understanding of place value concepts through 999 with 80% accuracy | | Monthly |
| W▓▓▓ will identify and count a collection of monetary units up to $ 5.00 with 80% accuracy | | Monthly |
| W▓▓▓ will tell time in five minute intervals with 80% accuracy | | Monthly |
| W▓▓▓ will identify common fractions, such as 1/2, 1/3, 1/4, 1/5, 1/6, and demonstrate an understanding of their value with 80% accuracy | | Monthly |
| W▓▓▓ will demonstrate an understanding of the concept of multiplication with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio ☐ Log ☐ Chart ☒ Test ☐ Documented Observation ☒ Report ☐ Other _____

| Student Name W███ M███ | Managing School Kimball Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9054440          DOB ██/1993 | Attending School ███ Elementary  *Kimball* | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: ☐ | Goal Number: 1 |
|---|---|---|

Area addressed by goal: Adademics: Reading and Language Arts

**ANNUAL GOAL:** (including mastery criteria.)

W███ will demonstrate progress in his reading and language arts skills over the next ten months by meeting the following short-term objectives:

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| W███ will be able to use context clues to define words and identify multiple meanings of words that are unfamiliar with 80% accuracy. | | Monthly |
| W███ will be able to identify story elements from stories read with 80% accuracy | | Monthly |
| W███ will be able to summarize and sequence story events with 80% accuracy | | Monthly |
| W███ will be able to make inferences and draw logical conclusions with 80% accuracy. | | Monthly |
| W███ will use work attack skills and context to decode and expand vocabulary with 80% accuracy. | | Monthly |
| W███ will write complete sentences with correct punctuation, grammar, and capitalization with 80% accuracy. | | Monthly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☒ Report  ☐ Other _____ |

| Student Name | W▇▇▇    M▇▇▇ | Managing School | Kimball Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9054440 | DOB ▇▇/1993 | Attending School ▇▇▇ Elementary | Page 3 of 4 |

Kimball

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 3 |
|---|---|---|

Area addressed by goal: Social Emotional Behavioral

**ANNUAL GOAL: (including mastery criteria.)**

W▇▇ will improve self-control as it relates to impulsive behavior. To become less aggressive as the attempts are made to have identified needs met. To be able to follow rules and directives without the need for repetition of request

Provider(s): Psychologist, School Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| W▇▇ will work cooperatively with peers without annoying or picking on them | | Monthly |
| W▇▇ will learn how to verbalize needs and wants on a consistant basis and in a timely mannor | | Monthly |
| W▇▇ will be able to think before attacking someone and make decisions to do what is expected | | Monthly |
| W▇▇ will be able to respond positivly to redirections after 1 directive and not feel angry or threated | | Monthly |
| W▇▇ will demonstrate greater compliance with classroom rules and be able to stay in his seat except when given a directive to move | | Monthly |
| W▇▇ will become less aggressive by improving and increasing interactions with peers | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☒ Log  ☒ Chart  ☐ Test  ☐ Documented Observation  ☒ Report  ☐ Other

05/20/2003

| Student Name | W_____ M_____ | Managing School | Kimball Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9054440 | DOB __/__/1993 | Attending School _____ Elementary | Page 4 of 4 |

Kimball

**Additional Comments:** ☐

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES**

**DRAFT**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>general education</u>?  ☐ Yes  [X] No

Explanation for removal out of regular education classroom.

Student requires behavior interventions and modifications that cannot be met within the general education classroom

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for <u>testing</u>:   ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Extended time |
| Setting: | Preferential seating |
| Presentation: | Read directions/test to student |
| Response: | |
| Equipment: | |

**XI. STATE AND DISTRICT ASSESSMENTS:**

☐ **Level I** Tested with non-disabled peers under standard conditions without accommodations.

☐ **Level III** (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ **Level V** Portfolio:

☐ **Level II** (Describe accommodations for level II) Tested under standard conditions with special accommodations.

[X] **Level IV** (Describe the alternative assessment)

read directions/test to student

**XII. Areas Requiring Specialized Instruction and Related Services:**   **Modifications:**

| | | |
|---|---|---|
| [X] Reading | ☐ Physical/Sensory | ☐ Transition | [X] Language Arts/English |
| [X] Mathematics | ☐ Social Emotional | ☐ Vocational | ☐ Social Sciences |
| ☐ Written Expression | ☐ Physical Development | ☐ Independent Living | ☐ Biological & Physical Sciences |
| ☐ Other: _____ | | ☐ Speech/Language | ☐ Fine Arts |
| ☐ None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Setting | Rejected | |
| Combination General Education and Resource Classro | Accepted | Time away from non-disabled peers in academic sett |
| Out of General Education Classroom | Rejected | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Participation in counseling to address self esteem issues

Location for Services   Kimball Elementary

52

**District of Columbia Public Schools**
**Washington, D.C.**

| | I.E.P.  Attachment A |
| --- | --- |
| | Intervention Behavior Plan |

**INTERVENTION BEHAVIOR PLAN**

Date Developed: ~~~~ 9/24/03

Student Name  W████     M████     ID# 9054440     DOB ████1993   Grade 03

Address    34   A STREET              SE         Washington      DC   20019
　　　　　 Street #      Street Name.           Quadrant   Apartment #      City,                    State,    Zip Code

Telephone (H) _____ (W) _____   Counselor _____

Attending School  Wilkinson Elementary        Teacher MS. Evans/ Mr. Ceasor _____   Room_____  Section _____

**TARGETED BEHAVIOR(S):**                                           Additional Comments: ☐

Targeted behaviors are to decrease aggression and  noncompliance
W████ will improve interpersonal skills and self-esteem

**POSITIVE INTERVENTION STRATEGIES:** Student Objective -

W████ will follow socially acceptable behaviors
W████ will identify individualized goals
W████ will follow a set of clearly stated prosocial behaviors consistently over a determined period of time.

Implementation description -

Determination of base line behavior
Clear statement of behaviors to be modified
Clear ststement of expected prosocial behaviors
Use of point system, token system,level system to execute the reward and consequences part of the plan

**POSITIVE INTERVENTION STRATEGIES:** Teacher Strategies

Clearly state expected prosocial behaviors
Clearly explain rewards and consequences intervention
Consistanlt utilize the reward & consequences agreement.
Utilize the point system sheet to make system attractive
Institute a bi-weekly progress

**MONITORING SYSTEM:** Responsible Teacher –  Mr. Ceasor

Describe System -

Use baseline information and continously update with new data . evaluate rewards and consequences for
effectivness. change rewards and consequences when necessary to ensure attractiveness of rewards and
esctinguishing og consequences

Data collection timeline -

daily collection of data which should be tallied weekly or other periods that are most effective for the student

**FOLLOW-UP MEETING:** Date -  _____09/01/2003_____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS   07-02-2001  DIVISION OF SPECIAL EDUCATION     IEP ATTACHMENT A    INTERVENTION BEHAVIOR PLAN

53



### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.

### INITIAL PLACEMENT

Student  W███████  M████████  DOB ███1993  Age 9  Meeting Date ~~03/20/2003~~ 9/24/03

Address  34  A STREET  SE  Telephone (W) _____
        Street #   Street         Quad   Apt. No.
        Washington         DC   20019         Telephone (H) _____
        City         State   Zip Code

Dear Parent:

You have been provided a copy of the "Procedural Safeguards - Parents Rights" booklet. We would like to remind you at this time that:

- granting consent is a voluntary action on your part; this consent may be revoked at any
- time although the school district is required to take all necessary action to provide appropriate service(s) and may be required t initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the process indicated below.

✔ Initial Placement

After development of an IEP, the MDT, with the parent, determined that your child will receive special education and related services at <u>Wilkinson Elementary</u> school, for:

☐ 0%-20%,     ☐ 21% - 60%, or     ☒ 61% -100%.

### **Parent Response Section:**

I give permission for District of Columbia Public Schools to proceed with the initial placement for my child.

*Rodreela Jordan*            9/24/03
Parent/Guardian Signature            Date

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

DRAFT

INDIVIDUALIZED EDUCATION PROGRAM
**(IEP)**
MEETING NOTES

STUDENT W███████  M███████    SCHOOL Smothers Elementary    DATE: 05/19/2004

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Rodkeeda Jordan | *Rodkeeda Jordan* | Parent |
| La Toya Butler | *Latoya Butler* | Special Ed Teacher |
| Julia Jones | *Julia Jones* | General Ed Teacher |
| Alan K. Holt | *Alan K. Holt* | LEA Representative |
| Leroy Swain | | Principal or Designee |
| | | Student |
| Anna Bowman | | Social Worker |
| | | |
| | | |
| | | |
| | | |

W████ continues to meet the criteria to receive Special Education and Related Services a Emotionally Disturbed Student. He will receive the following services:
Specialized Instruction: 15 hours Reading, Math and Written Language
Psychological Services: 1 hour per week

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

DRAFT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

**Student Name:** Last MC⬛⬛     First W⬛⬛     MI

**Student ID** 9054440     **Soc. Sec. No.** ⬛⬛     **Age:** 10     **Grade** 05

**Gender** ☒ M ☐ F     **Date of Birth** ⬛⬛1993     **Ethnic Group** B

**Address** 25     46th     NE
House No.     Street Name     Quadrant     Apartment #

☐ Non-attending     Washington     DC     20019
City     State     Zip Code

**Attending School** Smothers Elementary     **Home School**

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

**Parent** Rodkeeda McMillan

**Address of (if different from student):** ☒ Parent ☐ Guardian ☐ Surrogate

House No.     Street Name     Quad     Apt. No.     City     State     Zip Code
**Telephone: Home** 248-0491     **Work**

## II. CURRENT INFORMATION

**Date of IEP Meeting:** 05/19/2004

**Date of Last IEP Meeting:** 9-24-03 an

**Date of Most Recent Eligibility Decision:** 09/24/2003

**Purpose of IEP Conference:**
☐ Initial IEP     ☒ Review of IEP
☐ Requested Eval.     ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| ☒ | BEHAVIOR | | TRANSPORTATION |
|---|---|---|---|
| | ESY | | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| **Student** | English | English | n/a | Native Language |
| **Parent** | English | n/a | English | Native Language |
| **Home** | English | n/a | English | Native Language |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral ____
Rdg./ Written ____
Instrument: ____
Date: ____

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SETTING SpEd | SETTING Total | FREQUENCY Hr / Min | FREQUENCY D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | DURATION wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0.00 | 20.00 | 20.00 | Hrs | Week | Special Education Teacher | 05/20/2004 | 10 | Months |
| Psychological Services | 0.00 | 1.00 | 1.00 | Hrs | Week | ~~Music Therapist~~ | 05/20/2004 | 10 | Months |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| **TOTAL** | 0.00 | 21.00 | 21.00 | **Hours Per Week** | | | | | |

## V. Disability(ies) Emotionally Disturbed

Percent of time in Specialized Instruction and Related Services
☐ 0-20%     ☐ 21-60%     ☒ 61-100%

☐ (Check if setting is general Ed.)     Percent of time NOT in a General Education Setting     65%

## VI. IEP TEAM (Participants in the development of the IEP)

**Print and sign your name below.**

Rodkeeda Jordan     *Rodkeeda Jordan*
Parent     Student

La Toya Butler     *Latoya Butler*
Special Ed Teacher     Anna Bowman
Social Worker

Julia Jones     *Julia Jones*
General Ed Teacher

Alan K. Holt     *Alan K. Holt*
LEA Representative

Leroy Swain
Principal or Designee

✓ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature     *Rodkeeda Jordan*     Date     5/19/04

WM 106

DRAFT

| Student Name | W▬▬ M▬▬ | Managing School | Smothers Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9054440 | DOB ▬▬/1993 | Attending School Smothers Elementary | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: ☐ | Goal Number: ☐ 1 |
|---|---|---|

Area addressed by goal: Academic Areas: Reading

**ANNUAL GOAL:** (including mastery criteria.)

W▬▬ will demonstrate nine months growth in reading with at least 80% accuracy.

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| W▬▬ will identify sight words with at least 80% accuracy. | | Weekly |
| W▬▬ will summarize and sequence story events with at least 80% accuracy. | | Monthly |
| W▬▬ will identify story elements from stories read with at least 80% accuracy. | | Monthly |
| W▬▬ will use work attack skills and context to decode and expand vocabulary with 80% accuracy. | | Weekly |
| W▬▬ will be able to make inferences and draw logical conclusion with 80% accuracy. | | Monthly |
| W▬▬ will be able to use context clues to define words and identify multiple meanings of words that are unfamilar with 80% accuracy. | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

DRAFT

| Student Name    W▓▓▓▓  M▓▓▓▓▓ | Managing School  Smothers Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9054440    DOB ▓▓▓1993 | Attending School  Smothers Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 2 |
|---|---|---|

Area addressed by goal: Academic Areas: Math

**ANNUAL GOAL:** (including mastery criteria.)

W▓▓▓will demonstrate nine months growth in his math skills with at least 80% accuracy.

**Provider(s):** Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| W▓▓▓will add and subtract whole numbers with regrouping with at least 80% accuracy. | | Weekly |
| Solve word problems containing addition, subtraction, and multiplication with at least 80% accuracy. | | Monthly |
| Multiply two digits by one digit without regrouping with at least 80 accuracy. | | Monthly |
| Divide using multiples of 10 with at least 80% accuracy. | | Monthly |
| Identify common fractions with at least 80% accuracy. | | Monthly |
| Tell time in five minute intervals with at least 80% accuracy. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

58

DRAFT

| Student Name | W_____ M_____ | Managing School | Smothers Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9054440 | DOB ___/___/1993 | Attending School  Smothers Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 3 |
|---|---|---|

Area addressed by goal:  Written Language

ANNUAL GOAL: (including mastery criteria.)

W____ will demonstrate nine month growth in Written Language with at least 80% accuracy.

Provider(s):  Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Write in cursive with correct formation, size, slant, alignment, spacing, and connections with at least 80% accuracy. | | Weekly |
| Demonstrate spelling proficiency at own level on weekly test with at least 80% accuracy. | | Weekly |
| Apply learned spelling words correctly in written work with at least  80% accuracy. | | Weekly |
| Use appropriate capitalization according to functional level with at least 80% accuracy. | | Weekly |
| Create simple, compound and /or complex sentences with at least 80% accuracy. | | Weekly |
| Identify sight words with at least 80% accuracy | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☐ Documented Observation   ☐ Report   ☐ Other _____

| Student Name | W_____, M_____ | Managing School | Sm___ ___ E.S |  |
|---|---|---|---|---|
| Student ID Number | 905 440 | DOB | ___93 | Attending School | Smothers E.S. |

DCPS - IEP
Page 3 of 4

**VIII. SPECIALIZED SERVICES** ☐    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: Social/Emotional/Behavioral

**ANNUAL GOAL:** (including mastery criteria.)

W_____ will improve his self-control as it relates to reducing impulsive behavior. He will learn to function successfully within the school setting.

Provider(s): Social Worker, Psychologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| W_____ will work cooperatively with peers by reducing aggressive, annoying and provocative behaviors, mastery will be at 70%. |  | Monthly |
| W_____ will use staff support/counseling to learn how to verbalize his needs and work on a consistent basis and in a timely manner, mastery will be at 80%. |  | Monthly |
| W_____ will learn to stop and think before he verbally attacks others, with mastery at 80%. |  | Monthly |
| W_____ will follow directions that govern behavior in the classroom and in the total school environment, mastery will be at 80%. |  | Monthly |
| W_____ will identify positive personality traits and learn how to use these traits to get his needs met, compliance/mastery at 80%. |  | Monthly |
| W_____ will learn the meaning of personal self-control and how to use it to reducing occurrences of oppositional and defiant behavior, with mastery at 80% |  | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

05/19/2004

| Student Name | W____ M____ | Managing School | Smothers Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 9054440 | DOB ____1993 | Attending School | Smothers Elementary | Page 4 of 4 |

Additional Comments: ☐

DRAFT

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION**
**SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education?  ☐ Yes  ☒ No

Explanation for removal out of regular education classroom.

Student requires low student to teacher ratio

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations  for testing:  ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Extended time, Time extensions |
| Setting: | Preferential seating |
| Presentation: | |
| Response: | |
| Equipment: | |

**XI. STATE AND DISTRICT ASSESSMENTS:**

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☒ Level III   (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level IV   (Describe the alternative assessment)

☐ Level V   Portfolio: _____

**XII. Areas Requiring Specialized Instruction and Related Services:**          **Modifications:**

| | | | |
|---|---|---|---|
| ☒ Reading | ☐ Physical/Sensory | ☐ Transition | ☒ Language Arts/English |
| ☒ Mathematics | ☒ Social Emotional | ☐ Vocational | ☐ Social Sciences |
| ☒ Written Expression | ☐ Physical Development | ☐ Independent Living | ☐ Biological & Physical Sciences |
| ☐ Other: _____ | | ☐ Speech/Language | ☐ Fine Arts |
| ☐ None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Setting | Rejected | Exposure to general education curriculum |
| Out of General Education Classroom | Rejected | Time away from non-disabled peers in academic sett |
| Combination General Education and Resource Classro | Accepted | Possibility of missing academic instruction during |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate for related service sessions

61

**DOCUMENTED LEVEL OF SERVICE**
Complete and attach to MDT/IEP meeting notes

| | | | |
|---|---|---|---|
| School  Smothers Elementary | Principal Leroy swain | Special Education Coordinator Alan K. Holt | |
| Date  05/19/2004    Case Manager  Alan K. Holt | | Assistant Director  Danielle Keemer | |
| Student  W███████  M███████ | DOB ████1993  Age 10  Grade 05  ID# 9054440 | SSN# 578987582 | |
| Parent  Rodkeeda McMillan | Telephone (H) 248-0491 | (W) | |

Address: 25    46th                                    NE    Washington                    DC    20019
         Street #    Street                             Quad  Apt. No.  City                 State   Zip Code

REFERRAL SOURCE: (Check)    ☐ 120 Day    ☐ Reeval.    ☐ HOD    ☐ SA    ☐ MA    ☒ Annual
☐ Nonpublic    ☐ Residential    ☐ Citywide    ☐ Courts    ☒ Local School    ☐ Other:
Previous least restrictive environment (LRE Setting):    Combination general education and resource classroom

**JUSTIFICATION FOR SETTING CONSIDERATION**
(Submit TAT/MDT Documentation)
SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Extended time, Preferential seating | Current IEP | Yes ☒ | No ☐ |
| | Signatures of required participants (MDT  notes) | Yes ☒ | |
| | Intervention Behavior Plan | Yes ☐ | |
| | Copies of current class work and homework assignments: | Yes ☒ | |
| | Medical Reports: | Yes ☐ | No ☒ |
| | Clinical Reports: | Yes ☐ | No ☐ |
| | Psychiatric Reports: | Yes ☐ | No ☒ |
| | Medications: | Yes ☐ | No ☒ |
| | Attendance Record | Yes ☒ | |
| | Copies of most recent evaluation(s) | Yes ☒ | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| I.E.P. Meeting 05-17-2004 | Designated meeting space |

**6. CURRENT SETTING CONSIDERATIONS**

| ROW | SETTING in neighborhood school (Determined through the IEP team) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☒ combination general education and resource classroom | ☒ combination of general educators, special educators and related service providers | ☐ between 21 % and 60% of service time |
| 3 | ☐ *out of general education classroom | ☐ special educators and related service providers | ☒ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children m those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings.

Check the level of need as indicated:
DIRECTIONS:

| | |
|---|---|
| If two or three boxes are checked in the Row l, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |

**7. LEVEL OF NEED**

| ☐ LOW | ☒ MODERATE | ☐ HIGH |
|---|---|---|

Attention: Technical Support Supervisor, Compliance Team

DRAFT

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**SPECIAL EDUCATION**

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [X] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [X] Change in Placement
  - [ ] Annual
  - [ ] Other _____

Date _____05/19/2004_____

Student  W██████   M█████████        DOB ███/1993

School  Smothers Elementary

Current Disability Category     ED

Setting  Combination general education and resource classro

Dear  Rodkeeda McMillan

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [X] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)**

- [ ] Your child is not eligible for special education service(s).
- [X] Your child is eligible or continues to be eligible to receive special education services as a student with  ED
- [ ] Your child will begin receiving _____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
      from _____ to _____
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____

Location of Services  Evans/Kelly Miller

**Description and Explanation of agency action proposed or refused.**

After reviewing the documentation the MDT determined that the Combination General Education and Resource room setting would meet W██████ specific needs.

**Description of Other Options Considered and reasons for rejection of each option**

Out of General Education setting was rejected because it would be too restrictive and not allow W█████ to have his Least Restrictive Environment Setting

Other relevant factors to the decision-  Local School Setting

MDT Members:
- [X] Principal or Designee
- [X] Parent
- [ ] Student
- [X] Social Worker
- [X] General Education Teacher
- [X] Special Education Teacher
- [ ] Speech and Language
- [X] *LEA & Interpreter  (*may be one)
- [ ] Psychologist
- [ ] Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child.  The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the **Procedural Safeguards** for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact Alan K. Holt                                 at (202) 724-4640            (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

WM 131

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

DRAFT

## Multidisciplinary Team
## (MDT)
## MEETING NOTES

Annual IEP Review **Meeting Notes**

STUDENT: W_____  M_____

SCHOOL: Kelly Miller MS          DATE: 04/19/2006

**PARTICIPANTS:** (Print Name)

| Ms. McMillan | | |
| Ms. Betty Cade | | |
| Ms. Tolbert | | |
| Ms. Peggy Smith | | |
| W___ M_____ | | |
| Mr. Mathews | | |
| Ms. Eqola Moore | | |

**PARTICIPANTS:** (Sign Name)

Rod Keeda Jordan
Betty Cade
Mr. Tolbert
Peggy Smith
W___ M_____
Curtis Mathews
Eqola Moore

**POSITION**

| Parent/Guardian |
| Special Ed |
| General Ed Teacher |
| LEA Representative |
| ~~Principal or Designee~~  Student |
| Special Ed. Teacher |
| Social Worker |

The purpose of the meeting is to review W___ M_____ Individualized Instructional Plan for the 2006/2007 school year.

Ms. Betty Cade ( Language/Arts) teacher : Ms McMillian discussed W___ behavior in school. In class W___ has the ability to do well in class, but he does not always apply himself.  We also discussed enrolling him in a after school program. W___ does have the ability to do very well, when he applies himself. He appears to enjoy reading. W___ McMillian can achieve if he puts forth the effort to be in attendance.

He attends Mr. Mathews Math class where attendance is poor. At this time Mr. Mathews stated he is not doing well in his class.

Ms. Tolbert his Social Studies general education  teacher stated that attendance is also poor, but when he comes to class he almost always will get an A on his assignments. He is very smart and he catches on very quickly to any assignment given.

He is currently recieving psychological counseling with Ms. Moore, the Sp. Ed.Social Worker.

The MDT is recommending new evaluations because they are due at this time. We will reconvene after the assessments are completed.

He will continue to recieve services as a student identified as  Emotionally Disturbed. He also will continue to be eligible to recieve special education services in  Psychological Counseling.

The MDT is also stating at this time that W___ M_____ remain at Kelly Miller Middle School as his school placement.

The Parent ☑ **is** present ☐ is **not** present at the meeting.

DRAFT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: _____ W███ M██████ _____ SCHOOL: Kelly Miller MS          DATE: 04/19/2006

Ms. Moore is recommending family therapy for W███ and his mother. Over-all this has been a positive meeting. The team realizes that peer pressure is also a problem. Hopefully after therapy begins W███ can learn more positive ways to deal with peer pressure. Parent is concerned about W███ not attending classes. Ms. Moore further stated that W███ has very little cause and effect thinking skills. Therefore he uses poor social judgement. Through positive support he will gain a better sense of self confidence, and self esteem. Ms. Moore and the MDT concluded that W███ has a good heart and can be polite when he puts his mind to be that way.

(IEP)
## MEETING NOTES

STUDENT __W▓▓▓, M▓▓▓▓▓__ SCHOOL _Kelly MS._ DATE: _04/19/06_

**PARTICIPANTS:**

Rodkeeda Jordan
Betty Cade
Peggy Smith
Dr. Almir
Curtis Mathews
Egola Moore
W▓▓ M▓▓▓▓

**PARTICIPANTS: (Sign Name)**

Rodkeeda Jordan
Betty Cade
Peggy Smith

Curt Moore
Egola Moore
W▓▓ M▓▓▓▓

**DISCIPLINE**

Mother
Sp.Ed. Teacher
LEA/SEC
General Ed. Teacher
Special Ed. Teacher
Social worker
Student

---

Based upon the documents reviewed, the MDT determined that the student is eligible or continues to be eligible for special education services as a student with __Emotionally Disturbed__

Specialized instruction is required in the following subjects: __Math/Reading__

The total amount of specialized instruction required is __20 hrs__

Related services are required in the following areas: __Psychological Counseling__

The setting accepted by the MDT is __Combination Setting__

The level of standardized assessment is __III__

The following accommodations/modifications will be made: __Extended Time, Reduced minima-lized distractions, Repeated/Review drills__

Placement Discussion:
Remain at Kelly Miller Middle School

---

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

**(IEP)**
## MEETING NOTES

STUDENT ~~W███, M███~~ SCHOOL _Kelly M.S._ DATE: _04/19/06_

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| RodReeda Jordan | RodReeda Jordan | Mother |
| Betty Cade | Betty Cade | Sp.Ed. Teacher |
| Peggy Smith | Peggy Smith | LEA / SEC |
| Dr. Nur | | General Ed. Teacher |
| Curtis Mathews | Curtis Mathews | Special Ed. Teacher |
| Egola Moore | Egold Moore | Social worker |
| ~~W███ M███~~ | ~~W███ M███~~ | student |

Based upon the documents reviewed, the MDT determined that the student is eligible or continues to be eligible for special education services as a student with ___ _Emotionally Disturbed_

Specialized instruction is required in the following subjects: _Math / Reading_

The total amount of specialized instruction required is _20 hrs_

Related services are required in the following areas: _Psychological Counseling_

The setting accepted by the MDT is _Combination Setting_

The level of standardized assessment is _III_

The following accommodations/modifications will be made: _Extended Time, Reduced minima-lized distractions, Repeated / Review drills_

Placement Discussion: _Remain at Kelly Miller Middle School_

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

67

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM
(MDT)**

**STUDENT EVALUATION PLAN
(SEP)**

| MDT |
| SEP |

MEETING DATE: 04/19/2006

STUDENT: W▮▮▮    M▮▮▮▮▮    DOB: ▮▮▮1993    AGE: 12    GRADE: 07    SCHOOL: Kelly Miller MS

STUDENT IDENTIFICATION NUMBER: 9054440    TEACHER / HOMEROOM: Ms. Tolbert    Ms. Cade

ADDRESS:    25    46th St NE    NW    Washington    DC    20019

Street #    Street Name,    Quadrant    Apartment #    City,    State,    Zip Code

PARENT(S)/GUARDIAN: Ms. McMillan    TELEPHONE (H): (202) 397-1065    (W):

**Summarize Area(s) of Concern:**

Area of concern is attendance, and present behavioral problems.

**Team Recommendations:**

The MDT team is recommending evaluations for W▮▮▮ M▮▮▮▮▮

**EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)**

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE ASSIGNED | DUE DATE |
|---|---|---|---|---|
| ☒ Psychological | Dr. Kasi Patterson | WISC IV | 04/19/2006 | 06/18/2006 |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☒ Educational | Special Education Teacher | Wookcock | 04/19/2006 | 06/18/2006 |
| ☐ Hearing Screening | | | | |
| ☐ Other | Other: | Other: | | |

| TEAM MEMBERS: | NAME | POSITION | TEAM MEMBERS: | NAME | POSITION |
|---|---|---|---|---|---|
| Ms. McMillan | Rockeena Jordan | Parent | | | Principal or Designee |
| Ms. Betty Cade | Betty Cade | Special Ed | Wayne McMillan | | Student |
| Ms. Tolbert | | General Ed Teacher | Mr. Mathrews | Cwd. Mouha | Special Ed. Teacher |
| Ms. Peggy Smith | Peggy Smith | LEA Representative | Ms. Moore | Epeh Moore | Social Worker |

The MDT meeting to discuss the evaluation results is scheduled on    09/25/2006    at 2:00 am    in room 301

Place completed form in MDT folder.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

## II. CURRENT INFORMATION

Date of IEP Meeting: 01/17/2006
Date of Last
IEP Meeting: 05/19/2004
Date of Most Recent
Eligibility Decision: 09/24/2003

Student Name: Last M_____    First W_____    MI

Student ID 9054440    Soc. Sec. No. _____    Age: 12    Grade 07

Gender ☒ M ☐ F    Date of Birth ___/1993    Ethnic Group  Black

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Address    25    46th St NE    NW
House No.    Street Name    Quadrant    Apartment #

☐ Non-attending    Washington    DC    20019
City    State    Zip Code

Attending School Kelly Miller MS    Home School _____

☐ Elem. ☒ Mid/JHS ☐ SHS ☐ CWS /

Parent    Ms. McMillan

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

☐ BEHAVIOR    ☐ TRANSPORTATION
☐ ESY    ☐ TRANSITION

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home (202) 397-1065    Work

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | |
| Parent | English | English | English | |
| Home | English | English | English | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral
Rdg./Written
Instrument:
Date:

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | GenEd Ses. | GenEd Time | GenEd Total | SpecEd Ses. | SpecEd Time | SpecEd Total | FREQUENCY Hr./Min | FREQUENCY D/W/M | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks/mos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0.00 | 0.00 | 0.00 | 1.00 | 15.0 | 15.00 | Hrs | Week | Special Education Teacher | 12/21/2005 | 10 | Month |
| Psychological Services | 0.00 | 0.00 | 0.00 | 1.00 | 30.0 | 30.00 | Mins | Week | School Social Worker | 12/21/2005 | 10 | Month |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| TOTAL HOURS: | | 0.00 | | | 15.50 | | | Total Combined Hours Per Week: | | | | |

### V. Disability(ies)    Emotionally Disturbed

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☒ 21-60%    ☐ 61-100%

☐ (Check if setting is general Ed.)

Percent of time NOT in a General Education Setting    48.00%

### VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Ms. McMillan
Parent    *Rodkeeda Jordan*

Ms. Betty Cade
Special Ed    *Ms. Betty Cade*

Ms. Tolbert
General Ed Teacher    *N. Tolbert*

Ms. Peggy Smith
LEA Representative    *Peggy Smith*

assigned Social Worker    *Epala Moore*
Principal or Designee

Student    *Wayne McMillan*
            *Curtis Mau...*

Mr. Mathews
Special Ed. Teacher

*Peggy Smith*

Special Worker    *Epala Moore*

☐ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    *Rodkeeda Jordan*    Date 04/19/06

District of Columbia Public Schools    04-02-2004    Division of Special Education    Appendix - A    IEP Page 1 of    WM115

| Student Name | W███ M███ | Managing School | Kelly Miller MS | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 9054440 | DOB ███/1993 | Attending School | Kelly Miller MS | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Special Education Staff

Math Strengths:

> W███ is able to add and subtract numbers

Impact of disability on educational performance in general education curriculum:

> W███ mathematics achievement is below grade level.

Reading Strengths:

> w███ is abel to read some sight words

Impact of disability on educational performance in general education curriculum:

> W███ reading achievement is below grade level.

**Score(s) When Available**

| | |
|---|---|
| Math Cal. | 91 |
| Math Rea. | 88 |
| See goal page: | 1 |
| Date: | 10/17/2002 |
| Rdg. Com | 89 |
| Rdg. Basic | 88 |
| Written Ex. | 75 |
| See goal page: | 2 |
| Date: | 10/17/2002 |

**Communication (Speech & Language) (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

| | |
|---|---|
| Exp.Lang. | |
| Rec- Lang. | |
| Artic | |
| Voice | |
| Fluency | |
| Exp. Voc. | |
| Rec. Voc. | |
| See goal page: | |
| Date: | |

**Motor/Health (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**

See goal page:

Date:

**Social Emotional Behavioral Areas: (Evaluator)** School Social Worker

Strengths:

> W███ works well on a one to one basis. He willingly attends counseling, and participates.

Impact of disability on educational performance in general education curriculum:

> W███ lacks cause and effect thinking. He also has poor social judgement, and he does not assume responsibility for his own behavior. Therefore this impacts on his academic ability.

**Score(s) When Available**

See goal page:

Date: 04/19/2006

**Cognitive/Adaptive Behavior: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:

Date:

**Prevocational Skills: (Evaluator)**

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:

Date:

| Student Name | | Managing School | Kelly Miller MS | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | DOB | Attending School | Kelly Miller MS | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: Academics (Reading)

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate growth and development in the area of reading. To be measured by formal/informal assessment with 85% mastery.

**Provider(s):** Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given 15 basic sight words on his/her instructional grade level. The student will be able to identify and pronounce each word. The student will be given a list of new words weekly. These vocabulary words should be added to his vocabulary folder. | | monthly |
| 2. Given 10 unfamiliar words. The student will be able to recognize the final consonant sounds or initial consonant blends, in 8 out of 10 attempts. | | monthly |
| 3. Using the list of unfamiliar words given to the student prior, The studnet will apply phonemic rules to decode long and or short vowel sounds. | | monthly |
| 4. Given selected reading passages from the students literature book. The student will use the story elements (settings, characters, conflict/plot, sequencing events, final solution, and climax). He will use these elements of a story to retell a story and support his conclusions with convincing evidence from selected reading selections. In 8 out of 10 attempts. | | monthly |
| 5. Given a literary selection, the student will read orally with accuracy, fluency and comprehension of information read, in 7 out of 8 attempts. | | monthly |
| 6. Given 10 books on the student's reading level. the students will respond to comprehensive questions composed by the teacher. These questions will be constructed to meaning and understanding to the student has read. | | monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | | Managing School | Kelly Miller MS | |
|---|---|---|---|---|
| Student ID Number | DOB | Attending School | Kelly Miller MS | DCPS - IEP Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal:  Written Expression

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate growth and development in his written language. To be measured by formal/informal assessment, with 85% mastery.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1. Given sentences and phrases, the student will identify complete sentences 8 ou of 10 trials. | | monthly |
| 2. The student will be able review the subject and the predicate of a sentence. He will construct sentences making sure each sentence has a subject, and predicate. He will construct 10 sentences correctly 5 out of 6 trials. | | monthly |
| 3. Given topics/prompts, the student will be able to construct increasingly complex sentences and short paragraphs in 7 out of 10 trials. | | monthly |
| 4. Given story sentence starters, the student will be able to compose logical and meaningful responses to the endings of these sentences. The student will respond to this in 5 out of 6 trials. | | monthly |
| 5. Given written assignments, the student will be able to apply appropriate capitalization, punctuation and proper grammer usage. | | monthly |
| 6. Given 10 weekly spelling words appropriate to the students content and instructional level. The student will spell each of these words correctly, and write them in complete sentences 5 out 6 trials. | | monthly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

| Student Name | | Managing School  Kelly Miller MS | DCPS - IEP |
|---|---|---|---|
| Student ID Number | DOB | Attending School  Kelly Miller MS | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: Academics/Math

**ANNUAL GOAL: (including mastery criteria.)**

The student will demonstrate an improvement , and growth in the area of mathematics. To be measured by informal/formal assessment with 85% mastery.

**Provider(s):** Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1.Given multi-digit subtraction problems requiring regrouping, the student will complete the equations 7 out of 10 trials. | | monthly |
| 2. Given basic measurement problems, the student will complete the equations 7 out of 10 trials. | | monthly |
| 3. The student will be able to recall multipication facts through the 12 tables in 5 out of 6 attempts. | | monthly |
| 4.Given multi-digit multiplication problems, the student will solve the problems with or without regrouping in 7 out of 10 trials. | | monthly |
| 5.Given multi-digit division problems, the student will solve the problems in 7 out of 8 trials. | | monthly |
| 6. Given basic word problems to solve and understand on the student's own math level. The student will solve these problems in 5 out of 6 trials. | | monthly |

**EVALUATION PROCEDURE(S)**

☐Portfolio  ☐Log  ☐Chart  ☐Test  ☐Documented Observation  ☐Report  ☐Other

| Student Name | W███ M████ | | | Managing School | Kelly miller | | DCPS - IEP |
|---|---|---|---|---|---|---|---|
| Student ID Number | 9054440 | DOB | ██/██/93 | Attending School | | | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: | Goal Number: |
|---|---|---|

Area addressed by goal: **Social Emotional**

**ANNUAL GOAL:** (including mastery criteria.)

Develop empathy and understanding for another person's point of view. Seek solutions instead of anger and revenge. Assume responsibility for own behavior.

**Provider(s):** Schcool Social Worker

Consider audience, behavior, condition, degree and evaluation.

| **SHORT-TERM OBJECTIVES** (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Develop a working relationship with the service provider in which the student shares his thoughts and feelings openly. | | quarterly |
| In counseling student will define and demonstrate empathy. | | " |
| In counseling sessions student will discuss the conflict that typically occur in his life at school and at home. | | " |
| In counseling sessions student will identify possible conditions or triggers that preced the actual conflict (e.g., shoving in the hallway). | | " |
| In counseling sessions the student will identify actions and reactions that cause anger to intensity (e.g., physical contact, facial expressions, and verbal aggression). | | " |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

| Student Name | W███████ M███████ | | Managing School | Kelly Miller MS | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9054440 | DOB ████/1993 | Attending School | Kelly Miller MS | | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>general education</u>?   ☐ Yes  ☒ No

Explanation for removal out of regular education classroom.

Student requires small structured environment to accommodate disabilities

## X. Supplementary Aids and Services
### Classroom Needs

| (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Check and list modifications and/or accommodations for <u>testing</u>:**   ☐ None needed

| Timing/Scheduling: | Break tasks into parts, Extended time, Time extensions |
|---|---|
| Setting: | Reduced, minimalized distractions |
| Presentation: | Repeated review/drill |
| Response: | |
| Equipment: | |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III   (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V   Portfolio:

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading          ☐ Physical/Sensory          ☐ Transition
☒ Mathematics      ☒ Social Emotional          ☐ Vocational
☒ Written Expression ☐ Physical Development    ☐ Independent Living
☐ Other:                                        ☐ Speech/Language
☐ None

**Modifications:**
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Combination General Education and Resource Classro | Accepted | Impact on self-esteem |
| In General Education Classroom Setting | Rejected | |
| Out of General Education Classroom | Rejected | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Participation in counseling to address self-esteem issues

## DOCUMENTED LEVEL OF SERVICE
Complete and attach to MDT/IEP meeting notes

| | | | |
|---|---|---|---|
| School  Kelly Miller MS | Principal  Robert Gill | Special Education Coordinator  Betty Cade | |
| Date 04/19/2006    Case Manager  Ms. Betty Cade | | Assistant Director  Carol Helton | |

Student  W███████  M███████  DOB ████/1993 Age 12 Grade 07 ID# 9054440  SSN# ████████████

Parent  Ms. McMillan    Telephone (H) (202) 397-1065    (W)

Address: 25   46th St NE    NW  Apt. No.  Washington    DC  20019
Street #  Street    Quad    City    State  Zip Code

REFERRAL SOURCE: (Check)  ☐ 120 Day  ☐ Reeval.  ☐ HOD  ☐ SA  ☐ MA  ☒ Annual

☐ Nonpublic  ☐ Residential  ☐ Citywide  ☐ Courts  ☒ Local School  ☐ Other:

Previous least restrictive environment (LRE Setting):   Combination general education and resource classroom

---

### JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Extended time, breaks in between testing directions read when needed repeat directions | Current IEP | Yes ☒ | No ☐ |
| | Signatures of required participants (MDT notes) | Yes ☒ | |
| | Intervention Behavior Plan | Yes ☐ | |
| | Copies of current class work and homework assignments: | Yes ☒ | |
| | Medical Reports: | Yes ☐ | No ☐ |
| | Clinical Reports: | Yes ☐ | No ☐ |
| | Psychiatric Reports: | Yes ☐ | No ☐ |
| | Medications: | Yes ☐ | No ☒ |
| | Attendance Record | Yes ☒ | |
| | Copies of most recent evaluation(s) | Yes ☒ | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| Annuale IEP meetrings | NA |

---

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☒ combination general education and resource classroom | ☒ combination of general educators, special educators and related service providers | ☒ between 21 % and 60% of service time |
| 3 | ☐ *out of general education classroom | ☐ special educators and related service providers | ☐ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children m those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

Check the level of need as indicated:
**DIRECTIONS:**

| | |
|---|---|
| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |

### 7. LEVEL OF NEED

| ☐ LOW | ☒ MODERATE | ☐ HIGH |
|---|---|---|

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
STUDENT EVALUATION PLAN
(SEP)

MDT
SEP

MDT REFERRAL DATE: _____                    MEETING DATE: _11-07-06_

STUDENT: M___ W____    DOB: ___93  AGE: _13_ GRADE: ___  SCHOOL: _Kelly Miller_

STUDENT IDENTIFICATION NUMBER: _90 5444D_   TEACHER / HOMEROOM: _M. Vittola_

ADDRESS: _25  46th  Street  NW  Washington  DC  20019_
          Street #    Street Name,           Quadrant      Apartment #    City,           State,        Zip Code

PARENT(S)/GUARDIAN: _M. Jordan_            TELEPHONE (H): _2-397-1065_ (W): _____

**Summarize Area(s) of Concern:**

_Requested Re-evaluation_

**Team Recommendations:**

_The Team has ordered a full Psychological,
OT, and an Educational evaluation, Speech,
and a Social History_

**EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)**

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE ASSIGNED | DUE DATE |
|---|---|---|---|---|
| ☑ Psychological | Ms. Johnson | | 11-07-06 | |
| ☑ Speech/Language | Ms. Mitchell | | 11-07-06 | |
| ☑ Social History | Bush-Sawyer | | 11-07-06 | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☑ Educational | Ms. Blanc | | 11-07-06 | |
| ☐ Hearing Screening | | | | |
| ☑ Other  OT | Other: Ms. Adams | Other: | 11-07-06 | |

| TEAM MEMBERS: | NAME | POSITION | TEAM MEMBERS: | NAME | POSITION |
|---|---|---|---|---|---|
| | Rudkeeda Jordan | Parent | | | |
| | Carolyn Johnson | School Psychologist | | | |
| | Sharon Blanc | SFE Advocate | | | |

The MDT meeting to discuss the evaluation results is scheduled on _____ at _____ in room _____

**Place completed form in MDT folder.**

WM16

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT

MDT REFERRAL DATE: _____

STUDENT: M███ M███ W███    SCHOOL: _Kelly Milla_    DATE: _10-07-06_

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Rodkeeda Jordan | Rodkeeda Jordan | Mother |
| Carolyn R Johnson | CRJ███ | School Psych. |
| ███ Milla | ███ | ███████ |
| Natalie Hans-Watuk | Natalie Hans-Watuk | SEC/LEA |

The purpose of this meeting is to discuss
concerns about W███ progress. Mr. Milla
advocate and parent states that on the
evaluation dated 10-17-02 and was 4-8-03
it was determined that an ADHD screener/test
be done, However it was not. They also had
questions concerning his Specialized Instruction
hours being changed from 21.00 hrs to 15.50
hrs. The team states that an Occupational
evaluation, a full Comprehensive psychological
educational, F.B.A., the team agrees to update
his IEP and accordingly when assessments are in. DCPS
agrees to have the assessments done within 45 days,
DCPS also agrees to have a Speech evaluation
and a Social History as well. The parent states that he
takes Risperidal 300 X mg a day.

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

## C O N F I D E N T I A L

### PSYCHO-EDUCATIONAL EVALUATION

NAME: W███ M███████                    GRADE: 4

BIRTH DATE: ████/93                    DATE OF EVALUATION: 10/17/02

SCHOOL: Kimball Elementary School      TEACHER: Mrs. Brice

AGE: 9-0                               ID: 9054440

EXAMINER: Deidra E. Alexander MA, Certified School Psychologist

## ASSESSMENT INSTRUMENTS USED

- Weshsler Intelligence Scale for Children 3rd Edition (WISC-III)
- Wechsler Individual Achievement Test (WIAT)
- Bender Visual Motor Gestalt Test (BVMG)

## REASON FOR REFERRAL:

W███ was referred for a psychoeducational evaluation due to academic problems in math and reading, behavior problems, and not completing classwork.

Anecdotal notes provided by W███ Teacher (Mrs. Brice) stated that his behavior is inappropriate in the classroom. The Teacher stated that W███ is disobedient, cheats on assignments, throws objects in the classroom, yells in the classroom, is verbally aggressive, uses profanity, and does not complete assignments.

## BACKGROUND INFORMATION

W███ is a 9 year old boy of African American origin who is currently enrolled at Kimball Elementary in the 4th grade. W███ previously attended Wilkenson Elementary where there were similar concerns about his behavior.

## PHYSICAL HEALTH AND DEVELOPMENT:

W███ is a brown eyed boy with dark brown hair. Overall, his build is average in relation to his peers and age. Overall, W███ gives the appearance of being generally healthy.

## TEST CONDITIONS AND BEHAVIOR:

Rapport was easy to establish and maintain with W███ He came readily to the testing session and presented himself as a very outspoken, mature and pleasant child. During our clinical

1

interview, W■■ shared that he does not like Kimball because other students "mess" with him, get him in trouble, and his Teacher ignores him. W■■ stated that he likes math, reading and science but has some difficulty in math. W■■ admitted to needing help in reading and with his time tables. W■■ was very aware of my reason for working with him. He asked if I was testing him for special education and proceeded to ask many questions about the test. Impressed with his inquisitiveness, I attempted to put him at ease by answering his questions.

INTELLECTUAL FUNCTIONING:

The WISC-III 3rd Edition is an individually administered clinical instrument for assessing the intellectual ability of children aged 6 years to 16 years - 11 months. This assessment consists of several subtests that each measure the repertoire of cognitive skills and knowledge expressed at the time of testing. The WISC-III is comprised of 12 subtests organized into two scales; the verbal scale and the performance scale. The verbal subtests measure "crystallized" or verbal intelligence. The verbal IQ score is dependent on the child's accumulated experience, exposure to this culture, achievement and overlearned, well-established cognitive functions. The performance subtests measure "fluid intelligence" or nonverbal ability. The performance IQ score is dependent on the child's immediate motor problem solving abilities applied to new situations. This non-verbal scale is often described as being culture-free in design. Intelligence score are as follows:

| IQ Index | IQ Score | Classification |
|----------|----------|----------------|
| Verbal | 70 | borderline |
| Performance | 62 | deficient |
| Full Scale | 63 | deficient |

W■■ may experience great difficulty in keeping up with his peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities. His general cognitive ability is within the intellectually deficient range of intellectual functioning, as measured by the Wechsler Intelligence Scale for Children--Third Edition. His overall reasoning abilities exceed those of approximately 1% of children his age (FSIQ = 63; 90% confidence interval = 60 - 69). His ability to think with words is comparable to his ability to reason without the use of words. Both W■■ verbal and nonverbal reasoning abilities also are in the intellectually deficient range.

Verbal

W■■ verbal cognitive ability was assessed in this scale. W■■ was asked to perform a variety of verbal tasks. He was asked to provide basic information based on memory (information subtest), articulate the similarities that various objects share (similarities subtest), manipulate mathematical word problems mentally and demonstrate mental control while presenting the answer verbally (arithmetic subtest), provide the meanings to certain words (vocabulary subtest), and provide clear common sense solutions to everyday issues in society (comprehension subtest). W■■ performed in the borderline range of ability based on these specific tasks with a verbal IQ score of 70. He performed the same or better than less than 2% of children his same age. W■■ performance was significantly better on the Arithmetic subtest and significantly weaker on the Comprehension subtest. His weak performance on the Comprehension subtest was far below that of most of his peers. W■■ was required to mentally solve a series of orally presented problems

2

80

on the Arithmetic subtest. A direct measure of his numerical reasoning abilities, the subtest requires attention, concentration, short-term memory, and mental control (Arithmetic scaled score = 9). The Comprehension subtest required W███ to provide oral solutions to everyday problems and to explain the underlying reasons for certain social rules or concepts. This subtest provides a general measure of verbal reasoning. In particular, this subtest assesses his comprehension of social situations and social judgment as well as his knowledge of conventional standards of social behavior (Comprehension scaled score = 1).

Performance

W███ scored 8 points lower on the performance subtest. In this section, W███ was asked to execute a number of tasks. These tasks included; attentiveness to detail in recognizing missing parts of a picture, and long term visual memory (picture completion subtest), associating various numbers with symbols with speed and accuracy (coding subtest), organizing pictures in a logical and sequential manner (picture arrangement subtest), manipulating various blocks to form specific designs with speed and accuracy (block design subtest), and placing puzzle pieces together with accuracy and speed (object assembly subtest). W███ performed in the intellectually deficient range of ability with a performance IQ of 63. W███ performance was significantly better on the Object Assembly subtest than his own mean score for all nonverbal reasoning tasks. W███ was required to put together puzzle pieces to form line drawings of common objects on the Object Assembly subtest. His performance on this particular subtest is an indication of his general ability in perceptual organization tasks, that is, tasks that require mentally organizing nonverbal, spatial information into meaningful part-whole relationships. Performance on this task also may be influenced by visual-motor ability (Object Assembly scaled score = 8).

*According to the American Association on Mental Deficiency, the diagnosis of Mental Retardation requires the establishment of below average (intellectually deficient) functioning and a deficit in adaptive behavior.*

ACADEMIC ACHIEVEMENT

W███ completed the WIAT Achievement test to assess his current grade levels and academic knowledge at this point in his education. He was assessed in Basic Reading, Math Reasoning (word problems), Spelling, Reading Comprehension, and Numerical Operation (math calculations). Listening Comprehension and Oral Expression were given to screen for expressive or receptive language difficulty, and written expression.

| Subtest | Raw Score | Standard Score | Classification | Grade Equivalent |
|---|---|---|---|---|
| Basic Reading | 26 | 86 | low average | 2:06 |
| Math Reasoning | 20 | 88 | low average | 2:05 |
| Spelling | 18 | 84 | low average | 2:03 |
| Reading Comp | 14 | 89 | low average | 2:06 |
| Numerical Oper. | 9 | 71 | borderline | 1:4 |
| Listening Comp. | 12 | 80 | low average | 1:1 |
| Oral Expression | 18 | 99 | average | 3:3 |
| Writing | 6 | 75 | borderline | <k:0 |

Reading

3

W███ performed in the low average range in overall reading skills, as indicated by his standard score on the Reading Composite (85). His skills in this area exceed those of only approximately 16% of students his age. W███ performed comparably on tasks that required him to correctly read a series of printed words (Basic Reading standard score = 88) and to read paragraphs and answer questions about what was read (Reading Comprehension standard score = 89).

Mathematics

W███ skills in mathematics are diverse and may not be adequately summarized by a single number. He scored much higher on tasks that evaluated his ability to understand number and consumer math concepts, geometric measurement, elementary graph reading, basic graph usage, and simple one-step word problems (Mathematics Reasoning standard score = 88) than on tasks that required him to add and subtract numbers up to two digits and to multiply one-digit numbers (Numerical Operations standard score = 71). Because of this variability in his performance, the Mathematics Composite standard score (77) may not be the best summary of his overall skills in mathematics. W███ skills in Numerical Operations are within the below average range and better than those of only approximately 3% of children his age. His Mathematics Reasoning subtest score is above that of approximately 21% of his peers, placing these skills in the low average range.

Language

W███ presents a diverse set of skills on different aspects of language. He performed much better on tasks that assessed his capability to describe scenes, give directions, and explain steps (Oral Expression standard score = 99) than on tasks that required him to answer questions pertaining to orally presented passages (Listening Comprehension standard score = 80). For this reason, the Language Composite standard score (88) may not be the most accurate manner in which to summarize his language skills. His Listening Comprehension subtest score is higher than only approximately 9% of his peers, placing these skills in the low average range. W███ performance on Oral Expression is within the average range and exceeded those of approximately 47% of children his age.

Writing

In overall writing skills, W███ performed in the below average range, as indicated by his Writing Composite standard score (76). His achievement in this area is better than that of only approximately 5% of students his age. W███ performance on tasks that required him to compose and write a clearly organized and complete letter (Written Expression standard score = 75) is comparable to his performance on tasks that required him to correctly spell verbally presented words (Spelling standard score = 84). W███ weak performance on the written expression subtest was due to his inability to imagine situations to write about. He was given several topics (i.e. ideal house, ideal vacation, ideal birthday present) but lacked the motivation and imagination necessary to write about these topics.

Ability-Achievement Discrepancy Analysis

W███ scores on the WIAT were compared to the levels of achievement predicted for a student with his general cognitive ability, as indicated by his Full Scale IQ score of 63 on the WISC-III

4

(administered 10/17/02). Significant differences between actual and predicted achievement scores are reported in this section. He performed particularly well on tasks involving Reading Comprehension. W▮▮ achieved a much higher score on this subtest (actual score = 89) than expected, based on his overall cognitive ability (predicted score = 75). This significant difference is highly unusual and indicates a specific strength in tasks that required him to read paragraphs and answer questions about what was read. W▮▮ performance in this area is still low average, however, compared to that of his peers. He performed particularly well on tasks involving Mathematics Reasoning. W▮▮ achieved a much higher score on this subtest (actual score = 88) than expected, based on his overall cognitive ability (predicted score = 73). This significant difference is highly unusual and indicates a specific strength in tasks that required him to understand number and consumer math concepts, geometric measurement, elementary graph reading, basic graph usage, and simple one-step word problems. W▮▮ performance in this area is still low average, however, compared to that of his peers.

VISUAL-MOTOR/PERCEPTUAL FUNCTIONING:

The Bender Visual Motor Gestalt Test is an instrument that assesses visual motor/perceptual functioning, and additionally screens for evidence of brain injury and emotional disturbance. The child is presented 8 cards with various symbols on them and asked to copy them, as they see them, on a sheet of white paper. On this assessment, W▮▮ made 5 errors of integration. With a BVMG Score of 5, W▮▮ obtained an age equivalency of 7 years 6 months to 7 years 11 months, which is 2 year below his chronological age, and in the below average range according to normative data. W▮▮ received a brain injury score of 5 which shows a moderate concern for neurological problems. Wayne received a BVMG emotional score of 1 which a low indication of emotional disturbance. Furthermore, W▮▮ error was associated with anxiety.

Indications of visual motor/perceptual difficulties were not seen.

SOCIAL AND EMOTIONAL BEHAVIOR:

W▮▮ preoccupation with death and violence was concerning to the examiner. When asked what his 3 wishes would be, W▮▮ commented that he would desire an African walking stick/sphere in case someone tried to attack him. He stated that his second wish would be food, but he could not elaborate on what types of food. His third wish was a knife in case an animal tried to attack him. W▮▮ also shared that he had a dream that his cousin, whom he described as crazy tried to stab him. W▮▮ stated that this dream was funny to him instead of upsetting or alarming. W▮▮ would benefit from counseling to address his thoughts of death and violence and the manifestation of this in his behavior.

SUMMARY AND RECOMMENDATIONS:

W▮▮ is a 9-year-old child who completed the WISC-III ,WIAT, and BVMG. His general cognitive ability, as estimated by the WISC-III, is intellectually deficient (FSIQ = 63). Wayne's verbal and performance ability scores were also both in the intellectually deficient range (VCI = 65, and PIQ = 62). W▮▮ academic achievement was in the low average range (reading and language composites) and borderline range (mathematics composite). W▮▮ overall academic achievement scores were commensurate with his intellectual ability based on his performance on the WISC-III. Recommendations are as follows:

5

- W███ should receive a Vineland Adaptive Behavior Scale evaluation due to his deficient intelligence scores.
- W███ should receive counseling with the School Counselor to address anger management and feelings of anxiety.


*Deidra E. Alexander*
*School Psychologist*
*District of Columbia Public Schools*
*Certification Number-01990*

6

W█████ M█████                    10/18/02                              10

## ABILITY-ACHIEVEMENT DISCREPANCY ANALYSIS

DATE OF ABILITY TESTING:   10/17/02
ABILITY SCORE TYPE:        FSIQ
ABILITY SCORE:             63

### PREDICTED-ACHIEVEMENT METHOD

|  | PREDICTED SCORE | ACTUAL SCORE | DIFF. | SIGNIF. | FREQ. |
|---|---|---|---|---|---|
| **SUBTESTS** | | | | | |
| Basic Reading | 78 | 88 | 10 | ns | 15% |
| Mathematics Reasoning | 73 | 88 | 15 | .01* | 5% |
| Spelling | 81 | 84 | 3 | ns | >25% |
| Reading Comprehension | 75 | 89 | 14 | .05* | 10% |
| Numerical Operations | 79 | 71 | -8 | ns | 20% |
| Listening Comprehen. | 77 | 80 | 3 | ns | >25% |
| Oral Expression | 84 | 99 | 15 | ns | 15% |
| Written Expression | 83 | 75 | -8 | ns | >25% |
| **COMPOSITES** | | | | | |
| Reading | 75 | 85 | 10 | ns | 15% |
| Mathematics | 74 | 77 | 3 | ns | >25% |
| Language | 79 | 88 | 9 | ns | 25% |
| Writing | 80 | 76 | -4 | ns | >25% |

* significant at the .05 level

WISC-III Writer Windows Version 1.0

85

<u>Addendum to Psychoeducational Evaluation for W████ M█████</u>

Due to W█████ deficient performance on the WISC-III (FSIQ=63), he was given an additional cognitive assessment.

The Test of Non Verbal Intelligence (TONI-3) is a 45 item nonverbal, language free measure of cognitive ability. The TONI-3 was designed to assess cognitive ability for children and adults whose intellectual, linguistic, and/or motor skills might prevent them from successful performance on more traditional intelligence tests. The TONI-3 is un-timed to prevent some test anxiety usually present with timed tests. Due to the TONI-3 being language free, it is additionally less culturally biased than more traditional intelligence tests. The child is asked to solve abstract/figural problems without overtly using language. Scores are expressed as quotient scores and comparable to traditional IQ scores yielded on the WISC-III.

W████ successfully answered 11 questions out of a ceiling number of 20 questions. His raw score of 11 yielded a TONI-3 quotient score of 84, which is in the below average range and 1 standard deviation below the mean score of 100. According to normative data, W████ performed the same or better than 14% of children his same age. Furthermore, the age equivalency of this score is 6 years 9 months, which is approximately 2-3 below his chronological age of 9-0.

Interpretation and Recommendations: It is my professional opinion that W████ TONI-3 score is a better representation of his intellectual ability than the WISC-III. W████ TONI-3 quotient of 84 compared to his academic achievement is commensurate and does not show evidence of a learning disability. Additional recommendations are as follows:

- School Counseling to address feelings of stress and anger management.
- Conflict resolution training (i.e. walking away, planned ignoring, asking for help appropriately, change of behavior towards adversaries).
- Proximity Control: Allow W████ to sit near the Teacher or in an area where he is less provoked by students.
- Behavior plan including incentives to motivate W████ to complete assignments and behave appropriately.

*Deidra E. Alexander*
*School Psychologist*
*District of Columbia Public Schools*
*Certification Number-01990*

7

86

# AGS® ASSIST™



## ADAPTIVE BEHAVIOR SCALES

**Classroom Edition**

### Student Information Summary

Name: M███████, W█████

ID#: 9054440

Birth date: ████1993

Questionnaire date: 01/21/2003

Age: 9-3

Gender: Male

Ethnicity: African American

Grade: 4

School: Kimball ES

### Teacher

Name: Brice

ID#: 4

Gender: Female

Grade or Subject Area: General ED - 4th gr.

School: Kimball ES

**Present Classification or Diagnosis:** none

**Reason for the Questionnaire:** Diagnostic/evaluation purposes

**Other Information:**

| Other Test Data | Test Name | Date | Standard Score |
|---|---|---|---|
| Intelligence | | | |
| Achievement | | | |
| Other Tests | | | |

**Copyright 2002, American Guidance Service, Inc. All rights reserved.**

# Vineland Adaptive Behavior Scales

Classroom Edition

January 29, 2003

## ADAPTIVE BEHAVIOR STANDARD SCORE SUMMARY

**Student:** M▮▮▮▮▮, W▮▮▮▮

**ID:** 9054440

**Questionnaire Date:** 01/21/2003

**Age:** 9-3

### Domain Score Summary

| Domain | Raw Score | Standard Score | Band of Error 90% Conf. | Percentile Rank | Stanine | Adaptive Level | Age Equiv. |
|---|---|---|---|---|---|---|---|
| Communication | 105 | 90 | 84 - 96 | 25 | 4 | Adequate | 8-2 |
| Daily Living Skills | 177 | 121 | 116 - 126 | 92 | 8 | Mod. High | 14-0 |
| Socialization | 91 | 113 | 108 - 118 | 81 | 7 | Adequate | 13-3 |
| Motor Skills (Est) | NA | | | | | | |
| Sum: | 324 | | | | | | |
| Adaptive Behavior Composite | | 108 | 105 - 111 | 70 | 6 | Adequate | 11-10 |

### Subdomain Score Summary

| Domain | Subdomain | Raw Score | Adaptive Level | Age Equiv. |
|---|---|---|---|---|
| Communication | Receptive | 20 | Adequate | 12-0 |
| | Expressive | 47 | Mod. Low | 5-0 |
| | Written | 38 | Adequate | 9-4 |
| Daily Living Skills | Personal | 71 | Mod. High | 14-0 |
| | Domestic | 33 | Mod. High | 14-9 |
| | Community | 73 | Mod. High | 12-9 |
| Socialization | Interpersonal Relationships | 34 | Mod. High | 15-0 |
| | Play and Leisure Time | 30 | Mod. High | 13-9 |
| | Coping Skills | 27 | Adequate | 10-10 |
| Motor Skills (Est) | Gross | NA | | |
| | Fine | NA | | |

**Copyright 2002, American Guidance Service, Inc. All rights reserved.**

# Vineland Adaptive Behavior Scales
Classroom Edition
January 29, 2003

## STANDARD SCORE GRAPHIC PROFILE

**Student:** M̶̶̶̶̶̶̶, W̶̶̶̶̶
**ID:** 9054440

**Questionnaire Date:** 01/21/2003
**Age:** 9-3

*90%* **Confidence Level**



| | Communication | Daily Living | Socialization | Motor Skills | ABC |
|---|---|---|---|---|---|
| Band Of Error: | 84 - 96 | 116 - 126 | 108 - 118 | | 105 - 111 |
| Standard Score: | 90 | 121 | 113 | | 108 |

Copyright 2002, American Guidance Service, Inc. All rights reserved.

# Vineland Adaptive Behavior Scales
Classroom Edition
January 29, 2003

## ADAPTIVE BEHAVIOR DOMAIN ANALYSIS

**Student:** M█████, W█████
**ID#:** 9054440

**Questionnaire Date:** 01/21/2003
**Age:** 9-3

### DOMAIN STRENGTHS AND WEAKNESSES
#### Standard Score and Mean Differences

| Domain | Standard Score | Standard Score/ Mean Difference | Strength/ Weakness | Significance Level | Unusual Difference |
|---|---|---|---|---|---|
| Communication | 90 | -18 | Weakness | .01 | 1% |
| Daily Living Skills | 121 | 13 | Strength | .01 | 5% |
| Socialization | 113 | 5 | Strength | Non-signif | Not Unusual |
| Sum: | 324 | | | | |
| Mean: | 108 | | | | |

### DOMAIN STANDARD SCORE DIFFERENCES
#### Pairwise Comparisons

| Domain | Standard Score Difference | Significance Level | Unusual Difference |
|---|---|---|---|
| Communication  < Daily Living Skills | 31 | .01 | 1% |
| Communication  < Socialization | 23 | .01 | 5% |
| Daily Living Skills  > Socialization | 8 | Non-signif | Not Unusual |

### DOMAIN STANDARD SCORE DIFFERENCES
#### Range of Scores

| Domain | Standard Score Difference | Significance Level | Unusual Difference |
|---|---|---|---|
| Highest Domain Standard Score: | | | |
| Daily Living Skills | | | |
| | 31 | .01 | Not Unusual |
| Lowest Domain Standard Score: | | | |
| Communication | | | |

Copyright 2002, American Guidance Service, Inc. All rights reserved.

90

# Vineland Adaptive Behavior Scales
Classroom Edition
January 29, 2003

## NARRATIVE REPORT

**Student:** M██████, W█████
**ID#:** 9054440

**Questionnaire Date:** 01/21/2003
**Age:** 9-3

The Vineland Adaptive Behavior Scales: Classroom Edition provides an assessment of adaptive behavior in the classroom for individuals who are 3 years to 12 years, 11 months old. The Vineland covers adaptive behaviors in four different domains: Communication, Daily Living Skills, Socialization, and Motor Skills. It also provides a composite score that summarizes the individual's performance across all of these domains.

W████ M█████ was 9 years 3 months old on the interview date of 01/21/2003. Brice was the teacher who completed the questionnaire. Wayne's standard score on the Adaptive Behavior Composite is 108. The confidence level of 90 percent yields a confidence band of 105 to 111. W██████ percentile rank of 70 on the Adaptive Behavior Composite indicates that his score is higher than or equal to over 70 percent of similarly aged individuals in the norm group. His adaptive level is rated as Adequate for his age group.

W█████ level of adaptive functioning within the Communication domain is Adequate for his age group. His standard score of 90 results in a confidence band of 84 - 96 at the 90 percent confidence level. His percentile rank is 25. Thus, his score in this area is higher than or equal to 25 percent of his peers in the normative sample. He has an adaptive level of Adequate for Receptive Communication, Moderately Low for Expressive Communication, and Adequate for Written Communication.

W█████ standard score for the Daily Living Skills domain is 121 which results in a confidence band of 116 - 126 at the 90 percent confidence level. This score represents a Moderately High level of adaptive functioning for an individual of his age. His percentile rank for the Daily Living Skills domain is 92. His adaptive level is Moderately High for all three subdomains (Personal, Domestic and Community).

W██████ level of adaptive functioning within the Socialization domain is Adequate for his age group. His standard score is 113 which results in a confidence band of 108 - 118 at the 90 percent confidence level. His percentile rank is 81. A look at the subdomain scores within the Socialization domain indicates that W█████ adaptive level is Moderately High for Interpersonal Relationships, Moderately High for Play and Leisure Time, and Adequate for Coping Skills.

Copyright 2002, American Guidance Service, Inc. All rights reserved.

91

# Vineland Adaptive Behavior Scales
Classroom Edition
January 29, 2003

### NARRATIVE REPORT

**Student:** Me██████, Wa████
**ID#:** 9054440

**Questionnaire Date:** 01/21/2003
**Age:** 9-3

Wa███ standard score for the Communication domain is significantly different from the average for all of the domains. This large a difference was also very rarely seen in the normative sample. Such a difference indicates that communication is a weakness for Wa███ relative to his skills in the other areas. Activities that target the development of communication skills may therefore be useful. Although his overall adaptive behavior level was Adequate, attention to increasing his communication skills may raise the level even higher.

Wa███ standard score for the Daily Living Skills domain is significantly different from the average for all of the domains. This large a difference was also very rarely seen in the normative sample. Such a difference indicates that his abilities in day-to-day living are a strength that he can build upon in the future.

Copyright 2002, American Guidance Service, Inc. All rights reserved.

92

DISTRICT OF COLUMBIA PUBLIC SCHOOLS

DEPARTMENT OF SPECIAL EDUCATION

CLINICAL PSYCHOLOGICAL EVALUATION REPORT

Name: Wayne McMillan      D. O. B:    -93      Chronological Age: 9 yrs. 6 mths.

Date of Evaluation: 4-8-03      Evaluator: Ada E. Vincent, Ph.D.      School: Kimball Elementary

**REASON FOR REFERRAL:**

W     was referred for a clinical psychological evaluation to obtain information about his emotional and behavioral functioning in order to determine the most appropriate treatment and school programming.

**TESTS ADMINISTERED**

- Goodenough/Harris Human Figure Drawing (D-A-P)
- Children Depression Inventory ( CDI )
- Children's Apperception Test ( CAT )
- Bender Gestalt Visual-Motor Test ( BGVMT )
- Devereux Behavior Rating Scales completed by the teacher
- Attention-Deficit/ Hyperactivity Disorder Test ( ADHDT ) completed by the teacher
- Observation and Interview with student
- Brief Interview with Special Education Coordinator

**TESTING OBSERVATIONS & CLINICAL INTERVIEW**

W     is a 9 years, 6 month-old African American male who is currently attending Kimball Elementary School. He previously attended Wilkinson Elementary School. He willingly accompanied this examiner to the evaluation room and was quite willing and compliant with this examiner throughout the entire evaluation. He appeared somewhat depressed but was successful in attempting all the tests administered to him. He was able to complete the evaluation in a reasonable amount of time. Surprisingly also, he was easily engaged in a conversation at the end of the testing exercises, and had a lot to share. He reported that he lives with his mother, 5 year old sister, and his mother's friend who has been living with them for the last 2 years. He also reported that neither his father's nor his sister's father ever comes to see them. He further stated that his father was living in Georgia but currently lives in Washington, D.C.. He complained that often times when his father visits him, he leaves and promises that he would return, but never comes back. Yet, he said that he wants to go to live with him, but thinks it will never happen. He stated that he last saw him 2 months ago. One of Wayne's 3 wishes is that his father will come to live with them. He said that his father and step-father can live together if they can get along. He shared that his stepfather helps them with the bills, a car, and cell phone, but he frets when his mother's friends visit. He said he has a nice relationship with his

W█████ Pg. 2.

mother's friend, and he buys them things, give them money and stuff such as a Play Station 11, but his father gives him a dollar. He also shared his concern that he doesn't want his mother to take his father to court because he wants him to come back and live with them. It appears that W████ is very concerned about his family dynamics, and is experiencing mixed feelings about the male parental figures in his life. He is seemingly very disappointed with his father's inconsistency and unreliable behavior. He doesn't seem to trust him but is having a difficult time letting go of the thoughts and wishes of reunification with his father.

W████ is tall for his age and has average weight. He appears to be a little older than his stated age. He was dressed appropriately in his school uniform. Overall, he was fairly clean and tidy. He was oriented to person, place, situation and time. He was fairly alert. His eye contact was fairly good. His mood was mostly depressed and affect was sad. His insight was fair, and judgment seemed limited. He denied suicidality, homicidality, as well as any psychotic symptoms. He remained responsive, cooperative, interested, and motivated throughout the evaluation period. He exhibited no frustration as he attempted the various tasks. As a result, this evaluation can be viewed as a valid estimate of his social-emotional and behavioral functioning at this current time.

## BACKGROUND INFORMATION

According to W████, he had just returned from several days of suspension. He was called back to school one day prior to the end of his suspension to facilitate this evaluation. Surprisingly, he showed no frustration concerning returning to school one day earlier. However, he seemed depressed and complained incessantly about various problems he experiences both at school and at home. He explained that he was suspended because he was involved in a fight which was initiated by another peer. He said he was 'mad' because the peer was not suspended also. He related that he was apprehended for behaviors such as talking back under his breath. He also reported that "they say I am cursing under my breath" as if to indicate he was not taking responsibility for such behavior.

According to Ms. Alexander, the school psychologist for DCPS, W████ obtained a WISC-111 deficient Full Scale IQ score of 63 which is within the intellectually deficient range. Both the Verbal IQ score of 65, and the Performance IQ score of 62 are also within the intellectually deficient range. His academic achievement was in the low average range in reading and language, and in the borderline range in mathematics. She concluded that his overall academic achievement scores were commensurate with his intellectual ability. Ms. Alexander was concerned that W████ was seemingly preoccupied with death and violence which was demonstrated through his 3 wishes. He reported that he wants an African walking stick to defend against his attacker. He also shared that he wishes for a knife in case an animal tried to attack him. He also shared a dream in which his cousin tried to stab him, and described the dream as funny rather than upsetting or alarming. Ms. Alexander stated that W████ would benefit from counseling services to address his thoughts of death and violence as well as his anger and anxiety. She also recommended that a Vineland be done.

According to his teacher, Mrs. Brice, his behavior is inappropriate in the classroom. She stated that he is disobedient, cheats on assignments, throws objects in the classroom, is verbally aggressive, yells, uses profanity, and does not complete assignments. It is also documented that W████ reported that he does not like Kimball Elementary because other students 'mess' with him and get him into trouble, and his teacher ignores him.

## TEST RESULTS AND INTERPRETATION

On the Bender Motor Gestalt Test, W████ made 7 errors which is equivalent to a standard score of 71. Such an error score signifies that his visual-motor integration skills and perceptual-motor maturity are lower than what is expected of same age peers. The arrangement of the designs is somewhat confused and irregular. Such arrangement of the designs suggests intense and overwhelming anxiety, manic-depressive conditions, suggests tension and anxiety, negativistic tendencies, and impulsivity.

W█████ Pg. 3.

W█████'s Human Figure drawing is coordinated but disproportionate. Several basic features are omitted. His raw score of 24 is converted to an IQ score of 94 according to the Goodenough/Harris scoring criteria. This solid average score suggests that his social maturity is what is expected of most same age peers.

W█████ responses to the self-reporting Depression Inventory ( CDI ) resulted in a score of 53. This score is lower than the cut-off score of 65, indicating that W█████ may not be experiencing any depressive feelings. On this measure, only the three following statements of the 10 statements responded to indicate some discomfort. These are: "Things bother me all the time; I am not sure if things will work out for me; and I do many things wrong."

The responses on the Children's Apperception Test indicated the positive theme of enjoyment consisting of going on picnics and riding a bike, as well as attending school and learning. The negative themes include being lost, whipping and other punishment for being 'bad,' being hurt, and isolation. His stories seem to suggest that he has some interest in attending school and learning, but is concerned about being the punishment he may experience for being 'bad.'

W█████ teacher, Ms. Scott also responded to the Attention-Deficit/ Hyperactivity Disorder ( ADHD ) Test which is a screener for the identification of ADHD-like symptoms. According to the results, he obtained an ADHD Quotient score of 134 which is highly indicative of an ADHD diagnosis. Such level of inattention, impulsivity, and hyperactivity can certainly have a negative impact on his academic, emotional, and behavioral levels of functioning.

## DIAGNOSTIC IMPRESSIONS AND SUMMARY

An assessment of W█████ social-emotional functioning considering the available data, indicates that W█████ is experiencing a myriad of problems which seem to leave him feeling uncomfortable. These feelings which include anger, fear, anxiety, sadness, madness, feelings of rejection, and low self-esteem. and depression can be categorized as internalized problems. He is also having difficulty with interpersonal relations both with peers and adults, In turn such difficulties with relationship issues probably leave him feeling rejected and experiencing low self-esteem. He seems mostly discontented, angry, sad, and depressed. These feelings altogether are the precipitants of the externalized problems which are reported. According to the various reports, he exhibits inappropriate aggressive acts such as annoying others, initiate or pick fights, and teasing or bullying others. He reportedly becomes upset and emotional when he can't have his way to get what he wants. He becomes overactive and impulsive at times when he does what he wants and not what is told or expected of him. These behaviors result in him losing friends, feeling isolated, discouraged and depressed. He also strongly feels he is treated unfairly, claiming his opponent was not suspended like he was.

In addition, W█████ is apparently experiencing several psychosocial stressors such as having 2 father figures with his biological father scoring significantly less points because he leaves him feeling very disappointed because he is unable to rely on him. He also seems to allude to feeling deprived especially emotionally, not feeling safe and comfortable. He seems focused on a wish to have both fathers living together in the home and be able to get along well without any problems. All these feelings, wishes, and fear of not getting what he wants may add to his feelings of anxiety and discomfort.

Altogether these feelings and problematic behaviors are barriers to his full participation in the classroom and the school as a whole. Overall, the test data indicates that he is experiencing depressive feelings, and fears, along with an increasing level of worrying and complaining about the stressors he experiences. Also, the external behaviors are increasing because of the frustration he feels when he fails to get what he wants, and when relationships cannot be formed or maintained. As a result, the IEP team needs to consider what services will be best suited to assist him in making the desired changes, and thereby improve his academic performance. In order to assist in the determination about a disability, up-to-date information presented at the IEP meeting should also be considered along with the test data. Based on all the collected data, the following diagnostic impressions are being considered at this time.

W█████/ Pg. 4.

**DSM-IV DIAGNOSIS**

| | | |
|---|---|---|
| Axis I. | 311. | Depressive Disorder Not Otherwise Specified |
| | | Rule-out Attention-Deficit/Hyperactivity Disorder |
| | 312.9 | Disruptive Behavior Disorder Not Otherwise Specified |
| Axis II. | V71.09 | None |
| Axis III. | | None |
| Axis IV. | | Separation from bio-father, School problems, and peer relationship problems. |
| Axis V. | GAF = 55 ( current ). | |

**RECOMMENDATIONS**

1.  The team should consider all the information which would be shared by care-givers and teachers at the IEP meeting in order to make a determination about the assistance that he needs.

2.  He should receive counseling at least twice a week to provide him with the opportunity to address his impulsivity, aggressive behaviors, as well as feelings especially related to anger, sadness, rejection, and low self-esteem.

3.  He would benefit from a Behavior Modification Plan which would target problems of aggression, impulsivity, and interpersonal relationships.

_Ada E. Vincent, Ph.D._    4/14/03

Ada E. Vincent, Ph.D., Licensed psychologist    Date

96

**NEW DIMENSIONS, INC.**
1001 Connecticut Avenue, NW., Suite #1015
Washington, DC 20036

| | |
|---|---|
| Patient Name: | W_____ M_____ |
| Date of Birth: | _____7/1993 |
| Age: | 12 year old |
| Date of Report/Evaluation: | 6/23/06 |
| Psychiatrist: | Rama Prayaga, M.D. |

## COMPREHENSIVE PSYCHIATRIC EVALUATION

**Reason for Referral:**
W_____ is a 12-year-old African American male brought in by his family for evaluation. W_____ is exhibiting mood swings. There are concerns about substance abuse problems. There have been multiple suspensions at school. W_____ attends Kelly Miller Junior High School, where he has been having adjustment problems and mother is looking for a different school program. W_____ mother is the only caregiver with no support or help from his biological father. W_____ denied any suicidal thought or plans. He denied psychotic symptoms like delusions or hallucinations. His cognitive functions are very limited. Sleep and appetite are erratic. He is not on any psychotrophic medications.

**Past Psychiatry History:**
None

**Past Medical History:**
None

**Substance Abuse History:**
W_____ mother has concerns about substance abuse problems, but W_____ minimizes his drug problems. Wayne had gone to Court and is on probation.

**Developmental History:**
W_____ lives with her mother. There is no support from his biological father. His developmental milestones are slightly delayed. W_____ receives Special Education in school. Mother is trying for a different school placement.

**Family History:**
Positive for depression

**WM21**

RE: W█████ M█████
June 23, 2006
Page 2

**Mental Status Exam**:
W████ is 12 years old who looks appropriate for his age, normally dressed and cooperative.
Speech: Normal in quantity, rate, rhythm, volume, tone
Mood: Euthymic
Affect: Appropriate to the mood
Thought Process: Logical, coherent
Thought Content: No delusions or hallucinations
Cognitive Functions: Limited
Sleep and Appetite: Erratic
Insight and Judgment: Limited

## DSM IV DIAGNOSIS

| | |
|---|---|
| AXIS I | Disruptive Behavior Disorder |
| | Mood Disorder due to Polysubstance Abuse |
| AXIS II | None |
| AXIS III | None |
| AXIS IV | Moderate |
| AXIS V | GAF Score: 60 |

## RECOMMENDATIONS

- W████ would need multi-modal treatment interventions, which would include:
  o Counseling
  o Careful considerations of medications
  o Random urine drug screenings
  o Structured school program with smaller classrooms

6/23/06

Rama Prayaga, M.D.
Child and Adolescent Psychiatrist

RP/jrh

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENCOUNTER TRACKER FORM



Student's Last Name: M M

Student's First Name: W

**PLEASE RETURN FORMS TWICE MONTHLY**

Forms MAY BE Photocopied

Original Signature Required

Submission for:

Month/Year

☐ 1st – 15th
☐ 16th – 31st

Date of Birth (MM/DD/YY): 93

Problem Code: 0 40

Student ID Number: 9 0 5 4 4 0

Student Social Security #:

Current School Name: Kimball

School Code: 0 3 5 9

Provider's Last Name: Vincent

Provider Code: 7 0 5

Provider's First Name: Ada

Provider Title: Clin. Psych.

Provider Signature (REQUIRED) By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.: Ada E Vincent

Date Signed: 0 4 0 8 0 3

Goal to be addressed: To collect clinical data for IEP meeting

Objective to be addressed: To present such data at the mtg for eligibility for sted

| Date Service Provided (MM/DD/YY) | Procedure Code | Type of Service | Response to Treatment | Ind. or Group (indicate #) | Duration (in minutes) |
|---|---|---|---|---|---|
| 0 4 0 8 0 3 | 4 0 0 | A 0 1 | 1 0 | 8 1 | 0 7 5 |

Progress Note (Must be directly related to the identified goal/objective listed above): The clinical evaluation is completed.

| Date Service Provided (MM/DD/YY) | Procedure Code | Type of Service | Response to Treatment | Ind. or Group (indicate #) | Duration (in minutes) |
|---|---|---|---|---|---|
| | | | | | |

Progress Note (Must be directly related to the identified goal/objective):

Office Use Only: _____    Batch # _____    Form # _____

## ENCOUNTER TRACKER FORM
### School Year 2003-2004

Student LN: m███████████████  Student FN: W█████████

Student ID: 9 0 5 4 4 4 0  Social Security No: ██████████  DOB: ██████ 9 3

School Code: 0 2 5 9  School Name: K I M B A L Y E S  Primary Disability: E D

Provider LN: K E E L I N G  Provider FN: D E N I S E  Provider Code: 7 5 0

Servicing School Code: 0 2 5 9  School District: W D C  Provider ID: ████████

IEP Service – Actual Start Date / Assessment Order Date: 0 9 2 5 0 3  IEP Service Code: 0 0 9  Presenting Problem: 3 / 8 . 9 0

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 9 2 6 0 3 | 9 0 0 9 - H A | | 0 1 | 0 1 5 | 0 1 | 1 0 | Starting group |

Progress Notes (Continued): Initial meeting with student. Informed of future session

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | – | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | – | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | – | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action

Provider Signature: _Denise D. Keeling_  Credentials _LICN_  Date Signed: 10 \ 1 \ 03

Supervisor's Signature: _____  Credentials _____  Date Signed: __ \ __ \ __

# ENCOUNTER TRACKER FORM
## School Year 2003-2004



Student LN: M█████████          Student FN: W████████

Student ID: 9 0 5 4 4 4 0    Social Security No: ██████████    DOB: ████ 9 3

School Code: 0 2 5 9    School Name: K I M B A L L  E S      Primary Disability: E D

Provider LN: K E E L I N G      Provider FN: D E N I S E    Provider Code: 7 5 0

Servicing School Code: 0 2 5 9    School District: W D C    Provider ID: ████████

IEP Service – Actual Start Date/Assessment Order Date: 0 9 2 5 0 3    IEP Service Code: 0 0 9    Presenting Problem: 3 1 3 . 9 0

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 0 2 0 3 | 9 0 8 5 7 - A J A | 0 1 | 0 3 0 | 0 2 | 1 0 | Progress Toward goal |

Progress Notes (Continued): W████ was extremely verbal and active in answering questions. He interacted well with Group Member.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 0 9 0 3 | 9 0 8 5 7 - A J A | 0 2 | 0 3 0 | 0 5 | 1 0 | Progress toward goal |

Progress Notes (Continued): W████ is able to work well independently. He has difficulty accepting his limitation.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 1 0 0 3 | 9 0 8 0 4 - A J A | 0 1 | 0 3 0 | 0 1 | 1 0 | Progress toward goal |

Progress Notes (Continued): W████ is able to discuss his thoughts & feelings appropriately. He is aware of some of his limitations.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 1 4 0 3 | 9 0 8 5 7 - A J A | 0 1 | 0 3 0 | 0 2 | 1 0 | Progress toward goal |

Progress Notes (Continued): W████ can be very cooperative. He required several directives during his session.

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: Denise D. Keeling    Credentials LICSW    Date Signed: 1 0 1 4 0 3

Supervisor's Signature: _____    Credentials _____    Date Signed: __/__/__

September 2003

101

# ENCOUNTER TRACKER FORM
## School Year 2003-2004

Student LN: M_____    Student FN: M_____

Student ID: 9 0 5 4 4 9 0    Social Security No: _____    DOB: _____ 9 3

School Code: 0 2 5 9    School Name: K I M B A L L  E S    Primary Disability: E D

Provider LN: K E E L I N G    Provider FN: D E N I S E    Provider Code: 7 5 0

Servicing School Code: 0 2 5 9    School District: W D C    Provider ID:

IEP Service – Actual Start Date/ Assessment Order Date: 0 9 2 5 0 3    IEP Service Code: 0 0 9    Presenting Problem: 3 1 3 . 9 0

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 0 2 6 0 3 | 9 0 8 0 4 - A J A | 0 1 0 | 3 0 0 | 1 | 0 | Progress toward goal. |

Progress Notes (Continued) W_____ discussed appropriate responses to conflict. He needs redirection to channel his anger. He does quick role play.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 2 8 0 3 | 9 0 8 5 7 - A J A | 0 1 | 0 3 0 | 0 2 | 1 0 | Progress toward goal. |

Progress Notes (Continued) W_____ ability to grasp new information gets better. He listens to directions better and asks questions when needed.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
|  | - |  |  |  |  |  |  |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
|  | - |  |  |  |  |  |  |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: Denise O. Keeling    Credentials: LICSW    Date Signed: 10 31 03

Supervisor's Signature: _____    Credentials _____    Date Signed: __/__/__

September 2003

102



# ENCOUNTER TRACKER FORM
## School Year 2003-2004

Student LN: | W | ███████████ | | |    Student FN: | W | ███████ | | | |

Student ID: | 9 | 0 | 5 | 4 | 4 | 4 | 0 |    Social Security No: ████████████    DOB: ████████ | 9 | 3 |

School Code: | 0 | 2 | 5 | 9 |    School Name: | K | I | M | B | A | L | L | | E | S |    Primary Disability: | E | D |

Provider LN: | K | E | E | L | I | N | G | | |    Provider FN: | D | E | N | I | S | E |    Provider Code: | 7 | 5 | 0 |

Servicing School Code: | 0 | 2 | 5 | 9 |    School District: | W | D | C |    Provider ID: ░░░░░░░░░

IEP Service – Actual Start Date/Assessment Order Date: | 0 | 9 | 2 | 5 | 0 | 3 |    IEP Service Code: | 0 | 0 | 9 |    Presenting Problem: | 3 | 1 | 8 | . | 9 | 0 |

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 9 0 6 0 3 | 9 0 8 0 4 - A J A | | 0 1 | 0 3 0 | 0 1 | 1 0 | Progress toward goal |

Progress Notes (Continued)

W███████ is showing improvement in social skills and making better choices. He is always eager to join activity.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | — | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | — | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: *Denise O. Keeling*    Credentials LICSW    Date Signed: 11 / 18 / 03

Supervisor's Signature: _____    Credentials _____    Date Signed: ___/___/___

September 2003    103

# ENCOUNTER TRACKER FORM
## School Year 2003-2004

| | |
|---|---|
| Student LN: N███████ | Student FN: W██████ |
| Student ID: 9 0 5 4 4 4 0 | Social Security No: ████████ | DOB: ██████ 9 3 |
| School Code: 0 2 5 9 | School Name: K I M B A L L  E S | Primary Disability: E D |

Provider LN: K E E L I N G    Provider FN: D E N I S E    Provider Code: 7 5 0

Servicing School Code: 0 2 5 9    School District: W D C    Provider ID:

IEP Service – Actual Start Date/ Assessment Order Date: 0 9 2 5 0 3    IEP Service Code: 0 0 9    Presenting Problem: 3 / 8 . 9 0

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 1 1 8 0 3 | 9 0 8 0 4 - A J A | 0 1 | 0 1 | 5 0 | 1 | 0 | |

**Progress Notes (Continued):** W████ stated he wanted to attend College. He is eager to learn more.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 1 2 0 0 3 | 9 0 8 5 7 - A J A | 0 3 | 0 | 4 5 | 2 | 1 | 0 |

**Progress Notes (Continued):** W████ was able to stay on task during the Etiquette Training activity.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 1 2 5 0 3 | 9 0 8 5 7 - A J A | 0 3 | 0 | 9 0 | 1 | 4 | 0 |

**Progress Notes (Continued):** W████, along with his mother participated re Debuting Dinner. He demonstrated his social and etiquette skills.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

**Progress Notes (Continued):**

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: Denise O. Keeling    Credentials LIGN    Date Signed: 12 2 03

Supervisor's Signature: _____    Credentials _____    Date Signed: _____

# ENCOUNTER TRACKER FORM
## School Year 2003-2004

| Student LN: | M███████████ | Student FN: | W█████████ |
|---|---|---|---|

Student ID: 9 0 5 4 9 9 0    Social Security No: ███████████    DOB: █████████ 9 3

School Code: 0 2 5 9    School Name: K I M B A L L E S    Primary Disability: E D

Provider LN: K E E L I N G    Provider FN: D E N I S E    Provider Code: 7 5 0

Servicing School Code: 0 2 5 9    School District: W D C    Provider ID:

IEP Service – Actual Start Date/ Assessment Order Date: 0 9 2 5 0 3    IEP Service Code: 0 0 9    Presenting Problem: 3 1 3 . 9 0

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 2 0 2 0 3 | 6 0 0 0 1 - H A | B | 0 4 | 0 0 0 0 | 0 1 | 0 | |

Progress Notes (Continued): *Student was suspended.*

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 0 4 0 3 | 6 0 0 0 1 - H A | B | 0 4 | 0 0 0 0 | 0 1 | 0 | |

Progress Notes (Continued): *Student was suspended.*

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 0 5 0 3 | 9 0 8 5 7 - A J | A | 0 1 | 0 4 5 0 | 4 1 | 0 | |

Progress Notes (Continued): *W████ discussed his issue of having conflict with others. He wants to succeed but has difficulty seeing how his behavior can negatively affect his progress.*

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 0 9 0 3 | H 2 0 0 0 - A J | G | 1 4 0 0 | 0 0 | 1 | 0 | |

Progress Notes (Continued): *Social worker attended eligibility meeting.*

REQUIRED:

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: *Denise O. Keeling*    Credentials LICSW    Date Signed: 12/16/03

Supervisor's Signature: _____    Credentials _____    Date Signed: ___/___/___

September 2003

105

# ENCOUNTER TRACKER FORM
## School Year 2003-2004

Student LN: M██████████    Student FN: W████

Student ID: 9 0 5 4 4 4 0    Social Security No: ███████████    DOB: ████████ 9 3

School Code: 0 2 5 9    School Name: K I M B A L L   E S    Primary Disability: E D

Provider LN: K E E L I N G    Provider FN: D E N I S E    Provider Code: 7 5 0

Servicing School Code: 0 2 5 9    School District: W D C    Provider ID: ▨▨▨▨▨▨▨▨

IEP Service – Actual Start Date/ Assessment Order Date: 0 9 2 5 0 3    IEP Service Code: 0 0 9    Presenting Problem: 3 / 8 . 9 0

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 2 2 6 0 3 | 6 0 0 0 1 - H A F | | 0 1 | 0 0 0 | 0 0 1 | 0 | |

Progress Notes (Continued): Winter Break

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 2 6 0 3 | 6 0 0 0 1 - H A C | | 0 2 | 0 0 0 | 0 1 | 0 | |

Progress Notes (Continued): W████ is being transferred to another school.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued):

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued):

REQUIRED:

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Denise O. Keeling_    Credentials _LICSW_    Date Signed: _1, 6, 04_

Supervisor's Signature: _____    Credentials _____    Date Signed: _____

September 2003

106



**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

udent LN: | M | [redacted] | | | | | | | |     Student FN: | W | [redacted] | | | | |

udent ID: | 9 | 0 | 5 | 4 | 4 | 0 |  Social Security No: [redacted]  DOB: [redacted] | 9 | 3 |

hool Code: | 0 | 3 | 2 | 2 |  School Name: | S | M | O | T | H | E | R | S | | | | |  Primary Disability: | E | D |

ovider LN: | B | O | W | M | A | N | | | |  Provider FN: | A | N | N | A | | |  Provider Code: | 7 | 5 | 0 |

rvicing School Code: | 0 | 3 | 2 | 2 |  School District: | W | D | C |  Provider ID: [shaded]

EP Service – Actual Start Date/
ssessment Order Date: | 0 | 9 | 2 | 4 | 0 | 3 |  IEP Service Code: | 0 | 1 | 2 |  Presenting Problem: | 3 | 1 | 3 | . | 9 | |

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 3 3 29 04 | 90857 - AJ | A | 0 1 | 0 45 | 04 | 1 0 | |

progress Notes (Continued) W[redacted] is a new enrollee at Smothers. He answers
questions, looks somewhat sullen, but does cooperate. Explored
purpose of group, defining my role.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 03 30 04 | 9 08 04 - AJ | A | 0 1 | 0 25 | 0 1 | 1 0 | |

progress Notes (Continued) Talked with student about experience at previous
school and how he liked school overall. Said he had friend
at old school and some instance of misbehavior.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

rogress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

ogress Notes (Continued)

QUIRED:

igning this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

vider Signature: _Anna Bowman_ qpmw msw Credentials _LICSW_  Date Signed: _4 14 04_

107

ervisor's Signature: _____  Credentials _____  Date Signed: __/__/__

September 2003



**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

Student LN: | M | ▓ | | | | | | | |    Student FN: | W | ▓ | | | | | |

Student ID: | 9 | 0 | 5 | 4 | 4 | 0 |    Social Security No: ▓▓▓▓▓    DOB: ▓▓▓ | 9 | 3 |

School Code: | C | 3 | 2 | 2 |    School Name: | S | M | O | T | H | E | R | S | | |    Primary Disability: | E | D | |

Provider LN: | B | O | W | M | A | N | | |    Provider FN: | A | N | N | A | . | . | |    Provider Code: | 7 | 5 | 0 |

Servicing School Code: | 0 | 3 | 2 | 2 |    School District: | W | D | C |    Provider ID: ▓▓▓▓▓▓▓▓

IEP Service – Actual Start Date/Assessment Order Date: | 0 | 9 | 2 | 4 | 0 | 3 |    IEP Service Code: | 0 | 1 | 2 |    Presenting Problem: | 3 | 1 | 3 | . | 9 | |

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 3 2 9 0 4 | 9 0 8 5 7 - A F | A | 0 1 | 0 4 5 | 0 4 | 1 0 | |

Progress Notes (Continued) ▓▓▓ ii a new enrollee at Smothers. He answers questions, looks somewhat sullen, but does cooperate. Explained purpose of group, defining my role.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 3 3 0 0 4 | 9 0 8 0 4 - A | A | 0 1 | 0 2 5 | 0 1 | 1 0 | |

Progress Notes (Continued) Talked with student about experience at previous school and how he liked school overall. Said he had friends at old school and some instance of misbehavior.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | - | | | | | |

Progress Notes (Continued)

REQUIRED:

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Anna Bowman_ MSW LICSW    Credentials _LICSW_    Date Signed: 4 \ 14 \ 04

Supervisor's Signature: _____    Credentials _____    Date Signed: __ \ __ \ __

108

September 2003



**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
**School Year 2003-2004**

Student LN: M▆▆▆▆▆▆▆▆▆    Student FN: W▆▆▆▆▆▆

Student ID: 9 0 5 4 4 0    Social Security No: ▆▆▆▆▆    DOB: ▆▆▆ 9 3

School Code: C 3 2 2    School Name: S M O T H E R S    Primary Disability: E D

Provider LN: B O W M A N    Provider FN: A N N A    Provider Code: 7 5 0

Servicing School Code: 0 3 2 2    School District: W D C    Provider ID: ▨▨▨▨▨▨▨▨▨

IEP Service – Actual Start Date/ Assessment Order Date: 0 9 2 4 0 3    IEP Service Code: 0 1 2    Presenting Problem: 3 1 3 . 9

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 4 0 5 0 4 | 9 0 8 5 7 - A J | F | 0 1 | 0 0 0 | 0 0 | 1 0 | |

Progress Notes (Continued)    *Spring Vacation*

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 5 4 1 2 0 4 | 9 0 8 5 7 - A J | F | 0 1 | 0 0 0 | 0 0 | 1 0 | |

Progress Notes (Continued)    *Spring Break*

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

REQUIRED:

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: *Anna Bowman, MSW*    Credentials *LICSW*    Date Signed: 4 \ 18 \ 04

Supervisor's Signature: _____    Credentials _____    Date Signed: __ \ __ \ __

109

September 2003



**District of Columbia Public Schools**
## ENCOUNTER TRACKER FORM
School Year 2003-2004

Student LN: `M` [redacted]    Student FN: `W` [redacted]

Student ID: `9 0 5 4 4 4 0`   Social Security No: [redacted]   DOB: [redacted] `9 3`

School Code: `C 3 2 2`   School Name: `S M O T H E R S`   Primary Disability: `E D`

Provider LN: `B O W M A N`   Provider FN: `A N N A` `J`   Provider Code: `7 5 0`

Servicing School Code: `0 3 2 2`   School District: `W D C`   Provider ID: [shaded]

IEP Service – Actual Start Date/ Assessment Order Date: `0 9 2 4 0 3`   IEP Service Code: `0 1 Z`   Presenting Problem: `3 1 3 . 9`

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 4 1 9 0 4 | 9 0 8 5 7 - A J | A | 0 1 | 0 6 5 | 0 5 | 1 0 | |

Progress Notes (Continued) W[redacted] expresses self anguix, has conflict with another student. Has difficulty controlling self even when supportive adults are present.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 3 4 2 7 0 4 | 9 0 8 5 7 - A J | A | 0 1 | 0 6 5 | 0 5 | 1 0 | |

Progress Notes (Continued) Cont. to encourage W[redacted] to identify feelings in a positive way. He is somewhat explosive, provoked at the slightest perceived slight. Takes no responsibility for own behavior

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

REQUIRED:

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Ann Bowman, MSW_   Credentials _MSW_   Date Signed: _5,4,04_

Supervisor's Signature: _____   Credentials _____   Date Signed: _____

110

September 2003



**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Student LN: M [redacted] | Student FN: W [redacted]

Student ID: 9 0 5 4 4 4 0  Social Security No: [redacted]  DOB: [redacted] 9 3

School Code: C 3 2 2  School Name: S M O T H E R S  Primary Disability: E D

Provider LN: B O W M A N  Provider FN: A N N A J  Provider Code: 7 5 0

Servicing School Code: 0 3 2 2  School District: W D C  Provider ID: [shaded]

IEP Service – Actual Start Date / Assessment Order Date: 0 9 2 4 0 3  IEP Service Code: 0 1 Z  Presenting Problem: 3 1 3 . 9

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 2 5 0 4 0 4 | 9 0 8 5 7 - A J | A | 0 1 | 0 6 5 | 0 5 | 1 0 | |

Progress Notes (Continued) Major issue is to help W[redacted] think and not project bravado and tough attitude. Slowly he is becoming more mellow. Despite anger, seems to enjoy group

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 2 5 0 4 0 4 | 3 0 0 0 5 - N A | C | 0 4 | 0 2 5 | 0 1 | 1 0 | |

Progress Notes (Continued) Consulted classroom teacher who said W[redacted] spends much of his time provoking others and being defiant

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 3 5 1 1 0 4 | 9 0 8 5 7 - A J | A | 0 1 | 0 6 5 | 0 5 | 1 0 | |

Progress Notes (Continued) Focused upon discussing alternatives to violence. W[redacted] and others discussed violent behavior that occurs in their neighborhood. Stressed importance of making good choices.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

REQUIRED:

signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Anna Bowman LICSW_  Credentials _LICSW_  Date Signed: 5 14 04

Supervisor's Signature: _____  Credentials _____  Date Signed: _____

111



**District of Columbia Public Scho**
**ENCOUNTER TRACKER FORM**
**School Year 2003-2004**

Student LN: M [████████]     Student FN: W [████]

Student ID: 9 0 5 4 4 0     Social Security No: [████████]     DOB: [████] 9[ ]

School Code: C 3 2 2     School Name: S M O T H E R S     Primary Disability: E D

Provider LN: B O W M A N     Provider FN: A N N A     Provider Code: 7 5 [ ]

Servicing School Code: 0 3 2 2     School District: W D C     Provider ID: [▓▓▓▓▓▓▓]

IEP Service – Actual Start Date/Assessment Order Date: 0 9 2 4 0 3     IEP Service Code: 0 1 Z     Presenting Problem: 3 1 3 . 9[ ]

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 5 1 7 0 4 | 9 0 8 5 7 - A | 5 | A 0 1 | 0 6 5 | 0 5 | 1 0' | |

Progress Notes (Continued) W[████] sought me out for group, which demonstrate
that he values the process. Smiles more Participation was Good.
Able to express self and respond in a non-Angry manner

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 5 2 4 0 4 | 9 0 8 5 7 - A | 5 | A 0 1 | 0 6 5 | 0 5 | 1 0 | |

Progress Notes (Continued) Competing with another student, encouraged him
to find common ground and avoid mickery. Wayne was
reluctantly able to do so!

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 5 3 1 0 4 | 9 0 8 5 7 - A | J | A 84 | 0 0 0 | 0 0 | 0 | |

Progress Notes (Continued) Holiday.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | – | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary acti

Provider Signature: _Ann Bowman LSW_     Credentials _LICSW_ Date Signed: 6\03\04

Supervisor's Signature: _____     Credentials ____ Date Signed: ____

112



District of Columbia Public Sch
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

Student LN: M███████████  Student FN: W█████

Student ID: 9 0 5 4 4 0  Social Security No: ████████  DOB: █████ 9█

School Code: C 3 2 2  School Name: S M O T H E R S  Primary Disability: E D

Provider LN: B O W M A N  Provider FN: A N N A  Provider Code: 7 5 █

Servicing School Code: 0 3 2 2  School District: W D C  Provider ID: ████████

IEP Service – Actual Start Date/ Assessment Order Date: 0 9 2 4 0 3  IEP Service Code: 0 1 2  Presenting Problem: 3 1 3 . 9█

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 6 0 7 0 4 | 9 0 8 5 7 - A J B | 0 | 3 | 0 0 0 | 0 0 | 3 0 | |

Progress Notes (Continued)    *Student participation in class activity*

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | – | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | – | | | | | | |

Progress Notes (Continued)

REQUIRED:

r signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary act

Provider Signature: *Anna Bowman NEU*  Credentials: *LICSW*  Date Signed: 6 12 04

Supervisor's Signature: _____  Credentials _____  Date Signed: _____

113

September 2003



District of Columbia Public Schools
## ENCOUNTER TRACKER FORM
### School Year 2003-2004

| Student LN: | M [████████] | Student FN: | W [████████] |
|---|---|---|---|

| Student ID: | 9 0 5 4 7 4 0 | Social Security No: [████████] | DOB: [███] 9 3 |
|---|---|---|---|

| School Code: 4 2 1 | School Name: Kelly Miller | Primary Disability: ED |
|---|---|---|

| Provider LN: M O U N [████] | Provider FN: E g b a [█] | Provider Code: 7 5 0 |
|---|---|---|

| Servicing School Code: 4 2 1 | School District: W D C | Provider ID: [████████] |
|---|---|---|

| IEP Service – Actual Start Date/ Assessment Order Date: 0 5 1 9 0 4 | IEP Service Code: 0 0 9 | Presenting Problem: 3 1 3 . 9 |
|---|---|---|

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 9 2 3 0 4 | 9 0 8 5 7 - A | A | A | 0 1 0 | 6 0 0 | 4 1 0 | |

**Progress Notes (Continued)** Initial meeting with student. Discussed group rules and the purpose for group. Reviewed with student his social + emotional goals.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 9 2 9 0 4 | 9 0 8 5 7 - A | A | A | 0 1 0 | 6 0 0 | 4 1 0 | |

**Progress Notes (Continued)** To help student learn other group members' names and something about them.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 9 3 0 0 4 | 9 0 8 0 4 - A | A | A | 0 1 0 | 3 0 0 | 1 1 0 | |

**Progress Notes (Continued)** Student arrived wanting to talk. Student was allowed to discuss his concerns.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

**Progress Notes (Continued)**

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary ac

Provider Signature: Egbi Merre    Credentials: LSW    Date Signed: 9 30 04

Supervisor's Signature: _____    Credentials: _____    Date Signed: ___/___/___

September 2003

WM123

District of Columbia Public Schools
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

Student LN: M███████████  Student FN: W███████████

Student ID: 9 0 5 4 7 4 0  Social Security No: ███████████  DOB: ██████ 9 3

School Code: 4 2 1 1  School Name: Kelly Miller  Primary Disability: E D

Provider LN: M O U N R  Provider FN: E q u i a  Provider Code: 7 5 0

Servicing School Code: 4 2 1 1  School District: W D C  Provider ID: ███████████

IEP Service – Actual Start Date/ 0 5 1 9 0 4  IEP Service Code: 0 0 1 1  Presenting Problem: 3 1 3 . 0
Assessment Order Date:

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 0 5 0 4 | 9 0 8 5 7 - A J A | 0 1 | 0 6 0 | 3 | 1 0 | |

Progress Notes (Continued): Student identified ways to show friendliness to others. Student identified three people whom he think of as being especially outgoing and friendly.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 0 8 0 4 | 9 0 8 5 7 - A J A | 0 1 | 0 6 0 | 3 | 1 0 | |

Progress Notes (Continued): Student identified appropriate ways to help others. Student gave two examples of situations in which he could provide help to someone.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 1 5 0 4 | 9 0 8 5 7 - A J A | 0 1 | 0 6 0 | 3 | 1 0 | |

Progress Notes (Continued): Weekly session. Student gave two examples of friendly nonthreatening comments that he could make to anyone in any type of social situation.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued):

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature _Gale Mere_  Credentials _LSW_  Date Signed: _10 15 04_

Supervisor's Signature: _____  Credentials _____  Date Signed: _____

September 2003

115

**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

Student LN: M [redacted]    Student FN: W [redacted]

Student ID: 9 0 5 4 7 4 0    Social Security No: [redacted]    DOB: [redacted] 9 3

School Code: 4 2 1 1    School Name: Kelly Miller    Primary Disability: E D

Provider LN: M O U N R    Provider FN: E g u i a    Provider Code: 1 5 0

Servicing School Code: 4 2 1 1    School District: W D C    Provider ID: [redacted]

IEP Service – Actual Start Date/ 0 5 1 9 0 4    IEP Service Code: 0 0 9    Presenting Problem: 3 1 3 . 9
Assessment Order Date:

| Date of Service (mm/dd/yr) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 2 2 0 4 | 9 0 8 5 7 - A I | B | 1 0 | 0 0 0 | 0 1 | 0 | |

Progress Notes (Continued)    Unable to locate student.

| Date of Service (mm/dd/yr) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 0 2 9 0 4 | 9 0 8 5 7 - A J | A | 0 1 | 0 6 0 | 0 3 | 1 0 | |

Progress Notes (Continued)    Student identified several reasons why friendships change or end. Student stated some people with he is friends at least three years ago.

| Date of Service (mm/dd/yr) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mm/dd/yr) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

REQUIRED:

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Eguiano_    Credentials _LSW_    Date Signed: 1 1 , 0 1 , 0 4

Supervisor's Signature: _____    Credentials _____    Date Signed: __/__/__

September 2003

116



**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

Student LN: M▮▮▮▮▮▮▮▮▮    Student FN: W▮▮▮▮▮▮▮

Student ID: 9054440    Social Security No: ▮▮▮▮▮▮▮▮    DOB: ▮▮▮▮93

School Code: 421    School Name: Kellymiller    Primary Disability: ED

Provider LN: Moure    Provider FN: Esia    Provider Code: 750

Servicing School Code: 421    School District: W D C    Provider ID: ▮▮▮▮▮▮▮▮

IEP Service – Actual Start Date / 051904    IEP Service Code: 009    Presenting Problem: 313.9
Assessment Order Date:

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 110504 | 90857 - AJ | A | 01 | JS 005 | 005 | 1 0 | |

Progress Notes (Continued)   Discussed school rules and expectations. Discussed sitting quietly at seat, appropriately raising hand for help, arrive to class on time and with materials.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 111204 | 90857 - AJ | F | 01 | 000 | 000 | 1 0 | |

Progress Notes (Continued)   Half-day for students today.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Egla Merri_    Credentials _LSW_    Date Signed: _11/30/04_

Supervisor's Signature: _____    Credentials _____    Date Signed: ___/___/___

September 2003

117



**District of Columbia Public Schools**
**ENCOUNTER TRACKER FORM**
School Year 2003-2004

Student LN: M▆▆▆▆▆▆▆▆▆  Student FN: W▆▆▆▆

Student ID: 9 0 5 4 4 0  Social Security No: ▆▆▆▆▆▆▆▆  DOB: ▆▆▆▆ 9 3

School Code: 4 2 1  School Name: K e l l y m i l l e r  Primary Disability: E D

Provider LN: M o o r e  Provider FN: E g u l a  Provider Code: 7 5 0

Servicing School Code: 4 2 1  School District: W D C  Provider ID: ▆▆▆▆▆▆▆▆

IEP Service – Actual Start Date/ 0 5 1 9 0 4  IEP Service Code: 0 0 9  Presenting Problem: 3 1 3 . 9
Assessment Order Date:

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 1 1 6 0 4 | 9 0 8 5 7 - A J B | 1 | 0 0 | 0 0 0 | 0 0 | 1 0 | |
| Progress Notes (Continued) | unable to locate student | | | | | | |
| 1 1 2 4 0 4 | 9 0 8 5 7 - A J B | 0 3 | 0 0 | 0 0 0 | 0 0 | 1 0 | |
| Progress Notes (Continued) | School activity unable to see student. | | | | | | |
| | | | | | | | |
| Progress Notes (Continued) | | | | | | | |
| | | | | | | | |
| Progress Notes (Continued) | | | | | | | |

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: *Egula Moore*  Credentials L S W  Date Signed: 11 30 04

Supervisor's Signature: _____  Credentials _____  Date Signed: _____

September 2003

118



**ENCOUNTER TRACKER FORM**
School Year 2004-2005

| Student LN: | M ▮▮▮▮▮▮▮ | Student FN: | W ▮▮▮▮▮ |

Student ID: 9 0 2 2 7 2 0    Social Security No: ▮▮▮▮▮▮▮▮    DOB: ▮▮▮▮ 9 3

School Code: 4 2 1 1    School Name: Kelly Miller    Primary Disability: E D

Provider LN: Moore    Provider FN: Eshia    Provider Code: 7 5 0

Servicing School Code: 4 2 1 1    School District: W D C    Provider ID: ▮▮▮▮▮▮

IEP Service – Actual Start Date/ 0 5 1 9 0 4    IEP Service Code: C C G    Presenting Problem: 3 1 3 . 9
Assessment Order Date:

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 0 3 0 4 | 9 0 8 5 7 - A J | A 0 1 | 0 6 0 | 0 4 | 1 0 | Problem solving |

Progress Notes (Continued) Discussed healthy and unhealthy solutions to problems. Student was presented a situation. Student was asked to give several healthy responses and two unhealthy responses.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 1 0 0 4 | 9 0 8 5 7 - A J | A 0 1 | 0 6 0 | 0 4 | 1 0 | |

Progress Notes (Continued) Student reviewed from last session. Discussed the kind of responses kids his age uses more often. Did a notebook check. However, gave student a new notebook.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 1 5 0 4 | 9 0 8 5 7 - A J | B 0 2 | 0 0 0 | 0 0 | 1 0 | |

Progress Notes (Continued) Student absent.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Eshia Moore_    Credentials _LPW_    Date Signed: 1 2 1 5 0 4

Supervisor's Signature: _____    Credentials _____    Date Signed: __/__/__

September 2004

119

# ENCOUNTER TRACKER FORM
## School Year 2004-2005

Student LN: M███████████  Student FN: W████

Student ID: 9 0 2 2 7 4 0  Social Security No: ███████████  DOB: ████████ 93

School Code: 4 2 1  School Name: Kelly Miller  Primary Disability: 9 D

Provider LN: M o o r e  Provider FN: E g a l a  Provider Code: 7 5 8

Servicing School Code: 4 2 1  School District: W D C  Provider ID: ██████████

IEP Service – Actual Start Date / 0 5 1 9 0 4  IEP Service Code: 0 0 8  Presenting Problem: 3 1 3 . 9
Assessment Order Date:

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 2 2 0 4 | 9 0 8 5 7 - A J B | 0 | 3 | 0 0 0 | 0 0 | 1 0 | |

**Progress Notes (Continued)**

School activity unable to see student

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 1 2 2 9 0 4 | 9 0 8 5 7 - A J F | 0 | 1 | 0 0 0 | 0 0 | 1 0 | |

**Progress Notes (Continued)**

Holiday.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

**Progress Notes (Continued)**

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

**Progress Notes (Continued)**

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: Egal Moore    Credentials LSW    Date Signed: 1 13 05

Supervisor's Signature: _____    Credentials _____    Date Signed: __/__/__

September 2004

120



**ENCOUNTER TRACKER FORM**
School Year 2004-2005

Student LN: M█████████      Student FN: W██████

Student ID: 9 0 2 7 7 2 0   Social Security No: █████████   DOB: ███ 9 3

School Code: 4 2 1   School Name: K e l l y M i l l e r   Primary Disability: 8 0

Provider LN: M o o r e      Provider FN: E r o l c   Provider Code: 7 5 0

Servicing School Code: 4 2 1    School District: W D C   Provider ID: ███████████

IEP Service – Actual Start Date/ 0 5 1 4 0    IEP Service Code: 0 0 9   Presenting Problem: 3 1 3 . 9
Assessment Order Date:

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 1 0 7 0 5 | 9 0 8 5 7 - A J A | 0 1 | 0 5 0 | 0 5 | 1 0 | |

Progress Notes (Continued) Student shared three reasons why it's important to walk away from anger-provoking situations.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 0 1 1 4 0 5 | 9 0 8 5 7 - A J A | 0 1 | 0 5 0 | 0 5 | 1 0 | |

Progress Notes (Continued) Student identified the authority figures in the school.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate.  Any misrepresentation may result in disciplinary action.

Provider Signature: _Erol Moore_   Credentials _LSW_   Date Signed: _1 14 05_

Supervisor's Signature: _____   Credentials _____   Date Signed: ___/___/___
September 2004

121

ENCOUNTER TRACKER FORM
School Year 2004-2005

| Student LN: | M████████████ | | | | Student FN: | W████████ |
| Student ID: | 9022720 | Social Security No: | ████████████ | DOB: | █████93 |
| School Code: | 9211 | School Name: | PennyMiller | Primary Disability: | ED |

| Provider LN: | Moun████████ | Provider FN: | Eric█████ | Provider Code: | 750 |
| Servicing School Code: | 9211 | School District: | W D C | Provider ID: | ████████ |

IEP Service – Actual Start Date/
Assessment Order Date: 051908   IEP Service Code: 005   Presenting Problem: 313.7

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 012105 | 90857-AJ | A | 01 | 050 | 05 | 10 | |

Progress Notes (Continued) Discussed the concept of aggressive words and behavior. Student role-played and discussion on language that creates an aggressive response.

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| 012805 | 90857-AJ | A | 01 | 050 | 05 | 10 | |

Progress Notes (Continued) Student identified reasons to ignore teasing and name calling

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

| Date of Service (mmddyy) | Procedure Code/Modifier | Cat | Type of Service | Duration (minutes) | # Of Students | Response To TX | Progress Notes |
|---|---|---|---|---|---|---|---|
| | - | | | | | | |

Progress Notes (Continued)

**REQUIRED:**

By signing this form, I verify that all the information contained on this document is true and accurate. Any misrepresentation may result in disciplinary action.

Provider Signature: _Eric Mouse_    Credentials _LSW_   Date Signed: _1/28/05_

Supervisor's Signature: _____    Credentials _____   Date Signed: ___/___/___

September 2004

122

06/07/05  3:58 PM

# DC Public Schools
## Individual Student Summary - School (Kelly Miller MS - 421)
### Encounter Date From 02/01/2005 To 06/08/2005

Page 1 of 1



Student Name: M_____, W_____
Grade: Grade 6
ID: 9054440
DOB: __/1993

| Svc Provider | Type | School | Date | Problem | Procedure | Service | Response | Group | Duration |
|---|---|---|---|---|---|---|---|---|---|
| EGOLA MOORE | School Social Wo | 421 | 2/3/2005 | Problems with Learning | 90857-AH - Psycho-Social | A01 - Worked With - St | Continue | 4 | 60 |
| Progress Notes: Discussed good and bad behavior. Student identified good classroom behaviors and bad classroom behaviors. | | | | | | | | | |
| EGOLA MOORE | School Social Wo | 421 | 2/4/2005 | Problems with Learning | 90857-AH - Psycho-Social | A01 - Worked With - St | Continue | 3 | 60 |
| Progress Notes: Student discussed the importance of good identified three important manners in his family. | | | | | | | | | |
| EGOLA MOORE | School Social Wo | 421 | 2/11/2005 | Problems with Learning | 90857-AH - Psycho-Social | D05 - Provider Unavaila | Continue | 4 | 0 |
| Progress Notes: Transported two student Ballou to get their hair. | | | | | | | | | |
| EGOLA MOORE | School Social Wo | 421 | 2/18/2005 | Problems with Learning | 90857-AH - Psycho-Social | A01 - Worked With - St | Continue | 4 | 60 |
| Progress Notes: Discussed the consequences of breaking the rules. Student identified some classroom rules and the consequences for breaking the rules. | | | | | | | | | |
| EGOLA MOORE | School Social Wo | 421 | 2/25/2005 | Problems with Learning | 90857-AH - Psycho-Social | F02 - School Closed - U | Continue | 0 | 0 |
| Progress Notes: Late arrival school opened late due to weather. | | | | | | | | | |
| EGOLA MOORE | School Social Wo | 421 | 3/4/2005 | Problems with Learning | 90857-AH - Psycho-Social | A01 - Worked With - St | Continue | 3 | 60 |
| Progress Notes: Student identified behavior that shows responsible behavior. | | | | | | | | | |
| EGOLA MOORE | School Social Wo | 421 | 3/9/2005 | Problems with Learning | 90857-AH - Psycho-Social | A01 - Worked With - St | Continue | 4 | 60 |
| Progress Notes: Student discussed age-appropriate behavior in the classroom and in the community. Student shared the behavior that he felt was age appropriate for his age. | | | | | | | | | |

123

**SERVICE TICKET**

| | | | |
|---|---|---|---|
| Encore Student ID : | 20870541 | | |

| | | | | | |
|---|---|---|---|---|---|
| **Student :** | M███ W█████ | **Student ID :** | 9054440 | **DOB :** | ███/1993 |
| **Social Security Number :** | ██████████ | **School Code :** | 421 | **School Name :** | Kelly Miller MS |
| **Primary Disability :** | Emotional Disturbance | **District Code :** | DCPS | **District Name :** | Washington DC Public Schools |

| | | | |
|---|---|---|---|
| **Actual Provider :** | MOORE, EGOLA | **Provider ID :** | 98122673 |
| **Provider Type Code :** | 18 | **District Code :** | DCPS |
| **Servicing School Code :** | 421 | | |

**IEP Date Developed :** 05/19/2004     **IEP Service Code :** Psychological Services

## Document All Services As Instructed

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 09/01/2005 | Problems with Learning | 1 | 30 | Psycho-Social Counseling- SW- Individual- 1-44 mins | Worked With - Student | 1 | Continue | See notes below |

**Additional Progress Notes :** Met with student discussed his goals for this school year. Student was informed he would be placed in a group again this year for counseling. Student stated what the school rules are his behavior.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 10/06/2005 | Problems with Learning | 1 | 50 | Psychological Services/Treatment- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :** Getting acquainted with group members. Explained the purpose of the group. Informed student of the group time and day the group would meet. Informed student of the group rules and expectations for the members. Reviewed with student his social emotional goals for this school year, 05-06. Student paired up with a student and interviewed their partner to learn what they liked to do, and what they hoped to get out the group.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 10/12/2005 | Problems with Learning | 1 | 50 | Psychological Services/Treatment- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :** Student completed worksheet Student Success Skills Self-Evaluation. Student had to identify his top three strenghts and discussed what he wanted to improve this year.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 10/18/2005 | Problems with Learning | 1 | 0 | Psychological Services/Treatment- SW- Group | Provider Unavailable - Attending Special Education Meeting | 0 | | See notes below |

**Additional Progress Notes :** Provider attending IEP meeting for another student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 10/26/2005 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :** Discussed peer pressure student described a situation in which teenagers have a hard time saying no. Student denied any personal effects that peer pressure has on him. Discussed the need to belong and the power that the need to belong has over his choices and behavior.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|

WM244

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11/02/2005 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | | 4 | Cor | See notes below |

**Additional Progress Notes :** Student had to share with the group six ways to avoid a fight. Student explained why it is hard to avoid a fight.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 11/08/2005 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Administrative Duties - Attending Professional Development | 0 | | See notes below |

**Additional Progress Notes :** Provider attending workshop today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 11/15/2005 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Absent for Scheduled Session | 0 | | See notes below |

**Additional Progress Notes :** Student absent today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 11/22/2005 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Provider Unavailable- School Building Assignment | 0 | | See notes below |

**Additional Progress Notes :** Provider giving out turkeys to families.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 11/30/2005 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :** Student absent from session today unable to locate him.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 12/06/2005 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Provider Unavailable - Attending Special Education Meeting | 0 | | See notes below |

**Additional Progress Notes :** Provider attending IEP meeting today at another school.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 12/16/2005 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :** Discussed positive self-talk. Discussed the six steps one at a time read each step out loud and brainstorm other self-talk possibilities. Student role played a situation that was anger-provoking. Student had to identify effective techniques that would help him manage his anger constructively in the future.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 12/21/2005 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :** Read list of problems that are typical for his age group. Student added some others. Student along with group members rank the problems. Discussion for the top three problems. Student had to share one thing he learned today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 12/28/2005 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | School Closed - Scheduled Holiday or Administrative School Closure | 0 | . | See notes below |

**Additional Progress Notes :**   School closed winter vacation.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 01/04/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | School Closed - Scheduled Holiday or Administrative School Closure | 0 | | Prescription exist |

**Additional Progress Notes :**   Winter vacation for students.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 01/13/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**   Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 01/20/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :**   Student completed a worksheet "My Kind of Anger" Discussed triggers. Student identified his triggers. Student was given an assignment to list the times when he becomes anger for next weeks group.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 01/25/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :**   Student did not keep a record for the week however, he was able to share when he was angry. Student shared with the group and he identified his triggers. he also shared how he resolved the problem.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 02/01/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

**Additional Progress Notes :**   Discussed rules and why there are rules. Student identified the rules that are hard for him to follow and the reasons why. He also identified the rules that he has not problem follow.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 02/08/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**   Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 02/14/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

Additional Progress Notes :    Student m___ list entitled "Things I do for Good Attention;" and Things I d___ ___d attention.
Student compared both list and brainstormed how to add substantially to the "good attention list.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 02/21/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

Additional Progress Notes :    Brainstormed with the student appropriate, socially acceptable methods of dealing with the triggers.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 02/28/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

Additional Progress Notes :    To help student to take responsibility for personal actions provider read Everything I Do You Blame on Me.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 03/01/2006 | Problems with Learning | 1 | 50 | Psycho-Social Counseling- SW- Group | Worked With - Student | 4 | Continue | See notes below |

Additional Progress Notes :    Student brainstormed ways to avoid a power struggle in a conflict situation. Defined power struggle.
Gave examples of pwer struggle from the news and sports. Read a situation student had to identify
which two parties were involved in the power struggle. Student identified what issues were in conflict.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 03/08/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

Additional Progress Notes :    Unable to locate student today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 03/15/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

Additional Progress Notes :    Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 03/22/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

Additional Progress Notes :    Unable to locate student today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 03/29/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Provider Unavailable - Absent | 0 | | See notes below |

Additional Progress Notes :    Provider absent today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 04/04/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Administrative Duties - Writing Quarterly Progress Notes | 0 | | See notes below |

Additional Progress Notes :    Completing progress notes.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 04/11/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | School Closed - Scheduled Holiday or Administrative School Closure | 0 | | See notes below |

**Additional Progress Notes :**    Spring vacation.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 04/18/2006 | Problems with Learning | 1 | | Psycho-Social Counseling- SW- Group | Administrative Duties - Writing Quarterly Progress Notes | 0 | | See notes below |

**Additional Progress Notes :**    Completing progress notes.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 04/25/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Testing | 0 | | See notes below |

**Additional Progress Notes :**    School wide testing today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 05/02/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**    Unable to locate student today.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 05/09/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**    Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 05/16/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**    Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 05/23/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**    Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|
| 05/30/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Student Unavailable - Unable to locate student | 0 | | See notes below |

**Additional Progress Notes :**    Unable to locate student.

| Service Date (mm/dd/yyyy) | Presenting Problem | Daily Freq | Duration | Procedure Code/Modifier | Cat/Type of Service | # Of Student | Response To Treatment | Progress Notes |
|---|---|---|---|---|---|---|---|---|

| 06/06/2006 | Problems with Learning | 1 | 0 | Psycho-Social Counseling- SW- Group | Provider Unavaiable - Central Administration Assignment | 0 | | See notes below |
|------------|------------------------|---|---|-------------------------------------|-----------------------------------------------------------|---|---|-----------------|

**Additional Progress Notes :**    Attending a crisis at Watkins.

Provider Signature _Earl Mong, MSW_ Credentials _____ Date Signed _6/13/06_

Supervisor Signature _____ Credentials _____ Date Signed _____

# DISTRICT OF COLUMBIA PUBLIC SCHOOL SYSTEM
## IEP REPORT CARD

STUDENT'S NAME W___ M___

PUPIL # 905-4440    GRADE 6th

Meeting Date: _____    Page # _____

SCHOOL Kelly Miller

| GOAL | | CURRICULUM CONNECTION | | SERVICE PROVIDER |
|------|------|------|------|------|
| Student will improve his self control so he will be able to achieve experience social emotional | | | | Earl Moore |

| Date | Code | Attendance | | Notes |
|------|------|------|------|------|
| 12/04 | NP | / | The student's progress [ ] is [X] is not sufficient to enable the student to achieve the goals within a year. | inability to effectively manage feelings and attempts to learn, social skills impacts his |
| 2/14/05 | NP | / | The student's progress [X] is [ ] is not sufficient to enable the student to achieve the goals within a year. | Student is not ready to receive counseling. He will attend sessions however he does not self |
| 5/9/05 | | / | The student's progress [ ] is [X] is not sufficient to enable the student to achieve the goals within a year. | Student needs to work on self-regulation skills. He also needs to improve his social judgment skills. |
| | | / | The student's progress [ ] is [ ] is not sufficient to enable the student to achieve the goals within a year. | |

| GOAL | | CURRICULUM CONNECTION | | SERVICE PROVIDER |
|------|------|------|------|------|
| | | | | |

| Date | Code | Attendance | | Notes |
|------|------|------|------|------|
| | | / | The student's progress [ ] is [ ] is not sufficient to enable the student to achieve the goals within a year. | |
| | | / | The student's progress [ ] is [ ] is not sufficient to enable the student to achieve the goals within a year. | |
| | | / | The student's progress [ ] is [ ] is not sufficient to enable the student to achieve the goals within a year. | |
| | | / | The student's progress [ ] is [ ] is not sufficient to enable the student to achieve the goals within a year. | |

## PROGRESS CODE

A – Achieved
be student has successfully
completed the goal)

MP – Making Progress
(The student is making expected
degree of progress)

EB – Emerging Breakthrough
(The skill necessary for this goal is
beginning to appear.)

NP– No Progress
(The student is not making
expected progress.)

N/A– Not Applicable At This Time
(The student has not begun
to work on this goal.)

rict of Columbia Public Sch___

07-02-2001

Division of Special Education

IEP Report Card

WM25

130





# District of Columbia Public Schools

## Kelly Miller MS

06/15/2006

Report to Parents on Student Progress

| | | |
|---|---|---|
| Student Name: M████████, W██████ | For the advisory ending on: | **Jun 15, 2006** |
| Student ID: 9054440 | Grade: **07**   Homeroom: | 7208 / Tolbert, Waahia |

| Course | Sec | Course Title | Adv 1 | Adv 2 | Adv 3 | Adv 4 | Exam | Final | Credit Earned |
|---|---|---|---|---|---|---|---|---|---|
| H11 | 6 | **Western Hemisphere Geography**<br>Tolbert, Waahia | F | F | F | F | | *F* | 0.0<br>curr abs: 27<br>YTD abs: 63 |
| E00 | 07 | **English Resource**<br>Cade, Betty | B | B | D | D | | *D* | 0.0<br>curr abs: 29<br>YTD abs: 55 |
| M00 | 09 | **Mathematics Resource**<br>Mathews, Curtis<br>Excessive Absences; Is Failing | D | D | F | F | | *D* | 0.0<br>curr abs: 32<br>YTD abs: 62 |
| M01 | 03 | **Fundamentals of MATH 7 & 8**<br>Mathews, Curtis<br>Excessive Absences; Cuts Class; Is Failing | D | D | F | F | | *D* | 0.0<br>curr abs: 27<br>YTD abs: 54 |
| N00 | 03 | **Reading Resource**<br>Cade, Betty | B | B | C | D | | *D* | 0.0<br>curr abs: 26<br>YTD abs: 46 |
| P11 | 05 | **Health and Physical Education 7**<br>Parker, Pamela<br>Poor Behavior; Excessive Absences | F | F | | | | *F* | 0.0<br>curr abs: 0<br>YTD abs: 10 |
| U21 | B | **Beginning Band**<br>Davis, Cortrell | | | F | F | F | *F* | 0.0<br>curr abs: 28<br>YTD abs: 41 |

| Homeroom Absences | | Total: | | Excused: | | Unexcused: | | Tardy: |
|---|---|---|---|---|---|---|---|---|
| | Current | | 30 | | 0 | | 30 | 2 |
| | YTD | | 46 | | 0 | | 46 | 28 |

```
┌─────────────────────────────────────────────┐
│ 4th Advisory Progress Report                  │
│                                               │
│ NOTE: The absence data shown above is not     │
│ accurate. Parents may contact the school for  │
│ an accurate accounting of their student's     │
│ attendance. Efforts are underway to update    │
│ the attendance data.                          │
└─────────────────────────────────────────────┘
```

Rodkeeda Jordan
Parent/Guardian of W████ M███████
25 46th St NE
Washington, DC  20019

WM26



## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### NOTICE OF STUDENT DISCIPLINARY ACTION

### SUSPENSION LEVEL I

_Kelly Miller_
**School** _(202) 388-6870_
**Telephone**

_Ohum Ddackson_
**Signature of Principal**
_9/18/06_
**Date of Delivery**
[ ] **Certified Mail**
[✓] **Hand Delivery**

**Student** ▓▓▓▓▓▓▓▓  **Date of Birth** ▓▓▓▓/93

**Student's Grade** _8_     **Male** [✓] **Female** [ ]     **Ethnicity Code** _____

**Sp. Ed. Student: Yes** [ ] **No** [ ]  **Disability Code** _____  **LRE/Educational Setting** _____

**Parent/Guardian** _Rodkeeda Jordan_

**Address** _25- 46th ST. NE_

**Home Telephone** _(202) 397-1065_  **Work Telephone** _____

**Dear** _Ms Jordan_ :
Name of Parent/Guardian

    Please be advised that pursuant to the Rules of the Board of Education, Section 2500, your son/daughter is being disciplined for violating the following section(s) of the Board Rules;
_2402.6 Fighting in hallway_

**Brief description of incident:** _Student fighting in hallway_

(State each section individually)

Page 1 of 4
SHO 101
August 2000

WM27
132


_____ ____
Name of Student

I am notifying you, in accordance with Board **Rule** Section 2505.3, that
W_____ M_____ is to be suspended for _3_ days, from 9/18/06
through 9/20/06 .

[✓] A conference was held on 9/18/06 with W_____ M_____
_____ Date _____ Name of Student

[✓] A conference has been scheduled on 9/18/06 at 11:30 , in the school
_____ Date _____ Time

office.

Contact Dr. McElroy on 388-6870 to confirm attendance.
_____ (Name of Contact Person) _____ (Telephone Number)

## CHECK WHERE APPROPRIATE

[ ]   During this disciplinary time period the student must report to this school for in school
suspension.

[ ] During this disciplinary time period the student must report to the following alternative
educational placement: _____, located at _____

_____ .

The telephone number is _____.

[✓] Because of the seriousness of the offense and potential harm to your child and others, I am
initiating a home suspension in accordance with the Board **Rules**. During this disciplinary time
period, the student shall be placed on home suspension for _3_ days. An educational packet
will be provided to the student. This office will provide further instructional information. If
your child does not receive this information within (4) school days of receipt of this notice,
please call:

Dr. McElroy                          (202) 388-6870
_____ Name                          _____ Telephone Number

This suspension will not be made a part of the student's permanent record. The
principal has informed the Student Hearing Office of this suspension.

A copy of Chapter 25 of the Board **Rules** is attached.

# SUMMARY OF DISCIPLINARY PROCEDURES

1.  The decision to effect a disciplinary action shall be made by the principal or principal' designee and may be made upon the recommendation of a teacher or to her D.C. Public School employee.

2.  Notice of all exclusions or home suspensions shall be in writing to an adult student or minor student's parent or guardian.

3.  The student shall be given a conference with the school official responsible for making or approving the disciplinary action.

4.  An adult student or minor student's parent or guardian shall be informed in writing of the alleged infraction by certified mail or hand delivery at least twenty four (24) hours prior to this conference.

5.  The conference may include the parent or guardian, witnesses and/or legal representative but participation by such parties shall not be required.

6.  The conference shall precede the disciplinary action except that immediate disciplinary action may be taken by the principal or designee due to emergency circumstances related to school safety and security.

7.  Findings and recommendations regarding disciplinary actions shall be forwarded to the Superintendent or designee who may intervene to modify the action in the interest of fairness or uniformity.

8.  The adult student or minor student's parents, guardian, may request a hearing by contacting the D.C. Public Schools Hearing Office within two (2) school days of the receipt of notice of the findings and recommendations of the formal administrative conference. The telephone number of the Hearing Office is 442-5550 or 442-5557.

9.  The hearing shall be held not more than four (4) school days after a written notice is given to the adult student or minor student's parent or guardian except that the hearing may be postponed for not more than five (5) school days upon the request of the adult student, minor student's parent or guardian.

10. The hearing officer shall determine that all due process procedures have been followed or waived. The hearing officer may question any witness or party upon the conclusion of direct or cross examination testimony and shall examine all documentary evidence.

11. The hearing officer shall ensure that the hearing is conducted in fair and orderly manner and shall have the authority to exclude any party or other person from the hearing on the grounds of substantial interference or obstruction of the orderly hearing process.

12. An official electronic tape recording of the hearing shall be made by the hearing officer and shall constitute the official record of the hearing.

13. If no hearing is requested, the principal or other school official making the disciplinary action may impose or continue the action.

# LEGAL SERVICES WHICH MAY PROVIDE FREE
## OR LOW COST REPRESENTATION

D.C. School of Law
719 13th Street, N.W.
Washington, D.C. 20009
727-5225

Office of Bar Counsel
515 5th Street, N.W.
Suite 127
Washington, D.C.  20005
638-1501

Legal Aid Society of the District of Columbia
666 11th Street, N.W.
Suite 300
Washington, D.C.  20001
628-1161

Young Lawyers of the D.C. Bar Association
1819 H Street, N.W.-12th Floor
Washington, D.C.  20006
223-6600 or 223-1482

Neighborhood Legal Services Program
Branch Offices:

| | |
|---|---|
| 1337 H Street, N.E. | 399-6431 |
| 1213 Good Hope Road, S.E. | 678-2000 |
| 3616 ½ 14th Street, N.W. | 726-1400 |
| 1130 6th Street, N.W. | 289-5200 |

Page 4 of 4
SHO 101
August 2000

135



### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### NOTICE OF STUDENT DISCIPLINARY ACTION

#### SUSPENSION LEVEL I

__Kelly Miller Middle School__
School

(202) 388-6870
Telephone

_Signature of Principal_

10/16/06
Date of Delivery
[ ] Certified Mail
[ x ] Hand Delivery

Student W█████ M█████    Date of Birth ████1993

Student's Grade    8    Male [x] Female [ ]    Ethnicity Code BLK

Sp. Ed. Student: Yes [ x ] No [ ]   Disability Code _____   LRE/Educational Setting _____

Parent/Guardian  Rodkeeda Jordan

Address  25 46th Street NE

Home Telephone  (202)397-1065   Work Telephone _____

Dear  Rodkeeda Jordan
       Name of Parent/Guardian

   Please be advised that pursuant to the Rules of the Board of Education, Section 2500, your son/daughter is being disciplined for violating the following section(s) of the Board Rules;

2503.1(A) Acts that cause or attempt to cause damage, or to destroy, or to deface school property or property belonging to another student, DCPS personnel or other invitee;
2503.1(B) The documented, repeated failure to comply with the orders or directions of a principal, teacher, or other authorized D.C. Public School employee acting within the scope of his or her employment where failure to comply with the order constitutes a disruption or obstruction of any mission, process, or function of the D.C. Public Schools.

Brief description of incident: W████ was caught walking in the halls and destroying government property in the girls bathroom.

(State each section individually)

WM28
136

Page 1 of 4
SHO 101
August 2000

W▬▬ M▬▬▬▬
Name of Student

I am notifying you, in accordance with Board Rule Section 2505.3, that W▬▬ M▬▬▬ is to be suspended for __10__ days, from __10-16-06__ through __10-30-06__ .

[ ] A conference was held on _____ with _____
                                      Date                 Name of Student

[ x ] A conference has been scheduled on __30 Oct. 2006__ at __10:15__ , in the school office
                                     Date                            Time

Contact: __SHEENA TUCKSON__ on __202388-6870__ to confirm attendance.
        (Name of Contact Person)      (Telephone Number)

## CHECK WHERE APPROPRIATE

[ ]   During this disciplinary time period the student must report to this school for in school suspension.

[ ] During this disciplinary time period the student must report to the following alternative educational placement: _____, located at _____ .

The telephone number is _____ .

[ ] Because of the seriousness of the offense and potential harm to your child and others, I am initiating a home suspension in accordance with the Board Rules. During this disciplinary time period, the student shall be placed on home suspension for _____ days. An educational packet will be provided to the student. This office will provide further instructional information. If your child does not receive this information within (4) school days of receipt of this notice, please call:

_____        _____
       Name                  Telephone Number

This suspension will not be made a part of the student's permanent record. The principal has informed the Student Hearing Office of this suspension.

A copy of Chapter 25 of the Board Rules is attached.

Page 2 of 4
SHO 101
August 2000

11/06/2006  15:40    2022654264    TYRKA & ASSOCIATES    PAGE  11/43

# SUMMARY OF DISCIPLINARY PROCEDURES

1. The decision to effect a disciplinary action shall be made by the principal or principal's designee and may be made upon the recommendation of a teacher or other D.C. Public School employee.

2. Notice of all exclusions or home suspensions shall be in writing to an adult student or minor student's parent or guardian.

3. The student shall be given a conference with the school official responsible for making or approving the disciplinary action.

4. An adult student or minor student's parent or guardian shall be informed in writing of the alleged infraction by certified mail or hand delivery at least twenty four (24) hours prior to this conference.

5. The conference may include the parent or guardian, witnesses and/or legal representative but participation by such parties shall not be required.

6. The conference shall precede the disciplinary action except that immediate disciplinary action may be taken by the principal or designee due to emergency circumstances related to school safety and security.

7. Findings and recommendations regarding disciplinary actions shall be forwarded to the Superintendent or designee who may intervene to modify the action in the interest of fairness or uniformity.

8. The adult student or minor student's parents, guardian, may request a hearing by contacting the D.C. Public Schools Hearing Office within two (2) school days of the receipt of notice of the findings and recommendations of the formal administrative conference.  The telephone number of the Hearing Office is 442-5550 or 442-5557.

9. The hearing shall be held not more than four (4) school days after a written notice is given to the adult student or minor student's parent or guardian except that the hearing may be postponed for not more than five (5) school days upon the request of the adult student, minor student's parent or guardian.

10. The hearing officer shall determine that all due process procedures have been followed or waived.  The hearing officer may question any witness or party upon the conclusion of direct or cross examination testimony and shall examine all documentary evidence.

11. The hearing officer shall ensure that the hearing is conducted in  fair and orderly manner and shall have the authority to exclude any party or other person from the hearing on the grounds of substantial . interference or obstruction of the orderly hearing process.

12. An official electronic tape recording of the hearing shall be made by the hearing officer and shall constitute the official record of the hearing.

13. If no hearing is requested, the principal or other school official making the disciplinary action may impose or continue the action.



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

October 24, 2006

Records Custodian
Kelly Miller Middle School
301 49th Street, N.E.
Washington, DC 20019
By Fax: 202-727-8330

Re:    W███ M██████ (D.O.B. ███/93)
       **Official Student Records Request**

Record Custodian:

We are the special education attorneys for W███ M██████, a student attending your
school. I am in the process of reviewing W████ educational history in order to
determine what special education services have been provided, if any, and what may be
needed. In order to assemble a complete and comprehensive file, I am asking that you
provide to this office with an opportunity to inspect, review, and copy the following
records:

> Form 6s
> Standardized test scores, such as CTBS or SAT-9
> All evaluation reports and DCPS reviews, including triennial review
> IEPs, BLMDT notes, and placement notices for all years in special
> education
> Report cards, including progress reports and attendance records
> Disciplinary records, incident reports, and manifestation determinations
> Encounter tracking forms
> A list of all of the student's special and general education teachers

Any other records or correspondence you believe are relevant.

As counsel for the parent, we are entitled to make this request pursuant to the governing
provisions of the IDEA, 20 U.S.C. § 1415(b)(1), and the Family Educational Rights and
Privacy Act of 1974, 20 U.S.C. § 1232g(1)(A). Any failure to promptly comply with our
request will place you in violation of Federal Law, *see* 20 U.S.C. § 1232g(1)(A);[1] 34

---

[1] "Each educational agency or institution shall establish appropriate procedures for the granting of a request by parents for access to
the education records of their children within a reasonable period of time, but in no case more than forty-five days after the request has
been made."

C.F.R. § 300.613(a)-(c)[2], and the Laws of the District of Columbia. D.C. Mun. Regs. tit. 5 § 3021;[3] D.C.P.S. S.H.O. S.O.P. § 800.2.[4]

The parent respectfully requests that you contact our offices immediately in order to reach a mutually agreeable time and manner in which you will provide us with access to these records.

Our experience is that most schools prefer to provide our office with copies of these records by mail or fax. If you do not respond to our request within five (5) business days, we will assume that copies of the requested documents are forthcoming by either mail or fax.

Sincerely,

Keith J. Coyle, Associate
PA Bar No. 201128
Tyrka & Associates, LLC
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

enclosed: Parent Release

Cc:    Natalie Wafula
       Special Education Coordinator

---

[2] "The agency shall comply with a [records] request without unnecessary delay, . . . and in no case more than 45 days after the request has been made. . . The right to inspect and review education records under this section includes . . . [t]he right to request that the agency provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records; and [t]he right to have a representative of the parent inspect and review the records."

[3] "[T]he parent of a child with a disability shall be given the opportunity to inspect and review and to copy at no cost to the parent all of the child's records relating to identification, evaluation, and educational placement, and the provision of Free Appropriate Public Education (FAPE)."

[4] "Parents have the right to examine all records maintained by the school that are related to their child. . . Parents may authorize counsel, advocates, investigators or other individuals to review and obtain copies of their children's records."

140

```
         TRANSMISSION VERIFICATION REPORT

                                TIME  : 10/24/2006 13:37
                                NAME  : TYRKA & ASSOCIATES
                                FAX   : 2022654264
                                TEL   : 2022654260
                                SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 10/24  13:35 |
| FAX NO./NAME | 2027278330 |
| DURATION | 00:02:25 |
| PAGE(S) | 04 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*       Records Custodian ~ Kelly Miller

*Fax Number:*     202-727-8330

*From:*           Keith Coyle

*Regarding:*      W█████ M██████ (D.O.B.█████/93)

*# of pages:*     4

*Notes:*          Official Student Records Request

141



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**December 18, 2006**

Ms. Harris –Wafula
Special Education Coordinator
Kelly Miller Middle School
Fax: 202-727-8330

**RE:**    W███ M██████ (D.O.B. 10/17/93)

Ms. Harris-Wafula:

We represent Rodkeeda Jordan, the mother of W████ M█████. W████ is currently placed at your school.

It is our understanding that has been subject to disciplinary action for violating the code of student conduct.  We would like a copy of the disciplinary records documenting this incident immediately.

Sincerely,

Keith J. Coyle, Associate
PA Bar No. 201128
Tyrka & Associates, LLC
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

```
                  ┌─────────────────────────────────────┐
                  │ TRANSMISSION VERIFICATION REPORT     │
                  └─────────────────────────────────────┘

                                        TIME  : 12/18/2006 11:14
                                        NAME  : TYRKA & ASSOCIATES
                                        FAX   : 2022654264
                                        TEL   : 2022654260
                                        SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────────────┐
│ DATE,TIME             12/18  11:12                                 │
│ FAX NO./NAME          2027278330                                   │
│ DURATION              00:01:44                                     │
│ PAGE(S)               02                                           │
│ RESULT                OK                                           │
│ MODE                  STANDARD                                     │
│                       ECM                                         │
└──────────────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Ms. Harris-Wafula ~ Kelly Miller |
| *Fax Number:* | 202-727-8330 |
| *From:* | Keith Coyle |
| *Regarding:* | W███ M████ (███/93) |
| *# of pages:* | 2 |
| *Notes:* | Disciplinary record |

143



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

December 20, 2006

Ms. Harris Wafula
Special Education Coordinator
Kelly Miller Middle School
301 49th st NE
Washington DC 20019
By fax: 202-727-8330

Re: W██████ M████████

Dear Ms. Harris Wafula,

We have received your meeting invitation but we are unable to facilitate the dates you proposed. As you know from a previous conversation with our office, it is difficult to select a date/time on such short notice. Please provide new dates and we will make all efforts to accommodate you. If not possible, both parties should agree to waive the timeline until next year. Thank you.

Sincerely,

Camille McKenzie

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                              TIME  : 12/20/2006 10:17
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992
```

```
┌──────────────────────────────────────────────────────────────┐
│   DATE,TIME              12/20  10:16                          │
│   FAX NO./NAME           2027278330                            │
│   DURATION               00:01:44                              │
│   PAGE(S)                02                                    │
│   RESULT                 OK                                    │
│   MODE                   STANDARD                              │
│                          ECM                                   │
└──────────────────────────────────────────────────────────────┘
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264 ♦

| | |
|---|---|
| *Recipient:* | Harris-Wafula ~ Kelly Miller |
| *Fax Number:* | 202-727-8330 |
| *From:* | Camille McKenzie |
| *Regarding:* | Wayne M~~cKill~~ |
| *# of pages:* | 2 |
| *Notes:* | Response to meeting invitation |

145



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**December 22, 2006**

Ms. Harris –Wafula
Special Education Coordinator
Kelly Miller Middle School
Fax: 202-727-8330

**RE:    W▮▮▮M▮▮▮▮ (D.O.B. 10/17/93)**

Ms. Harris-Wafula:

We represent Rodkeeda Jordan, the mother of W▮▮▮M▮▮▮▮, W▮▮▮was receiving
special education and related services at your school until his suspension from the school
for a disciplinary infraction last week.

I am writing to you to discuss two issues.

First, we requested a copy the disciplinary report detailing the incident that led to
W▮▮▮▮ most recent suspension from your school.  It has been more than one week since
this incident, and no documentation has ever been provided to our office.  I am renewing
our request to receive these documents at this time.

Second, the Student Hearing Office issued an order today granting our request for an
expedited hearing on Ms. Jordan's December 14, 2006 due process complaint.
According to the applicable regulations, the parties must convene a resolution session
within the next 10 days to discuss the issues presented in this complaint.  Thus, we must
convene a resolution session on or before January 1, 2006.

As we explained in our letter of December 20th, we will accommodate any and all efforts
to schedule this meeting at a mutually convenient.  I will be available during the week
after Christmas.  If your school cannot schedule a resolution session within this timeline
please notify my office in writing immediately, so that appropriate alternative
arrangements can be made.

Sincerely,

Keith J. Coyle, Associate
PA Bar No. 201128
Tyrka & Associates, LLC
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

```
                TRANSMISSION VERIFICATION REPORT

                                    TIME : 12/22/2006 10:40
                                    NAME : TYRKA & ASSOCIATES
                                    FAX  : 2022654264
                                    TEL  : 2022654260
                                    SER.# : 000A6J693992

        DATE,TIME                   12/22  10:38
        FAX NO./NAME                2027278330
        DURATION                    00:01:58
        PAGE(S)                     03
        RESULT                      OK
        MODE                        STANDARD
                                    ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Ms. Harris-Wafula ~ Kelly Miller |
| *Fax Number:* | 202-727-8330 |
| *From:* | Keith Coyle |
| *Regarding:* | W███ M███████ |
| *# of pages:* | 3 |
| *Notes:* | Disciplinary record and resolution session |

148



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000        Fax: 202-442-5098
www.k12.dc.us

January 4, 2007

Douglas Tyrka
Tyrka and Associates
1726 Connecticut Ave. NW, Suite 400
Washington, D.C. 20009

**DISCLOSURE STATEMENT**
**VIA FACSIMILE (202) 265-4264**

**Subject: Due Process Hearing for W███ M███████**
**DOB:    ███/93**

Dear Mr. Tyrka:

At the upcoming due process hearing in the above-referenced matter, and pursuant to the Individuals with Disabilities Education Improvement Act (IDEIA) of 2004, in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents[1]:

**Witnesses**

**DCPS, 825 N. Capitol St., NE, 6th Floor, Washington, D.C. 20002; (202) 442-4800**

Mary Ellen G. de Jesus, Ph.D., DCPS Psychologist, and/or designee(s)
Dr. Wes Campbell, School Psychologist, and/or designee(s)
Dr. Carolyn Johnson, School Psychologist,  and/or designee(s)
Sherrie Waul – DCPS Non-public Placement Specialist, and/or designee(s)
Keesha Blythe - DCPS Non-public Placement Specialist, and/or designee(s)
Kimberly Grafton, Special Education Resolution Specialist

**Kelly Miller MS, 301 49th Street, NE, Washington, DC, 20019; (202) 388-6870**

Kenneth Parker, Principal
Natalie Harris-Wafula, SEC

---

[1] Witnesses may testify by telephone.

149

DCPS Office of the General Counsel
Page 2

## **Documents**

DCPS-1        Resolution Notes

## **Motion to Compel Attendance**

Pursuant to 5 DCMR 3031.1(b), DCPS hereby moves the Student Hearing Office to compel the attendance of the below named individual as a necessary and material witness:

**Rodkeeda Jordan, Parent, 25 46th Street, NE, Washington, DC, 20019**

DCPS reserves the right to amend this disclosure as documents become available.

DCPS reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student, as if such witness was called by DCPS.

DCPS reserves the right to rely upon and/or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.

DCPS reserves the right to introduce any and all witnesses and/or documents for the purposes of impeachment and rebuttal.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5564.

Sincerely,

/s/ Daniel McCall
Daniel L. McCall
Attorney Advisor

cc:      Student Hearing Office

150

MESSAGE CONFIRMATION

JAN-04-2007 10:18PM THU

FAX  NUMBER: 713 589-5454
NAME      : DANIEL MCCALL, ATTY.

| | | |
|---|---|---|
| NAME/NUMBER | : | 12022654264 |
| PAGE | : | 003 |
| ELAPSED TIME | : | 00' 46" |
| MODE | : | G3 STD   ECM |
| RESULTS | : | [ O.K ] |



Office of the General Counsel
9th Floor
825 North Capitol St., NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

## FACSIMILE

DATE: Thursday, January 04, 2007

TO: Douglas Tykra

FAX: (202) 265-4264

CO: _____

TEL: _____

FROM: Daniel L. McCall, Esq.
       Attorney Advisor, 202-442-5564

No. Pages, Including Cover Sheet:    _____

RE: W████ M█████ v. DCPS

COMMENTS:

5-Day Disclosure

***CONFIDENTIALITY NOTICE***

*The information contained in this telefacsimile has been transmitted by an attorney.  It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*



Office of the General Counsel
9th Floor
825 North Capitol St., NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

# FACSIMILE

**DATE**: Thursday, January 04, 2007

**TO**: Douglas Tykra

**FAX**:   (202) 265-4264

**CO**: _____

**TEL**:   _____

**FROM**: Daniel L. McCall, Esq.
Attorney Advisor, 202-442-5564

No. Pages, Including Cover Sheet:   _____

**RE**: *W▮▮▮ M▮▮▮▮ v. DCPS*

**COMMENTS**:

5-Day Disclosure

---

### *CONFIDENTIALITY NOTICE*

*The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*

---

152

# hp LaserJet 9050mfp series



| Fax Call Report | 1 |

DCPS Office of General Counsel
2024425098
04-Jan-2007 06:46 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 2553 | 04-Jan-2007 06:45 PM | Send | 92022654264 | 1:16 | 3 | Success |

Date: Thursday, January 04, 2007

To: Douglas Tyrka
Company Name:
Fax Number: 92022654264

From: Daniel McCall
Company Name: DCPS OGC
Voice Phone Number: 2024425564
Fax Number: 2024425098

Subject: W█████ M████████
Notes: 5-Day Disclosures

TRANSMISSION VERIFICATION REPORT

```
                                              TIME  : 12/22/2006 09:29
                                              NAME  :
                                              FAX   :
                                              TEL   :
                                              SER.# : BROE6J471573
```

```
   DATE,TIME                12/22  09:28
   FAX NO./NAME             92654264
   DURATION                 00:00:27
   PAGE(S)                  01
   RESULT                   OK
   MODE                     STANDARD
                            ECM
```

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



✗ *EXPEDITED HEARING*

### HEARING NOTICE

| MEMORANDUM VIA: [✗] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *D. TYRKA*    Fax No.: *265-4264*

LEA Legal Counsel: *OGC*

RE:    M▰▰▰▰▰, ▰▰▰▰▰    and (LEA) DOB: _____
                Student's Name

FROM:    **SHARON NEWSOME**
            Special Education Student Hearing Office Coordinator

DATE SENT:    *12/28/06*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
*12/18/06*. Please be advised that the hearing has been scheduled for:

✗ *EXPEDITED HEARING*

DATE:    *1/11/07*

TIME:    *11:00 Am*

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| W███ M███ | ) | INDEPENDENT HEARING OFFICER |
| Petitioner | ) | |
| Vs. | ) | |
| DCPS | ) | STATE EDUCATION AGENCY |
| Respondent | | |

## ORDER

Petitioner filed a Motion for an Expedited Hearing on December 18, 2006 stating that the student had been recently suspended from the Kelly Miller MS and that he is scheduled to appear in Superior Court on February 9, 2007 at which time his probationary status would be determined. An Order was issued reflecting these representations. The Order should have said that the Petitioner's Motion had been Granted; however, this language was not included in the Order. Accordingly, on December 21, 2006 Petitioner requested clarification of the December 18, 2006 Order.

Based on the above, the Order of December 18, 2006 is revised to clearly state that the **Motion for an Expedited Hearing is GRANTED**; however, the Student Hearing Office shall issue a notification to the parties as to the date and time for the Hearing.

SIGNED: this date _December 21, 2006_

_____
Impartial Special Education Hearing Officer

Issue Date:_____

Original to SHO – Student's File
Copy To:    Parent' - C/O:    Douglas Tyrka, Esq.
            DCPS - C/O:       OGC
            Charter School - C/O:

2006 DEC 21 PM 3: 38
DC PUBLIC SCHOOL SYSTEM

155

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:                        )    BEFORE A SPECIAL EDUCATION
                                         )
W____ M____                              )    INDEPENDENT HEARING OFFICER
                      *Petitioner*       )
          Vs.                            )
DCPS                                     )    STATE EDUCATION AGENCY
                      *Respondent*       )

ON THIS DAY came on to be heard Petitioner's Motion for an Expedited Hearing filed December 18, 2006 in the above styled cause.

## ORDER

Petitioner's is scheduled to appear in Superior Court on February 9, 2006 at which time his probationary status will be determined. The student has been determined as eligible for special education as ED and was recently suspended from the Kelly Miller MS. A hearing date and time will be provided by the Student Hearing Office.

SIGNED: this date  12-18-06

Issue Date: 12/19/2006

Impartial Special Education Hearing Officer

Original to SHO – Student's File
Copy To:    Parent' - C/O:        Douglas Tyrka
            DCPS - C/O:           OGC
            Charter School – C/O:

2006 DEC 18 PM 5:06
DC PUBLIC
SCHOOL SYSTEM

2006 DEC 21 AM 8:34
DC PUBLIC
SCHOOL SYSTEM

156

12/20/2006  16:55    2022654264                TYRKA & ASSOCIATES                    PAGE  01/02

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Office Smith ~ SHO |
| *Fax Number:* | |
| *From:* | Camille McKenzie |
| *Regarding:* | W█████ M█████████ |
| *# of pages:* | 2 |
| *Notes:* | Per our conversation this evening, we were unable to determine if the motion was granted. Thank you in advance. |

DC PUBLIC SCHOOL SYSTEM    2006 DEC 21  AM 8: 34

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

157

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF
W████ Mc██████████

HEARING DATE: JANUARY 11, 2007

DATE OF BIRTH: ██████████, 1993

TRANSCRIBED BY
LEGAL PERSONNEL, INC.   (301) 277-5711

158

APPEARANCES

| | |
|---|---|
| HEARING OFFICER: | TERRY BANKS |
| ATTORNEY ADVISOR FOR<br>DISTRICT OF COLUMBIA<br>PUBLIC SCHOOLS | DAVID MCCALL |
| ATTORNEY FOR PARENT | DOUGLAS TYRKA |
| PARENT OF W████ M██████ | MS. RAKITA JORDAN |
| ROCK CREEK ACADEMY ADMISSIONS | MS. PLOUDEN |
| SPECIAL EDUCATION TEACHER | MS. WAFOOLAH |

1      HEARING OFFICER:  Today is January 11, 2007.  This is an

2  administrative hearing for W████ M█████████ who was born ██████████

3  ███, 1993.  This hearing is being conducted in accordance with

4  the guidelines and rights established by the Individuals with

5  Disabilities Education Improvement Act of 2004, the rules of the

6  Board of Education for the District of Columbia Code and D.C.

7  Code Title 38.  My name is Terry Banks.  As in independent

8  Hearing Officer, I am not an employee of the DC Public Schools.

9  I am not related to or an acquaintance to the student or parent.

10  I'm prepared to hear both parties and will act only on the

11  evidence presented during the course of this hearing and

12  accordance with applicable laws rules and regulations.  This

13  hearing is closed to the public.  The matters discussed here

14  today are confidential and must be treated as such even after

15  the hearing is completed.  The hearing is being recorded and

16  either party may request a copy of the disk or a written

17  transcript of the proceedings by writing to the Student Hearing

18  Office.  At this time I would like everyone to identify

19  themselves for the record.

20      MR. MCCALL:  Good morning Mr. Hearing Officer, I am David

21  McCall, attorney for DCPS.

22      MR. TYRKA:  Good morning, Douglas Tyrka Counsel for the

23  parent.

1        MS. JORDAN:  Good morning I am Rakita Jordan, the parent of

2   W█████ M█████████.

3        HEARING OFFICER:  Good morning.  Mr. Tyrka do you waive the

4   reading of the hearing rights?

5        MR. TYRKA:  Yes.

6        HEARING OFFICER:  Both parties have submitted a disclosure

7   statements, does either party object to the introduction of the

8   other parties' statement into evidence?

9        MR. TYRKA:  I just want to be clear here, I got a statement

10  from Mr. McCall that identifies DCPS one resolution but I don't

11  have any attached documents.

12       HEARING OFFICER: Me either.

13       MR. TYRKA:  Okay.  So, no objections.

14       MR. MCCALL:  I just want to disclose in case they came in

15  and would offer them.

16       HEARING OFFICER: That's all right.

17       MR. MCCCALL:  No I understand, but I mean that is why we

18  did it.  I can always try, you're not always able to get.

19       HEARING OFFICER: Okay.

20       MR. MCCALL: You can always try.

21       HEARING OFFICER:  Do you object to petitioner's disclosure?

22       MR. MCCALL:  The only objection will be as to relevance to

23  documents beyond the statute of limitations Mr. Hearing Officer.

4

1    Some of these documents go back as far as 2002, is the oldest

2    one I see.  So that would be the only objection as to relevance.

3        MR. TYRKA:  On the 02 document is an evaluation, I think

4    the most recent evaluation are of course always relevant and

5    even older evaluations may be relevant to violations that

6    occurred within the timeline.  As far as the old IEP's, they are

7    their primarily for background, I'm not sure why there would be

8    an objection.  I think the Hearing Officer is going to get a

9    comprehensive picture of the child. It could be useful to see

10   the history of IEP's.

11       HEARING OFFICER:  Well let's do this.  You know I tried to

12   do this at the beginning of the hearing just to make it

13   convenient.  I think Mr. McCall has a legitimate point as to

14   some of the documents.  Mr. Tyrka has given me a general

15   response to Mr. Tyrka's motion so what I will do is I will not

16   admit documents into evidence until they are offered into

17   evidence.  So we'll just do it that way.  Okay, Mr. - - what I

18   just say --. Okay Mr. Tyrka would you like to go?

19       MR. MCCALL:  Can we deal with attorney matters that go

20   beyond that?

21       HEARING OFFICER:  Okay.

22       MR. MCCALL: DCPS would raise an objection as to the statute

23   of limitations on the issues which I'm taking to be the - in the

1  complaint, the violations one through five and the reading of

2  the statute of limitations would be as of 12/14/04.

3      HEARING OFFICER:  Well I saw that too, but I don't know

4  what he is alleging here.

5      MR. MCCALL:  And obviously we want to raise that so it's.

6      HEARING OFFICER: He is saying going back to 2002-2003.  But

7  the complaint also alleges violations within the last two years.

8      MR. TYRKA:  Okay so I can probably help with that.  I'll be

9  clarifying those lines so that I don't know if there will be an

10 objection anymore.

11      HEARING OFFICER: But when you make allegations going back

12 to 2002, it complicates the case.

13      MR. TYRKA:  That is why I want to clarify it.

14      HEARING OFFICER: But you knew that when you wrote the

15 complaint.

16      MR. TYRKA:  The complaint was heard giving Wayne's

17 probation situation and Superior's Court desire for quick

18 action.

19      HEARING OFFICER:  That has nothing with 2002 does it?

20      MR. TYRKA:  What I am saying is that while would normally

21 be more careful to be precise about what background is and what

22 is claimed.  That was a mistake in this case.

23      HEARING OFFICER: Anything else?

1      MR. MCCALL:  We would move to partially dismiss up to the

2   start of the statute of limitations based upon the date of the

3   filing of the complaint which was December fourteenth, 2006.

4      HEARING OFFICER:  Anything else?

5      MR. MCCALL: That's all Mr. Hearing Officer, thank you.

6      HEARING OFFICER:  Mr. Tyrka.

7      MR. TYRKA:  Yeah, we're not making any claims.  I do have a

8   preliminary motion, but to respond to this and I think to narrow

9   the issues, we are not making any claims regarding violations

10   prior to three years, not two years before the complaint. And

11   the reason I am citing three years is because this has been

12   somewhat of an open question has now been settled by the

13   District Court that if the violation occurred before the change

14   in the law, the old statute of limitations is used, not the new

15   one.  So for these purposes we can go three years back.  And

16   that was the cite I was trying to get.  I can send it to the

17   Hearing Officer and counsel.  Or if the Hearing Officer prefers,

18   we can bring into the Hearing Officer if he is not already aware

19   of the case.

20      HEARING OFFICER: I am not aware of the case.

21      MR. TYRKA:  Would the Hearing Officer like me to take a

22   break so I can get that cite, I can get it with a phone call,

23   but --.

7

1      HEARING OFFICER:  You can submit me a Memorandum of Points

2  and Authorities after the case.  Anything else?

3      MR. TYRKA:  I made a motion for a default, which was sent

4  to the Hearing Officer and opposing counsel.

5      HEARING OFFICER:  I'm sorry a Motion for Default?

6      MR. TYRKA:  On the basis of failure to serve a response.

7      MCCALL:  Mr. Hearing office I don't believe I have that

8  motion.

9      MR. TYRKA: I have the fax confirmations with the motion,

10  with my copy.

11      HEARING OFFICER: I don't have it.

12      MR. TYRKA: I only have my one copy.  The fax confirmation

13  is at the end.  They are from January 9th.

14      HEARING OFFICER:  What is your fax Number Mr. McCall?

15      MR. MCCALL:  There are two for legal services or Office of

16  General Counsel – 442-5098 and 5097.  Two lines.

17      MR. TYRKA:  You usually use 5098?

18      HEARING OFFICER:  It doesn't look like it went to the right

19  place Mr. Tyrka.

20      MR. TYRKA:  Okay.  This one was for you and that's our HSO,

21  because that's our speed dial.

22      HEARING OFFICER:  Let me see.

23      MR. TYRKA:  (inaudible) speed dials.

1      HEARING OFFICER: Right.

2      MR. TYRKA:  This says 0cg two.  I can have someone testify

3  as to whether it received.

4      HEARING OFFICER:  So this is --. So who's Number is this up

5  here, is that yours?

6      MR. TYRKA:  The 265 — yes, that's mine.  I can have

7  somebody testify as to whether OGC 2 is with --.

8      HEARING OFFICER: You haven't seen that, I take it?

9      MR. MCCALL:  No.  I didn't follow Mr. Hearing Officer on

10  the verification report.  What am I supposed to be looking for

11  again, a confirmation came to us?

12      HEARING OFFICER:  It's in the box at the top of the page.

13  Its say OGC2.

14      MR. TYRKA: It's first of the two fax confirmations, not  -

15  if I may direct Mr. McCall, it not on the very top Mr. McCall,

16  it's in the box that's a little ways down.

17      HEARING OFFICER:  It's a rectangular box.

18      MR. TYRKA:  It says Number; you see it say OGC2 because

19  that's our speed dial.  I can have somebody testifying as to

20  being the fax Number.

21      MR. MCCALL:  Based on that Mr. Hearing Officer, I can't

22  respond whether you know, just seeing OGC2 whether we got it

23  now.

1       HEARING OFFICER: Wait a minute.  I am satisfied that it was

2   faxed to the General Counsel's office. Now, --.

3       MR. MCCALL:  We will argue that obviously it was not faxed

4   not for five days, for the hearing.

5       HEARING OFFICER:  When was it sent?

6       MR. TYRKA:  On the ninth.

7       HEARING OFFICER:  And today is?

8       MR. TYRKA: The eleventh.

9       HEARING OFFICER:  Oh.

10      MR. TYRKA:  The reason is that the, as the Hearing Officer

11  is aware of course, that was a time when Hearing Officers would

12  grant motions for default without written motions. I was

13  informed by this Hearing Officer that the time had passed on

14  January ninth.  I wish to point; I immediately left the hearing

15  in question, which I believe maybe with Mr. McCall actually.

16      HEARING OFFICER:  I won't hear it.

17      MR. TYRKA: Excuse me?

18      HEARING OFFICER:  I won't hear it.

19      MR. TYRKA:  Can I have my copy back?

20      HEARING OFFICER:  Sure.  There is a rule in the SOP; you

21  have to file motions five days before the hearing.  And I have

22  also stated my reluctance to rule on a motion that is made for

23  the first time at the hearing where the other side didn't know

1    it was coming, didn't have a chance to prepare for it.  So --.

2        MR. TYRKA:  And so, the first time it was ever stated to me

3    was on the ninth, which was when it was sent.  I also argue that

4    the SOP's do bind the parent in this case since it is not a

5    Blackmon-Jones case.

6        HEARING OFFICER:  The SOPs are regulations.

7        MR. TYRKA:  The SOPs are not regulations.

8        HEARING OFFICERS:  The SOPs are regulations by this agency,

9    as a result of Blackmon-Jones.  They govern the handling of all

10   IDEA hearings.

11       MR. TYRKA:  I do not believe they the weight of regulations

12   in D.C. regs.

13       HEARING OFFICER: You can believe what you like Mr. Tyrka.

14       MR. TYRKA:  I am making the argument.

15       HEARING OFFICER:  Any other preliminary matters?

16       MR. TYRKA:  No.

17       MR. MCCALL: Nothing further for me.

18       HEARING OFFICER:  Okay.  Mr. Tyrka would you like to open?

19       MR. TYRKA:  Yes, and I'll break down the claims into two

20   categories.  One is regarding violations that are resulting in

21   current needs for relief and the other regarding past violations

22   that are relevant only to compensatory education.  The current

23   issues - I'll start with the evaluations. At the November 06 SEP

1   meeting which is now Number sixteen, DCPS.  You will acknowledge

2   that the following evaluations were all required: comprehensive,

3   psychological, and an educational. I believe they listed them

4   separately, but they are usually done together so, I'll mention

5   them together.  Occupational therapy, speech language, social

6   history and FBA.

7        HEARING OFFICER: What was the date?

8        MR. TYRKA:  November, excuse me, November seventh, 06. And

9   it's on Number sixteen.  The notes from the meeting are Number

10  seventeen.  And actually if I may I just want – I don't think

11  it's what the Hearing Officer remembers, but I want to make sure

12  that I would documents 1 through 6 admitted into evidence,

13  because I've seen those, no problem with those.  Those are just

14  the basics.

15       HEARING OFFICER:  Mr. McCall.

16       MR. MCCALL:  I assume these are the ones outside the

17  statutes of objection.

18       HEARING OFFICER: Okay.  Petitions 1 through 6 admitted.

19  Okay?

20       MR. TYRKA:  So we are – as to the evaluations have not been

21  done we are asking for funding for an independent evaluation of

22  all those times.  And I'd like to note that we are not limiting

23  in our request, we are not limiting that funding to the

12

1    superintendent's guidelines.  We are asking for those at market

2    rates.  The – regarding the current IEP issue, the most IEP is

3    from April 06.

4        HEARING OFFICER:  Wait a minute, just a second.

5        MR. TYRKA:  Sure.

6        HEARING OFFICER:  And the reason for market rates on that?

7        MR. TYRKA:  The reason is that, I'll answer it two ways.

8    One is that DCPS has offered no reason to limit it to market

9    rates, yet at least.  And the second is that while we know the

10   superintendent's guidelines exist, we also know that it from – I

11   forget if it is 02 or 03, January or February and that it has

12   not been updated since then, and we have been given continued

13   reassurances from OGC that it has been worked on.  Jeff Capital

14   used to tell me that years ago.  But the rates have not changed,

15   and our evaluations have told us that it is making it very

16   difficult to stay in the profession, and it is therefore making

17   it difficult for us to obtain DCPS evaluations.

18       HEARING OFFICER:  Look, I always granted relief where

19   relief was needed to be shown.  You've never come back to me and

20   told me that you weren't able to get an evaluation within the

21   superintendent's guidelines.  In fact that representation has

22   been made to me only twice in four years and in both occasions,

23   I waived the guidelines.  But as a general rule, I need some

13

1    basis to waive the guidelines.  It is subject to a DCPS

2    regulation and just to come in and say I don't want to follow

3    the guidelines because it is easier to do my job without them,

4    that is not sufficient.

5         MR. TYRKA: Well - I --.  It's not a question.  The problem

6    is a little bit more subtle.  The problem is that DCPS sticks to

7    these same rates from five years ago.

8         HEARING OFFICER:  They may still obtain. What I am telling

9    you is that in four years, I've only had two attorneys tell me

10   that couldn't find me someone within the guidelines.

11        MR. TYRKA:  I understand.  What you have instead is that

12   you have people go out of business and we have to wait longer

13   for the independent evaluations.

14        HEARING OFFICER:  Well that may be the case.

15        MR. TYRKA:  So, I can now get the evaluations right now,

16   when I do a normal route for evaluations at the superintendent's

17   guidelines our stats are that 75% are done within 30 days and

18   the remainder can take longer than that.  That's a long time.  I

19   think when we are talking about children who were denied his

20   evaluations sometimes for years.  If I can get them at market

21   rate, meaning that they can charge what is fair, instead of what

22   is being stuck to the guidelines, I can get to the top of the

23   list and get these evaluations sooner.  And since I don't think

1    DCPS can present any reasons why these guidelines should bind,

2    and don't trump federal law, then I don't why we would be stuck

3    with them.

4        HEARING OFFICER:  Well, why don't you continue with your

5    opening?

6        MR. TYRKA:  Sure.

7        HEARING OFFICER:  So the first issue is the evaluation?

8        MR. TYRKA:  Correct.  The ones listed.  Regarding the

9    current IEP issue, the most recent IEP is from April 06 and it

10   is disclosed that as our Number fifteen.  The meeting notes are

11   also there as twelve through fifteen are relevant.

12       HEARING OFFICER: And the issue is?

13       MR. TYRKA:  And that IEP that DCPS cut the specialized

14   instruction hours from the prior IEP down from twenty to fifteen

15   without justification and despite the fact that Wayne had shown

16   himself to be failing in his regular academic subjects and had

17   been shown to be making no progress on his IEP goals.  That

18   change was additionally questioned at the November 06 meeting

19   and DCPS offered no explanation for it.  I want to refer to some

20   documents that are relevant that.  Number 10 is the prior IEP

21   from 2004, which has 20 hours.  Number 7 is the IEP from

22   September 03 which also 20 hours.  As I said twelve through

23   fifteen are the 06 IEP in notes that show that there is no

1    justification for cutting the hours given.

2        HEARING OFFICER:  Okay now you have mentioned at least

3    three documents that aren't in evidence.

4        MR. TRKA: I can do that at the end if I may.

5        HEARING OFFICER:  Petitioner sixteen, fifteen, ten and what

6    else?

7        MR. TYRKA:  Sixteen was the SEP from 06.

8        HEARING OFFICER: Right.  We've admitted one through six.

9        MR. TYRKA:  You want me to do them now.  I was going to go

10   through them at the end, once you saw why they are relevant.

11   And ask that they be admitted.

12       HEARING OFFICER: Okay.  Go ahead.

13       MR. TYRKA: Well, I'll stop at the IEP's for the moment, so

14   that being the case, we would ask for the admission of all

15   documents seven through seventeen. I think that the statute

16   issue would only come up for seven and eight.  And the reason I

17   am moving for those to be admitted is because the IEP from 03 is

18   relevant to what is to establish what the specialized

19   instruction hours had been before they cut it in 06.

20       HEARING OFFICER:  Okay, Mr. McCall.

21       MR. MCCALL:  We believe that they are not relevant to 06.

22       HEARING OFFICER:  You believe what's not relevant?

23       MCCALL:  Any document prior to his statute of limitations.

1   And especially in terms of the 5/19/04 there is some complaint

2   about relating anyway to the development of that IEP

3   (inaudible).

4       HEARING OFFICER:  Well I am going to overrule the objection

5   based upon the, based upon the statement of the objection. He is

6   not alleging that the 2003 IEP is inappropriate.  He is saying

7   it is relevant to the formulation of an IEP that would be

8   relevant.  So on that basis, I'll overrule the objection.  So

9   seven through seventeen are admitted.

10      MR. TYRKA: Ahhh.

11      HEARING OFFICER: Just a minute.

12      MR. TYRKA: Sure.

13      HEARING OFFICER:  Okay.  Next.

14      MR. TYRKA:  So I am still talking about the

15   inappropriateness of the April 06 IEP, and I mentioned the fact

16   that there had been proven failure under that IEP at Kelly

17   Miller and also after that there has been a strong indication

18   that he needed a full time therapeutic placement and also I

19   forwarded documents for those purposes, twenty-five and twenty-

20   six.  Twenty-five is an IEP report card from 04-05, when he was

21   at Kelly Miller under the old IEP with twenty hours of

22   specialized instruction. Number twenty-six is his June 06 report

23   card that shows that he either failed or got D's in all his

1    subjects.  During the 05-06 school year, as of the end of that

2    school year that they adopted the IEP which cut his hours.  I've

3    got to stop here to -- we have something of a legal issue to be

4    dealt with. We submitted a document request.  Oh excuse me;

5    first of all I'd like to ask that twenty-five and twenty-six be

6    admitted for that purpose.

7         HEARING OFFICER:  Mr. McCall.

8         MR. MCCALL:  No objection.

9         HEARING OFFICER:  Okay, twenty-five and twenty-six

10   admitted.

11        MR. TYRKA:  We made a records request on October 24, 06,

12   that our Number twenty-nine and ask that that be admitted.

13        HEARING OFFICER:  Mr. McCall.

14        MR. MCCALL:  I'm sorry, what was the date, I'm sorry?

15        MR. TYRKA:  October 24, 06 our Number twenty-nine.

16        HEARING OFFICER:  (Knock) Come in.  Okay.

17        MR. MCCALL:  No objection.

18        MR. TYRKA:  In our records request, as the Hearing Officer

19   can see, we asked for all report cards, all progress reports, in

20   addition to other things including disciplinary records.  DCPS

21   responded by providing records, but the only records they

22   provided were documents, excuse me, were some of the IEP's we

23   already talked about and those related documents, IEP's, IEP

1   notes, prior notices. And then our disclosure is twenty-two

2   through twenty-eight.

3       HEARING OFFICER:  Twenty-two through twenty-eight is what

4   they provided?

5       MR. TYRKA:  Correct.  In addition to the IEPs so that is it

6   and those related documents.  Twenty-three through twenty-four

7   are the encounter tracking forms for those years listed.  His

8   only related service was counseling so they are complete in they

9   sense because they cover every related service for those

10  periods.  We were not provided with encounter tracking forms for

11  this year, but the request was issued in October, so I do not

12  consider that a major violation. The report cards however, we

13  can see are almost non-existent. We have the June 06 report card

14  and nothing else for all of the years at Kelly Miller and the

15  prior school summers, excuse me, Smothers.  And we have an IEP

16  report card only from one short period.

17      HEARING OFFICER: You don't have a report card for 05-06?

18  Right?

19      MR. TYRKA:  I have the June 06 report card which is 05 06.

20  That is Number twenty-six.

21      HEARING OFFICER: And you got 04 05?

22      MR. TYRKA:  04 05 is an IEP report card which as the

23  Hearing Officer is aware is not grades for classes, it's

1  performance on IEP goals, which is something that we would also

2  like, for all those other periods as well.

3      HEARING OFFICER:  Okay, so tell me what you don't have.

4      MR. TYRKA:  So what we don't have is report card from 04

5  05.

6      HEARING OFFICER:  Right.

7      MR. TYRKA:  A report card from 03 04 and I know we'll get

8  to the statute issues and I'll be addressing that; an IEP report

9  card for specialized instruction or counseling for 05 06; an IEP

10  report card for specialized instruction for 04 05.  That is to

11  say that we do have the IEP report for counseling for 04 05.

12  And we don't have an IEP report card for specialized instruction

13  or counseling for 03 04.  We also have no documentation of

14  progress as required in the IEPs that is for the specific IEP

15  goals and objectives.  We have no disciplinary records beyond

16  what we provided as twenty-seven and twenty-eight and obviously

17  it is possible that don't exist, but the parent is here to

18  testify that he has been suspended before that.  We don't have

19  any standardized test reports.  Given DCPS's failure to allow

20  access to those documents as required by law, we are asking for

21  (1) an inference that Wayne did not make progress at the DCPS

22  placements under the DCPS IEPs for the past three years.  That's

23  an inference additionally supported as I said by documents

1    twenty-five and twenty-six and also supported by the parents

2    coming testimony.  And on the basis of that inference, we will

3    be, I should say, we will be basing our claims both for

4    inappropriate IEPs and inappropriate placement, in part on our

5    request for that inference.  I mention it now; I don't know if

6    the Hearing Officer wants to deal with it now or would like me

7    to continue with the opening.

8        HEARING OFFICER:  Continue with the opening.  Well, would

9    you like to be heard on that Mr. McCall?  On the issue of the

10   records request?

11       MR. MCCALL:  I can address it briefly.  This is a student

12   who has had significant, significant (inaudible) and to that

13   degree, I mean there is --. I haven't' seen the record that

14   shows he did not give him all the records that were available.

15   I discuss this burden of proof, that he prove --.

16       HEARING OFFICER:  What?  He can't prove what records you

17   don't - he can't prove what records you didn't give him, but

18   typically certain records exist.

19       MR. MCCALL:  I agree typically that certain records exist,

20   but that's making an assumption at all, in fact, that he's got a

21   burden to prove up.  He can call my first witness.

22       HEARING OFFICER:  (LAUGHTER)

23       MR. MCCALL:  He can call my client.  Now that's his burden.

1    He can call that first witness, what do you have and what did

2    you give him.  Ah—so, but I see a lot of documents here and I

3    don't know to what extent these report cards, if the student

4    wasn't in attendance, --.

5         HEARING OFFICER:  Now, you've said that twice, what

6    evidence that the student has in attendance problem.

7         MR. MCCALL:  The evidence of the Special Education

8    Coordinator who will be testifying.

9         HEARING OFFICER:  That is not evidence, that's a special

10   educator coordinator testifying as to what he or she believes.

11   Are there attendance records - are there attendance records in

12   the record?

13        MR. MCCALL:  That is a more direct question.  There are no

14   written attendance records in the disclosure.

15        HEARING OFFICER: So how does the Special Education

16   Coordinator know?

17        MR. MCCALL:  Well, she has them there.

18        HEARING OFFICER: She has them there?

19        MR. MCCALL:  She has digital records. I just don't have

20   them.

21        HEARING RECORDS:  She has records.  She is going to testify

22   as to records that were available that weren't disclosed?

23        MR. MCCALL:  I don't have digital printout

1    HEARING OFFICER:  Digital records.

2    MR. MCCALL:  But I have found digital at the last minute,

3    we have found that we got the digital records of attendance as

4    the Hearing Officer is probably aware of, they are difficult in

5    getting these documents, unusual in this case, that I don't

6    have.  So - but the witness clearly knows the attendance issues.

7    Both parents are here, you can ask the parents, so there is a

8    significant issue as to attendance and I believe that will

9    explain missing report cards.  I do want to address the --

10    HEARING OFFICER:  I don't know how attendance explains

11    missing report cards.

12    MR. MCCALL: I'm not sure report cards generated at the

13    school member attends - that the student ever attends.

14    HEARING OFFICER:  Is that your case that he never attends?

15    MR. MCCALL:  I said I don't know if a report card was

16    generated and I say that in that in terms of meaning of a great

17    deal of time and DCPS, he missed ten days.

18    HEARING OFFICE:  Mr. McCall you are raising a lot of issues

19    that I don't see in a response to the complaint.  Is there a

20    response to the complaint?

21    MR. MCCALL: Not that I am aware of Mr. Hearing Officer.  I

22    would like to address the last one of the other points you made.

23    I heard Mr. Tyrka address a point that the IEPs did not contain

1    I believe he said progress reports.

2         HEARING OFFICER:  Progress Reports.

3         MR. TYRKA:  I didn't say that.  Just so we're clear.

4         HEARING OFFICER:  I'm sorry?

5         MR. TYRKA:  I can clarify that that is not what I said.

6    But so that we don't get distracted with the -.

7         HEARING OFFICER:  Wait a minute.  I thought you said - I

8    thought you said that there was - there were no progress reports

9    as required in the IEP?

10        MR. TYRKA: Correct.  I am saying that we are not provided

11   progress reports required by the IEPs.

12        HEARING OFFICER:  That is what I thought I heard.

13        MR. TYRKA:  That is what I said.

14        MR. MCCALL:  I thought you said within the IEP.

15        HEARING OFFICER:  Oh no no.

16        MR. MCCALL:  Okay. All right.

17        MR. TYRKA:  I would to (inaudible) in our letter of October

18   24th we did also request attendance records, which were not

19   provided.  We would also ask that documents twenty-two through

20   twenty-nine be admitted.

21        HEARING OFFICER:  Mr. McCall?

22        MR. MCCALL:  Twenty-two through twenty-nine the objection

23   would be as to twenty-two, statute of limitations. That would be

1    the only objection.

2         HEARING OFFICER:  Mr. Tyrka.

3         MR. TYRKA:  Yeah, Number twenty-two.  That goes to what I

4    already said.  I can give briefly the reasoning about the

5    statute of limitations argument as the District Court laid out

6    as well.  Simply that unless those statutes specifically states

7    that the intent is, the intent is for the statute of limitations

8    to apply retroactively, the statute of limitations that applies

9    in the one --.

10        HEARING OFFICER:  I just want to know the relevance of

11   encounter tracking forms in a period of time outside the

12   statute?

13        MR. TYRKA:  That is what I am saying, that is why I am

14   saying, I am saying that despite the fact that the current

15   statute says two years, the applicable one is actually three

16   years, because that was the one in existence prior the change in

17   the law, which would take us back to January 04.  Hence, the—

18        HEARING OFFICER:  But this is April 03.

19        MR. TYRKA:  Oh, we can cut out a portion of the encounter

20   tracking forms.  I put them in there for completeness.  I

21   didn't' want to represent that they – I put in entirety what

22   they gave us for the whole school year.  I do not contend that

23   the ones prior to January 04 are relevant.

1    MR. MCCALL:  Okay.

2    MR. TYRKA: I didn't want to make a representation that they

3    had not given to me if they have given us.

4    HEARING OFFICER:  I'll exclude twenty-two.

5    MR. TYRKA: Well is that including the documents, prior --.

6    HEARING OFFICER:  If you are looking at twenty-two this is

7    your document, it seems to me that these are all 03 documents.

8    The last is 9/24/03, 924/03, 9/24/03, 9/25/03, 9/25/03, 9/25/03,

9    4/08/03.

10   MR. TYRKA: I've got some 04's.   I'm not sure if we are

11   looking at the same thing.

12   HEARING OFFICER:  I am looking at twenty-two.  WM twenty-

13   two.  Is that the case?

14   MR. TYRKA:  I'm sorry your looking at the - - you're

15   looking at the service dates, not the sign-in dates.

16   HEARING OFFICER:  That's right.

17   MR. TYRKA:  Date of service, okay.  If I may have a second.

18   I was looking at the sign-in sheets, our sign-in dates.  I've

19   got March 04 on one of these.

20   HEARING OFFICER:  Where?

21   MR. TYRKA:  This might help.  It's the one that is signed

22   dated 4/14/04 on the bottom.  Let me step over there and maybe

23   we can - can I?

1       HEARING OFFICER:  Okay. Yeah. Oh, okay.  I didn't go back

2   far enough.

3       MR. TYRKA:  Just starting on that one, the one signed on 4-

4   04, the service dates are on 04.

5       HEARING OFFICER:  Okay.  I see.  Okay.  I see what you saw.

6       MR. TYRKA:  I understand it is an open question for the

7   Hearing Officer about the three-year statute of limitation

8   argument that I made perhaps he may want to withhold the ruling

9   on admitting it, pending a decision on that.

10       HEARING OFFICER:  Okay, so I'll admit twenty-three through

11   twenty-nine and twenty-two with respect to services beginning

12   January 1 04?

13       MR. TYRKA:  That would be my submission yes.

14       MR. MCCALL: Just for the record Mr. Hearing Officer, what

15   issue are those relevant to?  Going back on the –

16       HEARING OFFICER:  its alleged then paragraph four, failure

17   to provide services.

18       MR. TYRKA: I haven't got done with my opening yet, but I

19   will be soon.

20       HEARING OFFICER:  In the complaint he is alleging

21   violations provisional services.

22       MR. MCCALL:  I understand that but still left with the two-

23   year statute of limitations.

1        HEARING OFFICER:  I haven't ruled on the statute.

2        MR. MCCALL:  Okay.

3        HEARING OFFICER:  I mean hear what you are saying, and to

4   the extent that you are right, then it won't be allowed but I

5   just haven't, he's going to give me the case.  At that point

6   I'll decide what is relevant.  But right now I'm just saying,

7   what I'm saying is that he is conceding that prior to January 1

8   04, he is not making a claim for.

9        MR. TYRKA:  Correct.

10       MR. MCCALL:  Thank you.

11       HEARING OFFICER:  So Number twenty-two is admitted for

12  documents relating to services on or after 1/1/04.  Defer ruling

13  on three-year statute of limitations.  Claim pending receipt of

14  Memos of Points and Authorities.  Okay so while we are here,

15  today is Thursday the eleventh.  I'll give parties until the

16  sixteenth.  Well I'll give Mr. --.  Let's do it this way.  I'll

17  give Mr. Tyrka until the fifteenth to give me a Memorandum of

18  Points and Authorities on the Statute and Mr. McCall until the

19  seventeenth to reply.

20       MR. TYRKA:  I can arrange it sooner I think.

21       HEARING OFFICER:  I'm going to give Mr. McCall forty-eight

22  hours after he has submitted - after he received it so --.  Why

23  don't you call him and make sure he knows that you're faxing it.

28

1    Because he will not get it for days until after it is faxed.

2        MR. TYRKA:  Understood.

3        HEARING OFFICER: Okay.

4        MR. TYRKA: I'm still talking about the violations that are

5    affecting W█████ current situation.  Regarding his current

6    placement and the situation there he is at Kelly Miller.

7        HEARING OFFICER:  We were talking about IEP.

8        MR. TYRKA: Yes. And I have now moved past that.

9        HEARING OFFICER:  Okay.  So now what are we on?

10        MR. TYRKA: I've moved past the current IEP. And onto

11    current placement. He is now at Kelly Miller under this IEP for

12    fifteen hours of specialized instruction, one hour of

13    counseling.  As already mentioned this is the same school where

14    he was clearly failing last year.  Moreover, Wayne who has

15    always been classified as ED has been suspended for the majority

16    of the school year.  And he is currently suspended since mid-

17    December.  DCSP has not held a manifestation meeting regarding

18    the current suspension and other than two days ago, DCPS

19    convened a what they wanted to be, well -- I don't know how to

20    phrase this.  DCPS invited the parent to immediately identify it

21    as a manifestation meeting.  DCPS did not notify counsel.  They

22    called my office at one o'clock - I mean one-thirty.  When I say

23    "they" I am referring Ms. WaFoolah who is the SEC.

1    HEARING OFFICER:  You know, anytime you are at a hearing

2  with me, unless it occurs to me that it is appropriate to talk

3  about.  Sometimes that happened two days ago is not relevant.

4    MR. TYRKA: Okay.  I will withhold it unless it is raised by

5  DCPS.

6    HEARING OFFICER:  Thank you.

7    MR. TYRKA: There has not been a manifestation meeting, so

8  Wayne is currently de facto expelled.  Wa████ is involved in the

9  court system. We can see the most recent order from the Family

10  Order, which is attached to our Motion of an Expedited Hearing,

11  which is our Number four.  The court instructed us to obtain an

12  Expedited Hearing because Wa██████ inability to go to school

13  because DCPS has not allowed him in or provided an alternative

14  placement is resulting in a violation in his probation, which

15  requires him to go to school.  So he is not currently provided

16  an appropriate placement or any placement at all.  Before that

17  during the school year, we do not believe he was receiving all

18  related services.  And like I said, it was been established that

19  he was showing no progress at Kelly Miller.  Finally moving on

20  to the violations that affect only any possible award of

21  compensatory education regarding violations in the past, DCPS

22  has never done a speech and language and social history or an

23  FBA.  Those issues become relevant first, at the start of the 02

1    -03 school year, when his teacher first made the referral for

2    special education evaluations because of his behavior concerns.

3    The fact of that referral in noted in Number eighteen, which is

4    the psycho-education evaluation by DCPS.  That psycho-ed noted

5    his emotional problems.

6        MR. MCCALL:  Has this been (inaudible).

7        MR. TYRKA:  I haven't offered it yet.  A later clinical on

8    April 03 noted there are behavioral problems.

9        HEARING OFFICER:  This is an open-end statement.

10       MR. MCCALL:  Well - I -- I.

11       HEARING OFFICER:  This is an open-end statement.

12       MR. MCCALL:  Okay

13       HEARING OFFICER:  Go ahead.

14       MR. TYRKA: The clinical in April 03 noted his varied

15   behavioral issues and his need for a behavior intervention plan.

16       HEARING OFFICER:  What was the first thing?

17       MR. TYRKA:  The first thing in the clinical?

18       HEARING OFFICER:  Noted his various behavioral issues.  I'm

19   being summaried, the clinical talks of and makes several

20   diagnosis on the ED special.

21       HEARING OFFICER:  Okay.

22       MR. TYRKA: So that all goes back to the start of the 02 -03

23   school year.  They've have never done a speech and language and

1   social history, which is part of the initial standard package of

2   evaluations.  They never did the FBA.  And again as reiterated

3   in November 06, those evaluations were needed. So starting at

4   however far back we trace the statute -- we trace back to three

5   years before the filing of the Complaint, but depending how far

6   back we trace it back, DCPS was in violation or had failed to

7   perform necessary evaluations of those types.  Regarding his

8   past IEP's, his May 04 IEP was created without any review or

9   evaluations and virtually no discussion of Wayne's needs

10  whatsoever.  There was no IEP created --.

11      HEARING OFFICER:  There was no review of the evaluations

12  and what else?

13      MR. TYRKA: Virtually no discussion of Wayne's needs

14  whatsoever.  The notes are already admitted and the Hearing

15  Officer can review them - notes, about four sentences.  It just

16  reports what he will be receiving.  That is our disclosure

17  Number nine of the notes of the meeting.  Additionally there was

18  not a full team at that meeting.  As the Hearing Officer can

19  also see from those same notes.  In 2005, DCPS created no IEP

20  whatsoever, did not revise his IEP and as already reviewed in

21  the April 2006 IEP when they did create one, they cut his

22  specialized instruction hours without justification and despite

23  the fact that he had been failing his regular classes and his

1    IEP goals.  Now as it affects to the statute issue, I think the

2    May 04 IEP as the Hearing Officer of aware about my argument

3    becomes relevant immediately.  But even under the two-year

4    statute would become relevant in December 04, as it is the same

5    IEP he was operating under.  I think we've already reviewed

6    these issues, but just to be sure --.

7        HEARING OFFICER:  So, let me so that I understand your

8    argument. Your argument is that the May 04 IEP is relevant both

9    because it was in effect two years before this Complaint was

10   filed and because it was prepared under the prior law.

11       MR. TYRKA:  Yes.  Right.  There was the period starting in

12   December 04, is the two year period in the filing of this

13   complaint.

14       HEARING OFFICER:  You say that your case is that violations

15   that occurred under the prior law carry a three-year statute. Is

16   that your argument?

17       MR. TYRKA:  I'm not sure I would phrase it that way

18   exactly.  I believe that it phrases it is, more generally it

19   says, the statute in effect at the time of the violation is the

20   one that controls, something to that effect.

21       HEARING OFFICER:  Okay.  So what did I say, that was

22   different than that.

23       MR. TYRKA:  I'm just trying to be precise.

1          HEARING OFFICER:  If you're saying that the May 04 IEP was

2    - .

3          MR. TYRKA:  I believe that is the implication. I believe

4    what you said is certainly an implication of the case.  That is

5    yes, absolutely my argument.  And finally, I think I've already

6    covered this, but just to be sure, independent of the nature of

7    the IEPs, W███████ has not received the services that are on those

8    IEP's, and I refer again to the those encounter tracking forms.

9    I'll walk by to summarize those.  The encounter tracking forms

10   from 5-06, and I'm going backwards chronologically, for 05-06

11   indicates that he missed 24.67, twenty-four and two-thirds hours

12   of counseling.  That is to say that he should have received

13   thirty-six hours and he received only a portion of that.  So he

14   missed twenty-four and two-thirds.  04-05 in encounter tracking

15   forms indicate that he missed eighteen and one-third hours.

16   Unfortunately for the 03-04, I only have it summarized for the

17   Hearing Officer for those for the entire year.

18         HEARING OFFICER:  For when?

19         MR. TYRKA:  For the 03 - 04, for which is still completely

20   in question, I understand, but I also only --.

21         HEARING OFFICER:  You say you summarize, where is it

22   summarized?

23         MR. TYRKA:  In the Complaint and also just in my notes.

34

1        HEARING OFFICER: Are they tracking forms?

2        MR. TYRKA: Yes.  So he also missed services in the spring

3    of 04.  I'm afraid I cannot present the exact Number of hours

4    without recounting it.  He was supposed to receive one hour per

5    week and he did not receive that according to the forms.  And

6    then as I already reviewed, he has virtually no evidence of ever

7    receiving any specialized instruction for those same periods of

8    time.  And I would ask for an inference that he did not receive

9    the specialized instruction except for where it has been

10   documented.

11       HEARING OFFICER: Well what's your evidence that he didn't

12   receive specialized instruction?

13       MR. TYRKA:  That we requested documents that the documents

14   that they provided a file to us that did not contain any

15   documents that are required to be kept regarding the provision

16   of the services, and that he has not made any progress, and have

17   repeatedly been suspended.  So for those reasons, we are asking

18   that DCPS - well as far as facts go, Ms. Jordan had identified

19   Rock Creek Academy as the school that is appropriate for Wayne.

20   Rock Creek has accepted him, and we have a witness available to

21   testify regarding their ability to provide him services as a

22   needy student.  We are asking that DCPS place W████ there and

23   fund the placement with transportation.  That they fund the

1    evaluations I've already listed at market rates and that they

2    convene a meeting within ten school days of receiving the last

3    of those evaluations in order to review the evals to revise the

4    IEPs as appropriate and develop a compensatory education plan

5    for all the violations I have laid out.

6        And finally if I may deal with the outstanding documents, I

7    believe we have outstanding are thirty through thirty-two.

8    Thirty and thirty-two I would ask to be admitted as they contain

9    requests for disciplinary records regarding recent suspensions.

10   And thirty-one is not yet relevant unless DCPS, that is only

11   there proof for (inaudible) purposes, if necessary.

12       HEARING OFFICER: Okay. As to thirty and thirty-two, Mr.

13   McCall.

14       MR. MCCALL:  Okay.

15       HEARING OFFICER:  Those will be admitted.

16       MR. TYRKA:  Maybe the Hearing Officer will be - have some

17   suggestion on this.  We don't normally do documents in this way;

18   I'd like to ask that if there is reference made to - either that

19   we can admit thirty-one now or if there is some reference made

20   to it in the future, that that be taken as an offer.

21       HEARING OFFICER:  What is thirty-one, I didn't look at it?

22       MR. TYRKA:  Thirty-one is a letter regarding reading

23   invitation. It's not current, not relevant to our case in chief;

1   it is there for the possibility of rebuttal.

2        HEARING OFFICER: It is not relevant yet.

3        MR. TYRKA:  I understand.  What I am saying is, because of

4   the Hearing Officer--.

5        HEARING OFFICER:  I'll deal with it when I need to deal

6   with it.

7        MR. TYRKA:  I'm asking something else.  I am asking that if

8   the Hearing Officer would be kind enough to, if we discuss that

9   document to take that as a request that it be admitted in

10  evidence?

11       HEARING OFFICER:  No.

12       MR. TYRKA: Okay?

13       HEARING OFFICER:  You know how to admit documents into

14  evidence.

15       MR. TYRKA:  I do and the Hearing Officer is aware that we

16  almost never do that.  I just don't want it to slip my mind.

17       HEARING OFFICER:  Write yourself a note.

18       MR. TYRKA:  Will do. Regarding the evaluation that I don't

19  think have been admitted yet, all the evaluations listed

20  eighteen through twenty-one are W█████ most current

21  evaluations.  So I think they are relevant for that reason

22  regardless of anything else.  Number twenty-one is from 06 which

23  I assume there is no question about that.

1          HEARING OFFICER:  Mr. McCall.

2          MR. MCCALL:  No objections.

3          HEARING OFFICER:  Admitted.

4          MR. TYRKA:  All right, so now if we could just do a review

5     of that.  We've admitted one through six off the bat.  Seven

6     through seventeen, I believe we're admitting when we talk about

7     the IEPs.  We just did those evals.

8          HEARING OFFICER: I don't think thirty-one is admitted.

9          MR. TYRKA:  Thirty-one, I think it is.

10         HEARING OFFICER:  Thirty-one and twenty-two for records

11    prior to January 04.

12         MR. TYRKA: Right. Right right.

13         HEARING OFFICER: OKAY.

14         MR. TYRKA:  If I can have just a moment.  Yes, that is it,

15    thank you.

16         Hearing Officer:  Mr. McCall:

17         MR. MCCALL:  Just briefly Mr. Hearing Officer.  As I stated

18    recently when we talked about some motion in preliminary

19    matters, this is a student who had significant attendance issues

20    and did ask earlier if there were documents in evidence related

21    to this issue.  There are some documents.  I apologize for not

22    pointing out to the Hearing Officer earlier. There are documents

23    within the petitioner's pleadings and particularly you'll find

1  evidence as you look through the encounter tracking forms of

2  absences.  You'll find evidence in the student progress reports,

3  specifically WM 26 which lists absences at least on WM26, which

4  is dated June 15, 2006.  There were 46 unexcused absences.  So,

5  --.

6      HEARING OFFICER: Okay now, I promise you I'm not going to

7  go pouring through his documents to try to make your case.  So

8  if you want to tell me what evidence is in the records of

9  absences.  You need to do that for me, you can do that now or

10  you could do it in a post trial memorandum.  Okay? I mean, I

11  will go through the record, but what I am saying is if you want

12  me to focus on particular issues in this record, you need to

13  direct me to it at some point.

14      MR. MCCALL:  I understand sir.  Based on the obviously, we

15  can't meet all of the time requirements of providing related

16  services, because if the student was not always there, we can

17  see that the records do not have an IEP showing an update in

18  2005.

19      HEARING OFFICER:  Say that again.

20      MR. MCCALL:  We concede that the documents do not have an

21  IEP showing a review in 2005.  We go from 2004 to 2006.  We are

22  prepared to put on a witness testimony that an IEP was

23  implemented was utilized.  The student did receive benefit when

1   he was there.   There - and again I'll mention this briefly and

2   go to more in closing but within the documents there are many

3   references to the fact that the student is bright, and when he

4   is willing to participate, he does well.   But the major

5   difficulty is an environmental problem outside the school.   The

6   school in just involved in many, many, very serious issues

7   dealing with (inaudible).   He has difficulties handling peer

8   pressure to get involved in illegal activities and just bad

9   behavior in general, so we will be bringing forth witnesses to

10  testify and put on that evidence.   But when he is there, when he

11  is willing participate, he received benefits, he did received

12  benefits of his education.

13       HEARING OFFICER:   Okay, Mr. Tyrka.

14       MR. TYRKA:   Yeah, I'd just like, I think this will come up

15  later at the hearing as well.   But I'll raise at the argument

16  stages at well, we would ask that DCPS be barred from making an

17  argument to the - any attendance issue because they've not

18  raised in the response and more particularly in this case,

19  because they did not provide attendance records as requested.   I

20  think I will have similar issues; I guess Motion in Limine or

21  objections once, if DCPS attempts to put on any witness to

22  testify as to how he has performed or what his attendance has

23  been when failed to product those documents and has failed to

1    raise those issues in responses.  I am giving the Hearing

2    Officer, a heads up on that.  But regarding the argument, I'd

3    asked that they'd be barred from making the argument.

4         HEARING OFFICER: Mr. McCall

5         MR. MCCALL:  It's already in the record, I also referred to

6    the documents earlier and now he wants to take them back, I

7    don't know.

8         HEARING OFFICER:  Well, you can direct me to.  Here's my

9    problem.  My problem is I don't have a response from D.C.

10        MR. MCCALL:  Correct.

11        HEARING OFFICER:  Now what you've raised amounts to

12   essentially an affirmative defense.  We didn't do what we were

13   supposed to do because he wasn't here.  I mean that is exactly

14   what should be laid out in a response.  It's being laid out for

15   the first time on the first day of the Hearing. So I have a

16   significant problem with that.  And, I've got a problem with

17   that, if that and you have confirmed that that was your defense;

18   you say you're going to put that testimony on and you admit that

19   there are attendance records that haven't been disclosed.  So,

20   not only is it your defense, but your going to introduce hearsay

21   testimony of - of petitioner's for attendance with evidence that

22   wasn't disclosed to the other side, despite the fact that he

23   asked for it.  So I'm inclined to grant Mr. Tyrka's object to

1  bar - to bar this defense of poor attendance.

2      MR. MCCALL:  So Mr. Hearing Officer, clearly I am allowed

3  to address evidence.

4      HEARING OFFICER:  You can address them.

5      MR. MCCALL: Yeah, just for the record --.

6      HEARING OFFICER:  And you can point to anything in the

7  record in your closing.  Or your witness can discuss them.

8      MR. MCCALL:  Right.  And for the record, I don't think that

9  we are required to raise affirmative defenses.

10     HEARING OFFICER:  Look at the statute.  I'm calling it an

11  affirmative defense.

12     MR. MCCALL:  I understand.

13     HEARING OFFICER:  What the statute says is that you are

14  supposed to provide a response to the allegations in the

15  Complaint.

16     MR. MCALL:  I don't disagree with that.

17     HEARING OFFICER:  Now at the very least if you look at what

18  is required in the response.  If they say you didn't provide

19  services, it seems to me that if your defense is you didn't

20  provide them because he wasn't here, you would at least have to

21  say that.  You can call it what you want.  But it is an

22  affirmative defense, whether it is a response to something, at

23  least put the other side on notice that that is what you intend

1   to say - that that is what you intend to say at the hearing.   In

2   particular if he has asked for attendance records and you don't

3   provide them, and you don't put anything in your response, you

4   know.   I try to bend over backwards to let both parties make

5   their cases.   But, there comes a point, which really becomes

6   unfair.   You're entirely in control of this child's records.   He

7   asked for attendance records, you don't give them to him, and

8   then you come to trial and you say your defense is he didn't

9   come to school.   So I think I am going to grant Mr. Tyrka's

10  motion of (inaudible).   Anything else Mr. Tyrka?

11       MR. TYRKA: Not yet.   So I like to begin with Ms. Jordan.

12  But first as to - actually - well maybe an issue that comes,

13  obviously we need the burden of proof, we are going first.   I

14  can cover every base.   The Hearing Officer may wish to ask for

15  DCPS's response to some of what I've said. Maybe the other is -.

16       HEARING OFFICER: No I would like to try this case.   How

17  many witnesses do you have?

18       MR. TYRKA:   We only have Ms. Jordan and Keren Plowden from

19  Rock Creek.

20       HEARING OFFICER:   Well, that's not so bad.

21       MR. TYRKA: Okay.   Ms. Jordan if you would raise your right

22  hand. Do you swear or affirm that the testimony you are about to

23  give is the truth, the whole truth and nothing but the truth?

1          MS. JORDAN:  Yes.

2          HEARING OFFICER: Thank you, go ahead Mr. Tyrka.

3          MR. TYRKA:  Hi. Ms. Jordan you are W█████ mother?

4          MS. JORDAN: Yes.

5          MR. TYRKA:  Can you tell us where W████ was attending in

6    the fall of 2003, and tell me if you need any help tracking back

7    to those years?

8          MS. JORDAN:  2003, it would be Kelly Miller.

9          MR. TYRKA:  Well let me walk back.  This is currently was -

10         HEARING OFFICER: You need to speak up.  Your testimony is

11   being taped, so you need to speak in a loud and clear voice.

12         MS. JORDAN: Wayne is at home because he was expelled from

13   Kelly Miller. And there were no alternative schools to attend.

14         HEARING OFFICER:  When?

15         MS. JORDAN:  December 15th.

16         MR. TYRKA:  And for the school year prior to that he was

17   Kelly Miller?

18         MS. JORDAN: Yeah.

19         MR. TYRKA:  And the prior school year, where was he?

20         MS. JORDAN: Kelly Miller.

21         MR. TYRKA:  In 5-06?  And the prior year was also Kelly

22   Miller?

23         MS. JORDAN:  Smothers.

44

1        HEARING OFFICER:  We can't hear you.

2        MS. JORDAN: Smothers.

3        HEARING OFFICER:  4-05?

4        MR. TYRKA:  If I may, I think we can probably stipulate to

5    this.  I believe the child started at Kelly Miller in September

6    04, and before that was at Smothers.  But DCPS can say if they

7    want to (inaudible) to that.  I am just trying to get this for

8    foundation.

9        HEARING OFFICER:  I'm not trying the case, I don't - I'm

10    just trying to find out what the witness is saying.  Do you

11    believe Kelly Miller is 04-05?

12        MS. JORDAN: Yes.

13        HEARING OFFICER:  Okay.

14        MR. TYRKA:  Sorry, September 04.  And Then Smothers

15    starting January 5th.

16        HEARING OFFICER:  Okay.

17        MR. TYRKA:  I am going back to Smothers, how did he end up

18    going to Smothers?

19        HEARING OFFICER:  Whoaaa. Whoaaa. Whoaaa.   What's

20    Smothers?

21        MR. TYRKA:  Smothers was immediately before Kelly Miller.

22        HEARING OFFICER:  She said 04-05.  He stipulated to 04-05.

23    So now you got to start over if you want to start talking about

1  03-04.

2      MR. TYRKA:  I thought that was part of the stipulation.

3      HEARING OFFICER:  Was that part of the stipulation?  I

4  thought we were stipulating that he went Kelly Miller starting

5  04-05.

6      MCCALL:  I know for sure 04-05 Kelly Miller.

7      HEARING OFFICER:  Are you aware of 03-04?

8      MCCALL:  I can't absolutely recall, sorry.

9      HEARING OFFICER:  So that wasn't a part of the stipulation?

10     MR. TYRKA:  Where did he go before Kelly Miller?

11     MS. JORDAN: He was in Smothers.

12     MR. TYRKA:  How did he end up at Smothers?  Do you know

13  what month he started at Smothers; do you have an idea of the

14  season?

15     MS. JORDAN: I'm not exactly sure.

16     MR. TYRKA:  Okay. How did he end up going to Smothers, if

17  you remember?  12 48 31

18     MS. JORDAN:  Because I moved and that was the neighborhood

19  school.  That was the school in his zone.

20     MR. TYRKA:  Did DCPS have any meetings placing him at

21  Smothers?  This is all in the understanding that the Hearing

22  Officer may make different ruling on the statute.  Maybe we just

23  want to have a standing objection on DCPS on the statute?

46

1        MS. JORDAN:  No.

2        MR. TYRKA:  Okay, no they did not have a meeting.

3        MS. JORDAN:  No.

4        MR. TYRKA:  And how did he do at Smothers?

5        MS. JORDAN:  He did barely okay at Smothers.

6        MR. TYRKA:  Okay.  And he started Kelly Miller September

7   04.

8        MS. JORDAN: Yes.

9        MR. TYRKA:  Was he placed there as you recall?  Did DCPS

10   have a meeting to put him there?

11        MS. JORDAN:  No.

12        MR. TYRKA:  How did he end up going there?

13        MS. JORDAN: I put him there.

14        MR. TYRKA:  Why Kelly Miller?

15        MS. JORDAN:  I signed him up because that was the

16   neighborhood school in our zone.

17        MR. TYRKA:  The neighborhood school for the middle school?

18        MS. JORDAN: Yes.

19        MR. TYRKA:  September 04 is that when W████ was becoming of

20   age to go to middle school?

21        MS. JORDAN:  Yes.

22        MR. TYRKA:  All right.  So he's been at Kelly Miller since

23   September 04, I was asking you generally how has it gone there

1  for him?   How has he done?

2       MS. JORDAN: Not good.

3       MR. TYRKA:  What have you seen about his academic skills

4  during his time at Kelly Miller, has he shown improvement?

5       MS. JORDAN:  NO.  He's made no progress.

6       MR. TYRKA:  And what about behavior issues has he had

7  behavior problems at Kelly Miller?

8       MS. JORDAN: Yes.

9       MR. TYRKA:  Has he been suspended?

10      MS. JORDAN:  Yes.

11      MR. TYRKA:  When was the suspension start?

12      MS. JORDAN: Maybe his second year at Kelly Miller.

13      MR. TYRKA:  Since 05-06, since the last school year?

14      MS. JORDAN:  Yes.

15      MR. TYRKA:  Do you have an estimate of how many times he

16  was suspended last school year?

17      MS. JORDAN: No.

18      MS. JORDAN: Yes.

19      MR. TYRKA:  Ballpark, more than ten, less than ten, more

20  than twenty, less than twenty?

21      MS. JORDAN:  Maybe, more than twenty.

22      MR. TYRKA:  More than twenty?

23      MS. JORDAN: I would say.

1      MR. TYRKA:  What about in school suspensions, did he also

2  get in-school suspensions?

3      MS. JORDAN:  He had maybe one in-school suspension.

4      MR. TYRKA:  The rest of those were out of school?

5      MS. JORDAN: Out of school.

6      MS. JORDAN: Yes.

7      MR. TYRKA:  Do you recall how long they were, do you

8  remember what the longest one was?

9      MS. JORDAN:  The longest one was about ten days.  I'm

10  sorry.  The longest one was the last one.

11      MR. TYRKA:  I'm sorry.  The longest one from last year.  I

12  as still talking about last school year, 05-06.

13      MS. JORDAN: Yeah.  The longest one was December 15th.

14      MR. TYRKA:  You talking about this past Christmas or two

15  Christmases ago.

16      MS. JORDAN: No, this past Christmas.

17      MR. TYRKA:  Okay.  I am asking you about the 05-06 school

18  year, okay?

19      MS. JORDAN: The longest one was ten days.

20      MS. JORDAN: Yes.

21      MR. TYRKA:  Not this school year, last school year.

22      MS. JORDAN:  Ten days.

23      MR. TYRKA:  Longest one was ten days.

1          MS. JORDAN: Yes.

2          MR. TYRKA:    Okay. Now when you said, I just want to make

3    sure we are clear on this.   You said more than twenty times,

4    were you talking about that last school year or this school

5    year?

6          MS. JORDAN: Both.

7          MR. TYRKA:    Okay. So altogether.

8          MS. JORDAN: Altogether.

9          MS. JORDAN: Yes.

10         MR. TYRKA:    Okay. This most recent one you said was

11   December 15th and that's this past December?

12         MS. JORDAN:  Yes.

13         MR. TYRKA:    So, has W██████ been back to school since then?

14         MS. JORDAN: No.

15         MR. TYRKA:    And DCPS offered –

16         HEARING OFFICER: Why are you talking about a post Complaint

17   suspension?

18         MR. TYRKA:    What's that?

19         HEARING OFFICER: Why are you talking about a post Complaint

20   suspension?

21         MS. JORDAN: Yes.

22         MR. TYRKA:    To establish that he is currently not in school

23   and has a need for placement immediately.   I think it is

50

1    relevant to relief, if not the violation.

2        HEARING OFFICER:  We've established he (inaudible).   We

3    don't need extended testimony about something that occurred

4    after the (inaudible).

5        MR. TYRKA:  Okay. Has DCPS offered any alternative to Kelly

6    Miller?

7        MS. JORDAN: No.

8        MR. TYRKA:  I have no further questions.

9        HEARING OFFICER:  Mr. McCall. I'm sorry, let me just make

10   sure I understand.  You used the term expelled or was he

11   suspended for twenty days?

12       MS. JORDAN: He was expelled December 15th of 06.

13       HEARING OFFICER:  He was expelled?

14       MS. JORDAN: Yes he was.

15       HEARING OFFICER:  Okay, Mr. McCall.

16       MR. TYRKA:  I'll just note that we haven't - that relates

17   to our request for the disciplinary records.  So, we have not

18   seen them or have those two letters that disclosed, thirty and

19   thirty-two requesting those records.

20       HEARING OFFICER:  Mr. McCall.

21       MR. MCCALL:  Before I go forward, I do want to address

22   because that kind of raises of whether I got a still address an

23   issue of whether he was expelled on something that occurred

1  after the complaint was filed.

2      HEARING OFFICER:  It was a curiosity more than anything

3  else.  He is not in school now.  That was brought out.  There

4  was reference to suspensions, and while I was writing, I didn't

5  know if I wrote down the right thing, whether he was expelled,

6  I'm nor sure if it is relevant to anything I have to find, but I

7  was curious as to whether he was expelled or suspended.  So you

8  can do that. So the question is - my question is I don't know,

9  but generally speaking, I don't think matters that occur after

10  the filing of a complaint are relative.

11      MR. MCCALL:  Okay.

12      HEARING OFFICER:  Oh - relevant. It's useful to know that

13  he is not in school now.

14      MR. MCCALL:  Thank you Mr. Hearing Officer.  Ms. Jordan

15  just a few questions.  You have raised the issues in your

16  complaint; I'm going to briefly address a few questions.  You

17  said in 2004-2005, that DCPS placed Wayne in Kelly Miller Middle

18  School.  That's not true is it?  You put him in Kelly Middle

19  didn't you?

20      MS. JORDAN:  Well it was time for him to move on to the

21  next grade, so Kelly Miller was the neighborhood school.

22      MR. MCCALL:  But you did that yourself, you went and chose

23  that direction.

1       MS. JORDAN:  It is the only school he could have gone to

2  sir.

3       MR. MCCALL:  Okay.  Did you ever go to the school during

4  2004-2005 and observe him in the classroom?

5       MS. JORDAN: What school are we speaking of?

6       MR. MCCALL:  Kelly Middle.

7       MS. JORDAN: In 2004-2005?

8       MR. MCCALL:  Yes M'ame.

9       MS. JORDAN: Yes I have.

10      MR. MCCALL:  Do you know – when it was, what class, if you

11 can tell me?

12      MS. JORDAN:  No I don't.

13      MR. MCCALL:  Do you know how many times you may have gone?

14      MS. JORDAN:  More than several times.

15      MR. MCCALL:  Is that like one or two?

16      MS. JORDAN: Maybe eight times.

17      MR. MCCALL:  During the 2005-2006 school year, I think you

18 said that that's when the suspensions started?

19      MS. JORDAN:  No, that's not when it started, that's when –

20 that's when he began to suspend more.

21      MR. MCCALL:  Okay.  And during that time period, was he

22 also starting to get into more trouble outside of the school?

23      MS. JORDAN: No, it was more inside the school.

53

1     MR. MCCALL:  What types of trouble was he having outside

2  the school?

3     MR. TYRKA:  Objection.  Outside the scope and irrelevant,

4  I'm not sure what this has to do with his education.

5     MS. JORDAN:  We are dealing with inside the school.

6     MR. MCCALL:  One of the things that we've addressed and you

7  asked us to do was that we indicated that the student had

8  significant problems and it was possible they were outside the

9  school. I believe those problems are in fact in the school.

10    HEARING OFFICER: You've asked for FBA.  You brought his

11  behavior in question and I'm not sure, I think it is relevant.

12  Go ahead.

13    MS. JORDAN: No.

14    MR. MCCALL:  He had no problems?

15    MS. JORDAN: Yes he had some problems out of school, but the

16  majority of the problems were inside the school.

17    HEARING OFFICER:  What year are we talking about?

18    MR. MCCALL: 2005-2006 Mr. Hearing Officer, last year.  Did

19  he have any issues of which - of law, any arrests any charges?

20    MS. JORDAN:  Yes.

21    MR. MCCALL:  What type?

22    MS. JORDAN:  It was - he was in a car with another student?

23    MR. MCCALL:  What happened?

1          MS. JORDAN: And he was arrested.

2          MR. MCCALL:  When was that?

3          MS. JORDAN:  This was in April of 06.

4          MR. MCCALL:  Did he have any time in confinement, jail

5    time?

6          MS. JORDAN: No he wasn't.  He was put on probation.

7          MR. MCCALL:  Any other incidents, arrests or incidents with

8    the law in 2005 -2006?

9          MS. JORDAN: Yes there was.

10         MR. MCCALL:  And what was that?

11         MS. JORDAN:  He had a fight with a child.

12         MR. MCCALL:  Who did he have a fight with?

13         MS. JORDAN:  Another child.

14         MR. MCCALL:  And what happened as a result of that?

15         MS. JORDAN: And he had to go court because the child

16   pressed charges.

17         HEARING OFFICER:  I'm sorry?  What did you say?

18         MS. JORDAN: He had to go to Court because the child pressed

19   charges and he was put on probation for that also for that.

20         MR. MCCALL:  Any other incidents?

21         MS. JORDAN: No.

22         HEARING OFFICER:  When was that?

23         MS. JORDAN:  When was what?

1       HEARING OFFICER:  When was the second incident?

2       MS. JORDAN: In maybe May.  In May.

3       HEARING OFFICER:  May of '06?

4       MS. JORDAN:  Yes, in '06.

5       HEARING OFFICER:  So he went, he had back-to-back --.

6       MS. JORDAN:  Yes he did.

7       HEARING OFFICER:  Probation.

8       MS. JORDAN: Yes, he had back-to-back.

9       HEARING OFFICER:  Go ahead Mr. McCall.

10      MR. MCCALL:  Thank you.  Now Ms. Jordan during that last

11  school year, your son had a lot of absences from school didn't

12  he?

13      MR. TYRKA:  Wait-a-minute, Wait-a-minute. Objection.  This

14  argument was already barred.

15      HEARING OFFICER:  Sustained.

16      MR. MCCALL:  Can I get you to look at WM26, that's the

17  student progress report in June 15th, 2006.

18      MR. TYRKA:  Sir, please give me a minute.

19      MR. MCCALL:  Did he ever have any trouble cutting classes?

20      MR. TYRKA:  Same objection.

21      MR. MCCALL:  (inaudible).

22      HEARING OFFICER:  We were talking about absences.  Look you

23  can refer to all of the material that he has presented that

1    relates to that, but I am not going to let you ah --.

2        MR. MCCALL:  Thank you.

3        HEARING OFFICER:  Go ahead.

4        MR. MCCALL:  Looking at that document, do you see in the

5    right hand column under credit earned, each course has an YTD,

6    ABS?

7        MS. JORDAN:  Yes.

8        MR. MCCALL:  That stands for Year-To-date- absences. Where

9    you aware of that?

10        MR. TYRKA:  He is trying to do this in another form, the

11    best evidence.  You have a document; you can talk about the

12    document.

13        HEARING OFFICER:  I'm not sure what the question is?

14        MR. TYRKA:  He is directing the witness to the attendance

15    issue again; I mean the Hearing Officer has ruled on this.

16        HEARING OFFICER: I'll see where he is going with this.

17    Overruled.

18        MR. MCCALL:  First of all where you aware that was the

19    Year-To-Date Absences?

20        MS. JORDAN: No I wasn't.

21        MR. MCCALL:  And now that you've seen these Numbers where

22    you aware of the Number of absences your son has?

23        MR. TYRKA:  Objection.  He just asked the question when the

1    Hearing Officer stopped, when he said, how many times was he

2    absent.

3         HEARING OFFICER:  Where are you going with this?

4         MR. McCall:  I just want to know if she is aware of it, I

5    think it is important.  She raised a Complaint, and it is

6    important to know whether she have knowledge of --.

7         HEARING OFFICER:  I will allow you to point out to me the

8    absences.  I'm not going to allow you to make it part of your

9    case, with respect to either impeaching the witness or as part

10   of your direct case.  I'm going to allow you to point out to me

11   those and I'll consider them.

12        MR. MCCALL:  You're talking about a post-dated brief.

13        HEARING OFFICER:  Yep, a post-dated brief.

14        MR. MCCALL:  I truly thought you wanted me to point them

15   out.

16        HEARING OFFICER:  No.  Not with the witness.

17        MR. MCCALL:  Okay.  All right. And you said Ms. Jordan at

18   Kelly Miller Elementary School that he --.

19        HEARING OFFICER: Let me just make myself clear.  I think

20   it's a problem that it wasn't disclosed; I think it's a problem

21   that it didn't appear in a response.  I 'm going to allow you to

22   point out to me evidence that petitioner has put in that - that

23   concedes absences. And I will consider it whatever decision I

                                  58

1    make.  For instance, if there evidence in the record that the

2    child never came to school, I think that is relevant. DC should

3    have disclosed it; DC should have admitted the records. But if

4    in the records, I may think that is significant and take note of

5    it.  Anything short of that, I'll consider it if I think a

6    decision I would make would be unjust based upon evidence that's

7    apparent to me in the record, okay.  What I don't want is to

8    allow DCPS, what I consider to be a fairly significant defense

9    without having disclosed it and without having disclosed records

10   of it.  So that's it - I just want both parties to know where I

11   am going with this.

12       MR. MCCALL:  Ms. Jordan during the 2004 - 2005 school year,

13   can you confirm whether or not there was an IEP implemented for

14   your son at school?

15       MR. TYRKA:  I have a question about the word "implemented"

16   and if that can be clarified for the witness because there are

17   many different interpretations of the implemented?

18       HEARING OFFICER:  Why don't you be more specific?

19       MS. JORDAN: I will but the witness hasn't complained.

20       HEARING OFFICER:  Well that is what he is here for.  If he

21   thinks the question is ambiguous, his job is to protect his

22   witness. Come on Mr. McCall.

23       MR. MCCALL:  Okay.  Do you understand the term implemented?

1          MS. JORDAN: No.

2          MR. MCCALL:  Okay.  Can you confirm whether an IEP was used

3    or was is that teacher's had IEP's and they used it with your

4    son at Kelly Miller?

5          MS. JORDAN:  In 2000 - what was the year again?

6          MR. MCCALL:  In 2004 -2005?

7          MS. JORDAN:  No.

8          MR. MCCALL:  I mean you don't know right?

9          MS. JORDAN:  No.

10         MR. MCCALL:  And I assume your answer would be the same in

11   2005 -2006?

12         MS. JORDAN:  Well 2006 was, yeah we did an IEP in 2006.

13         MR. MCCALL:  Okay.  Your opinion is it was implemented in

14   2005?

15         MR. TYRKA:  Objection. He is trying to turn the word

16   implement to the whole point was that --.

17         HEARING OFFICER:  The only thing was he changed were the

18   years.

19         MR. MCCALL:  I apologize.  I thought I went through what I

20   meant by implemented.

21         HEARING OFFICER:  I thought you did too.  He went from what

22   she didn't know about 2004-5, to 2006.  Now the question is what

23   are you talking about when you are talking about 2006.

1       MR. MCCALL: 2005-2006 my question was --

2       HEARING OFFICER:  You didn't say 2005-2006.  You said 2006.

3       MR. MCCALL:  I apologize, I didn't mean to, I meant to say

4   2005-2006, Mr. Hearing Officer.  Ms. Jordan I am referring to

5   the 2005-2006 school year, the last school year.  And you

6   already said that you agreed that there was an IEP in place,

7   correct?

8       MS. JORDAN: Yes, but everyone didn't attend the meeting.

9       MR. MCCALL:  Okay, and --.

10      HEARING OFFICER:  It's okay to do leading questions, but

11  I'm a little confused now.  Let's go back to 2004 -2005.

12      MR. MCCALL:  Okay.

13      HEARING OFFICER:  I thought the question was after the

14  objection, are you aware of whether or not teachers used an IEP.

15  I didn't hear her answer, and you've asked leading questions,

16  you don't know do you?  And she said she didn't know.

17      MR. MCCALL:  I'll come back.

18      MR. TYRKA:  The answer was no.

19      HEARING OFFICER:  My understanding is she didn't know

20  whether or not one was used in 2004-2005. Do I have that wrong?

21      MR. TYRKA:  That is what I heard.

22      MR. MCCALL:  That is what I heard as well.

23      HEARING OFFICER:  Then I thought I heard you say, now what

1   about 2006?  And now you are saying you mean 2005-2006?  So we

2   are now moving from 2004-5, which was his first year at Kelly

3   Miller.

4        MR. MCCALL:  Correct.

5        HEARING OFFICER:  To his second year at Kelly Miller.

6        MR. MCCALL:  Correct.

7        HEARING OFFICER:  All right.  Go ahead and ask your

8   question again.

9        MR. MCCALL:  Okay, during 2005 - 2006 can you confirm

10  whether an IEP was used with son at Kelly Miller.

11       MS. JORDAN: Yes.

12       MR. MCCALL: Okay. Is that yes that you feel it was?

13       MS. JORDAN:  The meeting took place but the orders that

14  supposed to be done were not done.

15       MR. MCCALL:  Okay.  What in particular do you think was not

16  done?

17       MS. JORDAN:  His hours were cut short without him

18  progressing.  And he wasn't getting the counseling he needed.

19       MR. MCCALL:  And when you say he wasn't getting the

20  counseling he needed, do you have any knowledge as to, you know

21  particular reasons why he wasn't getting the counseling?

22       MS. JORDAN:  No.

23       MR. MCCALL: In the documents there are references to

1   counseling sessions where he was unavailable; do you have any

2   knowledge as to why he was unavailable for those sessions?

3        MS. JORDAN:  No.

4        MR. MCCALL:  In the documents there are references to

5   counseling sessions where he couldn't be located; do you have

6   any knowledge as to why he couldn't be located?

7        MS. JORDAN:  No.  What documents are we speaking of?

8        MR. MCCALL:  In your own petitioner's pleadings?

9        MR. TYRKA:  That's a little - (chuckle).

10       MR. MCCALL:  You've complained in this case that your son

11  did not receive the specialized instruction in his IEP during

12  the 2005-2006 school year, is that correct?

13       MS. JORDAN:  Yes.

14       MR. MCCALL:  How do you know he didn't receive it?

15       MS. JORDAN:  Because I know.

16       MR. MCCALL:  How?

17       MS. JORDAN:  I asked him.  The classes that he was going

18  to, his schedule was screwed up half of the year, he didn't know

19  where he was supposed to be placed.  And - I know.

20       MR. MCCALL:  And when you say he wasn't receiving the

21  specialized instruction, is there any particular area that you

22  think he didn't get any?

23       MS. JORDAN:  In all areas sir.

1        MR. MCCALL:  It is your testimony that he received no

2   instruction from a special education teacher in 2005-2006?

3        MS. JORDAN:  No.  I am not saying he received NO

4   instructions.  That is not what I am saying.

5        MR. MCCALL:  Can you tell us more clearly when he didn't

6   receive it; is there anything you can point to in the record to

7   show is?

8        MS. JORDAN:  No.

9        MR. TYRKA:  Wait a minute that was a compound question.

10       MR. MCCALL:  I can break it down. I'm just trying to

11  clarify it for the Hearing Officer.  I think the allegation is

12  not supported.

13       MR. TYRKA:  My objection was only compound, that is my

14  objection.

15       MR. MCCALL:  I don't want to, unless the Hearing Officer

16  wants to me to rephrase it, I think it is clear that she

17  doesn't' know, unless the Hearing Officer.

18       HEARING OFFICER:  I am not sure that there is a ruling on

19  the floor that I need to address.

20       MR. MCCALL:  Did you get an answer to your question?

21       MR. MCCALL:  I think so; basically she said she didn't

22  know.

23       MR. TYRKA:  She said no to a compound question, that why I

64

1  objected to the question.

2       HEARING OFFICER:  Why don't you ask the question again?

3       MR. MCCALL: Ms. Jordan, what I need to know is during the

4  2005-2006 school year, what class or classes in particular, are

5  you saying he didn't' receive instruction from a special

6  education teacher?

7       MS. JORDAN:  I don't have his schedule in front me, at the

8  moment so I cannot exactly point directly out to you.  So--.

9       MR. MCCALL:  Are you alleging that there was like for the

10 entire school year, one class or a set of classes that there was

11 just no special Ed teacher?

12      MS. JORDAN:  No.

13      MR. MCCALL:  Are you alleging – tell me more particular if

14 you would, what are you alleging how he didn't receive this

15 specialized instruction?

16      MR. TYRKA:  I have an objection which is that, the

17 witnesses is here to answer factual questions, and I think if

18 the questions can be phrased in a way that a lay person can

19 understand this factual question --.

20      HEARING OFFICER: I think it was very clear.  Overruled.

21 She is making the allegation that he didn't get services.  What

22 services didn't he get?

23      MR. TYRKA:  Understood.  But some allegations that are

1    phrased can make sense to lawyers and all the lawyers in this

2    room, that a lay person might not understand, so when the

3    allegation is did not receive his services on his IEP, to say

4    what does that mean to the lay person?

5         HEARING OFFICER:  Then you need to prepare your witness

6    then. That is the allegation in the Complaint.  Which word is

7    ambiguous?  The service is ambiguous.  Is IEP ambiguous? What is

8    ambiguous?

9         MR. TYRKA:  I think I know exactly what he is getting at.

10   If the question is asked, I think it is a totally fair question,

11   I didn't object to the question that said, he had no teacher?   I

12   think --.

13        HEARING OFFICER:  The question on the floor Mr. Tyrka is

14   what's your allegation?  And it is not for you to answer.  He

15   asked her whether or not she has alleged that there was no

16   special education teacher for a period of time, she said no.

17   Now he is asking another question along the same lines.

18        MR. TYRKA: What I understood him to ask is, "what do you

19   mean by that?" and that is the question that I am objecting to

20   because I think it is a legal statement.  I didn't object to the

21   question where he is saying, are you saying there is no teacher.

22   I would object to similar question that broke it down, so that a

23   witness testifying about -.

1          HEARING OFFICER:  I think the question on the floor, what

2     services are you alleging he didn't receive?  Is that your

3     question?

4          MR. MCCALL:  That is correct.

5          HEARING OFFICER:  I don't understand what is ambiguous

6     about that.

7          MR. MCCALL: And for the record I am referring to allegation

8     Number 42 in the Complaint.

9          MR. TYRKA:  Would you like the witness to look at that?

10         MR. JORDAN:  I would need to.

11         MR. TYRKA:  I think he directed the witness to it?

12         MR. MCCALL:  Can you tell us Ms. Jordan in particular?

13         MS. JORDAN:  What tell you - what was the question again?

14         MR. MCCALL:  What specialized instruction did your son not

15     receive during 2002 - 2006?

16         MS. JORDAN:  No I can't tell you at the moment.

17         MR. MCCALL:  No further questions.

18         HEARING OFFICE:  Can you redirect?

19         MR. TYRKA:  Yes please.  You were asked a lot of questions

20     about IEPs and they were rephrased and whether they were

21     implemented?  And then you answered some questions talking about

22     IEP meetings that had taken place, and so I want to draw your

23     attention to that part of your testimony.  You said that a

1  meeting during the 05-06 school year, you said that there was an

2  IEP developed at some point.

3      HEARING OFFICER:  Well actually since you decided to put a

4  preference, I don't believe he asked a question about neither.

5  He asked whether or not an IEP was implemented and her response

6  was that a meeting took place as to what was to be done wasn't

7  done.  But Mr. McCall didn't ask her about a meeting.

8      MR. TYRKA:  I didn't say that.

9      HEARING OFFICER:  What you said in your preference, you

10  were asked a lot of questions about meetings.

11      MR. TYRKA:  And in her response she stated -.

12      HEARING OFFICER:  But she wasn't asked questions about

13  meetings.  She initiated --.

14      MR. TYRKA:  Oh. Oh. Oh. Oh. I'm sorry.

15      HEARING OFFICER: She initiated - she said, here response

16  raised the issue of meetings that took place, what was to be

17  done, and wasn't done.

18      MR. TYRKA:  Absolutely.  I misspoke. Excuse me.  What I

19  meant to say was you asked about the implementation of IEP's and

20  in response you stated that a meeting had - than an IEP meeting

21  had occurred in 05 -06 school year, right.

22      MS. JORDAN:  Hmmmhmmm.

23      MR. TYRKA:  You have to say a yes or no response.

68

1        MS. JORDAN:  Yes.

2        HEARING OFFICER: She didn't say that either.

3        MR. TYRKA:  That was my understanding.

4        HEARING OFFICER:  She made a general response to a

5    question.

6        MR. TYRKA:  Do you know whether the particulars of the IEP,

7    which IEPS were ever met?

8        HEARING OFFICER:  If you want to ask about an IEP, ask

9    about the IEP?  I mean I don't know what you expect me to do

10   with this?  What IEP are you talking about it, what particulars

11   are you talking about?

12       MR. TYRKA:  Okay.

13       HEARING OFFICER:  Do you really think I can make a decision

14   based on that question Mr. Tyrka?

15       MR. TYRKA: I was headed their Mr. Banks, it's just my first

16   one.  You made note of the footnotes in the pages, I was asking.

17   For example, I am turning your attention to WM15 and it's an IEP

18   dated January 17th, 06, and turn the pages towards these goals

19   and objectives pages, see up here where it says annual goals and

20   over here it says short term objectives?

21       MS. JORDAN:  Hmmmhmm.

22       MR. TYRKA:  And just for the record I am on the first goal

23   and objective I'm starting.  So we start with academic readings,

1   we start written expression, -- we go to written expression,

2   then academics math, and social emotional.  And you see here, we

3   have those short-term objectives.

4        MS. JORDAN: HmmmHmmm.

5        MR. TYRKA:  And each one it talks about what the student

6   will be able to do --.

7        MS. JORDAN:  HmmmHmmm.

8        MR. TYRKA:  Now do you know if these - I'm starting with

9   this first page academic reading --. Do you know if these

10  particular objectives were worked on in his class during the

11  year?  Do you know one way or the other?

12       MS. JORDAN:  I'm not sure, but I believe so.  But clearly

13  from his report card, I mean, he's failing.

14       MR. TYRKA:  Okay.  Do you know for sure whether these goals

15  and objectives paved in his IEP were those things were worked on

16  in his classes?

17       MS. JORDAN: No I don't know for sure.

18       MR. TYRKA:  I'm going to turn your attention to the 2004

19  IEP, which is WM10.  Similarly we see goal and objective pages

20  here for those different areas?  Do you know if these goals and

21  objectives were ever worked on in his classes, do you know for

22  sure?

23       MS. JORDAN: Some of them.

1        MR. TYRKA:  Some of them?

2        MS. JORDAN:  Yes.

3        MR. TYRKA:  Do you know whether they were all worked on?

4        MS. JORDAN:  No.

5        MR. TYRKA:  And looking at those goals and objectives and

6    I'm still in the 04 IEP now, we see for the first few, you see

7    evaluation procedures, tests, you see that?

8        MS. JORDAN:  Hmmmhmmm.

9        MR. TYRKA:  Have you been given a copy of those tests?

10        MS. JORDAN:  No, I haven't.

11        MR. TYRKA:  Okay, we move on to social-emotional,

12    behavioral, and it says document observation.  As far as you are

13    aware, have you been given those documented observations?

14        MS. JORDAN:  No.

15        MR. TYRKA:  In turning to the 2006 IEP, we look at the

16    first goals and objectives page in the '06 IEP, evolutions

17    procedures, portfolio; we see that for the first couple of

18    pages, have you seen the portfolio evidencing the work on those

19    goals?

20        MS. JORDAN:  No.

21        MR. TYRKA:  I have no further questions.

22        HEARING OFFICER:  Okay, thank you. Do you have another

23    witness?

1      MR. TYRKA:  Yeah, Keren Plowden from Rock Creek Academy.

2      MR. TYRKA:  You are on speaker and Hearing Officer and Mr.

3  McCall, Counsel and Ms. Jordan is here.  Can you hear us?

4      MS. PLOWDEN:  Yes, I can, can you hear me?

5      MR. TYRKA:  Okay, great.

6      HEARING OFFICER:  Ms. Plowden, okay its Terry Banks the

7  Hearing Officer.

8      MS: PLOWDEN:  How are you?

9      HEARING OFFICER:  Fine and you?

10     MS PLOWDEN:  Good.

11     HEARING OFFICER:  I'm going to place you under oath and

12  you'll be asked questions by Mr. Tyrka and when he's done you'll

13  be cross-examined by Mr. McCall, counsel for DC Public Schools.

14     MS. PLOWDEN: Okay.

15     HEARING OFFICER:  Would you raise your right hand?

16     MS. PLOWDEN:  I am.

17     HEARING OFFICER:  Do you swear or affirm that the testimony

18  you are about to give will be the truth, the whole truth and

19  nothing but the truth?

20     MS. PLOWDEN: Yes I do.

21     HEARING OFFICER:  Thank you, go ahead Mr. Tyrka.

22     MR. TYRKA: Ms. Plowden what is your current occupation?

23     Ms. PLOWDEN:  I am Executive Director of student services

1    at Rock Creek Academy.

2          MR. TYRKA:  Is it part of your job to be familiar with Rock

3    Creeks' program and services?

4          MS. PLOWDEN:  Yes it is.

5          MR. TYRKA:  And is it part of your job to participate in

6    admission decisions?

7          MS. PLOWDEN:  Yes it is.

8          MR. TYRKA:  Are you familiar with W██████ M███████?

9          MS. PLOWDEN:  Yes I am.

10         MR. TYRKA:  And has Rock Creek agreed to admit Wayne

11   pending placement and funding?

12         MS. PLOWDEN:  Yes we have.

13         MR. TYRKA:  I'd like to know what records you've looked at

14   or that Rock Creek has looked at to make that admissions

15   decision?

16         MS. PLOWDEN:  Sure.  We reviewed an IEP and meeting notes

17   from January 17th 2006.  There were also notes from April 19th,

18   2006, and there was an IEP meeting notes from May 19, 2004, and

19   there was an IEP from September 24th, 2003, there was Discharge

20   Instructions in October 2006, there was an Psychiatric

21   Evaluation in June, 2006, a Psycho-Educational from October 2002

22   and a Vineland Assessment like January 2003, and a Clinical

23   Evaluation from April 2003, and there were also suspension

73

1    letters and some other school records included in the referral.

2    MR. TYRKA:  Okay.  I am asking for your opinion on this

3    matter, but for purposes on how Rock Creek is looking at W████,

4    what is your understanding from those records of what his

5    disabilities and needs are?

6    MS. PLOWDEN:  My understanding is that this is a student

7    with emotional disabilities who requires specialized instruction

8    and psychological counseling services.  There are also

9    additional evaluations that are pending that may provide more

10    information.

11    MR. TYRKA: And if I can - so you are aware of the requests

12    for additional evaluations?

13    MS. PLOWDEN:  Yes I am, I saw that in the meeting notes,

14    (inaudible).

15    MR. TYRKA:  Okay.  Actually, before we get off that topic,

16    some of the evaluations include a speech and language and an

17    occupational therapy, is Rock Creek capable of providing those

18    services should they be added to the IEP in the future?

19    MS. PLOWDEN:  Yes we are.

20    MR. TYRKA:  By certified providers?

21    MS. PLOWDEN:  Yes we do.

22    MR. TYRKA:  I'd like to turn your attention to for the

23    record is noted as WM21, which is the comprehensive psychiatric

1   evaluation.

2       MS. PLOWDEN:  That would be from June 23, 2006?

3       MR. TYRKA: Correct.  June 23rd 06.

4       HEARING OFFICER:  I'm sorry, which Exhibit is this?

5       MR. TYRKA:  Twenty-one.  And turn your attention to the

6   second page, right above the signature, recommendations,

7   structured school program, a smaller classroom?

8       MS. PLOWDEN:  Yes.

9       MR. TYRKA:  Does Rock Creek meet that description, as you

10  know it being used in the field?

11      MS. PLOWDEN:  Yes I do, yes we do.

12      MR. TYRKA:  Okay.  Do you have a class identified for

13  W█████?

14      MS. PLOWDEN: There are two classrooms that essentially

15  We███ can go into depending on the formal assessment.  I don't

16  want to say (inaudible), but they are both eighth grade work

17  (inaudible).

18      MR. TYRKA:  Okay.

19      MS. PLOWDEN:  The students are all chronologically eighth

20  grade students in the classrooms.

21      MR. TYRKA:  And the assessments, is this an academic levels

22  assessments.

23      MS. PLOWDEN:  Yes.  We do ability groupings for reading and

75

1   math, so when a new student enters our program, they do an

2   assessment to make sure that they are paired with the right

3   group for ability grouping.

4        MR. TYRKA:  Okay.  You said there were two classes, can you

5   tell me about the teachers of those classes?

6        MS. PLOWDEN:  Both teachers are holders of Master's degree

7   in special education.  One teacher, Ms. Edmonds is licensed in

8   D.C.  The other teacher is licensed in Maryland.  Both hold a

9   license in special education

10       MR. TYRKA:  Okay.

11       MS. PLOWDEN:  And in each class there are about five

12  students.

13       MR. TYRKA: Five students okay.

14       MS. PLOWDEN:  W████ would be the sixth student in other

15  classes.

16       MR. TYRKA:  Okay.  The students include students with

17  emotional disturbance?

18       MS. PLOWDEN:  Yes they do.

19       MR. TYRKA: Can you tell us something about Rock Creek's

20  overall behavior management program.

21       MS. PLOWDEN:  We implement a school-wide behavior

22  management program.  We use pointee and levels system so our

23  students will enter the program on level one.  They have a daily

76

1    pointee which is reinforcing our expectations for behaviors as

2    well as individual behavior goals for that particular student.

3    We are constantly reinforcing expectations throughout the day.

4    The students are earning points from class to class and at the

5    end of the day, determine if their day was successful or

6    unsuccessful.  That pointee is a visual reminder in every class

7    they calculate the Number days (inaudible).  It's also a

8    strategic tool to prepare everyday, so that the teacher

9    inaudible) to be aware of (inaudible) and behaviors and behavior

10   issue (inaudible). (Inaudible) levels of award (inaudible) In

11   addition to that we use staff and behavior specialist to respond

12   to crisis intervention or implement specific needs or

13   intervention plans for students needing additional work.

14        MR. TYRKA:  And the two teachers you talked about in the

15   two possible classes, have they been trained in teaching

16   emotionally disturbed children?

17        MS. PLOWDEN:  They are licensed special education teachers

18   but our Rock Creek Academy also provides ongoing (inaudible)

19   training for all of our staff (inaudible).

20        MR. TYRKA:  And what portion of your population overall

21   there would you say has emotional disturbance as at lease one of

22   their disabilities?

23        MS. PLOWDEN:  The last time I did the figure, its about 75

1   percent of our students, most of our (inaudible) with multiple

2   disabilities, but EDB, your primary or secondary, so that is

3   about 75% of our total population has emotional disability

4   within their disability classification.

5        MR. TYRKA: And the teacher we talked about, as you

6   understand the program operating there, are they capable of

7   seeing to the goals and objectives on this most recent IEP?

8        MS. PLOWDEN:  This is IEP is from January of 2006?

9        MR. TYRKA:  It is dated January 2006, yes.

10        MS. PLOWDEN:  Yes.

11        MR. TYRKA:  Now it also has counseling there on the IEP, do

12   you have counselors there at Rock Creek?

13        MS. PLOWDEN:  Yes we do.

14        MR. TYRKA:  Are they certified to provide counseling?

15        MS. PLOWDEN:  Yes they are.

16        MR. TYRKA: Can they provide the levels on that '06 IEP, the

17   one hour, excuse me, thirty minutes --.

18        MS. PLOWDEN:  That IEP does say thirty minutes, yes, they

19   can provide thirty-minutes, yes.  There is also a previous

20   document that says an hour of therapy, so either way they can

21   provide whatever is required on that IEP.

22        MR. TYRKA:  Okay.

23        MS. PLOWDEN:  Should that increase, (inaudible).

1     MR. TYRKA:  Is Rock Creek performs FBA's if called upon to

2  do so?

3     MS. PLOWDEN:  Yes.  We can provide a variety of assessments

4  (inaudible).

5     MR. TYRKA:  Okay.  And you develop behavior intervention

6  plans?

7     MS. PLOWDEN:  Yes we do.

8     MR. TYRKA: Now has DCPS ever placed students at Rock Creek

9  outside of the due process hearing?

10     MS. PLOWDEN:  Yes.  They have accepted referrals and issued

11  placements.

12     MR. TYRKA:  Have they done so with student profiles similar

13  to W███████?

14     MS. PLOWDEN:  Students with emotional disabilities, Yes.

15     MR. TYRKA:  And, have you had success with the students?

16     MS. PLOWDEN:  Usually we have.

17     MR. TYRKA:  From what you've seen from W██████ records,

18  your understanding his needs and your understanding of Rock

19  Creek's program and services, do you know of any reason why Rock

20  Creek cannot provide educational benefit benefits to Wayne?

21     MS. PLOWDEN:  No.  No I don't.

22     MR. TYRKA: No further questions.

23     HEARING OFFICER:  Mr. McCall.

1  MR. MCCALL:  Ms. Plowden, I'm David McCall, attorney for

2 DCPS; I'm going to ask a few questions.  Can you hear me okay?

3  MS. PLOWDEN:  I sure can.

4  MR. MCCALL:  At your school are all the students disabled?

5  MS. PLOWDEN:  There are a few students that are in the

6 process of being determined eligible, but we are a full time

7 special education setting.

8  MR. MCCALL:  Okay.  And this classroom that you are

9 referring to or two classrooms would that be a self-contained

10 classroom?

11  MS. PLOWDEN:  (inaudible) mentioned ability grouping, for

12 reading group or for math groups and throughout the day for

13 special groups for the most part overall, yes.

14  MR. MCCALL:  For the most part self-contained.

15  MS. PLOWDEN:  Yes.  Were like the science, social studies,

16 homeroom.

17  MR. MCCALL:  Those two classrooms at least are there any

18 non-disabled peers in there?

19  MS. PLOWDEN: No.

20  MR. MCCALL:  What is the age ranges for the classrooms.

21  MS. PLOWDEN: They are all the exact same age.  So they are

22 all students born in 1993.

23  MS. MCCALL:  What types of programs do you have at your

1   school for students with substance abuse problems?

2        MS. PLOWDEN:  We actually staff a substance abuse counselor

3   and full time provider here, so he does individual sessions with

4   students as well as group activities.  And we have a partnership

5   with an outside agency that also give some substance abuse

6   prevention and (inaudible) at our site. They are focusing on

7   smoking cessation.

8        MR. MCCALL:  And are those substance abuse issues written

9   into your education plan?

10       MS. PLOWDEN:  They can be, if needed for the student.

11       MR. MCCALL: What type of review did you do for W█████

12   M███████?

13       MS. PLOWDEN: I reviewed all the records that were sent to

14   us and then we (inaudible).

15       MR. MCCALL:  And what type of substance abuse problem did

16   you find with Wayne?

17       MS. PLOWDEN: I just found out the diagnosis in what of the

18   evaluations I believe it was before this one, it's through the

19   discharge instructions of October of '06.  There was also active

20   diagnosis in the psychiatric from June of '06.

21       MR. MCCALL:  And what are you referring to in his discharge

22   instructions of October '06.

23       MS. PLOWDEN: There were discharge instructions from his

1  recent hospitalizations.

2      MR. MCCALL:  What hospitalization is that?

3      MR. PLOWDEN:  Let me pull it out for out.  It was at

4  Children's.  Because he was hospitalized, the document says

5  October 7-9, 2006, and there was a discharge diagnosis in the

6  physician's summary.

7      MR. MCCALL:  How long was the hospitalization?

8      MR. TYRKA:  All right.  At this point I am going to object.

9  Wait, we're getting briefed on the document not in evidence,

10  whether it was not on direct.

11      HEARING OFFICER:  He asked her what she reviewed, and she

12  said she reviewed discharge summary.   Overruled.   Go ahead.

13      MR. MCCALL: How long was he in this hospitalization?

14      MS. PLOWDEN: This document doesn't indicate the length of

15  stay.

16      MR. MCCALL:  It doesn't have the dates?

17      MR. PLOWDEN: It the dates that the physician signed it.

18  Which is that October; I think the 7th or 9th, 2006.

19      MR. MCCALL:  And does it say why he was hospitalized?

20      MR. TYRKA:  Same objection.  It is not in evidence; this is

21  triple hearsay.

22      HEARING OFFICER:  Overruled.

23      MR. TYRKA:  Okay.

82

1      MR. MCCALL:  Does it say why he was hospitalized?

2      MS. PLOWDEN:  It just has the discharge diagnosis,

3  condition at discharge and a few other instructions that are

4  available on the document.

5      MR. MCCALL: And what was the discharge diagnosis?

6      MS. PLOWDEN:  That is conduct disorder, mood disorder, not

7  otherwise specified as (inaudible).

8      MR. MCCALL:  No further questions.

9      HEARING OFFICER: Would you like to redirect?

10     MR. TYRKA:  No.

11     HEARING OFFICER:  Ms. Plowden the classes that you – you

12  said you have two classes, what are the class sizes?

13     MS. PLOUDEN:  There are five students in each class, and

14  then W███ would make the sixth student.

15     HEARING OFFICER:  Well in your response to one of Mr.

16  Tyrka's questions, you said you have counselors to provide

17  psychological counseling?

18     MS. PLOUDEN:  Yes. Correct.

19     HEARING OFFICER:  And what kind of counselors are those?

20     MS. PLOUDEN:  We have a licensed clinical social worker to

21  provide the individual group therapy.  We also use three full

22  time clinical psychologist and they oversee the programs as

23  well.  And as I also indicated we have a substance abuse

1    counselor.

2        HEARING OFFICER:  How many social workers?

3        MS. PLOUDEN: Offhand, I have to go through - at least nine.

4        HEARING OFFICER:  And three psychologists?

5        MS. PLOUDEN:  There are three, yes.

6        HEARING OFFICER:  Thank you very much.

7        MS. PLOUDEN:  You're welcome.  Have a good day.

8        MR. TYRKA:  Thank you.

9        MS. PLOUDEN:  Have a good day.

10       HEARING OFFICER:  Do you have another witness?

11       MR. TYRKA:  No I want to rest.  I do want to point some

12   thing that came out.  I think the (inaudible) earlier that I

13   forgot to mention. I heard testimony, yall heard the testimony,

14   just to the confusion about what the record shows.  There is a

15   prior notice for Kelly Miller, which is our Number eleven, as to

16   the original placement at Kelly Miller.  I understand that the

17   testimony did not need that, but it is there.

18       HEARING OFFICER:  Well if it is in the record, it is in the

19   record.

20       MR. TYRKA: Yes. I just want to - I just wanted to make sure

21   it wasn't overlooked, given the testimony (inaudible).

22       HEARING OFFICER:  You have your witnesses?

23       MR. MCCALL: Thank you.  Yes sir Mr. Hearing Officer, we'll

84

1    call Ms. Wafoolah the special-ed coordinator at Kelly Miller

2    Middle School.  Hello can you connect with Ms. WaFoolah please?

3    Hi Ms. Wafoolah are you ready for your testimony?  Okay, I am

4    going to put you on the speakerphone.

5         HEARING OFFICER:  Ms. Wafoolah?

6         MS. WAFOOLER:  Yes.

7         HEARING OFFICER:  This is Terry Banks. I am the Hearing

8    Officer?

9         MS. WAFOOLER: Hello.

10        HEARING OFFICER:  How are you?

11        MS. WAFOOLER:  Good.

12        HEARING OFFICER:  I am going to place you under oath;

13   you'll be asked questions by Mr. McCall, when he's done you'll

14   be cross-examined by Mr. Tyrka who is counsel for the student in

15   this case.

16        MS. WAFOOLER: Okay.

17        HEARING OFFICER:  Will you raise your right hand?

18        MS. WAFOOLAH: Hmmmhmm.

19        HEARING OFFICER:  Do you swear or affirm that the testimony

20   you are about to give will be the truth, the whole truth and

21   nothing but the truth?

22        MS. WAFOOLER:  Yes.

23        HEARING OFFICER:  Go ahead Mr. McCall.

1          MR. MCCALL: Thank you.  How are you presently employed?

2          MS. WAFOOLA:  I'm a special-ed coordinator here at Kelly

3     Miller Middle School.

4          MR. MCCALL: And what are some of your duties as Special-ed

5     Coordinator?

6          MS. WAFOOLA:  One of my duties is of course to oversee that

7     the IEPs are done, the scheduled meetings, the scheduled

8     manifestations, resolution meetings, and handle things like

9     this.

10         MR. MCCALL: And what degrees do you hold?

11         MS. WAFOOLA: I hold a Bachelor's in Special Education as

12    well as Master's in Guidance Counseling?

13         MR. MCCALL: Have you ever been a teacher?

14         MS. WAFOOLA: Yes I have for seven years.

15         MR. MCCALL: And what areas have you taught?

16         MS. WAFOOLA: Special education and non-categorical, so all

17    subjects I've taught.

18         MR. MCCALL: What ages have you taught?

19         MS. WAFOOLA:  I've taught – I'm certified K- through 12,

20    I've taught fifth grade on up to eight grade.

21         MR. MCCALL: How many total years in education do you have?

22         MS. WAFOOLA: Eight.

23         MR. MCCALL: I would asked witness be certified as an expert

86

1    witness in special education?

2        HEARING OFFICER:  Do you object?

3        MR. TYRKA:  I haven't heard any real advanced degree from

4    the witness, I haven't seen a resume and I know this Hearing

5    Officer is particular in concern about resumes and advanced

6    degrees.  All I heard was a Bachelor's in Special Education, and

7    even beyond that the only professional experience is seven years

8    teaching and one year in an administrative position.  I don't

9    think any of that indicates an expertise at a level this Hearing

10   Officer is required in the past.  Furthermore, the category of

11   special education is extremely broad and I don't think this

12   Hearing Officer and I don't not sure any at this point, accepts

13   expertise qualification for that category generally.

14       HEARING OFFICER:  I'm going to sustain the objection.

15       MR. MCCALL: Ms. Wàfoolah, were there any other credentials

16   that I missed.

17       MS. WAFOOLA: No, that's about it, but my particular

18   category deals with ED, LD and MR. So it's kind of narrowed

19   down.

20       HEARING OFFICER: Put her on hold, please.  Now I don't want

21   to offend anybody but, by telling them that they are not an

22   expert.  So, I just wanted to explain, typically, -- typically

23   what I look for first, is to exchange of VITA before the

1    hearing.  And then I generally look for professional degree,

2    some degree of independence, preferably some writing, preferably

3    something along those lines.

4        MR. MCCALL: Ms. Wafoolah, do you here me?

5        MR. MCCALL: Okay are you familiar with the student subject

6    of this hearing, W██████ M██████████?

7        MS. WAFOOLA: Yes I am, very familiar with him.

8        MR. MCCALL: How are familiar with W█████?

9        MS. WAFOOLA: I've known W█████ for three years now.  I

10   taught him for two.  And of course I know him this year.

11       MR. MCCALL:  You said you taught him for two years, what

12   does that mean?

13       MS. WAFOOLA:  That means he was in my classroom.

14       MR. MCCALL:  And was that a special education classroom?

15       MS. WAFOOLA: Yes, a special education classroom,

16   mathematics.

17       MR. MCCALL:  And what school years were those?

18       MS. WAFOOLAH: 04, 05, and 5-06.

19       MR. MCCALL:  Did you have an IEP for him?

20       MS. WAFOOLA: Well in the first year we had an IEP for him,

21   the second, the 04 - the 03-04 school year when he came from

22   Smothers.  However, the IEP was not updated, we had current

23   goals and objectives and we definitely --.

88

1    MR. TYRKA: I am going to object to any testimony that was –

2  one, not admitted in evidence and two—not produced in response

3  to our document request, as I believe she just testified to.  I

4  am referring to the updated goals and objectives.

5    HEARING OFFICER:  You had an IEP for 04-05?

6    MS. WAFOOLA:  No.  Not the school year for 04 – 05. The IEP

7  was from sixth grade was from 03-04, from Smothers dated

8  5/19/04.  That is what we used.

9    HEARING OFFICER:  In 04-05?  That is what you used for the

10  04-05 school year?

11    MS. WAFOOLA:  Right, and then the IEP was updated January

12  17, 06, but reviewed with the parent 4/19/06.

13    HEARING OFFICER:  The two IEPs that you are aware of are

14  dated --?

15    MS. WAFOOLA: I'm sorry can you repeat?

16    HEARING OFFICER:  What are the dates of the two IEPs that

17  you are aware of?

18    MS. WAFOOLA: Actually there are three IEPs; there are the

19  initial that is dated – in 03.  The initial IEP is dated

20  9/24/03; the next IEP is dated 5/19/04.  And the very next one I

21  have in my possession is dated 01/17/06.

22    HEARING OFFICER:  Okay.  Go ahead Mr. McCall.

23    MR. MCCALL:  Thank you Mr. Hearing Officer.  Now you said

1   it was updated in April of 06.

2       MS. WAFOOLA: Well, actually the teachers wrote in January

3   17, 06, but it was actually reviewed 04/19/06, with the parent,

4   it was reviewed with the parent 04/19/06.

5       MR. MCCALL:  Now you've already testified, that I believe

6   that in the 04-05 in your classroom, you used the May 04 IEP,

7   correct?

8       MS. WAFOOLA: Right. Correct.

9       MR. MCCALL:  What about the 05-06 school years in your

10  classroom?  What IEP did you use?

11      MS. WAFOOLA:  Well, the IEP was updated, but also W████ has

12  history of being absent –

13      MR. TYKRA:  Objection.

14      MS. WAFOOLA:  Not coming to class.  He absolutely did not

15  meet a lot of his goals and objectives.

16      HEARING OFFICER: Stop your witness please.

17      MR. MCCALL:  Ms. Wafoolah?

18      MS. WAFOOLA: Yes.

19      MR. MCCALL:  Can you hold on one moment please?

20      MS. WAFOOLA: Okay.

21      HEARING OFFICER:  The question was –.

22      MR. TYRKA: She's on mute – she's on mute.  Oh I'm sorry.  I

23  thought you said she was on mute.

90

1        HEARING OFFICER: The question that was asked was what did

2   you use for an IEP for the 05 - 06 school year?

3        MS. WAFOOLA:  The latest IEP that I had.

4        HEARING OFFICER: Which was the 5/19/04?  Was it the

5   5/19/04?

6        MS. WAFOOLA: Yeah.  Hmmmhmm.

7        HEARING OFFICER:  Go ahead McCall:

8        MR. MCCALL:  I thought I heard you say you felt it was

9   appropriate for him, am I correct?

10       MS. WAFOOLA:  Yes.

11       MR. TYRKA:  Objection. She has not been qualified as an

12   expert.

13       MS. WAFOOLA:  What I said was.

14       HEARING OFFICER:  It's overruled.

15       MS. WAFOOLA:  What I said, was the goals and objectives,

16   that is what academically what the class room teacher worked

17   from and construct her curriculum around, were very appropriate

18   and I believe and I know it was a gap of.  But I believe it was

19   more appropriate because W███ missed a lot of classes, he was

20   always, and he was absent a lot.

21       MR. TYRKA:  Objection again.  Non-responsive narrative

22   again.

23       MS. WAFOOLA: That's why I say that. So yeah, but it was

1    very appropriate.

2        HEARING OFFICER:  Why is it non-responsive?

3        MR. TYRKA:  The question was--.

4        MS. WAFOOLA:  I'm sorry?

5        MR. MCCALL:  Hold on Ms. Wafoolah.

6        MR. TYRKA:  The question was did she think the IEP was

7    appropriate, and she gave a long essay about W████ being absent

8    and couldn't give him services?

9        HEARING OFFICER:  Okay.  Ms. Wafoolah?  Ms. Wafoolah?

10       MS. WAFOOLA:  Yes.

11       HEARING OFFICER:  In your absence I made a ruling that I'm

12   not taking testimony as to petitioner's absences, so if you

13   would refrain from discussing his absences, I'd appreciate it.

14       MS. WAFOOLA:  I have a question?

15       HEARING OFFICER: Yeah.

16       MS. WAFOOLA: Can I ask the question?

17       HEARING OFFICER: Yes.

18       MS. WAFOOLA:  As an educator (background, please step out

19   of my office right now, right now okay, thank you).  As an

20   educator, if a child is not available to be educated, -- then

21       HEARING OFFICER:  Yeah.  I understand that.

22       MS. WAFOOLA:  I was explaining why I was saying that.

23       HEARING OFFICER:  I understand that.

1    MS. WAFOOLA: It's kind of hard when you don't have some one

2    there to educate, that's why I --.

3    HEARING OFFICER: I understand that, and you're absolutely

4    right, but there is a legal reason why, it is not your fault,

5    you didn't know. Go ahead Mr. McCall.

6    MR. MCCALL:  Thank you Mr. Hearing Officer.  Now, you said

7    – you taught him 04-05 and 05-06. Have you taught him for 06-07?

8    MS. WAFOOLA: No.  No.

9    MR. MCCALL:  And have you had any duties to monitor or

10    follow his program, 06-07?

11    MS. WAFOOLA:  Well, monitor.  Yes.  I've set up meetings;

12    we actually set up a couple of meetings for him. We have a

13    meeting 11/07/06 with a Ms. Millis. I can't read her first name,

14    where we developed it, a student evaluation plan and an SEP on

15    11/07/06, where we ordered a comprehensive psychological, social

16    history, educational and an OT.  However, so I've been involved

17    in that type, and trying to get these testings done.

18    MR. MCCALL:  Have you performed any of the evaluations.

19    MS. WAFOOLA: Well, yes, I started the ones that I could.

20    MR. TYRKA: I'm going to object to any evaluations that

21    weren't--.

22    MR. HEARING OFFICER:  Overruled.  Have these been

23    conducted?

1    MS. WAFOOLA:  They have not been conducted.  I have

2    started, I did it one day, but --.

3    HEARING OFFICER:  Forget what I said about absences.  Is

4    there some reason why they haven't been conducted?

5    MS. WAFOOLA: They have not been completed?

6    HEARING OFFICER:  I can't - I was just told that I couldn't

7    mention why.  But I was the one who told you that.  So why

8    weren't they completed.

9    MS. WAFOOLA:  Well okay.  Because W████ is hard to get a

10   hold of.  He's absent a lot; he's never where he is supposed to

11   be.

12   HEARING OFFICER:  So how many evaluations were scheduled?

13   MS. WAFOOLA:  How many?

14   HEARING OFFICER:  Evaluations were scheduled?

15   MS. WAFOOLA:  Two, three, four, -- he had four evaluations

16   set up.  We ordered on 11/07/06.  And one that they ordered -

17   and that's when they gave us the service providers - myself, as

18   a Special Education Coordinator, I will go ahead and do the

19   educational part.  Because I am allowed to give the Woodcott-

20   Johnson.  I only got two subtests done, he was very antsy, the

21   next day and all of the other following days, it was hard to get

22   a hold of him.  As of right now I don't have the status of the

23   other reports, I don't have them in my possession and I have no

94

1  knowledge of whether or not they are complete.

2      HEARING OFFICER:  All right, that you very much, go ahead

3  Mr. McCall.

4      MR. MCCALL:  Thank you very much Mr. Hearing Officer.  Now

5  there has been testimony in the case, that W▆▆▆ did not receive

6  all of the specialized instruction under his IEP and I am going

7  to point you particularly to the 2005- 2006 school year.  Do you

8  have any knowledge as to whether that is correct?

9      MR. TYRKA:  Objection and this is to the entire line.  As I

10  learned from the Hearing Officer earlier, we objected to any

11  testimony regarding provision of services to W▆▆▆ or W▆▆▆▆

12  progress at Kelly Miller or the prior school, where that

13  progress or that instruction should have been documented and

14  those documents should have been provided to parent in response

15  to document production requests.  Furthermore, If, I think, if

16  we get into the area of progress, which I think is probably what

17  we are doing, we object to that, because that is pretty standard

18  that any talk of grades or anything has --.

19      HEARING OFFICER:  Well, Mr. Tyrka it is a matter of degree.

20  I've heard you argument as to some records were provided. We've

21  got report cards for two years.  I've excluded testimony for the

22  most part relating to attendance records, and I'm going to take

23  her testimony for what it is worth.  So I just want to hear what

95

1    she has to say.  She has been his teacher for two years so I

2    think her testimony is relevant.  Go ahead.

3        MR. MCCALL:  Ms. Wafoolah do you recall the question I

4    asked?

5        MS. WAFOOLA:  Could you repeat it again?

6        MR. MCCALL:  I will.  During the 2005 - 2006 school year,

7    do you know if Wayne received all of the specialized instruction

8    prescribed in his IEP?

9        MS. WAFOOLA: I know that Kelly Miller made available all

10   the specialized instruction he should receive.  He has a, you

11   know, a schedule that reflected his correct specialized

12   instruction classes.  Now with -.

13       MR. MCCALL:  Go ahead.

14       HEARING OFFICER: No, don't go ahead.  I know what I am

15   trying to say.  Go ahead.

16       MR. MCCALL:  How about as to the 2004- 2005 school year, do

17   you know if he received all the specialized instruction?

18       MS. WAFOOLA:  Well, right.  I can almost - Wayne has

19   progressively gotten worse.  Now that the first school year he

20   was here, he was in the sixth grade.  And I will say that

21   Wayne's behavior during school and I'm almost positive his

22   behavior outside of school suffered from the outside things that

23   have - that he has been getting into that has affected his

96

1   school --.  As 04 -05, I feel like he's most definitely

2   progressed --.

3        MR. TYRKA: Objection. That was not responsive.

4        HEARING OFFICER: Overruled.  That is what he is asking

5   about.  He's asking whether or not he made progress.

6        MR. TYRKA:  Believe me; I thought he asked about

7   instruction.

8        HEARING OFFICER:  Oh. I'm sorry.  The question was whether

9   or not got specialized instruction in 2004?

10       MS. WAFOOLA: Yes he did. Yes. Yes.

11       MR. MCCALL: And do you have an opinion as to whether he

12  benefited from that instruction?

13       MS. WAFOOLA: Right.

14       MR. TYRKA:  Just through efficiency, so that the Hearing

15  Officer knows, I'll have a standing objection through this whole

16  line.

17       HEARING OFFICER:  Mr. Tyrka you can have one.  This is the

18  student's teacher.  Under no theory that I am aware of under

19  IDEA should I not take testimony from a teacher as to what she

20  observed as to her students progress in her class.  You don't

21  have to be an expert witness to talk about the progress that her

22  student.  So what is your objection?

23       MR. TYRKA: My objection is based on the fact that all of

97

1    this progress is supposed to be documented.  Those documents are

2    supposed to be presented to us.  So we have this issue now, that

3    if we look Schaeffer, (inaudible), which is of course the source

4    of the change in the DC regs, Schaeffer (inaudible) says,

5    normally we do not put the burden of proof on someone who does

6    hold the information.

7          HEARING OFFICER: Well you got 04 - 05 report cards.

8          MR. TYRKA: No I don't.  I have the 04-05 IEP report cards,

9    which is just for counseling.  It is just the IEP report card;

10   it is not the overall report card.  And I have the overall

11   report card for 06, and that is all we have.  So I am saying

12   here is that they've want to--.

13         HEARING OFFICER:  You're absolutely right. And you are at a

14   disadvantage.  I will say that on the record, and you'll have

15   full opportunity to cross-examine this witness.

16         MR. TYRKA:  Since it is a running objection, I will not say

17   anything more about it.

18         HEARING OFFICER:  Okay.  Go ahead Mr. McCall.

19         MCCALL: Mr. Wafoolah do you recall the question I asked.

20         HEARING OFFICER:  And for the record I do resent the fact

21   of being put in this position in hearing after hearing, but I am

22   trying to do the best the can with what is made available to me.

23         MR. TYRKA:  I understand the Hearing Officers' interests.

1    I thank you.

2        HEARING OFFICER:  Go ahead Mr. McCall.

3        MR. TYRKA:  I thank you.

4        HEARING OFFICER:  It is not that I am trying to hurt you.

5        MR. TYRKA:  I don not take it personally for a moment.

6        HEARING OFFICER:  I'm just trying to get a record so that

7    at the end of the day, I feel like I am doing the right thing.

8    Go ahead Mr. McCall.

9        MR. MCCALL: Ms. Wafoolah, do you recall the question I

10   asked?

11       MS. WAFOOLA: Well, to be on the safe side, please repeat

12   it, I mean can you repeat it for me please?

13       MR. MCCALL: No problem. Do you have an opinion as to

14   whether or not he benefited from specialized instruction during

15   04-05 school year?

16       MS. WAFOOLA:  Yes I do.  I believe that he did.

17       MR. MCCALL:  Can you give the Hearing Officer, examples of

18   ways that he benefited in the classroom.

19       MS. WAFOOLA: That's why I was taking his history throughout

20   because this was the beginning when he came to Kelly Miller; he

21   was a different child than what we see today.  He was coming to

22   class, much more regularly than he definitely is now.  Right at

23   the tail end of his sixth grade, I guess it was 05-06, he

1    started exhibiting some behaviors that were inappropriate and

2    that (inaudible) include last year as well this year.  He has

3    gotten progressively worse.  But as far as 04 - 06, yes I do

4    believe that he did receive his specialized instruction and he

5    did benefit from it.

6        HEARING OFFICER: Let me get a clarification.  At one point,

7    you said he started exhibited behaviors, and what timeframe was

8    that?

9        MS. WAFOOLA:  I would say right at the beginning of -of—

10   well—of - right at the end of the sixth grade, so I guess that

11   is the 04 - 05 school year.

12       HEARING OFFICER:  The end of that first year?

13       MS. WAFOOLA: Right, and the summertime came around and

14   then, when got back to school last year, it had gotten a little

15   worse, and I wish his other teacher was here to say more on

16   that, as well as his social worker. But I can - I am looking at

17   these meeting notes that his social worker, Ms. Moore.

18       HEARING OFFICER:  Well, don't look at any notes now.

19       MS. WAFOOLA:  Well she even recommended family counseling

20   for W▬▬ and the mother and he got progressively work, there

21   were a lot of trouble outside of the school.

22       HEARING OFFICER:  I don't want you to refer to any notes

23   while you are testifying.

1      MS. WAFOOLA: Oh sorry.  Okay.

2      HEARING OFFICER:  Go ahead, Mr. McCall.

3      MR. MCCALL:  Thank you Mr. Hearing Officer.  Ms. Wafoolah,

4  when you say that when he was getting into issues outside of the

5  school, what are you referring to?

6      MS. WAFOOLA: Am I free to say?

7      MR. MCCALL:  I don't mean like what notes, what types of

8  incidents are talking about.

9      MS. WAFOOLA:  I know for one he starting hanging out with

10  the wrong crowd, he held up someone with a weapon, or someone he

11  was with had a weapon, drug use, I think it was marijuana, just

12  hanging around with the wrong crowd and you know I'm not sure, a

13  P O Officer came to the school for a meeting we just recently

14  had and so I'm assume he is in some type of legal issue there,

15  and it seems like a lot of outside issues are coming into play

16  here.

17      MR. MCCALL: Now when did you first become aware of the drug

18  use issue?

19      MS. WAFOOLA:  That was last year.

20      MR. MCCALL:  And did you notice any changes in his behavior

21  around that time, or shortly close to that time?

22      MS. WAFOOLA: Well of course, I mean, W████ one time in the

23  hall, just cursed me out, and he had never done that before.

1   And of course, it appropriate behavior just started to escalate,

2   not coming to class, running the halls, walking out of the

3   building when he was like this.

4       MR. MCCALL: The times that he was there and one of the art

5   document, I apologize, that is a Texas term.  One of the IEP

6   documents, there is a reference to when he was there; he was a

7   bright young man and could make good grades.  Do you agree with

8   that?

9       MS. WAFOOLA:  Which notes are you talking about?

10      MR. MCCALL: Without looking, that type of profile.

11      MS. WAFOOLA:  Well yes.  I would definitely say yes.  I can

12   say yes.  I mean —W███ even now is a bright young man. His

13   disability, he is emotionally disturbed therefore he is

14   cognitively average.  You know, he is functionally cognitively

15   at an average level; he is a very bright boy.  He is very

16   capable.  He's better in language arts, reading and writing than

17   he is in mathematics, which is very frustrating.  He is a very

18   capable young man.  So, yeah I would totally agree that could

19   have been written.

20      MR. MCCALL:  So the types of behaviors that you are seeing

21   that he was receiving suspensions for, let's talk about the 05-

22   06 school year.  Were you familiar with the suspensions he had

23   during that school year?

1      MS. WAFOOLA:  Not really.  I was a teacher there, so, I was

2   not that familiar --.  Not seeing W████ didn't give - I can say

3   --. I really don't know how to say not say something.

4      MR. TYRKA:  She's already answered; she said she is not

5   familiar.

6      MS. WAFOOLA:  I was not familiar with it but -

7      HEARING OFFICER: You were not familiar with the details of

8   the suspensions?

9      MS. WAFOOLA:  No.

10     HEARING OFFICER: Go ahead Mr. McCall.

11     MR. MCCALL: Now, in your involvement with W████, have ever

12  been any other placements options discussed for Wayne?

13     MR. TYRKA:  Objection.

14     MS. WAFOOLA: Well, yeah -

15     HEARING OFFICER:  Just a second.  One moment.  Ms. Wafoolah

16     MS. WAFOOLA:  Cause Kelly Miller did not receive an IEP;

17  the system gave the parent a choice—an opportunity to apply to a

18  school that did. And

19     HEARING OFFICER:  M'ame!  Ms. Wafoolah, just a second.

20  There is an objection on the floor.  Put it on mute please. I am

21  going to put you on mute for a moment.

22     MS. WAFOOLA: Okay.

23     MR. TYRKA:  Placement obviously has to be documented with

1    prior notices that contain specific information. Occasionally

2    courts have overlooked the need for prior notice has been

3    strongly documented evidence of fully participated in meetings

4    which alternative placement have been proposed.  None of that

5    has been presented by DCPS disclosures, none of that has been

6    produced in response to our request for documents.  And for that

7    reason, I'd asked any discussion of that be stricken.

8        MR. MCCALL: You don't have to spill out a prior notice of

9    placement every time you discuss with a parent, alternatives. If

10   you are going to take an action or refuse an action, you have to

11   give written notice and that where the prior notice of placement

12   language comes from.  It has always been the IDEIA, they changed

13   language in what? - 2004 and they added this term prior notice

14   and now we've gotten this document that has been elevated --.

15       HEARING OFFICER:  Prior notice is under previous law.

16       MR. MCCALL:  It was just called notice.

17       HEARING OFFICER:  No, it was called prior notice.  I have

18   been citing the same language for four years.  Nothing's changed

19   with respect to prior notices.  With respect to the law on prior

20   notices - nothing has changed.

21       MR. MCCALL: As to the document itself, it's not required

22   each time you want to discuss alternatives.

23       HEARING OFFICER: Okay.  Yeah.  The question doesn't relate

1    as to whether a not a placement was made. It relates to whether

2    or not it was discussed.  I will have to allow that question.

3        MR. TYRKA: I'll (inaudible) but in another ruling, but I

4    also object on the grounds that this defense was not raised --.

5        HEARING OFFICER:  I don't know what defense you're talking

6    about?

7        MR. TYRKA:  It sounds like he is saying another placement

8    was proposed when our --.

9        HEARING OFFICER:  I'm not sure if that is where he is

10   going.  All he asked was whether or not other placements were

11   discussed?  I'll overrule the objection. Go ahead Mr. McCall.

12       MR. MCCALL:  Ms. Wafoolah can you hear me?

13       MS. WAFOOLA: Yes.

14       MR. MCCALL:  My question for you is, have any placement

15   alternatives been discussed or considered for William?

16       MS. WAFOOLA: For W██████.

17       MR. MCCALL: For W█████, I'm sorry. Yes.

18       MS. WAFOOLA:  Okay.  Well, let's say.  Kelly Miller did see

19   IEP, and so the parent and I got a flyer and she told me she was

20   going to try to apply.  I actually faxed the forms over for her,

21   and soon after, November 6th, she received placement at Marshall

22   Educational Center, where Wayne was supposed to report on I

23   think the 14th of November.

1    MR. TYRKA: Objection. These documents are not in evidence.

2    Hearsay and best evidence.

3    MS. WAFOOLA:  And soon after so, I thought, well good you

4    know.

5    MR. TYRKA:  And same argument and best evidence.

6    HEARING OFFICER:  Just a second. Just a second.  JUST A

7    SECOND MS. WAFOOLA!

8    MS. WAFOOLA: Huh?

9    HEARING OFFICER:  Just one second please; another objection

10    is on the floor, put her on mute.

11    MR. TYRKA:  The testimony is about documents, the documents

12    are not in evidence, so its hearsay and best evidence and it is

13    also not responsive of course.

14    HEARING OFFICER:  She said this is an application that the

15    mother made.  It came back to the mother.

16    MR. TYRKA:  I understand.

17    HEARING OFFICER:  So this is something she got from the

18    mother.  So it's not her document.  Objection overruled.

19    MR. TYRKA:  I have some objections about the surprise

20    defense.

21    HEARING OFFICER:  She is talking about a conversation she

22    has with your client.

23    MR. TYRKA:  No. She said the client did the form, and then

1    she got the form back.

2        HEARING OFFICER:   Your objection is noted.   Go ahead Ms.

3    Wafoolah.

4        MS. WAFOOLA: Okay. Well Right.   So, the parent came in and

5    showed me where the letter for the office, the academic officer

6    where W███ had been placed at Marshall Educational Center.   And

7    that transportation was to be provided and we talked about the

8    time, and she had concerns about the bus taking and what have

9    you, but then later when I asked what, of course what happened

10   with that, she stated that she was informed by an employee of

11   Tyrka & Associates that she should not consider that and that

12   she should - they would be able to get her a better placement

13   like Rock Creek Academy.

14       MR. MCCALL:   During the time period that you have W███ and

15   the time period that he has been at school, and you have been

16   able to keep in him in the classroom, you believe he benefited

17   from instructions from (inaudible).

18       MS. WAFOOLA: Of course.   Of course, once he was in

19   classroom.

20       MR. MCCALL: No further questions, thank you Mr. Hearing

21   Officer.

22       HEARING OFFICER:   Mr. Tyrka.

23       MR. TYRKA:   I don't have any questions

107

1        HEARING OFFICER:  Thank you very much Mr. Tyrka doesn't

2   have any questions for you.

3        MS. WAFOOLA: Oh, okay.

4        MR. MCCALL:  Thank you.

5        MS. WAFOOLA: Thank you.

6        MR. MCCALL: Bye now.

7        MS. WAFOOLAH: Bye bye.

8        HEARING OFFICER:  You have another witness?

9        MR. MCCALL: No further witnesses.

10        HEARING OFFICER:  Okay Mr. Tyrka, would you like to close?

11        MR. TYRKA:  Yes.  Actually if I could just have a second.

12   Yes.  Well I think we've heard nothing from DCPS on the bulk of

13   our claims and I'll go through this very quickly regarding the

14   evals and the timing and what has been done and what has not. We

15   haven't heard anything to contest what the documents shows, the

16   documents I referred to earlier as opposed to when they were

17   first needed and the fact that they have not been done.  The one

18   thing we heard from Ms. Wafoolah saying that she had trouble

19   getting a hold of him is what she said.  The educational

20   component on that one evaluation since - and that was since

21   11/07 - since they were ordering the SEP.  We've already heard

22   testimony that he's barely been in school since that time

23   because he has been suspended and expelled.

1      HEARING OFFICER:  He was expelled in December, - December

2    15th.

3      MR. TYRKA:  There was an suspension that occurred before

4    then as the parent said.  There is also – the two suspension

5    notices of 27th and 28th and the parent testified as to ongoing

6    suspensions last schools year and this school year.  She said,

7    more than twenty.

8      HEARING OFFICER:  I don't have any dates.  I asked you what

9    I am supposed to do with this general information.  I don't know

10    what twenty means.  I don't know how long she said, he was

11    suspended – she talked about the 05 -06 school year and this

12    year.  She said that between the two years he was suspended

13    twenty times over the two school years.  August was ten days,

14    and that was 05-06.  The last one was December 15th.  I have no

15    specific information about any other suspensions, any 06 – 07

16    school year.

17      MR. TYRKA:  We have the suspension records --.

18      HEARING OFFICER: Okay. Well I'll look at them.  There

19    hasn't been any testimony about – suspension from November to

20    December 15th, which is when apparently the meeting took place,

21    the first week of November.

22      MR. TYRKA:  Correct.

23      HEARING OFFICER:  So if he was suspended between the first

1    week of November and December 15th, the records might show it.

2        MR. TYRKA:  Those suspension notices do not, but as I said

3    we requested the records and we've not –

4        HEARING OFFICER:  There was no evidence that he was

5    suspended – I am not saying that it doesn't exist --.

6        MR. TYRKA:  Understood.

7        HEARING OFFICER:  I'm just saying there is no evidence

8    available to me that he was suspended during the period of time

9    between the SEP and the December 15th.

10       MR. TYRKA: Correct.

11       HEARING OFFICE:  Okay.

12       MR. TYKRA: Regardless, it doesn't explain all the time

13   delays going back through the years. Again that argument was not

14   made in the response or any time since then. And finally she

15   didn't actually say that she couldn't get a hold of him because

16   he was absent, she just said he is hard to get a hold of.

17   Regarding the IEP's we heard far less.

18       HEARING OFFICER:  She didn't speak to it because I

19   instructed her not to.

20       MR. TYRKA: Understood.

21       HEARING OFFICER. You can't have it both ways.

22       MR. TYRKA:  The entire reason we asked for the Motion in

23   Limine is that so there will not be evidence admitted that –

1      HEARING OKAY:  Okay, then don't use it as sword, once I

2  granted the motion.

3      MR. TYRKA:  I'm covering the --.  Regarding the IEP's I

4  don't think there has been anything to contest the deficiencies

5  that I noticed, noted - excuse me, regarding the failure to do

6  an evaluation review as the notes made clear.  Regarding to

7  having all team members present at times and regarding the

8  specialized instruction, most disturbingly the specialized

9  instruction hours being cut, despite the fact that he had

10  already shown some performance problems as documented.  And, I

11  will note one thing that Ms. Wafoolah did add to the evidence on

12  that point, is that the IEP which the Hearing Officer, the date

13  we have listed is 4/19/06, because that's the date when it was

14  reviewed by the team, as Wafoolah.  It was actually developed in

15  January, which is the date on the IEP. So that is the IEP in

16  fact with his specialized instruction hours were cut.  So, in

17  fact it appears that his hours according, to Ms. Wafoolah his

18  hours were actually cut starting in January 06, not April 06.

19  Regarding services, we've heard nothing to counter the encounter

20  tracking forms, which were solidly established that he missed

21  counseling.  Regarding instruction, all we heard from is from a

22  math teacher who had no documentation of either her work with

23  him on his goals and objections on his IEP or any other

1    teacher's work with him on his goals and objections on his IEP.

2    So despite all that we requested on the documentation regarding

3    the documents that are supposed to be kept by their own

4    standards, for all that, none of that has been produced and I

5    refer again for our request for an inference on those points.

6    Regarding placement, we've heard Ms. Wafoolah, you can see from

7    my objection, testified that he was received benefit at Kelly

8    Miller, that things have gone fine there, --.

9         HEARING OFFICER:  Mr. Mr. we've heard the same testimony.

10    It cannot be, it cannot be said of -of -- that things were fine.

11        MR. TYRKA:  Excuse me.  Excuse me.  That is correct.  She

12    said that they had given him benefit and he is progressing.

13        HEARING OFFICER:  No.  She didn't even say that.  She said

14    that when he is there, he derives benefit.  It was a fairly

15    limited, in her view, a fairly limited period of time.

16        MR. TYRKA:  Either way, what I heard was a question that

17    said derived benefit, and I heard yes.  However, with regard to

18    all of these placements, we have--.  When we look at the

19    documents we have prior notices that contained no justification

20    whatsoever of having made the placement.  We have no evidence in

21    any of these meeting notes when these placements were made of

22    any justification of the placement whatsoever.  And, again we

23    have no documents of any progress, no report cards except for

1  the one –.

2      HEARING OFFICER:  The prior notices that you are talking

3  about those are for when?

4      MR. TYRKA:  We have the prior notice; well the first one we

5  have listed is Number eight.  That regards an earlier school.

6  The first one for Kelly Miller is our Number 11, which is May

7  04.

8      HEARING OFFICER: Okay. Now did the parent – did the parent

9  object to that?

10     MR. TYRKA:  No.  No.  The parent was not assisted or

11  represented at that time.  Oh. Okay, that was also before Kelly

12  Miller was – had been attempted at all.

13     HEARING OFFICER:  What other prior notices were --.

14     MR. TYRKA:  The other one – if I can have a minute.  I

15  thought there was a later one. No, it appears there was no prior

16  notice for 05 – 06.

17     HEARING OFFICER:  There was no IEP for 05 – 06.

18     MR. TYRKA: You know I really thought there was a prior

19  notice, so I don't want to make that representation at the

20  Hearing Officer. I'm trying to find it here, but appears not. I

21  mean I think we have disclosed every IEP and prior notice that

22  we had.  So perhaps there was none.

23     HEARING OFFICER:  And then the 06 IEP.

1        MR. TYRKA:  April 06.

2        HEARING OFFICER:  I intended to ask Ms. Wafoolah; I didn't

3    think of it but apparently, an IEP was done in January. Is that

4    correct.

5        MR. TYRKA:  According to Ms. Wafoolah, what we had was a

6    document--.

7        HEARING OFFICER: Is that on the record?

8        MR. TYRKA:  It is dated January.

9        HEARING OFFICER: Okay.

10       MR. TYRKA: We have listed as April.  We listed it as April,

11   because that is when the IEP notes, that's when the meeting --

12       HEARING OFFICER: She said she reviewed it with the mother

13   in April.

14       MR. TYRKA: Correct. That is when the IEP meeting occurred.

15   We have listed as April.  We listed it as April, because that is

16   when the IEP notes, that's when the meeting --.

17       HEARING OFFICER: Correct.

18       MR. TYRKA: The IEP according to Ms. Wafoolah was developed

19   in January by a teacher.

20       HEARING OFFICER: So the IEP was reviewed with the mother in

21   April 06.

22       MR. TYRKA: Correct.

23       HEARING OFFICER: Does that IEP had prior notice?

1      MR. TYRKA: I believe that IEP with a prior notice attached,

2  however, I do believe that on the last page, if I may, no they

3  don't.  I have to find Kelly Miller --.

4      HEARING OFFICER: Okay.  Your statement that we have prior

5  notices with no justification only refers to the May 04 prior

6  notice.

7      MR. TYRKA: The initial prior notice at Kelly Miller.

8      HEARING OFFICER: Okay.

9      MR. TYRKA: But we do have following that is no

10  justification of the meeting notes whereas the parent continued

11  placement at Kelly Miller.

12      HEARING OFFICER:  Did the mother agree to the IEP in April?

13      MR. TYRKA: The mother I do believe signed the April IEP.

14  That issue was not raised in the response, I'll often take

15  testimony from a parent regarding why the parent's signs.  I

16  won't say anything more with the witness here.

17      HEARING OFFICER:  It is not my case, but you know when I

18  review a record, one thing I look at is there an IEP, did the

19  parent sign it.

20      MR. TYRKA: I understand that but when that issue is raised,

21  I will address with parent testimony when necessary.  That issue

22  has not been raised. I'd be happy to put the parent on to --.

23      HEARING OFFICER:  No.  Either she signed it or she didn't.

1      MR. TYRKA: I'm simply saying neither has there been a

2  response or an opening did DCPS say that the parent agreed with

3  the IEPs.

4      HEARING OFFICER:  You see, I'm asking.

5      MR. TYRKA: I understand.  That being the case, even if--.

6      HEARING OFFICER:  Mr. Tyrka in your closing remarks, you

7  said, there are prior notices; there are prior notices with no

8  justification.  So the question that is raised in my mind by you

9  raising that question is should there have been a justification,

10  which means did the parent object to the proposed placement.  So

11  I asked about what prior notices were in the record. We have not

12  established that the only one in the record was 04 and the

13  parent raised no objection to it.  Okay?

14      MR. TYRKA: I understand. But I made these same arguments

15  about the inappropriateness of the placement in IEP in my

16  opening --.

17      HEARING OFFICER: Well they are two different things.  You

18  know. They are many factors that go into whether or not

19  placement is appropriate.  One of them is the sufficiency of the

20  document.  Another is the degree to which the parent is

21  complicit in the determination. Whether or not she agreed or

22  didn't agree. Sometimes I conclude that I'm going to overlook

23  her agreement for various reasons.  But it's a factor to being

1    considered.

2        MR. TYRKA: I absolutely agree, I'm just saying that in

3    order --.

4        HEARING OFFICER:  So, so - if her name appears on the

5    signature line on the IEP, so that is what I was asking.

6        MR. TYRKA: And - and--.

7        HEARING OFFICER: Is it from your reading notes that refer

8    to objections she raised. I'll look at those.  You didn't

9    highlight it, but that is what I look at.

10        MR. TYRKA: Okay.  It is not a necessary element to my case

11    and chief.

12        HEARING OFFICER:  I didn't say it was.  I said it was a

13    necessary thing that I look for.

14        MR. TYRKA: I understand. It is a potential defense.  Given

15    that fact, and the fact that the defense was not raised, I would

16    ask for the opportunity to call my witness to explain why she

17    signed these documents.

18        HEARING OFFICER:  No.

19        MR. TYRKA: If they are going to be considered by the

20    Hearing Officer.

21        HEARING OFFICER:  I'm not going to let you call your

22    witness back when I'm responding to something you said in your

23    closing.  The case is over.  Now that I've revealed what is

1    important to me, it's too late for you call your witness back.

2         MR. TYRKA: It is not per my case in chief, it's a defense.

3         HEARING OFFICER: I don't care what it is.  You are not

4    calling the witness after the case is concluded.

5         MR. TYRKA: I would ask for the defense not to consider --.

6         HEARING OFFICER: It is not for the defense, he didn't raise

7    it, I raised it.

8         MR. TYRKA:  It is still a defense.  If it used to --.

9         HEARING OFFICER:  Do you want to finish your closing

10   argument or not.

11        MR. TYRKA: I'd love to.

12        HEARING OFFICER: Thank you.

13        MR. TYRKA:  Otherwise regarding placements, as I said there

14   is no documentation other than the one report card and the one

15   IEP report card for different years, indicating his progress

16   either way.  There has been no documentation produced as was

17   required by the IEP measuring his progress on those goals and

18   objectives.  So there is no indications on the records that have

19   been produced, as I said, produced in a sense of developing in

20   the first place, and produced in the sense of given to us in

21   response to a document production request in produced in sense

22   of disclosed before this hearing to evidence any progress

23   whatsoever.  We do have the 04-05 school year IEP report cards,

1   which is our Number twenty-five, which states clearly that he is

2   not making progress on his goals and objectives for his

3   counseling.  And we have the June 06 report card, which shows

4   that he failed or got D's in most subjects, excuse me, every

5   subject he failed or got D's.  As the Hearing Officer

6   acknowledged, we are at a disadvantage where a witness testified

7   as to various things that should be documented that were not,

8   and the Hearing Officer understands my argument on that point.

9   What we do have as far as testimony on our side, is we have the

10  mother's clear statement that she has not seen improvement in

11  his academic since the time he has been Kelly Miller and that

12  her understanding of the schedule, while she acknowledge that he

13  had had special education teachers at times, was that, that is

14  schedule was all over the place, and she did not think he was

15  getting everything that was on his IEP.  For those reasons

16      HEARING OFFICER:  Whoa---.  When did she say that?

17      MR. TYRKA: Response to questions on direct.  When asked if

18  there was an IEP around and she said, I think there was, but I

19  don't think they were doing everything that was on it.  On re-

20  direct, there was no question and I walked through it and she

21  established that she did not know for sure what he getting as

22  far as goals and objections were, and what he was not.

23      HEARING OFFICER: Just a second.

1    MR. TYRKA: Sure.

2    HEARING OFFICER:  She did testify that he wasn't getting

3    his counseling and she said he wasn't getting his counseling, of

4    course she asked --. She was not able to testify as to what

5    services he wasn't getting. She was asked about his goals and in

6    04- 05, and 05 and 06, and in both cases she said, she believes

7    he was getting instruction as to some of the goals but she

8    wasn't sure.

9    MR. TYRKA:  That was on re-direct.  There was no question

10   she said that.

11   HEARING OFFICER:  This is - especially --.

12   MR. TYRKA:  Okay.

13   HEARING OFFICER:  This was during Mr. --.

14   MR. TYRKA:  I don't think there is any question that the -

15   the short big statement and easy to make from Ms. Jordan's

16   testimony is that - that she as you would expect - could not say

17   for sure as to whether those goals and objectives were being

18   met, that is exactly why they have the documentation provisions

19   both in the IEP and in the law, and the document production

20   provisions for the procedural laws for this hearing.  And DCPS

21   has violated all of those, and having violated them should not

22   be heard to say that he wasn't in fact receiving all those

23   services and it was making progress as a result.  That being

120

1   case, we ask that for relief we already noted, and in our

2   opening.  I think Ms. Plowden spoke with very little question

3   about their ability to meet his needs according to his last IEP

4   and also his evaluations, the kind the hearing (inaudible) there

5   (inaudible) and the expertise with that population and their

6   success in the past, so we would ask for that placement and we

7   would ask for the evaluations and meeting as already addressed.

8        HEARING OFFICER: Okay Mr. McCall.

9        MR. MCCALL: Thank you Mr. Hearing Officer.  This is a young

10  man with several issues.  There is no doubt that he has a

11  disability as Ms. Wafoolah testified to.  But there is also no

12  doubt that he's has these overriding issues from the community,

13  just getting in with the wrong people, and getting into trouble,

14  it's carrying over to the school.  He has a history of

15  attendance issues.  You heard Wafoolah testimony. The documents

16  that I pointed to earlier, the report card for 05-06, as well as

17  the tracking forms and counter-tracking forms indicate absences.

18  You can't as Ms. Wafoolah said; you have great difficulty making

19  passing grades if you are never there.  There was no evidence

20  put on as to the suspension other than what the parent said that

21  she thought there were twenty.  She thought the longest one for

22  ten days.  As to the IEP's we have not contested that we didn't

23  have to review and update in 2005 and we should have.  What our

 1    case has been in that when that situation occurs, there at least

 2    we try to cure that by continuing and having something in place.

 3    Ms. Wafoolah testified to that, she testified as to what I think

 4    is the more important aspect that I heard really nothing

 5    substantial from petitioner's case and that is education – along

 6    educational benefit.  There are generalized very broad

 7    allegations, but nothing specific.  And that is why I tried to –

 8    to – you know question the mother in more specifics about what

 9    the concerns were on the IEP, where were things lacking and she

10    really didn't know.  So, while we have, we can't deny our issues

11    of procedural violations and fault and it is very apparent from

12    the record, what we put on the defense here was that there are

13    overriding issues with this student.  The drug abuse, the

14    criminal activity, the problems with getting the wrong crowd and

15    then behaviors not associated with his disability, just cutting

16    class, misbehaving in class, not showing up for school. Those

17    override any procedural failures that may have occurred and in

18    some instances as Ms. Wafoolah pointed out particularly in the

19    current evaluations that we are trying to get completing, they

20    are interfering with our ability to do that.  Finally in terms

21    of the placement, to the degree that the parent testified that

22    there were no other alternative offered, that was clearly not

23    true as Ms. Wafoolah pointed out as there was the option for the

1   mother to place her child at Marshall Education Center which was

2   approved with transportation and she declined that because her

3   attorneys told her they could get her at Rock Creek. So, I

4   believe we have tried to cure the errors and at times when the

5   student has been at school, the witness, the credible witness

6   with eight years of experience in education testified and three

7   years experience with this student, that he did benefit from his

8   instruction and that's the key in special education, has their

9   been benefit.  We don't have to provide the best program just

10  some level of benefit that meets that minimum threshold. I think

11  we have proven that.  Thank you.

12      HEARING OFFICER:  Okay, thank you very much.

13      MR. TYRKA: Just a very short rebuttal if I may, just

14  regarding the placement.  The Hearing Officer appreciate my

15  objection to it obviously, if we are to assume that everything

16  Ms. Wafoolah said was true and taken as evidence, it still would

17  not constitute a placement for any evidence of an appropriate

18  placement for purposes of this hearing.  That would require of

19  course, a full MBT, a discussion --.

20      HEARING OFFICER:  I'm not going to place the child at

21  Marshall.

22      MR. TYRKA:  I'm not worried about that.  But I'm saying,

23  regardless --.

123

1      HEARING OFFICER:  We don't need to talk about — we don't

2  need to talk about a determination that is appropriate.

3      MR. TYRKA:  What I am saying is that my claim is that

4  they've offered no placement and I would still maintain that

5  despite Ms. Wafoolah's testimony, even if it were all taken as

6  true.  Because there has not been a placement in the special Ed

7  context, regardless of the (inaudible) issues.

8      HEARING OFFICER:  Okay, thank you very much.

9      MR. TYRKA:  Thank you. Oh yes.

10      HEARING OFFICE:  Memorandum of Points and Authorities, if

11  the parties like, with respect to the statute of limitations and

12  Mr. McCall's to the attention of what you want me to consider

13  absences in the records, if you would point those out to me.

14      MR. TYRKA:  Seven days for filing, two days for response?

15      HEARING OFFICER:  Right.

16      MR. TYRKA: So if I file it, I just want to be sure, because

17  I'll probably file it tomorrow, so its two days response from

18  tomorrow that would be --.

19      HEARING OFFICER:  Two school days.

20      MR. TYRKA:  If I file.

21      HEARING OFFICER:  Two school days.

22      MR. TYRKA:  Two school days.

23      HEARING OFFICER:  Okay, thank you.

1      MR. MCCALL:  I appreciate the school day part. (Laughter).

2      HEARING OFFICER:  Well tomorrow is Friday. (Laughter.)